UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KASHNER DAVIDSON SECURITIES CORP., ) <br> VICTOR KASHNER, MATTHEW MEISTER, ) <br> and TIMOTHY VARCHETTO, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> vs. ) <br>  ) <br> STEVEN MSCISZ, MARK MSCISZ, and ) <br> LYNDA MSCISZ, ) <br>  ) <br> Defendants. ) <br>  ) | Case No. 05-CV-11433-JLT |

## AMENDED COMPLAINT TO MODIFY
## AND CONFIRM AN ARBITRATION AWARD

Plaintiffs Kashner Davidson Securities Corporation, ("KDSC"), Victor Kashner,

Matthew Meister, and Timothy Varchetto, by their undersigned counsel, for their Amended

Complaint to modify and confirm an arbitration award entered in their favor and against

Defendants Steven Mscisz, Mark Mscisz, and Lynda Mscisz, allege as follows:

## INTRODUCTION

1.      This is an action, pursuant to 9 U.S.C. §§ 9 and 11 and Mass. Gen. L. c. 251 §§ 11

and 13, to modify and confirm an arbitration award (hereinafter the "Award") entered against

Defendants by a panel of arbitrators (the "Panel") in an arbitration proceeding before the

National Association of Securities Dealers, Inc. ("NASD") entitled *Kashner Davidson Securities*

*Corp. v. Steven Mscisz, Mark Mscisz, and Lynda Mscisz v. Victor Kashner, Matthew Meister,*

*and Timothy Varchetto*, NASD No. 04-03793 (hereinafter the "Arbitration").

2.       KDSC had sued Defendants to collect nearly $350,000 in margin debt that Defendants had incurred in their non-discretionary brokerage accounts. When Defendants answered KDSC's claim, they filed a counterclaim and third-party claims against the individual plaintiffs.

3.       After submitting their disputes to arbitration before three arbitrators, which included a Senior Justice of the New Hampshire Superior Court, a practicing attorney, and a Chief Compliance Officer of a broker-dealer who held an M.B.A, a J.D., and a C.F.P. designation, that had been empanelled by the NASD and accepted by the parties, Defendants filed numerous motions including a discovery motion, a motion to disqualify counsel and/or stay the proceeding, an emergency motion for additional time to comply with the discovery order, an emergency motion to postpone the hearing, a motion for reconsideration of the discovery order, a motion for reconsideration of the order denying the motion to disqualify counsel, and a motion to withdrawal their counterclaims and third-party claims because they were unsatisfied with the discovery order. In a further effort to derail the arbitration proceeding, Defendants filed a declaratory judgment action before the Single Justice of the Massachusetts' Supreme Judicial Court seeking a ruling that Plaintiffs' out-of-state-counsel's participation at the hearing would constitute the unauthorized practice of law – the Single Justice denied Defendants' application and held that, in this instance, Plaintiffs' Counsel's participation at the hearing would not constitute the unauthorized practice of law.

4.       After believing that they had the authority under the NASD Rules, the Panel dismissed Defendants' counterclaim and third-party claims on the merits, with prejudice, prior to the hearing.

5.    Subsequently, the Panel held a hearing in which all parties were allowed to call witnesses and present documentary evidence. After due deliberation, the Panel issued the Award against Defendants, jointly and severally, and in favor of KDSC.

6.    It is this Award that Plaintiffs seek to confirm – subject to a limited modification to apportion the liability found, jointly and severally, to the respective parties as set forth more fully herein.

## THE PARTIES

7.    Plaintiff Kashner Davidson Securities Corp. ("KDSC") is a corporation organized under the laws of the State of Florida with its principal place of business in Sarasota, Florida. KDSC is a broker-dealer registered with the U.S. Securities and Exchange Commission and it is a member of NASD. KDSC was the Claimant and Counterclaim-Respondent in the Arbitration.

8.    Plaintiff Victor Kashner is a resident of the State of Florida. Kashner is an owner of KDSC, and he was a Third-Party Respondent in the Arbitration.

9.    Plaintiff Matthew Meister is a resident of the State of Florida. During the relevant time period at issue in the underlying arbitration, Meister was the President of KDSC, and he was a Third-Party Respondent in the Arbitration.

10.    Plaintiff Timothy Varchetto is a resident of the State of Florida. During the relevant time period, Varchetto was a registered representative of KDSC, and he was a Third-Party Respondent in the Arbitration.

11.    Defendants Steven Mscisz, Mark Mscisz and Lynda Mscisz (collectively, "Defendants") are residents of the State of Massachusetts. Mark and Lynda Mscisz are husband and wife, and Steven and Mark Mscisz are brothers. Defendants were the Respondents, Counterclaim-Claimants, and Third-Party Claimants in the Arbitration.

3

## JURISDICTION AND VENUE

12.    Although originally filed in the State Court of the State of Massachusetts and

removed to this Court, this Court has original jurisdiction over this action, under 28 U.S.C.

§1332(a), because the dispute is between citizens of different states and the amount in

controversy exceeds the sum of $75,000. Further, this Court has original jurisdiction over this

action, under 28 U.S.C. §1331, as the underlying counterclaims at dispute in the Arbitration

included claims arising under Section 10(b) of the Securities and Exchange Act of 1934.

13.    The Court has personal jurisdiction over Defendants as they reside within the

State of Massachusetts and this action arises from their transaction of business within the State of

Massachusetts.

14.    Venue is proper in this District, under 9 U.S.C. §10(a) and 28 U.S.C. §1391(a),

because the arbitration hearing that gave rise to the Award occurred within the State of

Massachusetts. Under Local Rule 40.1(d)(1), this case was properly assigned to a judge sitting

in the Eastern Division as the only parties residing within this District reside in its Eastern

Division.

### COUNT I
### Confirmation of Arbitration Award
### (9 U.S.C. §9 and Mass. Gen. L. c. 251 § 11)

15.    In or about December 2003, Defendants opened retail brokerage accounts with

KDSC pursuant to written customer agreements, which were updated in February 2004 to add

margin privileges to Defendants' brokerage accounts (hereinafter the "Accounts"). The

customer agreements governing the Accounts contained an express, unambiguous written

agreement to submit any and all controversies between KDSC and Defendants to arbitration

4

before an arbitration panel convened by the NASD. (A true and correct copies of the relevant arbitration agreements are annexed hereto as Exhibit A.)

16.     Thereafter, a controversy arose out of the Accounts, and subsequently, on or about May 26, 2004, KDSC filed a Statement of Claim with the NASD requesting arbitration of its dispute with Defendants that sought, *inter alia*: a) judgment against Steven Msciez in the amount of $173,634.22 to collect upon the margin debt in his brokerage account; b) judgment against Mark Msciez and Lynda Msciez, jointly and severally, in the amount of $176,923.98 to collect upon the margin debt in their joint brokerage account; and c) the costs of collection including filing fees, hearing fees, reasonable attorneys' fees and costs, pursuant to the applicable margin agreements.

17.     On or about August 26, 2004, Defendants filed their Answer and Counterclaims against KDSC. In addition, Defendants filed Third-Party Claims with the NASD against Kashner, Meister and Varchetto, as well as submission agreements, submitting the dispute with Plaintiffs to arbitration before the NASD. Under Rule 10101(c) of the NASD Code of Arbitration (the "NASD Code"), Defendants submission of their dispute with Kashner, Meister and Varchetto was a matter eligible for submission to arbitration before the NASD because it was a dispute between associated persons of an NASD member firm (Kashner, Meister and Varchetto) and public customers (Defendants). Further, under Rule 10301(a) of the NASD Code, Kashner, Meister and Varchetto were required to submit the dispute to arbitration because Defendants, as public customers, had demanded that they arbitration this dispute before the NASD.

18.     Subsequently, KDSC filed a Reply to the Counterclaim, and Kashner, Meister and Varchetto filed an Answer to the Third-Party Claims.

19.     Defendants fully participated at the Initial Pre-Hearing Conference with the Panel and agreed to discovery and motion dates and the scheduling of the hearing on March 2, 2005 through March 4, 2005.

20.     Thereafter, discover disputes arose between the parties.

21.     On December 15, 2004, the parties filed motions to compel the production of discovery from each other. Notably, Defendants filed a fifty-eight page motion that fully argued their position on discovery. Subsequently, the parties filed oppositions to each others motions.

22.     Two days later, on December 17, 2004, Defendants filed a Motion to Disqualify Plaintiff's Counsel and to Stay the Arbitration Proceeding – a motion that the Panel subsequently denied.

23.     After Counsel for Plaintiffs and Defendants had both consented to the Chairperson to render a decision on the discovery motions submitted on-the-papers without oral argument, on February 3, 2005, the Chairperson issued a discovery order granting and denying individual discovery requests sought by both parties (the "Discovery Order"). The Discovery Order required the parties to comply therewith by February 10, 2005.

24.     On February 7, 2005, Defendants filed an Emergency Motion for Additional Time to Comply with the Discovery Order, which sought an additional seven days to comply therewith. In their Emergency Motion, Defendants' Counsel represented to the Panel that "the Customers [Defendants] intend to comply fully with the Chairman's order directing them to provide information to the Third Party Respondents and Claimant/Respondent-Counterclaim."

25.     Contemporaneously with filing the Emergency Motion for Additional Time to Comply with the Discovery Order, Defendants filed an Emergency Motion to Postpone the Hearing, which was scheduled to commence on March 2, 2005.

6

26.     After the time-period had expired for Defendants to comply with the Discovery
Order, Plaintiffs filed a motion with the Panel requesting sanctions for Defendants' failure to
comply with the Discovery Order. Defendants subsequently produced limited documents and
**refused** to produce other documents required by the Discovery Order.

27.     On February 23, 2005, the NASD notified the parties that the Panel had granted
Defendants' Emergency Motion to Postpone the Hearing.

28.     The following day, February 24, 2005, after Defendants had represented that they
would fully comply with the Discovery Order and after they had requested additional time to
comply with same, Defendants filed a Motion for Reconsideration of the Discovery Order.

29.     Simultaneously, Defendants filed a Motion to Withdraw their Counterclaim and
Third-Party Claims Without Prejudice because they were unhappy with the Discovery Order – a
motion that Plaintiffs subsequently opposed.

30.     Finally, on this same date, February 24, 2005, Defendants filed a declaratory
judgment action before a Single Justice of the Massachusetts' Supreme Judicial Court seeking a
ruling that Plaintiffs' out-of-state-counsel's participation at the hearing would be the
unauthorized practice of law.

31.     In a subsequent opposition to a motion seeking sanctions, Defendants' Counsel
stated that Defendants' deliberately violated the Discovery Order because they were seeking to
withdraw their counterclaim and third-party claims without prejudice.

32.     On March 2, 2005, the date of the original hearing date, the Panel held a
conference with the parties wherein the Panel established new hearing dates (May 17, 18, 19, and
20, 2005) and denied Defendants' Motion for Reconsideration of the Discovery Order and other
discovery motions.

7

33.    On March 9, 2005, Defendants filed a Motion for Reconsideration of the Panel's denial of Defendants' Motion to Disqualify Counsel.

34.    On March 30, 2005, after the matters had been fully briefed for the Panel and after due deliberation, the Panel denied Defendants' Motion for Reconsideration of the Panel's denial of their Motion to Disqualify Counsel, and the Panel denied Defendants' Motion to Withdraw their Counterclaims and Third-Party Claims Without Prejudice. Finally, after believing that Rule 10305 of the NASD Code provided them with the authority for their actions, the Panel dismissed the Counterclaim and Third-Party Claims on the merits with prejudice.

35.    On May 6, 2005, after the matter was fully briefed and argued, the Single Justice of the Massachusetts' Supreme Judicial Court denied Defendants' application and held, in this instance, that Plaintiff's Counsel's participation at the scheduled hearing would not be the unauthorized practice of law.

36.    Subsequently, Defendants filed a Notice of Appeal and an Emergency Application for an Injunction to Stay the Arbitration pending their appeal with the Single Justice of the Court.

37.    On May 12, 2005, the Single Justice denied Defendants' Application for an Injunction.

38.    On May 17 and 18, 2005, the Panel held a hearing in Boston, Massachusetts, at which time the parties presented their witnesses and evidence, cross-examined witnesses, and the parties submitted the controversy for a decision of the arbitrators under the rules of the NASD.

39.    On June 17, 2005, based on the evidence presented at the hearing, the Panel issued the written Award. (A true and correct copy of the Award is annexed hereto as Exhibit B.)

8

40.     Pursuant to the Award, the Arbitrators issued an award in favor of KDSC and against Respondents Steven Mscisz, Mark Mscisz and Lynda Mscisz, jointly and severally, in the amount of $421,000.00 in compensatory damages, inclusive of attorneys' fees and costs under the margin agreement, together with interest thereon from May 18, 2005 until the date of the payment of the Award at the prime rate published in the Wall Street Journal. (See Exhibit B at p. 3.)

41.     In addition, as part of the Award, the Arbitrators dismissed the Counterclaim and Third-Party Claims with prejudice. (See id.)

42.     Under the provisions of the arbitration agreement, this Court was granted power to enter judgment on any award resulting from arbitration because the arbitration award resulting from arbitration was suppose to be a final and nonappealable decision on the controversy arbitrated. In particular the agreements provided, "the award rendered by the arbitrators shall be final, and judgement (sic) may be entered upon it in any court having jurisdiction thereof." (See Exhibit A at ¶19).

43.     A confirmation Order and confirming judgment is, therefore, authorized by the terms of the arbitration agreement, 9 U.S.C. §9, Mass. G. L. c. 251, §11, and the award itself.

44.     Plaintiffs filed this action to confirm the Award within one year after the Award was made.

### COUNT II
### Modification of Arbitration Award
### (9 U.S.C. §11 and Mass. Gen. L. c. 251 § 13)

45.     Plaintiffs repeat and reallage each of the allegations set forth above as though fully set forth herein.

46.     In the alternative, Plaintiffs move the Court, under 9 U.S.C. §§ 9 and 11(c) and Mass. Gen. L. c. 251 §§ 11 and 13, for an order modifying, correcting and confirming the Award as the Award is imperfect in matter of form not affecting the merits of the controversy.

47.     In the Arbitration, KDSC sought: a) an award against Steven Mscisz in the amount of $173,634.22 in compensatory damages; b) an award against Mark Mscisz and Lynda Mscisz, jointly and severally, in the amount of $176,923.98 in compensatory damages; and c) the costs of collection including filing fees, hearing fees, reasonable attorneys' fees and costs. (See Exhibit B at p. 2).

48.     In the Award, however, the Panel issued an award as follows:

Respondents [Steven Mscisz, Mark Mscisz and Lynda Mscisz] are jointly and severally liable and shall pay Claimant [KDSC] compensatory damages in the amount of $421,000.00, inclusive of attorneys' fees and costs according to the margin agreement, plus interest at the WSJ prime rate from May 18, 2005 until the date of payment of the award. (Exhibit B, p. 3).

49.     Rather than allocate $173,634.22 in compensatory damages to Steven Mscisz, allocate $176,923.98 to Mark and Lynda Mscisz, jointly and severally, and then allocate the balance $70,441.80 – representing attorneys' fees and costs – jointly and severally among all Defendants, the Panel issued a total award against Defendants jointly and severally.

50.     Therefore, and in the alternative, Plaintiffs request that the Court issue an order modifying the Award to distribute liability, which does not affect the merits of the controversy, as follows:

a.    As against Steven Mscisz, compensatory damages in the amount of $173,634.22;

b.    As against Mark Mscisz and Lynda Mscisz, jointly and severally, compensatory damages in the amount of $176,923.98; and

c.    As against Steven Mscisz, Mark Mscisz and Lynda Mscisz, jointly and severally, the reasonable attorneys' fees and costs in the amount of $70,441.80, which was incurred in collecting the debt against them as a result of their joint defense in the Arbitration.

51.    This modification in form does not affect the merits of the controversy and serves the true intent of the arbitrators.

52.    Accordingly, and in the alternative, Plaintiffs request that the Court issue an Order modifying and confirming the Award and a confirming judgment thereon.

**WHEREFORE,** pursuant to 9 U.S.C. §§ 9 and 11 and Mass. Gen. L. c. 251 §§ 11 and 13, Plaintiffs respectfully request that this Court grant the Amended Complaint and:

a.    Enter an Order confirming the Award and a confirming judgment thereon;

b.    In the alternative, enter an Order modifying and confirming the Award and confirming judgment thereon, and

c.    Grant such other and further relief as the Court deems necessary and just.

Respectfully submitted by:

Howard M. Smith
NEWMAN & SMITH
One Gateway Center
Newton, Massachusetts 02458
(617) 965-9697
BBO# 468880
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mailing hand.

Dated: 7/28/05

11

To:    William P. Corbett, Jr.
       The Corbett Law Firm
       85 Exchange Street, Suite 326
       Lynn, Massachusetts 01901-1429

## CLIENT ACCOUNT AGREEMENT

TO:  SAL Financial Services, Inc. ("SAL"), Sterne, Agee & Leach, Inc. ("Sterne Agee") and its authorized agents.

In consideration of SAL opening a securities account ("Securities Account"), on my behalf, I agree as follows:

1.  **Meaning of Words in this Agreement.** The words "I," "me," "my," and "us," refer to the person(s) who signed this Agreement. The words "you" and "your" refer to SAL or its authorized agents.  "My broker" refers to the broker dealer introducing my account to SAL.

2.  **Authority and Ownership.** I have the requisite legal capacity, am authorized to enter into this Agreement and have obtained and will provide you with all necessary authorizations from third parties to open accounts and effect securities transactions under this agreement. I will be the owner of all securities purchased, held, and sold by me through you, or will otherwise have the authority to purchase, hold or sell such securities.

3.  **Clearing Broker Agreement.** I understand that my broker dealer entered into an agreement with SAL, who entered into an agreement with Sterne Agee to execute and clear securities transactions presented to SAL in my Securities Account. I further understand and agree that Sterne Agee will carry and maintain my Securities Account (as defined by SEC Securities Investors Protection Act), under the terms of the fully disclosed clearing agreement, except as may otherwise be provided in this agreement. I further understand that my broker dealer is not an agent of, or supervised by SAL. I understand that SAL has no control relationship over my broker dealer and is not responsible for the suitability or appropriateness of investments made by me or the genuineness of any transaction made on my behalf by my broker dealer.

4.  **Appointment of broker dealer as Agent.** I appoint my broker as my agent for the purpose of carrying out my directions with respect to the purchase, sale or liquidation of securities in accordance with the terms and conditions of this Agreement, and I assume all risks with respect to the purchase, sale or liquidation of securities. All transactions will be executed only on my order or on the order of my authorized delegate except as otherwise provided in paragraph 6 below. To carry out your duties, you are authorized to appoint and use sub-agents. You and your sub-agents are authorized to open and close brokerage accounts, maintain customer records, hold securities in bearer, registered or book entry form, place and withdraw orders, provide information to third parties, including your affiliates, and take such other steps as are reasonable in connection with your duties.

5.  **Settlement.** I agree to have collected funds available in the settlement Account, or to deliver to you sufficient collected funds to cover the amounts due on purchases of securities by the settlement date for payment for all securities purchased by my Securities Account (including commissions and fees) and that you may refuse to execute an order, or may cancel an order, if such funds are not available. You may charge my cash account interest on any past settlement date debits. I agree to deliver all properly endorsed securities which I have in my possession in good form prior to settlement of the sell or liquidation order, and such securities must be received by SAL prior to the settlement date. If I have established a Settlement Account, you shall deposit proceeds of any sale or liquidation of securities into the Settlement Account; otherwise such proceeds shall be distributed to me by check, or swept to my money market fund, if established.

6.  **Indebtedness to SAL and Security Interest.** I authorize you to take any steps which you, in your sole discretion, determine to be necessary to complete or cancel a securities transaction or to minimize your losses, if any. I shall, at all times, be liable for the payment upon demand of any debit balance, and the interest thereon, or other obligations owing in my Securities Account or other account which I have with you.  As security for the repayment of any and all present or future indebtedness owed to you by me under this agreement or otherwise, I grant you a continuing security interest and lien in, and a right of set-off with respect to all securities or other property that are, now or in the future, held, carried, or maintained for any purpose in or through my Securities Account to the extent of my interest, any present or future brokerage account with you in which I have an interest. I agree to reimburse you for all cost (including attorneys' fees), losses, or liabilities incurred by you in connection with the collection of any debit balance or unpaid deficiency in my Securities Account.

7.  **Force Majeure.** You shall not be liable for loss or delay caused directly or indirectly by war, natural disasters, government restrictions, exchange or market rulings or other conditions beyond the control of SAL.

8.  **Recording Conversations.** I understand and agree that, for my mutual protection, my broker and Sterne Agee may record any of our telephone conversations without further notice.

9.  **Credit Investigation.** You may exchange credit information about me with others. You may request a credit report on me (1) if the purpose is to establish or maintain my margin and/or option account, (2) if I have chosen to settle transactions by check, (3) to comply with government agency or court orders, or (4) if, you determine it prudent for customary risk management procedures.  If I ask, you will tell me the name and address of the consumer reporting agency that furnished the report. You may request a new credit report at any time without notice to me.

10.  **Relationship with other Banks and Brokers.** From commissions and/or fees charged to my securities account for services rendered, I understand and agree that you may share, remit or otherwise pay banks or broker-dealers for their services in handling transactions for my account.  In addition, I also understand and agree that other banks or broker-dealers, including Sterne Agee, may share, or otherwise remit commissions, fees and sales loads, including markups and markdowns on principal trades, to my broker in connection with transactions for my Securities Account. I understand and agree that brokers or dealers may refuse to accept or process any transactions that I may wish to effect.

11.  **Margins Loans and Options.** *This paragraph is effective only when an account is maintained as a General Margin account as specified in Regulation T, as amended, issued by the Board of Governors of the Federal Reserve System.* (a) Securities purchased on margin or deposited against monies owed or borrowed may be maintained by SAL as collateral for my indebtedness. All property, now and hereafter held by SAL, or carried for the undersigned (either individually or jointly with

others), or deposited to secure the same, may from time to time and without notice to me, be carried in SAL general loans and may be pledged, repledged and hypothecated, separately or in common with any other property, for the sum due to SAL thereon or for a greater sum and without retaining in SAL possession or control for delivery a like amount of similar property. (b) The undersigned will at all times maintain margins for said accounts, as required by SAL from time to time. No arrangement conflicting with the firms usual requirements for margin shall be binding upon the firm or have any effect unless expressly agreed to in writing and signed for SAL by the CFO, Director of Clearing, or Compliance Officer. (c) Debit balances of the accounts of the undersigned shall be charged interest, in accordance with SAL usual custom, and with any increases in rates caused by market conditions and with such other charges as you may make to cover your facilities and extra services. *The undersigned acknowledges having received from you a statement setting forth the details of the conditions under which interest will be charged, the method of computing such interest, and the conditions under which additional collateral may be required.* (d) At any time and from time to time, in your discretion, you may without notice to the undersigned apply or transfer any or all monies and other property of the undersigned interchangeably between any accounts of the undersigned in order to avoid a margin call. (e) Until you receive written notice of revocation from the undersigned, you are hereby authorized to lend or hypothecate, to yourselves as brokers or to others, any securities held by SAL as collateral for the account of, or under the control of, the undersigned. I will not request that any transactions in options be effected for my account unless such request is in connection with my brokers options compliance program.

12. **Applicable Laws and Regulations.** All transactions shall be subject to rules, regulations, customs and usages of the exchange, market or clearing house where executed, and to all applicable federal and state laws and regulations. I will not buy, sell or liquidate any securities of a corporation of which I am an affiliate, or sell or liquidate any restricted securities, except in compliance with applicable laws and regulations and with notice, to you, that the securities are restricted.

13. **Fees and Charges.** I agree to the fees and charges indicated on my brokers fee schedule and that of SAL which I have received. I understand and agree that I will be charged an annual administration fee if I hold securities in my Securities Account and no trading activity occurs during any calendar year. You may debit my Securities Account for any fees or charges, which I incur, or any out-of-pocket expenses you may incur on my behalf, if applicable. I understand that you may change the fee schedule from time to time and I agree to be bound by such changed fee schedule.

14. **Certain Mutual Fund and UIT Transactions.** I understand and agree that sales loads or sales charges may be imposed in connection with purchases of shares or interests in mutual funds and unit investment trusts ("UITs") or other registered investment companies, that may be paid to my broker through SAL.

15. **Joint Accounts.** If this is a joint account, we understand and agree that you may follow the instructions of either of us without obtaining the consent of the other. Each of us will be fully liable for any amounts due you under this Agreement. Upon the death of either of us, you will treat the property in the account as belonging to the joint tenant with right of survivorship unless we have expressly elected to own the account as tenants in common or other registration, but you may first require the production of necessary legal documents. The liability regarding this account shall be joint and several.

16. **Amendments and Termination.** You may amend this Agreement at any time, in any respect, effective upon written notice to me. You may terminate any or all services contemplated hereunder at any time, effective upon written notice to me. I may close my Securities Account at any time by giving written notice to my broker or SAL. Closing my Securities Account or terminating services under this Agreement will not affect any rights and obligations incurred prior to such closure or termination.

17. **Notice of Changed Name, Address.** I agree to promptly notify you, or my broker dealer, in writing of any change to my name or address.

18. **Governing Laws.** This Agreement shall be governed by the laws of the State of Alabama.

19. **ARBITRATION DISCLOSURES**

- ARBITRATION IS FINAL AND BINDING TO THE PARTIES.

- THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

- PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

- THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OR RULING BY THE ARBITRATORS IS STRICTLY LIMITED.

- THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILATED WITH THE SECURITIES INDUSTRY.

- NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT, AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL; (i) THE CLASS CERTIFICATION IS DENIED; OR (ii) THE CLASS IS DECERTIFIED; OR (iii) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT. SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

*Coded*

# KASHNER DAVIDSON SECURITIES CORP
## UPDATED CLIENT AGREEMENT
### ADDING MARGIN TO CLIENT ACCOUNT

**ARBITRATION:** I EXPRESSLY ACKNOWLEDGE AND AGREE THAT ALL CLAIMS, DISPUTES AND OTHER MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE SUBMITTED TO THE ARBITRATION BOARD OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. (NASD), UNLESS OTHERWISE PROVIDED BY LAW. THIS EXPRESS AGREEMENT TO SUBMIT TO BE BOUND BY ARBITRATION INCLUDES, BUT IS NOT LIMITED TO, DISPUTES ARISING UNDER THE SECURITIES ACT OF 1933, THE EXCHANGE ACT OF 1934, CLAIMS ARISING UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RIGO), STATE OR COMMON LAW FRAUD AND SECURITIES STATUTES, AS WELL AS OTHERS SPECIFICALLY ENFORCEABLE UNDER THE PREVAILING ARBITRATION LAW AND PROCEDURES. THE AWARD RENDERED BY THE ARBITRATORS SHALL BE FINAL, AND JUDGEMENT MAY BE ENTERED UPON IT IN ANY COURT HAVING JURISDICTION THEREOF. COUNSEL CAN ADVISE ME ON HOW THIS PROVISION MAY AFFECT ME.

20. **Inactive Accounts.** I understand and agree that if I do not place a securities trade during any eighteen (18) month period, and there are no securities held in my Securities Account, my Securities Account may be automatically removed from your system. I will thereafter be required to re-establish a Securities Account prior to placing any further securities trades.

21. **Effectiveness.** I understand that this Agreement is effective upon receipt by you and evidenced by a notation on the internal records of SAL and Sterne Agee.

### NOTICE TO STERNE, AGEE & LEACH, INC.

This is to advise you that I have instructed my broker dealer to establish, on my behalf, and as my agent, a Securities Account with you. I have appointed my broker dealer as my exclusive agent to act for and on my behalf with respect to all matters regarding my Securities Account with you, including the placing of purchase, sales and liquidation orders and delivery of margin and option instructions if authorized by my Securities Account. You may look solely to my broker dealer and not to me with respect to any such orders or instructions. I understand that you may consider by delivering to my broker dealer confirmations and all other written notices, including margin maintenance calls, if applicable, to have been delivered to me and you are entitled to rely on my broker dealer, to forward the communications to me. I agree to reimburse you for any losses, costs or expenses in connection with the delivery or receipt of any of these communications, if you have acted in accordance with these instructions. These instructions are effective until I send you and/or my broker dealer written notice to the contrary. I understand and agree that you may share, pay or otherwise remit commissions, fees or sales loads, including markups and markdowns on principal trades, to my broker dealer in connection with transactions for my account.

NOTE TO CLIENT:
IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.

Notice: **This agreement contains a pre-dispute arbitration clause, which is located at paragraph 19.**

Account Number **REDACTED** 7459

Client's Signature X _____

Joint Account Holder Signature X _____

AUTHORIZED BY _____

**Name and Address Disclosure**

( ) *No, I do not want my name, address and securities positions disclosed to all the companies in which I own securities that are being held for me in that account pursuant to SEC rule 14b-1(c).*

DATE MARGIN ACCOUNT ESTABLISHED
2/12/04

'04 FEB 13 AM 11:42

---

**Taxpayer ID Certification**

A. Under the penalties of perjury, I certify that (check all that apply):

☒ I am a U.S. Person (including a U.S. Resident Alien).

☒ The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.

☐ The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am subject to backup withholding.

Account Number **REDACTED** 7459

X _____ Signature

Date 2/12/04

Social Security Number or Taxpayer ID **REDACTED** 2737

X _____ Signature (Joint Account Holder)

Date 2/12/04

## DISCLOSURE STATEMENT OF CREDIT TERMS AND POLICIES
### Effective May 1, 2002

The following Disclosure Statement of Credit Terms and Policies is required by the Securities and Exchange Commission and is part of your Client Agreement. Should you have any questions regarding this Disclosure Statement, please contact your Investment Consultant.

### INTEREST CHARGE

Margin Transactions normally involve the extension of credit made by Sterne, Agee & Leach, Inc., (Sterne Agee) when you deposit only a portion of the moneys or the collateral required in a transaction. Withdrawals of cash from your account, or an increase in the market value of a security sold short (or short against the box) may create or add to your debit balance, for which interest and any other applicable charges will be assessed to your account.

Your account will be charged interest on any extension of credit to you by Sterne Agee in connection with the purchase, sale or carrying of any securities. The interest charge will be based on your adjusted debit balance multiplied by the daily margin interest rate. You will receive a statement of your account, at least quarterly, showing the adjusted daily debit balance, interest charges, and the applicable interest rates.

Interest will be charged to you if we approve prepayment of the proceeds from sales prior to settlement date. Interest may also be charged on debit balances in Cash accounts due to a late payment.

### DAILY MARGIN INTEREST RATE

The "daily margin interest rate" is based on a 360-day year and is calculated by dividing the applicable margin interest rate by 360. The applicable margin interest rate is set at a percentage above Sterne Agee's Base Rate as shown in the following table.

| If the amount of your average adjusted daily debit balance is: | The interest rate charged is: |
|---|---|
| Over 100,000 | Base Rate + 0.50% |
| 75,000-99,999 | Base Rate + 1.00% |
| 50,000-74,999 | Base Rate + 1.25% |
| 25,000-49,999 | Base Rate + 1.50% |
| Under 25,000 | Base Rate + 1.75% |

Sterne Agee sets the Base Rate at its discretion with consideration to commercially recognized interest rates relating to the extension of credit, as well as general market conditions. The margin interest rate may be changed without notice to you to reflect changes in the Base Rate. If your interest rate is increased for any other reason, Sterne Agee will notify you in writing at least 30 days prior to the date of the increase. Please contact your Investment Consultant for the current Base Rate.

The term "adjusted daily debit balance," means the daily debit balance less applicable free credits, if any. The daily debit balance is the unpaid amount loaned to you as of the close of the business day. Debits and credits resulting from purchases and sales are posted to your account as of the settlement date. A credit balance in your Cash account will be applied as a reduction of a debit balance in your Margin and/or Short Account. Should you deposit a check or other item that is later returned unpaid, your account may be adjusted to reflect additional interest or other charges that apply.

### INITIAL MARGIN AND ACCOUNT MAINTENANCE REQUIREMENTS

The Federal Reserve Board and various self-regulatory organizations determine margin loan rules and regulations. The maximum amount currently available to you is 50% of the value of marginable securities purchased or held in your account ("initial margin"). The maximum loan available for debt securities varies with the type of security. Your minimum account equity must be $2,000.00, or other amount as may be required by applicable rules, regulations, or Sterne Agee house policies. Initial margin and margin maintenance requirements may change without notice. Equity securities with a market value of less than $5.00 per share are not marginable.

A margin call (notification to deposit additional collateral) may be issued if your account equity drops below the margin maintenance requirement. Normally, additional collateral will be required if your account equity declines below 30% depending upon such factors as Sterne Agee, in its sole discretion, may deem material, including but not limited to the type, price, quantities and marketability of securities, or combination thereof, held in your account. If the market value of a security falls below $3.00 per share, the security will not be assigned a value as collateral to secure your margin obligations.

## SHORT OPTION POSITIONS

Uncovered option contracts are subject to both initial margin and margin maintenance requirements. These positions involve higher levels of risk and more stringent requirements may be imposed. Please contact your Investment Consultant for details.

## SHORT SALE TRANSACTIONS

Any credit resulting from a short (including a short sale against the box) will not reduce your debit balance on which interest is charged because the securities sold short must be borrowed to make delivery to the purchaser and an amount equal to the proceeds of the short sale must be deposited with the lender. You are liable for all dividends and interest paid on securities borrowed for the purpose of short sales.

The value of securities held short in your account will be "marked to the market" daily. Any resulting increase or decrease in the market value will be included in your adjusted daily debit balance.

Sterne Agee may at its discretion, for any reason and without notice, immediately cover any short security position by purchasing securities for your account.

## LIENS AND LIQUIDATIONS

All monies or securities held by Sterne Agee at any time in any of your accounts (individual, joint or otherwise) for any purposes shall be collateral subject to a general lien and security interest for the discharge of all your obligations to Sterne Agee.

Sterne Agee may also demand repayment of any loan balance in whole, or in part, at any time and for any reason. Additionally, Sterne Agee may require you to deposit additional collateral as security for your obligations.

## SIPC PROTECTION

Assets held in your Sterne, Agee & Leach, Inc. account for investment purposes are protected by combined SIPC and excess SIPC insurance coverage up to $25,000,000. SIPC protects your account for $500,000. Excess SIPC insurance covers all accounts for an additional $24,500,000. Claims of cash are limited to $100,000. Money Market fund shares are securities, not cash, and are protected up to the full $25,000,000 limit.

SIPC protection covers more than one account in which you have an interest provided you are acting in different capacities for each account. (For instance, coverage would apply if you had an individual account and a joint account with your spouse.) SIPC does not protect against a decline in market value of securities in your brokerage account.

Sterne, Agee may elect to pay interest on credit balances awaiting reinvestment at a rate determined by Sterne Agee and reserves the right to eliminate or otherwise change the rate or manner in which interest on credit balances is paid at any time without prior notice to you.

CLIENT ACCOUNT AGREEMENT

TO: SAL Financial Services, Inc. ("SAL"), Sterne, Agee & Leach, Inc. ("Sterne Agee") and its authorized agents.

In consideration of SAL opening a securities account ("Securities Account"), on my behalf, I agree as follows:

1. **Meaning of Words in this Agreement.** The words "I," "me," "my," and "us," refer to the person(s) who signed this Agreement. The words "you" and "your" refer to SAL or its authorized agents. "My broker" refers to the broker dealer introducing my account to SAL.

2. **Authority and Ownership.** I have the requisite legal capacity, am authorized to enter into this Agreement and have obtained and will provide you with all necessary authorizations from third parties to open accounts and effect securities transactions under this agreement. I will be the owner of all securities purchased, held, and sold by me through you, or will otherwise have the authority to purchase, hold or sell such securities.

3. **Clearing Broker Agreement.** I understand that my broker dealer entered into an agreement with SAL, who entered into an agreement with Sterne Agee to execute and clear securities transactions presented to SAL in my Securities Account. I further understand and agree that Sterne Agee will carry and maintain my Securities Account (as defined by SEC Securities Investors Protection Act), under the terms of the fully disclosed clearing agreement, except as may otherwise be provided in this agreement. I further understand that my broker dealer is not an agent of, or supervised by SAL. I understand that SAL has no control relationship over my broker dealer and is not responsible for the suitability or appropriateness of investments made by me or the genuineness of any transaction made on my behalf by my broker dealer.

4. **Appointment of broker dealer as Agent.** I appoint my broker as my agent for the purpose of carrying out my directions with respect to the purchase, sale or liquidation of securities in accordance with the terms and conditions of this Agreement, and I assume all risks with respect to the purchase, sale or liquidation of securities. All transactions will be executed only on my order or on the order of my authorized delegate except as otherwise provided in paragraph 6 below. To carry out your duties, you are authorized to appoint and use sub-agents. You and your sub-agents are authorized to open and close brokerage accounts, maintain customer records, hold securities in bearer, registered or book entry form, place and withdraw orders, provide information to third parties, including your affiliates, and take such other steps as are reasonable in connection with your duties.

5. **Settlement.** I agree to have collected funds available in the settlement Account, or to deliver to you sufficient collected funds to cover the amounts due on purchases of securities by the settlement date for payment for all securities purchased by my Securities Account (including commissions and fees) and that you may refuse to execute an order, or may cancel an order, if such funds are not available. You may charge my cash account interest on any post settlement date debits. I agree to deliver all property endorsed securities which I have in my possession in good form prior to settlement of the sell or liquidation order, and such securities must be received by SAL prior to the settlement date. If I have established a Settlement Account, you shall deposit proceeds of any sale or liquidation of securities into the Settlement Account; otherwise such proceeds shall be distributed to me by check, or swept to my money market fund, if established.

6. **Indebtedness to SAL and Security Interest.** I authorize you to take any steps which you, in your sole discretion, determine to be necessary to complete or cancel a securities transaction or to minimize your losses, if any. I shall, at all times, be liable for the payment upon demand of any debit balance, and the interest thereon, or other obligations owing in my Securities Account or other account which I have with you. As security for the repayment of any and all present or future indebtedness owed to you by me under this agreement or otherwise, I grant you a continuing security interest and lien in, and a right of set-off with respect to all securities or other property that are, now or in the future, held, carried, or maintained for any purpose in or through my Securities Account to the extent of my interest, any present or future brokerage account with you in which I have an interest. I agree to reimburse you for all cost (including attorneys' fees), losses, or liabilities incurred by you in connection with the collection of any debit balance or unpaid deficiency in my Securities Account.

7. **Force Majeure.** You shall not be liable for loss or delay caused directly or indirectly by war, natural disasters, government restrictions, exchange or market rulings or other conditions beyond the control of SAL.

8. **Recording Conversations.** I understand and agree that, for your mutual protection, my broker and Sterne Agee may record any of our telephone conversations without further notice.

9. **Credit Investigation.** You may exchange credit information about me with others. You may request a credit report on me (1) if the purpose is to establish or maintain my margin and/or option account, (2) if I have chosen to settle transactions by check, (3) to comply with government agency or court orders, or (4) if, you determine it prudent for customary risk management procedures. If I ask, you will tell me the name and address of the consumer reporting agency that furnished the report. You may request a new credit report at any time without notice to me.

10. **Relationship with other Banks and Brokers.** From commissions and/or fees charged to my securities account for services rendered, I understand and agree that you may share, remit or otherwise pay banks or broker-dealers for their services in handling transactions for my account. In addition, I also understand and agree that other banks or broker-dealers, including Sterne Agee, may share, or otherwise remit commissions, fees and sales loads, including markups and markdowns on principal trades, to my broker in connection with transactions for my Securities Account. I understand and agree that brokers or dealers may refuse to accept or process any transactions that I may wish to effect.

11. **Margin Loans and Options.** *This paragraph is effective only when an account is maintained as a General Margin account as specified in Regulation T, as amended, issued by the Board of Governors of the Federal Reserve System.* (a) Securities purchased on margin or deposited against monies owed or borrowed may be maintained as collateral for my indebtedness. All property, now and hereafter held by SAL, or carried for the undersigned (either individually or jointly with

Page 1 of 5
IBD-CAA(rev 3/18/02)

others), or deposited to secure the same, may from time to time and without notice to me, be carried in SAL general loans and may be pledged, repledged and hypothecated, separately or in common with any other property, for the sum due to SAL thereon or for a greater sum and without retaining in SAL possession or control for delivery a like amount of similar property. (b) The undersigned will at all times maintain margins for said accounts, as required by SAL from time to time. No arrangement conflicting with the firms usual requirements for margin shall be binding upon the firm or have any effect unless expressly agreed to in writing and signed for SAL by the CFO, Director of Clearing, or Compliance Officer. (c) Debit balances of the accounts of the undersigned shall be charged interest, in accordance with SAL usual custom, and with any increase in rates caused by market conditions and with such other charges as you may make to cover your facilities and extra services. *The undersigned acknowledges having received from you a statement setting forth the details of the conditions under which interest will be charged, the method of computing such interest, and the conditions under which additional collateral may be required.* (d) At any time and from time to time, in your discretion, you may without notice to the undersigned apply or transfer any or all monies and other property of the undersigned interchangeably between any accounts of the undersigned in order to avoid a margin call. (e) Until you receive written notice of revocation from the undersigned, you are hereby authorized to lend or hypothecate, to yourselves as brokers or to others, any securities held by SAL as collateral for the account of, or under the control of, the undersigned. I will not request that any transactions in options be effected for my account unless such request is in connection with my brokers options compliance program.

12. **Applicable Laws and Regulations.** All transactions shall be subject to rules, regulations, customs and usages of the exchange, market or clearing house where executed, and to all applicable federal and state laws and regulations. I will not buy, sell or liquidate any securities of a corporation of which I am an affiliate, or sell or liquidate any restricted securities, except in compliance with applicable laws and regulations and with notice, to you, that the securities are restricted.

13. **Fees and Charges.** I agree to the fees and charges indicated on my brokers fee schedule and that of SAL which I have received. I understand and agree that I will be charged an annual administration fee if I hold securities in my Securities Account and no trading activity occurs during any calendar year. You may debit my Securities Account for any fees or charges, which I incur, or any out-of-pocket expenses you may incur on my behalf, if applicable. I understand that you may change the fee schedule from time to time and I agree to be bound by such changed fee schedule.

14. **Certain Mutual Fund and UIT Transactions.** I understand and agree that sales loads or sales charges may be imposed in connection with purchases of shares or interests in mutual funds and unit investment trusts ("UITs") or other registered investment companies, that may be paid to my broker through SAL.

15. **Joint Accounts.** If this is a joint account, we understand and agree that you may follow the instructions of either of us without obtaining the consent of the other. Each of us will be fully liable for any amounts due you under this Agreement. Upon the death of either of us, you will treat the property in the account as belonging to the joint tenant with right of survivorship unless we have expressly elected to own the account as tenants in common or other registration, but you may first require the production of necessary legal documents. The liability regarding this account shall be joint and several.

16. **Amendments and Termination.** You may amend this Agreement at any time, in any respect, effective upon written notice to me. You may terminate any or all services contemplated hereunder at any time, effective upon written notice to me. I may close my Securities Account at any time by giving written notice to my broker or SAL. Closing my Securities Account or terminating services under this Agreement will not affect any rights and obligations incurred prior to such closure or termination.

17. **Notice of Changed Name, Address.** I agree to promptly notify you, or my broker dealer, in writing of any change to my name or address.

18. **Governing Laws.** This Agreement shall be governed by the laws of the State of Alabama.

19. **ARBITRATION DISCLOSURES**

  - ARBITRATION IS FINAL AND BINDING TO THE PARTIES.

  - THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

  - PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

  - THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OR RULING BY THE ARBITRATORS IS STRICTLY LIMITED.

  - THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILATED WITH THE SECURITIES INDUSTRY.

  - NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT, AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL; (i) THE CLASS CERTIFICATION IS DENIED; OR (ii) THE CLASS IS DECERTIFIED; OR (iii) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT. SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

02/18/2004 11:08 FAX 978 887 2660 @001

## KASHNER DAVIDSON SECURITIES CORP
## UPDATED CLIENT AGREEMENT
## ADDING MARGIN TO CLIENT ACCOUNT

**ARBITRATION:** I EXPRESSLY ACKNOWLEDGE AND AGREE THAT ALL CLAIMS, DISPUTES AND OTHER MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE SUBMITTED TO THE ARBITRATION BOARD OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. (NASD), UNLESS OTHERWISE PROVIDED BY LAW. THIS EXPRESS AGREEMENT TO SUBMIT TO BE BOUND BY ARBITRATION INCLUDES, BUT IS NOT LIMITED TO, DISPUTES ARISING UNDER THE SECURITIES ACT OF 1933, THE EXCHANGE ACT OF 1934, CLAIMS ARISING UNDER COMMON LAW FRAUD AND RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), STATE OR COMMON LAW FRAUD AND SECURITIES STATUTES, AS WELL AS OTHERS SPECIFICALLY ENFORCEABLE UNDER THE PREVAILING ARBITRATION LAW AND PROCEDURES. THE AWARD RENDERED BY THE ARBITRATORS SHALL BE FINAL, AND JUDGEMENT MAY BE ENTERED UPON IT IN ANY COURT HAVING JURISDICTION THEREOF. COUNSEL CAN ADVISE ME ON HOW THIS PROVISION MAY AFFECT ME.

20. **Inactive Accounts.** I understand and agree that if I do not place a securities trade during any eighteen (18) month period, and there are no securities held in my Securities Account, my Securities Account may be automatically removed from your system. I will thereafter be required to re-establish a Securities Account prior to placing any further securities trades.

21. **Effectiveness.** I understand that this Agreement is effective upon receipt by you and evidenced by a notation on the internal records of SAL and Sigma Agee.

### NOTICE TO STERNE, AGEE & LEACH, INC.

This is to advise you that I have instructed my broker dealer to establish, on my behalf, and as my agent, a Securities Account with you. I have appointed my broker dealer as my exclusive agent to act for and on my behalf with respect to all matters regarding my Securities Account with you, including the placing of purchase, sales and liquidation orders and delivery of margin and option instructions if authorized by my Securities Account. You may look solely to my broker dealer and not to me with respect to any such orders or instructions. I understand that you may consider by delivering to my broker dealer confirmations and all other written notices, including margin maintenance calls, if applicable, to have been delivered to me and you are entitled to rely on my broker dealer, to forward the communications to me. I agree to reimburse you for any losses, costs or expenses in connection with the delivery or receipt of any of these communications. If you have acted in accordance with these instructions. These instructions are effective until I send you and/or my broker dealer written notice to the contrary. I understand and agree that you may share, pay or otherwise remit commissions, fees or sales loads, including markups and markdowns on principal trades, to my broker dealer in connection with transactions for my account.

**NOTE TO CLIENT:**
IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.

Notice: This agreement contains a pre-dispute arbitration clause, which is located at paragraph 19.

Account Number REDACTED 2265

Client's
Signature X _____

Joint Account Holder
Signature X

<u>Name and Address Disclosure</u>

( ) No, I do not want my name, address and securities positions disclosed to all the companies in which I own securities that are being held for me in that account pursuant to SEC rule 14b-1(c).

DATE MARGIN ACCOUNT ESTABLISHED

2/18/04

AUTHORIZED BY _____

**Taxpayer ID Certification**

A.    Under the penalties of perjury, I certify that (check all that apply):
I am a U.S. Person (including a U.S. Resident Alien).
The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.
B.    The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am subject to backup withholding.

REDACTED 2265

REDACTED 2543

Account Number

Social Security Number or Taxpayer ID

X _____     2/18/04

Signature          Date

Signature (Joint Account Holder)         Date

## DISCLOSURE STATEMENT OF CREDIT TERMS AND POLICIES
### Effective May 1, 2002

The following Disclosure Statement of Credit Terms and Policies is required by the Securities and Exchange Commission and is part of your Client Agreement. Should you have any questions regarding this Disclosure Statement, please contact your Investment Consultant.

### INTEREST CHARGE

Margin Transactions normally involve the extension of credit made by Sterne, Agee & Leach, Inc., (Sterne Agee) when you deposit only a portion of the moneys or the collateral required in a transaction. Withdrawals of cash from your account, or an increase in the market value of a security sold short (or short against the box) may create or add to your debit balance, for which interest and any other applicable charges will be assessed to your account.

Your account will be charged interest on any extension of credit to you by Sterne Agee in connection with the purchase, sale or carrying of any securities. The interest charge will be based on your adjusted debit balance multiplied by the daily margin interest rate. You will receive a statement of your account, at least quarterly, showing the adjusted daily debit balance, interest charges, and the applicable interest rates.

Interest will be charged to you if we approve prepayment of the proceeds from sales prior to settlement date. Interest may also be charged on debit balances in Cash accounts due to a late payment.

### DAILY MARGIN INTEREST RATE

The "daily margin interest rate" is based on a 360-day year and is calculated by dividing the applicable margin interest rate by 360. The applicable margin interest rate is set at a percentage above Sterne Agee's Base Rate as shown in the following table.

| If the amount of your average adjusted daily debit balance is: | The interest rate charged is: |
|---|---|
| Over 100,000 | Base Rate + 0.50% |
| 75,000-99,999 | Base Rate + 1.00% |
| 50,000-74,999 | Base Rate + 1.25% |
| 25,000-49,999 | Base Rate + 1.50% |
| Under 25,000 | Base Rate + 1.75% |

Sterne Agee sets the Base Rate at its discretion with consideration to commercially recognized interest rates relating to the extension of credit, as well as general market conditions. The margin interest rate may be changed without notice to you to reflect changes in the Base Rate. If your interest rate is increased for any other reason, Sterne Agee will notify you in writing at least 30 days prior to the date of the increase. Please contact your Investment Consultant for the current Base Rate.

The term "adjusted daily debit balance," means the daily debit balance less applicable free credits, if any. The daily debit balance is the unpaid amount loaned to you as of the close of the business day. Debits and credits resulting from purchases and sales are posted to your account as of the settlement date. A credit balance in your Cash account will be applied as a reduction of a debit balance in your Margin and/or Short Account. Should you deposit a check or other item that is later returned unpaid, your account may be adjusted to reflect additional interest or other charges that apply.

### INITIAL MARGIN AND ACCOUNT MAINTENANCE REQUIREMENTS

The Federal Reserve Board and various self-regulatory organizations determine margin loan rules and regulations. The maximum amount currently available to you is 50% of the value of marginable securities purchased or held in your account ("initial margin"). The maximum loan available for debt securities varies with the type of security. Your minimum account equity must be $2,000.00, or other amount as may be required by applicable rules, regulations, or Sterne Agee house policies. Initial margin and margin maintenance requirements may change without notice. Equity securities with a market value of less than $5.00 per share are not marginable.

A margin call (notification to deposit additional collateral) may be issued if your account equity drops below the margin maintenance requirement. Normally, additional collateral will be required if your account equity declines below 30% depending upon such factors as Sterne Agee, in its sole discretion, may deem material, including but not limited to the type, price, quantities and marketability of securities, or combination thereof, held in your account. If the market value of a security falls below $3.00 per share, the security will not be assigned a value as collateral to secure your margin obligations.

## SHORT OPTION POSITIONS

Uncovered option contracts are subject to both initial margin and margin maintenance requirements. These positions involve higher levels of risk and more stringent requirements may be imposed. Please contact your Investment Consultant for details.

## SHORT SALE TRANSACTIONS

Any credit resulting from a short (including a short sale against the box) will not reduce your debit balance on which interest is charged because the securities sold short must be borrowed to make delivery to the purchaser and an amount equal to the proceeds of the short sale must be deposited with the lender. You are liable for all dividends and interest paid on securities borrowed for the purpose of short sales.

The value of securities held short in your account will be "marked to the market" daily. Any resulting increase or decrease in the market value will be included in your adjusted daily debit balance.

Sterne Agee may at its discretion, for any reason and without notice, immediately cover any short security position by purchasing securities for your account.

## LIENS AND LIQUIDATIONS

All monies or securities held by Sterne Agee at any time in any of your accounts (individual, joint or otherwise) for any purposes shall be collateral subject to a general lien and security interest for the discharge of all your obligations to Sterne Agee.

Sterne Agee may also demand repayment of any loan balance in whole, or in part, at any time and for any reason. Additionally, Sterne Agee may require you to deposit additional collateral as security for your obligations.

## SIPC PROTECTION

Assets held in your Sterne, Agee & Leach, Inc. account for investment purposes are protected by combined SIPC and excess SIPC insurance coverage up to $25,000,000. SIPC protects your account for $500,000. Excess SIPC insurance covers all accounts for an additional $24,500,000. Claims of cash are limited to $100,000. Money Market fund shares are securities, not cash, and are protected up to the full $25,000,000 limit.

SIPC protection covers more than one account in which you have an interest provided you are acting in different capacities for each account. (For instance, coverage would apply if you had an individual account and a joint account with your spouse.) SIPC does not protect against a decline in market value of securities in your brokerage account.

Sterne, Agee may elect to pay interest on credit balances awaiting reinvestment at a rate determined by Sterne Agee and reserves the right to eliminate or otherwise change the rate or manner in which interest on credit balances is paid at any time without prior notice to you.

# Award
## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Kashner Davidson Securities Corporation (Claimant) v. Steven Mscisz, Mark Mscisz, and Lynda Mscisz (Respondents) v. Victor Kashner, Matthew Meister, and Timothy Varchetto (Third-Party Respondents)

Case Number: 04-03793                    Hearing Site: Boston, Massachusetts

---

Nature of the Dispute:  Member vs. Customers (Initial Claim).
                        Customers vs. Member (Counterclaim)
                        Customers vs. Associated Persons (Third-Party Claims).

## REPRESENTATION OF PARTIES

Claimant Kashner Davidson Securities Corporation ("KDSC") hereinafter referred to as "Claimant" and Third-Party Respondents Victor Kashner ("V. Kashner"), Matthew Meister ("M. Meister"), and Timothy Varchetto ("T. Varchetto") hereinafter collectively referred to as "Third-Party Respondents": Howard M. Smith, Esq., Newman & Smith, Newton, MA. Previously represented by: Marc J. Ross, Esq., Sichenzia Ross Friedman Ference, LLP, New York, NY.

Respondents Steven Mscisz ("S. Mscisz"), Mark Mscisz ("M. Mscisz"), and Lynda Mscisz ("L. Mscisz") hereinafter collectively referred to as "Respondents": William P. Corbett, Jr., Esq., The Corbett Law Firm, Lynn, MA.

## CASE INFORMATION

Statement of Claim filed on or about:  May 26, 2004.
Claimant signed the Uniform Submission Agreement:  May 24, 2004.

Joint Statement of Answer, Affirmative Defenses, Counterclaims and Third-Party Claims filed by Respondents on or about: August 26, 2004.
Respondent S. Mscisz signed the Uniform Submission Agreement:  August 26, 2004.
Respondent M. Mscisz signed the Uniform Submission Agreement:  August 26, 2004.
Respondent L. Mscisz signed the Uniform Submission Agreement:  August 26, 2004.

Joint Reply and Answer filed by Third-Party Respondents on or about:  September 9, 2004.
Third-Party Respondent Kashner signed the Uniform Submission Agreement: October 1, 2004.
Third-Party Respondent Meister did not sign the Uniform Submission Agreement.
Third-Party Respondent Varchetto did not sign the Uniform Submission Agreement.

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 2 of 6

## CASE SUMMARY

Claimant asserted the following causes of action: breach of contract; money lent; open book account; and fraud/fraud in the inducement. The causes of action relate to unspecified securities.

Unless specifically admitted in its Answer, Respondents denied the allegations made in the Statement of Claim and asserted various affirmative defenses. In its Counterclaims and Third-Party Claims, Claimant asserted the following causes of action: violations of Sections 7, 9, and 10(b) of the Securities Act of 1934; violations of the Florida Securities Transactions Act; violations of the Massachusetts Uniform Securities Act; violations of NASD Business Conduct Standards; common law fraud; unjust enrichment; conversion; breach of contract; violation of the Racketeer Influenced and Corrupt Organization Act; abuse of process; violation of the Massachusetts Consumer Protection Act and the Florida Consumer Protection Act.

Unless specifically admitted in their Reply and Answer of Third-Party Claims, Claimant and Third-Party Respondents denied the allegations made in the Counterclaims and Third-Party Claims and asserted various affirmative defenses.

## RELIEF REQUESTED

Claimant requested compensatory damages in the amount of $173,634.22; compensatory damages in the amount of $176,923.98; interest; costs of collection, including NASD filing and hearing fees and attorneys; fees; and such other and further relief as the Panel deems just, fair, and equitable.

Respondents requested that the Panel dismiss Claimant's Statement of Claim, with prejudice; on their Counterclaims and Third-Party Claims, unspecified compensatory damages in threefold; prejudgment interest; attorneys' fees; costs; an order that Claimant disgorge and make full restitution to Respondents; other appropriate equitable relief; and such other and further relief as the Panel deems necessary and just.

Third-Party Respondents requested that the Panel award Claimant the relief sought in the Statement of Claim; that the Panel deny and dismiss each and every claim asserted in the Counterclaims and Third-Party Claims; that the Panel issue sanctions against Respondents; and such other and further relief as the Panel deems just, equitable, and proper.

## OTHER ISSUES CONSIDERED AND DECIDED

Upon review of the file and the representations made on behalf of the Claimant, the undersigned arbitrators (the "Panel") determined that Respondent L. Msciez has been properly served with the Statement of Claim and received due notice of the hearing, and that arbitration of the matter would proceed without said Respondent present, in accordance with the NASD Code of Arbitration Procedure (the "Code").

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 3 of 6

Third-Party Respondents Meister and Varchetto did not file with NASD Dispute Resolution properly executed Uniform Submission Agreements but are required to submit to arbitration pursuant to the Code and are bound by the determination of the Panel on all issues submitted.

The Panel previously ruled that the Counterclaims and Third-Party Claims filed by Respondents are dismissed, with prejudice.

At the hearing, Claimant made an oral motion to conform the pleadings to the proof. After due consideration, the Panel determined to grant the motion.

Respondents made a motion for a stenographic transcription of the hearing. After due consideration, the Panel granted the motion and ordered the following: "Respondents are to provide NASD with a copy of the transcript. Claimant is to obtain the transcript at its own cost; Respondents do not have to pay for Claimant's transcript".

Respondents made a motion to dismiss for failure to make a prima facie case. After due consideration, the Panel denied the motion.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondents are jointly and severally liable for and shall pay Claimant compensatory damages in the amount of $421,000.00, inclusive of attorneys' fees and costs according to the margin agreement, plus interest at the WSJ prime rate from May 18, 2005 until the date of payment of the award.

2. Respondents' Counterclaims and Third-Party Claims are dismissed.

2. Any and all relief not specifically addressed herein is denied.

## FEES

Pursuant to the Code, the following fees are assessed:

**Filing Fees**
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:
    Initial claim filing fee            = $1,000.00
    Third-Party Claim filing fee      = $  250.00

**Member Fees**

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 4 of 6

Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated persons at the time of the events giving rise to the dispute. Accordingly, Kashner Davidson Securities Corp. is a party.

| | |
|---|---|
| Member surcharge | = $1,700.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $2,750.00 |

**Adjournment Fees**
Adjournments granted during these proceedings for which fees were assessed:

| | |
|---|---|
| March 2-4, 2005, adjournment by Respondents | = Waived |

**Forum Fees and Assessments**
The Panel has assessed forum fees for each session conducted. A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Tow (2) Pre-hearing sessions with a single arbitrator @ $450.00 | | | = $ 900.00 |
| Pre-hearing conferences: | January 20, 2005 | 1 session | |
| | January 31, 2005 | 1 session | |
| | | | |
| Three (3) Pre-hearing sessions with Panel @ $1,000.00* | | | = $3,000.00 |
| Pre-hearing conferences: | November 8, 2004 | 1 session | |
| | November 16, 2004 | 1 session | |
| | March 2, 2005 | 1 session | |
| | | | |
| Three (3) Hearing sessions @ $1,000.00 | | | = $3,000.00 |
| Hearing Dates: | May 17, 2005 | 2 sessions | |
| | May 18, 2005 | 1 session | |
| Total Forum Fees | | | = $6,900.00 |

*In accordance with Rule 10332(c) of the Code of Arbitration Procedure, the forum fees assessed against the Respondents are based on the Respondents' hearing session deposit.*

1. The Panel has assessed $6,900.00 of the forum fees jointly and severally against Respondents.

**Fee Summary**

1. Claimant is solely liable for:

| | |
|---|---|
| Initial Filing Fee | = $1,000.00 |
| Member Fees | = $5,200.00 |
| Total Fees | = $6,200.00 |
| Less payments | = $7,325.00 |
| Refund Due Claimants | = $1,125.00 |

NASD Dispute Resolution
Arbitration No. 04-03793
<u>Award   Page 5 of 6</u>

2.  Respondents are jointly and severally liable for:

| | |
|---|---|
| Third-Party Claim Filing Fee | = $  250.00 |
| Forum Fees | = $6,900.00 |
| Total Fees | = $7,150.00 |
| Less payments | = $1,250.00 |
| Balance Due NASD Dispute Resolution | = $5,900.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

P.10

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.          -     Public Arbitrator, Presiding Chairperson
Douglas R. Gray                     -     Public Arbitrator
Patrick W. McKeon, Esq.             -     Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law
and Rules, that I am the individual described herein and who executed this instrument which is
my award.

_____                    _____
Arthur J. Giacomarra, Esq.                          Signature Date
Public Arbitrator, Presiding Chairperson


_____                    _____
Douglas R. Gray                                     Signature Date
Public Arbitrator


_____                    _____
Patrick W. McKeon, Esq.                             Signature Date
Non-Public Arbitrator


June 17, 2005
_____
Date of Service  (For NASD Dispute Resolution use only)

JUN-20-2005  13:18                                                                P.11

NASD Dispute Resolution
Arbitration No. 04-03793
Award    Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.          –      Public Arbitrator, Presiding Chairperson
Douglas R. Gray                     –      Public Arbitrator
Patrick W. McKeon, Esq.             –      Non-Public Arbitrator

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law
and Rules, that I am the individual described herein and who executed this instrument which is
my award.

_____                    _____
Arthur J. Giacomarra, Esq.                       Signature Date
Public Arbitrator, Presiding Chairperson

_____                    _____6-14-05_____
Douglas R. Gray                                  Signature Date
Public Arbitrator

_____                    _____
Patrick W. McKeon, Esq.                          Signature Date
Non-Public Arbitrator

_____June 17, 2005_____
Date of Service  (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

| Arthur J. Giacomarra, Esq. | – | Public Arbitrator, Presiding Chairperson |
| Douglas R. Gray | – | Public Arbitrator |
| Patrick W. McKeon, Esq. | – | Non-Public Arbitrator |

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.


_____

Arthur J. Giacomarra, Esq.
Public Arbitrator, Presiding Chairperson


_____                          Signature Date

Douglas R. Gray
Public Arbitrator


_Patrick W. McKeon_                               _6-17-05_
Patrick W. McKeon, Esq.                           Signature Date
Non-Public Arbitrator


## June 17, 2005

Date of Service  (For NASD Dispute Resolution use only)

JUN-20-2005  13:16                                                    P.04

# Award
## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Kashner Davidson Securities Corporation (Claimant) v. Steven Mscisz, Mark Mscisz, and Lynda Mscisz (Respondents) v. Victor Kashner, Matthew Meister, and Timothy Varchetto (Third-Party Respondents)

<u>Case Number</u>: 04-03793                    <u>Hearing Site</u>: Boston, Massachusetts

---

Nature of the Dispute:  Member vs. Customers (Initial Claim).
                        Customers vs. Member (Counterclaim)
                        Customers vs. Associated Persons (Third-Party Claims).

## REPRESENTATION OF PARTIES

Claimant Kashner Davidson Securities Corporation ("KDSC") hereinafter referred to as "Claimant" and Third-Party Respondents Victor Kashner ("V. Kashner"), Matthew Meister ("M. Meister"), and Timothy Varchetto ("T. Varchetto") hereinafter collectively referred to as "Third-Party Respondents": Howard M. Smith, Esq., Newman & Smith, Newton, MA. Previously represented by: Marc J. Ross, Esq., Sichenzia Ross Friedman Ference, LLP, New York, NY.

Respondents Steven Mscisz ("S. Mscisz"), Mark Mscisz ("M. Mscisz"), and Lynda Mscisz ("L. Mscisz") hereinafter collectively referred to as "Respondents": William P. Corbett, Jr., Esq., The Corbett Law Firm, Lynn, MA.

## CASE INFORMATION

Statement of Claim filed on or about: May 26, 2004.
Claimant signed the Uniform Submission Agreement: May 24, 2004.

Joint Statement of Answer, Affirmative Defenses, Counterclaims and Third-Party Claims filed by Respondents on or about: August 26, 2004.
Respondent S. Mscisz signed the Uniform Submission Agreement: August 26, 2004.
Respondent M. Mscisz signed the Uniform Submission Agreement: August 26, 2004.
Respondent L. Mscisz signed the Uniform Submission Agreement: August 26, 2004.

Joint Reply and Answer filed by Third-Party Respondents on or about: September 9, 2004.
Third-Party Respondent Kashner signed the Uniform Submission Agreement: October 1, 2004.
Third-Party Respondent Meister did not sign the Uniform Submission Agreement.
Third-Party Respondent Varchetto did not sign the Uniform Submission Agreement.

NASD Dispute Resolution
Arbitration No. 04-03793
<u>Award   Page 2 of 6</u>

## CASE SUMMARY

Claimant asserted the following causes of action: breach of contract; money lent; open book account; and fraud/fraud in the inducement. The causes of action relate to unspecified securities.

Unless specifically admitted in its Answer, Respondents denied the allegations made in the Statement of Claim and asserted various affirmative defenses. In its Counterclaims and Third-Party Claims, Claimant asserted the following causes of action: violations of Sections 7, 9, and 10(b) of the Securities Act of 1934; violations of the Florida Securities Transactions Act; violations of the Massachusetts Uniform Securities Act; violations of NASD Business Conduct Standards; common law fraud; unjust enrichment; conversion; breach of contract; violation of the Racketeer Influenced and Corrupt Organization Act; abuse of process; violation of the Massachusetts Consumer Protection Act and the Florida Consumer Protection Act.

Unless specifically admitted in their Reply and Answer of Third-Party Claims, Claimant and Third-Party Respondents denied the allegations made in the Counterclaims and Third-Party Claims and asserted various affirmative defenses.

## RELIEF REQUESTED

Claimant requested compensatory damages in the amount of $173,634.22; compensatory damages in the amount of $176,923.98; interest; costs of collection, including NASD filing and hearing fees and attorneys; fees; and such other and further relief as the Panel deems just, fair, and equitable.

Respondents requested that the Panel dismiss Claimant's Statement of Claim, with prejudice; on their Counterclaims and Third-Party Claims, unspecified compensatory damages in threefold; prejudgment interest; attorneys' fees; costs; an order that Claimant disgorge and make full restitution to Respondents; other appropriate equitable relief; and such other and further relief as the Panel deems necessary and just.

Third-Party Respondents requested that the Panel award Claimant the relief sought in the Statement of Claim; that the Panel deny and dismiss each and every claim asserted in the Counterclaims and Third-Party Claims; that the Panel issue sanctions against Respondents; and such other and further relief as the Panel deems just, equitable, and proper.

## OTHER ISSUES CONSIDERED AND DECIDED

Upon review of the file and the representations made on behalf of the Claimant, the undersigned arbitrators (the "Panel") determined that Respondent L. Mscicz has been properly served with the Statement of Claim and received due notice of the hearing, and that arbitration of the matter would proceed without said Respondent present, in accordance with the NASD Code of Arbitration Procedure (the "Code").

JUN-20-2005  13:17                                                                      P.07

NASD Dispute Resolution
Arbitration No. 04-03793
Award    Page 3 of 6

Third-Party Respondents Meister and Varchetto did not file with NASD Dispute Resolution properly executed Uniform Submission Agreements but are required to submit to arbitration pursuant to the Code and are bound by the determination of the Panel on all issues submitted.

The Panel previously ruled that the Counterclaims and Third-Party Claims filed by Respondents are dismissed, with prejudice.

At the hearing, Claimant made an oral motion to conform the pleadings to the proof. After due consideration, the Panel determined to grant the motion.

Respondents made a motion for a stenographic transcription of the hearing. After due consideration, the Panel granted the motion and ordered the following: "Respondents are to provide NASD with a copy of the transcript. Claimant is to obtain the transcript at its own cost; Respondents do not have to pay for Claimant's transcript".

Respondents made a motion to dismiss for failure to make a prima facie case. After due consideration, the Panel denied the motion.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondents are jointly and severally liable for and shall pay Claimant compensatory damages in the amount of $421,000.00, inclusive of attorneys' fees and costs according to the margin agreement, plus interest at the WSJ prime rate from May 18, 2005 until the date of payment of the award.

2. Respondents' Counterclaims and Third-Party Claims are dismissed.

2. Any and all relief not specifically addressed herein is denied.

## FEES

Pursuant to the Code, the following fees are assessed:

**Filing Fees**
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:
      Initial claim filing fee                                      = $1,000.00
      Third-Party Claim filing fee                           = $  250.00

**Member Fees**

NASD Dispute Resolution
Arbitration No. 04-03793
Award  Page 4 of 6

Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated persons at the time of the events giving rise to the dispute. Accordingly, Kashner Davidson Securities Corp. is a party.

| | |
|---|---|
| Member surcharge | = $1,700.00 |
| Pre-hearing process fee | = $   750.00 |
| Hearing process fee | = $2,750.00 |

## Adjournment Fees
Adjournments granted during these proceedings for which fees were assessed:

| | |
|---|---|
| March 2-4, 2005, adjournment by Respondents | = Waived |

## Forum Fees and Assessments
The Panel has assessed forum fees for each session conducted. A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Tow (2) Pre-hearing sessions with a single arbitrator @ $450.00 | | | = $   900.00 |
| Pre-hearing conferences: | January 20, 2005 | 1 session | |
| | January 31, 2005 | 1 session | |
| | | | |
| Three (3) Pre-hearing sessions with Panel @ $1,000.00* | | | = $3,000.00 |
| Pre-hearing conferences: | November 8, 2004 | 1 session | |
| | November 16, 2004 | 1 session | |
| | March 2, 2005 | 1 session | |
| | | | |
| Three (3) Hearing sessions @ $1,000.00 | | | = $3,000.00 |
| Hearing Dates: | May 17, 2005 | 2 sessions | |
| | May 18, 2005 | 1 session | |
| **Total Forum Fees** | | | **= $6,900.00** |

*In accordance with Rule 10332(c) of the Code of Arbitration Procedure, the forum fees assessed against the Respondents are based on the Respondents' hearing session deposit.*

1. The Panel has assessed $6,900.00 of the forum fees jointly and severally against Respondents.

## Fee Summary

1. Claimant is solely liable for:

| | |
|---|---|
| Initial Filing Fee | = $1,000.00 |
| Member Fees | = $5,200.00 |
| Total Fees | = $6,200.00 |
| Less payments | = $7,325.00 |
| Refund Due Claimants | = $1,125.00 |

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 5 of 6

2.  Respondents are jointly and severally liable for:

| | |
|---|---|
| Third-Party Claim Filing Fee | = $  250.00 |
| Forum Fees | = $6,900.00 |
| Total Fees | = $7,150.00 |
| Less payments | = $1,250.00 |
| Balance Due NASD Dispute Resolution | = $5,900.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.      -      Public Arbitrator, Presiding Chairperson
Douglas R. Gray                 -      Public Arbitrator
Patrick W. McKeon, Esq.         -      Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.

Arthur J. Giacomarra, Esq.                              Signature Date
Public Arbitrator, Presiding Chairperson

Douglas R. Gray                                         Signature Date
Public Arbitrator

Patrick W. McKeon, Esq.                                 Signature Date
Non-Public Arbitrator

June 17, 2005

Date of Service  (For NASD Dispute Resolution use only)

JUN-20-2005  13:18                                              P. 11

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.          -     Public Arbitrator, Presiding Chairperson
Douglas R. Gray                     -     Public Arbitrator
Patrick W. McKeon, Esq.             -     Non-Public Arbitrator

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law
and Rules, that I am the individual described herein and who executed this instrument which is
my award.


_____                    _____
Arthur J. Giacomarra, Esq.                 Signature Date
Public Arbitrator, Presiding Chairperson


_____                    **6-14-05**
Douglas R. Gray                            Signature Date
Public Arbitrator


_____                    _____
Patrick W. McKeon, Esq.                    Signature Date
Non-Public Arbitrator


June 17, 2005
Date of Service (For NASD Dispute Resolution use only)

JUN-20-2005  13:18                                                                                P.12

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.        -        Public Arbitrator, Presiding Chairperson
Douglas R. Gray                   -        Public Arbitrator
Patrick W. McKeon, Esq.           -        Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law
and Rules, that I am the individual described herein and who executed this instrument which is
my award.


_____                              _____
Arthur J. Giacomarra, Esq.                           Signature Date
Public Arbitrator, Presiding Chairperson


_____                              _____
Douglas R. Gray                                      Signature Date
Public Arbitrator


*Patrick W. McKeon*                                  *6-17-05*
Patrick W. McKeon, Esq.                              Signature Date
Non-Public Arbitrator


*June 17, 2005*
Date of Service  (For NASD Dispute Resolution use only)