| CIVIL ACTION COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts Superior Court Department |
|---|---|---|
| | | County: SUFFOLK |

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| KASHNER DAVIDSON SECURITIES CORP. | STEVEN MSCISZ, MARK MSCISZ, LYNDA MSCISZ |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE. HOWARD SMITH / NEWMAN & SMITH ONE GATEWAY CENTER # 350 NEWTON, MA 02458 Board of Bar Overseers number: 468880 | ATTORNEY (if known) |

## Origin code and track designation

Place an x in one box only:

[X] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| E05 | CONFIRMATION OF ARBITRATION AWARD (X) | ( ) Yes | (X) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . .

Subtotal $

B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . $
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . $
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . $
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . $
F. Other documented items of damages (describe)

$ . . . . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$ . . . . . . . . . .

TOTAL $ . . . . . . . . . . .

SUFFOLK SUPERIOR COURT CIVIL CLERK'S OFFICE 2005 JUN 22 MICHAEL JOSEPH DONOVAN CLERK/MAGISTRATE

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

PLAINTIFF REQUESTS PER MGL c. 251 § 11
CONFIRMATION OF ARBITRATION AWARD
* plus interest

TOTAL $ 421,000.00 *

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT   N/A

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 6/22/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON

JULY 12, 2005 THAT THE

FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

## CIVIL ACTION COVER SHEET
### INSTRUCTIONS

### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

| CONTRACT | | | REAL PROPERTY | | | MISCELLANEOUS | | |
|---|---|---|---|---|---|---|---|---|
| A01 | Services, labor and materials | (F) | C01 | Land taking (eminent domain) | (F) | E02 | Appeal from administrative | (X) |
| A02 | Goods sold and delivered | (F) | C02 | Zoning Appeal, G.L. c.40A | (F) | | Agency G.L. c.30A | |
| A03 | Commercial Paper | (F) | C03 | Dispute concerning title | (F) | E03 | Action against Commonwealth | |
| A08 | Sale or lease of real estate | (F) | C04 | Foreclosure of mortgage | (X) | | Municipality, G.L. c.258 | (A) |
| A12 | Construction Dispute | (A) | C05 | Condominium lien and charges | (X) | E05 | All Arbitration | (X) |
| A99 | Other (Specify) | (F) | C99 | Other (Specify) | (F) | E07 | c.112,s.12S (Mary Moe) | (X) |
| | TORT | | | | | E08 | Appointment of Receiver | (X) |
| B03 | Motor Vehicle negligence- | | | EQUITABLE REMEDIES | | E09 | General contractor bond. | |
| | personal injury/property damage | (F) | D01 | Specific performance of contract | (A) | | G.L. c.149,s.29,29a | (A) |
| B04 | Other negligence-personal | | D02 | Reach and Apply | (F) | E11 | Workman's Compensation | (X) |
| | injury/property damage | (F) | D06 | Contribution or Indemnification | (F) | E14 | Chapter 123A Petition-SDP | (X) |
| B05 | Products Liability | (A) | D07 | Imposition of Trust | (A) | E15 | Abuse Petition, G.L.c.209A | (X) |
| B06 | Malpractice-medical | (A) | D08 | Minority Stockholder's Suit | (A) | E16 | Auto Surcharge Appeal | (X) |
| B07 | Malpractice-other(Specify) | (A) | D10 | Accounting | (A) | E17 | Civil Rights Act, G.L.c.12,s.11H | (A) |
| B08 | Wrongful death,G.L.c.229,s2A | (A) | D12 | Dissolution of Partnership | (F) | E18 | Foreign Discovery proceeding | (X) |
| B15 | Defamation (Libel-Slander) | (A) | D13 | Declaratory Judgment G.L.c.231A | (A) | E96 | Prisoner Cases | (F) |
| B19 | Asbestos | (A) | D99 | Other (Specify) | (F) | E97 | Prisoner Habeas Corpus | (X) |
| B20 | Personal Injury-Slip&Fall | (F) | | | | E99 | Other (Specify) | (X) |
| B21 | Environmental | (A) | | | | | | |
| B22 | Employment Discrimination | (F) | | | | | | |
| B99 | Other (Specify) | (F) | | | | | | |

### TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | ☒ Yes ☐ No |

### SUPERIOR COURT RULE 29

**DUTY OF THE PLAINTIFF.** The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).

**DUTY OF THE DEFENDANT.** Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

### A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT, BUFF COLOR PAPER.

### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
### MAY RESULT IN DISMISSAL OF THIS ACTION.

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss

Superior Court Department
Civil No. :

05-2543 &

KASHNER DAVIDSON SECURITIES CORP.,
Plaintiff/Applicant,

v.

STEVEN MSCISZ, MARK MSCISZ, and
LYNDA MSCISZ,
Defendants/Respondents.

**PLAINTIFF'S COMPLAINT AND
APPLICATION TO CONFIRM AN
ARBITRATION AWARD AND ENTRY
OF JUDGMENT**

Applicant Kashner Davison Securities Corp., by its undersigned attorneys, as and

for its Complaint and Application to confirm an arbitration award and for entry of

judgment, set forth and allege as follows:

1.      Applicant Kashner Davidson Securities Corp. ("KDSC") is a corporation

organized under the laws of the State of Florida with its principal place of business in

Sarasota, Florida.

2.      Respondents Steven Mscisz, Mark Mscisz and Lynda Mscisz (collectively,

"Respondents") are residents of the State of Massachusetts.

3.      In or about December 2003, Respondents opened retail brokerage

accounts with KDSC pursuant to written customer agreements, which were updated in

February 2004 to add margin privileges to Respondents' brokerage accounts (hereinafter

the "Accounts").  The customer agreements governing the Accounts contained an

express, unambiguous written agreement to submit any and all controversies between KDSC and Respondents to arbitration before an arbitration panel convened by the National Association of Securities Dealers ("NASD"). (A true and correct copies of the relevant arbitration agreements are annexed hereto as Exhibit 1.)

4.      Thereafter, a controversy arose out of the Accounts, and subsequently, on or about May 26, 2004, KDSC filed a Statement of Claim with the NASD requesting arbitration of its dispute with Respondents.

5.      On or about August 26, 2004, Respondents filed their Answer, Counterclaims against KDSC and Third-Party Claims against non-parties Victor Kashner, Matthew Meister and Timothy Varchetto with the NASD, as well as submission agreements, submitting the dispute with KDSC to arbitration before the NASD.

6.      On May 17 and 18, 2005, the appointed arbitrators held a hearing in Boston, Massachusetts, at which time the parties presented their witnesses and evidence, and the parties submitted the controversy for a decision of the arbitration under the rules of the NASD.

7.      On June 17, 2005, the Arbitrators issued their award (the "Award"). (A true and correct copy of the Award is annexed hereto as Exhibit 2.)

8.      Pursuant to the Award, the Arbitrators issued an award in favor of KDSC and against Respondents Steven Mscisz, Mark Mscisz and Lynda Mscisz, jointly and severally, in the amount of $421,000.00 in compensatory damages, together with interest thereon from May 18, 2005 until the date of the payment of the Award at the prime rate published in the Wall Street Journal. (See Exhibit 2 at p. 3.)

9. In addition, as part of the Award, the Arbitrators dismissed the Counterclaim and Third-Party Claims with prejudice. (See id.)

**WHEREFORE**, pursuant to General Laws Chapter 251, Section 11, Applicant KDSC moves this Court to: i) accept and confirm the Award issuing an award in favor of KDSC against Steven Mscisz, Mark Mscisz and Lynda Mscisz; ii) enter judgment in favor of KDSC and against Respondents Steven Mscisz, Mark Mscisz and Lynda Mscisz, jointly and severally in the amount of $421,000.00, together with interest thereon; and iii) such other and further relief as the Court deems just, equitable, and proper.

I HEREBY ATTEST AND CERTIFY ON
JULY 12, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

Respectfully submitted by:

Howard M. Smith
NEWMAN & SMITH
One Gateway Center
Newton, Massachusetts 02458
(617) 965-9900
BBO# 468880

Attorneys for Applicants Kashner Davidson
Securities Corporation

3

CLIENT ACCOUNT AGREEMENT

TO: SAL Financial Services, Inc. ("SAL"), Sterne, Agee & Leach, Inc. ("Sterne Agee") and its authorized agents.

In consideration of SAL opening a securities account ("Securities Account"), on my behalf, I agree as follows:

1. **Meaning of Words in this Agreement.** The words "I," "me," "my," and "us," refer to the person(s) who signed this Agreement. The words "you" and "your" refer to SAL or its authorized agents. "My broker" refers to the broker dealer introducing my account to SAL.

2. **Authority and Ownership.** I have the requisite legal capacity, am authorized to enter into this Agreement and have obtained and will provide you with all necessary authorizations from third parties to open accounts and effect securities transactions under this agreement. I will be the owner of all securities purchased, held, and sold by me through you, or will otherwise have the authority to purchase, hold or sell such securities.

3. **Clearing Broker Agreement.** I understand that my broker dealer entered into an agreement with SAL, who entered into an agreement with Sterne Agee to execute and clear securities transactions presented to SAL in my Securities Account. I further understand and agree that Sterne Agee will carry and maintain my Securities Account (as defined by SEC Securities Investors Protection Act), under the terms of the fully disclosed clearing agreement, except as may otherwise be provided in this agreement. I further understand that my broker dealer is not an agent of, or supervised by SAL. I understand that SAL has no control relationship over my broker dealer and is not responsible for the suitability or appropriateness of investments made by me or the genuineness of any transaction made on my behalf by my broker dealer.

4. **Appointment of broker dealer as Agent.** I appoint my broker as my agent for the purpose of carrying out my directions with respect to the purchase, sale or liquidation of securities in accordance with the terms and conditions of this Agreement, and I assume all risks with respect to the purchase, sale or liquidation of securities. All transactions will be executed only on my order or on the order of my authorized delegate except as otherwise provided in paragraph 6 below. To carry out your duties, you are authorized to appoint and use sub-agents. You and your sub-agents are authorized to open and close brokerage accounts, maintain customer records, hold securities in bearer, registered or book entry form, place and withdraw orders, provide information to third parties, including your affiliates, and take such other steps as are reasonable in connection with your duties.

5. **Settlement.** I agree to have collected funds available in the settlement Account, or to deliver to you sufficient collected funds to cover the amounts due on purchases of securities by the settlement date for payment for all securities purchased by my Securities Account (including commissions and fees) and that you may refuse to execute an order, or may cancel an order, if such funds are not available. You may charge my cash account interest on any past settlement date debits. I agree to deliver all properly endorsed securities which I have in my possession in good form prior to settlement of the sell or liquidation order, and such securities must be received by SAL prior to the settlement date. If I have established a Settlement Account, you shall deposit proceeds of any sale or liquidation of securities into the Settlement Account; otherwise such proceeds shall be distributed to me by check, or swept to my money market fund, if established.

6. **Indebtedness to SAL and Security Interest.** I authorize you to take any steps which you, in your sole discretion, determine to be necessary to complete or cancel a securities transaction or to minimize your losses, if any. I shall, at all times, be liable for the payment upon demand of any debit balance, and the interest thereon, or other obligations owing in my Securities Account or other account which I have with you. As security for the repayment of any and all present or future indebtedness owed to you by me under this agreement or otherwise, I grant you a continuing security interest and lien in, and a right of set-off with respect to all securities or other property that are, now or in the future, held, carried, or maintained for any purpose in or through my Securities Account to the extent of my interest, any present or future brokerage account with you in which I have an interest. I agree to reimburse you for all cost (including attorneys' fees), losses, or liabilities incurred by you in connection with the collection of any debit balance or unpaid deficiency in my Securities Account.

7. **Force Majeure.** You shall not be liable for loss or delay caused directly or indirectly by war, natural disasters, government restrictions, exchange or market rulings or other conditions beyond the control of SAL.

8. **Recording Conversations.** I understand and agree that, for our mutual protection, my broker and Sterne Agee may record any of our telephone conversations without further notice.

9. **Credit Investigation.** You may exchange credit information about me with others. You may request a credit report on me (1) if the purpose is to establish or maintain my margin and/or option account, (2) if I have chosen to settle transactions by check, (3) to comply with government agency or court orders, or (4) if, you determine it prudent for customary risk management procedures. If I ask, you will tell me the name and address of the consumer reporting agency that furnished the report. You may request a new credit report at any time without notice to me.

10. **Relationship with other Banks and Brokers.** From commissions and/or fees charged to my securities account for services rendered, I understand and agree that you may share, remit or otherwise pay banks or broker-dealers for their services in handling transactions for my account. In addition, I also understand and agree that other banks or broker-dealers, including Sterne Agee, may share, or otherwise remit commissions, fees and sales loads, including markups and markdowns on principal trades, to my broker in connection with transactions for my Securities Account. I understand and agree that brokers or dealers may refuse to accept or process any transactions that I may wish to effect.

11. **Margin Loans and Options.** *This paragraph is effective only when an account is maintained as a General Margin account as specified in Regulation T, as amended, issued by the Board of Governors of the Federal Reserve System.* (a) Securities purchased on margin or deposited against monies owed or borrowed may be maintained by SAL as collateral for my indebtedness. All property, now and hereafter held by SAL, or carried for the undersigned (either individually or jointly with

others), or deposited to secure the same, may from time to time and without notice to me, be carried in SAL general loans and may be pledged, repledged and hypothecated, separately or in common with any other property, for the sum due to SAL thereon or for a greater sum and without retaining in SAL possession or control for delivery a like amount of similar property. (b) The undersigned will at all times maintain margins for said accounts, as required by SAL from time to time. No arrangement conflicting with the firms usual requirements for margin shall be binding upon the firm or have any effect unless expressly agreed to in writing and signed for SAL by the CFO, Director of Clearing, or Compliance Officer. (c) Debit balances of the accounts of the undersigned shall be charged interest, in accordance with SAL usual custom, and with any increases in rates caused by market conditions and with such other charges as you may make to cover your facilities and extra services. _The undersigned acknowledges having received from you a statement setting forth the details of the conditions under which interest will be charged, the method of computing such interest, and the conditions under which additional collateral may be required._ (d) At any time and from time to time, in your discretion, you may without notice to the undersigned apply or transfer any or all monies and other property of the undersigned interchangeably between any accounts of the undersigned in order to avoid a margin call. (e) Until you receive written notice of revocation from the undersigned, you are hereby authorized to lend or hypothecate, to yourselves as brokers or to others, any securities held by SAL as collateral for the account of, or under the control of, the undersigned. I will not request that any transactions in options be effected for my account unless such request is in connection with my brokers options compliance program.

12. **Applicable Laws and Regulations.** All transactions shall be subject to rules, regulations, customs and usages of the exchange, market or clearing house where executed, and to all applicable federal and state laws and regulations. I will not buy, sell or liquidate any securities of a corporation of which I am an affiliate, or sell or liquidate any restricted securities, except in compliance with applicable laws and regulations and with notice, to you, that the securities are restricted.

13. **Fees and Charges.** I agree to the fees and charges indicated on my brokers fee schedule and that of SAL which I have received. I understand and agree that I will be charged an annual administration fee if I hold securities in my Securities Account and no trading activity occurs during any calendar year. You may debit my Securities Account for any fees or charges, which I incur, or any out-of-pocket expenses you may incur on my behalf, if applicable. I understand that you may change the fee schedule from time to time and I agree to be bound by such changed fee schedule.

14. **Certain Mutual Fund and UIT Transactions.** I understand and agree that sales loads or sales charges may be imposed in connection with purchases of shares or interests in mutual funds and unit investment trusts ("UITs") or other registered investment companies, that may be paid to my broker through SAL.

15. **Joint Accounts.** If this is a joint account, we understand and agree that you may follow the instructions of either of us without obtaining the consent of the other. Each of us will be fully liable for any amounts due you under this Agreement. Upon the death of either of us, you will treat the property in the account as belonging to the joint tenant with right of survivorship unless we have expressly elected to own the account as tenants in common or other registration, but you may first require the production of necessary legal documents. The liability regarding this account shall be joint and several.

16. **Amendments and Termination.** You may amend this Agreement at any time, in any respect, effective upon written notice to me. You may terminate any or all services contemplated hereunder at any time, effective upon written notice to me. I may close my Securities Account at any time by giving written notice to my broker or SAL. Closing my Securities Account or terminating services under this Agreement will not affect any rights and obligations incurred prior to such closure or termination.

17. **Notice of Changed Name, Address.** I agree to promptly notify you, or my broker dealer, in writing of any change to my name or address.

18. **Governing Laws.** This Agreement shall be governed by the laws of the State of Alabama.

19. **ARBITRATION DISCLOSURES**

   - ARBITRATION IS FINAL AND BINDING TO THE PARTIES.

   - THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

   - PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

   - THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OR RULING BY THE ARBITRATORS IS STRICTLY LIMITED.

   - THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILATED WITH THE SECURITIES INDUSTRY.

   - NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT, AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL; (i) THE CLASS CERTIFICATION IS DENIED; OR (ii) THE CLASS IS DECERTIFIED; OR (iii) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT. SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

## KASHNER DAVIDSON SECURITIES CORP
## UPDATED CLIENT AGREEMENT
## ADDING MARGIN TO CLIENT ACCOUNT

*Coded*

ARBITRATION: I EXPRESSLY ACKNOWLEDGE AND AGREE THAT ALL CLAIMS, DISPUTES AND OTHER MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE SUBMITTED TO THE ARBITRATION BOARD OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. (NASD), UNLESS OTHERWISE PROVIDED BY LAW. THIS EXPRESS AGREEMENT TO SUBMIT TO BE BOUND BY ARBITRATION INCLUDES, BUT IS NOT LIMITED TO, DISPUTES ARISING UNDER THE SECURITIES ACT OF 1933, THE EXCHANGE ACT OF 1934, CLAIMS ARISING UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), STATE OR COMMON LAW FRAUD AND SECURITIES STATUTES, AS WELL AS OTHERS SPECIFICALLY ENFORCEABLE UNDER THE PREVAILING ARBITRATION LAW AND PROCEDURES. THE AWARD RENDERED BY THE ARBITRATORS SHALL BE FINAL, AND JUDGEMENT MAY BE ENTERED UPON IT IN ANY COURT HAVING JURISDICTION THEREOF. COUNSEL CAN ADVISE ME ON HOW THIS PROVISION MAY AFFECT ME.

20. Inactive Accounts. I understand and agree that if I do not place a securities trade during any eighteen (18) month period, and there are no securities held in my Securities Account, my Securities Account may be automatically removed from your system. I will thereafter be required to re-establish a Securities Account prior to placing any further securities trades.

21. Effectiveness. I understand that this Agreement is effective upon receipt by you and evidenced by a notation on the internal records of SAL and Sterne Agee.

### NOTICE TO STERNE, AGEE & LEACH, INC.

This is to advise you that I have instructed my broker dealer to establish, on my behalf, and as my agent, a Securities Account with you. I have appointed my broker dealer as my exclusive agent to act for and on my behalf with respect to all matters regarding my Securities Account with you, including the placing of purchase, sales and liquidation orders and delivery of margin and option instructions if authorized by my Securities Account. You may look solely to my broker dealer and not to me with respect to any such orders or instructions. I understand that you may consider by delivering to my broker dealer confirmations and all other written notices, including margin maintenance calls, if applicable, to have been delivered to me and you are entitled to rely on my broker dealer, to forward the communications to me. I agree to reimburse you for any losses, costs or expenses in connection with the delivery or receipt of any of these communications, if you have acted in accordance with these instructions. These instructions are effective until I send you and/or my broker dealer written notice to the contrary. I understand and agree that you may share, pay or otherwise remit commissions, fees or sales loads, including markups and markdowns on principal trades, to my broker dealer in connection with transactions for my account.

NOTE TO CLIENT:
IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.

Notice: This agreement contains a pre-dispute arbitration clause, which is located at paragraph 19.

Account Numb: REDACTED

Client's Signature X _____

Joint Account Holder Signature X _____

AUTHORIZED BY _____

Name and Address Disclosure

( ) No, I do not want my name, address and securities positions disclosed to all the companies in which I own securities that are being held for me in that account pursuant to SEC rule 14b-1(c).

DATE MARGIN ACCOUNT ESTABLISHED

2/12/04

'04 FEB 13 AM 11:42

**Taxpayer ID Certification**

A. Under the penalties of perjury, I certify that (check all that apply):
- I am a U.S. Person (including a U.S. Resident Alien).
- The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.
- [ ] The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am subject to backup withholding.

REDACTED

REDACTED

X _____    Date 2/12/04

Signature

X _____    Date 2/12/04

Signature (Joint Account Holder)

Social Security Number or Taxpayer ID

## DISCLOSURE STATEMENT OF CREDIT TERMS AND POLICIES
### Effective May 1, 2002

The following Disclosure Statement of Credit Terms and Policies is required by the Securities and Exchange Commission and is part of your Client Agreement. Should you have any questions regarding this Disclosure Statement, please contact your Investment Consultant.

### INTEREST CHARGE

Margin Transactions normally involve the extension of credit made by Sterne, Agee & Leach, Inc., (Sterne Agee) when you deposit only a portion of the moneys or the collateral required in a transaction. Withdrawals of cash from your account, or an increase in the market value of a security sold short (or short against the box) may create or add to your debit balance, for which interest and any other applicable charges will be assessed to your account.

Your account will be charged interest on any extension of credit to you by Sterne Agee in connection with the purchase, sale or carrying of any securities. The interest charge will be based on your adjusted debit balance multiplied by the daily margin interest rate. You will receive a statement of your account, at least quarterly, showing the adjusted daily debit balance, interest charges, and the applicable interest rates.

Interest will be charged to you if we approve prepayment of the proceeds from sales prior to settlement date. Interest may also be charged on debit balances in Cash accounts due to a late payment.

### DAILY MARGIN INTEREST RATE

The "daily margin interest rate" is based on a 360-day year and is calculated by dividing the applicable margin interest rate by 360. The applicable margin interest rate is set at a percentage above Sterne Agee's Base Rate as shown in the following table.

| If the amount of your average adjusted daily debit balance is: | The interest rate charged is: |
| --- | --- |
| Over 100,000 | Base Rate + 0.50% |
| 75,000–99,999 | Base Rate + 1.00% |
| 50,000–74,999 | Base Rate + 1.25% |
| 25,000–49,999 | Base Rate + 1.50% |
| Under 25,000 | Base Rate + 1.75% |

Sterne Agee sets the Base Rate at its discretion with consideration to commercially recognized interest rates relating to the extension of credit, as well as general market conditions. The margin interest rate may be changed without notice to you to reflect changes in the Base Rate. If your interest rate is increased for any other reason, Sterne Agee will notify you in writing at least 30 days prior to the date of the increase. Please contact your Investment Consultant for the current Base Rate.

The term "adjusted daily debit balance," means the daily debit balance less applicable free credits, if any. The daily debit balance is the unpaid amount loaned to you as of the close of the business day. Debits and credits resulting from purchases and sales are posted to your account as of the settlement date. A credit balance in your Cash account will be applied as a reduction of a debit balance in your Margin and/or Short Account. Should you deposit a check or other item that is later returned unpaid, your account may be adjusted to reflect additional interest or other charges that apply.

### INITIAL MARGIN AND ACCOUNT MAINTENANCE REQUIREMENTS

The Federal Reserve Board and various self-regulatory organizations determine margin loan rules and regulations. The maximum amount currently available to you is 50% of the value of marginable securities purchased or held in your account ("initial margin"). The maximum loan available for debt securities varies with the type of security. Your minimum account equity must be $2,000.00, or other amount as may be required by applicable rules, regulations, or Sterne Agee house policies. Initial margin and margin maintenance requirements may change without notice. Equity securities with a market value of less than $5.00 per share are not marginable.

A margin call (notification to deposit additional collateral) may be issued if your account equity drops below the margin maintenance requirement. Normally, additional collateral will be required if your account equity declines below 30% depending upon such factors as Sterne Agee, in its sole discretion, may deem material, including but not limited to the type, price, quantities and marketability of securities, or combination thereof, held in your account. If the market value of a security falls below $3.00 per share, the security will not be assigned a value as collateral to secure your margin obligations.

## SHORT OPTION POSITIONS

Uncovered option contracts are subject to both initial margin and margin maintenance requirements. These positions involve higher levels of risk and more stringent requirements may be imposed. Please contact your Investment Consultant for details.

## SHORT SALE TRANSACTIONS

Any credit resulting from a short (including a short sale against the box) will not reduce your debit balance on which interest is charged because the securities sold short must be borrowed to make delivery to the purchaser and an amount equal to the proceeds of the short sale must be deposited with the lender. You are liable for all dividends and interest paid on securities borrowed for the purpose of short sales.

The value of securities held short in your account will be "marked to the market" daily. Any resulting increase or decrease in the market value will be included in your adjusted daily debit balance.

Sterne Agee may at its discretion, for any reason and without notice, immediately cover any short security position by purchasing securities for your account.

## LIENS AND LIQUIDATIONS

All monies or securities held by Sterne Agee at any time in any of your accounts (individual, joint or otherwise) for any purposes shall be collateral subject to a general lien and security interest for the discharge of all your obligations to Sterne Agee.

Sterne Agee may also demand repayment of any loan balance in whole, or in part, at any time and for any reason. Additionally, Sterne Agee may require you to deposit additional collateral as security for your obligations.

## SIPC PROTECTION

Assets held in your Sterne, Agee & Leach, Inc. account for investment purposes are protected by combined SIPC and excess SIPC insurance coverage up to $25,000,000. SIPC protects your account for $500,000. Excess SIPC insurance covers all accounts for an additional $24,500,000. Claims of cash are limited to $100,000. Money Market fund shares are securities, not cash, and are protected up to the full $25,000,000 limit.

SIPC protection covers more than one account in which you have an interest provided you are acting in different capacities for each account. (For instance, coverage would apply if you had an individual account and a joint account with your spouse.) SIPC does not protect against a decline in market value of securities in your brokerage account.

Sterne, Agee may elect to pay interest on credit balances awaiting reinvestment at a rate determined by Sterne Agee and reserves the right to eliminate or otherwise change the rate or manner in which interest on credit balances is paid at any time without prior notice to you.

CLIENT ACCOUNT AGREEMENT

TO: SAL Financial Services, Inc. ("SAL"), Sterne, Agee & Leach, Inc. ("Sterne Agee) and its authorized agents.

In consideration of SAL opening a securities account ("Securities Account"), on my behalf, I agree as follows:

1.  **Meaning of Words in this Agreement.** The words "I," "me," "my," and "us," refer to the person(s) who signed this Agreement. The words "you" and "your" refer to SAL or its authorized agents. "My broker" refers to the broker dealer introducing my account to SAL.

2.  **Authority and Ownership.** I have the requisite legal capacity, am authorized to enter into this Agreement and have obtained and will provide you with all necessary authorizations from third parties to open accounts and affect securities transactions under this agreement. I will be the owner of all securities purchased, held, and sold by me through you, or will otherwise have the authority to purchase, hold or sell such securities.

3.  **Clearing Broker Agreement.** I understand that my broker dealer entered into an agreement with SAL, who entered into an agreement with Sterne Agee to execute and clear securities transactions presented to SAL in my Securities Account. I further understand and agree that Sterne Agee will carry and maintain my Securities Account (as defined by SEC Securities Investors Protection Act), under the terms of the fully disclosed clearing agreement, except as may otherwise be provided in this agreement. I further understand that my broker dealer is not an agent of, or supervised by SAL. I understand that SAL has no control relationship over my broker dealer and is not responsible for the suitability or appropriateness of investments made by me or the genuineness of any transaction made on my behalf by my broker dealer.

4.  **Appointment of broker dealer as Agent.** I appoint my broker as my agent for the purpose of carrying out my directions with respect to the purchase, sale or liquidation of securities in accordance with the terms and conditions of this Agreement, and I assume all risks with respect to the purchase, sale or liquidation of securities. All transactions will be executed only on my order or on the order of my authorized delegate except as otherwise provided in paragraph 6 below. To carry out your duties, you are authorized to appoint and use sub-agents. You and your sub-agents are authorized to open and close brokerage accounts, maintain customer records, hold securities in bearer, registered or book entry form, place and withdraw orders, provide information to third parties, including your affiliates, and take such other steps as are reasonable in connection with your duties.

5.  **Settlement.** I agree to have collected funds available in the settlement Account, or to deliver to you sufficient collected funds to cover the amounts due on purchases of securities by the settlement date for payment for all securities purchased by my Securities Account (including commissions and fees) and that you may refuse to execute an order, or may cancel an order, if such funds are not available. You may charge my cash account interest on any post settlement date debits. I agree to deliver all property endorsed securities which I have in my possession in good form prior to settlement of the sell or liquidation order, and such securities must be received by SAL prior to the settlement date. If I have established a Settlement Account, you shall deposit proceeds of any sale or liquidation of securities into the Settlement Account; otherwise such proceeds shall be distributed to me by check, or swept to my money market fund, if established.

6.  **Indebtedness to SAL and Security Interest.** I authorize you to take any steps which you, in your sole discretion, determine to be necessary to complete or cancel a securities transaction or to minimize your losses, if any. I shall, at all times, be liable for the payment upon demand of any debit balance, and the interest thereon, or other obligations owing in my Securities Account or other account which I have with you. As security for the repayment of any and all present or future indebtedness owed to you by me under this agreement or otherwise, I grant you a continuing security interest and lien in, and a right of set-off with respect to all securities or other property that are, now or in the future, held, carried, or maintained for any purpose in or through my Securities Account to the extent of my interest, any present or future brokerage account with you in which I have an interest. I agree to reimburse you for all cost (including attorneys' fees), losses, or liabilities incurred by you in connection with the collection of any debit balance or unpaid deficiency in my Securities Account.

7.  **Force Majeure.** You shall not be liable for loss or delay caused directly or indirectly by war, natural disasters, government restrictions, exchange or market rulings or other conditions beyond the control of SAL.

8.  **Recording Conversations.** I understand and agree that, for your mutual protection, my broker and Sterne Agee may record any of our telephone conversations without further notice.

9.  **Credit Investigation.** You may exchange credit information about me with others. You may request a credit report on me (1) if the purpose is to establish or maintain my margin and/or option account, (2) if I have chosen to settle transactions by check, (3) to comply with government agency or court orders, or (4) if, you determine it prudent for customary risk management procedures. If I ask, you will tell me the name and address of the consumer reporting agency that furnished the report. You may request a new credit report at any time without notice to me.

10. **Relationship with other Banks and Brokers.** From commissions and/or fees charged to my securities account for services rendered, I understand and agree that you may share, remit or otherwise pay banks or broker-dealers for their services in handling transactions for my account. In addition, I also understand and agree that other banks or broker-dealers, including Sterne Agee, may share, or otherwise remit commissions, fees and sales loads, including markups and markdowns on principal trades, to my broker in connection with transactions for my Securities Account. I understand and agree that brokers or dealers may refuse to accept or process any transactions that I may wish to affect.

11. **Margin Loans and Options.** *This paragraph is effective only when an account is maintained as a General Margin account as specified in Regulation T, as amended, issued by the Board of Governors of the Federal Reserve System.* (a) Securities purchased on margin or deposited against monies owed or borrowed may be maintained for my indebtedness. All property, now and hereafter held by SAL, or carried for the undersigned (either individually or jointly with

others), or deposited to secure the same, may from time to time and without notice to me, be carried in SAL general loans and may be pledged, repledged and hypothecated, separately or in common with any other property, for the sum due to SAL thereon or for a greater sum and without retaining in SAL possession or control for delivery a like amount of similar property. (b) The undersigned will at all times maintain margins for said accounts, as required by SAL from time to time. No arrangement conflicting with the firms usual requirements for margin shall be binding regarding the firm or have any affect unless expressly agreed to in writing and signed for SAL by the CFO, Director of Clearing, or Compliance Officer. (c) Debit balances of the accounts of the undersigned shall be charged interest, in accordance with SAL usual custom, and with any increase in rates caused by market conditions and with such other charges as you may make to cover your facilities and extra services. *The undersigned acknowledges having received from you a statement setting forth the details of the conditions under which interest will be charged, the method of computing such interest, and the conditions under which additional collateral may be required.* (d) At any time and from time to time, in your discretion, you may without notice to the undersigned apply or transfer any or all monies and other property of the undersigned interchangeably between any accounts of the undersigned in order to avoid a margin call. (e) Until you receive written notice of revocation from the undersigned, you are hereby authorized to lend or hypothecate, to yourselves as brokers or to others, any securities held by SAL as collateral for the account of, or under the control of, the undersigned. I will not request that any transactions in options be affected for my account unless such request is in connection with my brokers options compliance program.

12. **Applicable Laws and Regulations.** All transactions shall be subject to rules, regulations, customs and usages of the exchange, market or clearing house where executed, and to all applicable federal and state laws and regulations. I will not buy, sell or liquidate any securities of a corporation of which I am an affiliate, or sell or liquidate any restricted securities, except in compliance with applicable laws and regulations and with notice, to you, that the securities are restricted.

13. **Fees and Charges.** I agree to the fees and charges indicated on my brokers fee schedule and that of SAL which I have received. I understand and agree that I will be charged an annual administration fee if I hold securities in my Securities Account and no trading activity occurs during any calendar year. You may debit my Securities Account for any fees or charges, which I incur, or any out-of-pocket expenses you may incur on my behalf, if applicable. I understand that you may change the fee schedule from time to time and I agree to be bound by such changed fee schedule.

14. **Certain Mutual Fund and UIT Transactions.** I understand and agree that sales loads or sales charges may be imposed in connection with purchases of shares or interests in mutual funds and unit investment trusts ("UITs") or other registered investment companies, that may be paid to my broker through SAL.

15. **Joint Accounts.** If this is a joint account, we understand and agree that you may follow the instructions of either of us without obtaining the consent of the other. Each of us will be fully liable for any amounts due you under this Agreement. Upon the death of either of us, you will treat the property in the account as belonging to the joint tenant with right of survivorship unless we have expressly elected to own the account as tenants in common or other registration, but you may first require the production of necessary legal documents. The liability regarding this account shall be joint and several.

16. **Amendments and Termination.** You may amend this Agreement at any time, in any respect, effective upon written notice to me. You may terminate any or all services contemplated hereunder at any time, effective upon written notice to me. I may close my Securities Account at any time by giving written notice to my broker or SAL. Closing my Securities Account or terminating services under this Agreement will not affect any rights and obligations incurred prior to such closure or termination.

17. **Notice of Changed Name, Address.** I agree to promptly notify you, or my broker dealer, in writing of any change to my name or address.

18. **Governing Laws.** This Agreement shall be governed by the laws of the State of Alabama.

19. **ARBITRATION DISCLOSURES**

   - ARBITRATION IS FINAL AND BINDING TO THE PARTIES.

   - THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

   - PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

   - THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OR RULING BY THE ARBITRATORS IS STRICTLY LIMITED.

   - THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILATED WITH THE SECURITIES INDUSTRY.

   - NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT, AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL: (i) THE CLASS CERTIFICATION IS DENIED; OR (II) THE CLASS IS DECERTIFIED; OR (III) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT. SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

02/18/2004 11:08 FAX 978 887 2660 ☑001

KASHNER DAVIDSON SECURITIES CORP
UPDATED CLIENT AGREEMENT
ADDING MARGIN TO CLIENT ACCOUNT

**ARBITRATION:** I EXPRESSLY ACKNOWLEDGE AND AGREE THAT ALL CLAIMS, DISPUTES AND OTHER MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE SUBMITTED TO THE ARBITRATION BOARD OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. (NASD), UNLESS OTHERWISE PROVIDED BY LAW. THIS EXPRESS AGREEMENT TO SUBMIT TO BE BOUND BY ARBITRATION INCLUDES, BUT IS NOT LIMITED TO, DISPUTES ARISING UNDER THE SECURITIES ACT OF 1933, THE EXCHANGE ACT OF 1934, CLAIMS ARISING UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), STATE OR COMMON LAW FRAUD AND SECURITIES STATUTES, AS WELL AS OTHERS SPECIFICALLY ENFORCEABLE UNDER THE PREVAILING ARBITRATION LAW AND PROCEDURES. THE AWARD RENDERED BY THE ARBITRATORS SHALL BE FINAL, AND JUDGEMENT MAY BE ENTERED UPON IT IN ANY COURT HAVING JURISDICTION THEREOF. COUNSEL CAN ADVISE ME ON HOW THIS PROVISION MAY AFFECT ME.

20. Inactive Accounts. I understand and agree that if I do not place a securities trade during any eighteen (18) month period, and there are no securities held in my Securities Account, my Securities Account may be automatically removed from your system. I will thereafter be required to re-establish a Securities Account prior to placing any further securities trades.

21. Effectiveness. I understand that this Agreement is effective upon receipt by you and evidenced by a notation on the internal records of SAL and Sigma Agee.

NOTICE TO STERNE, AGEE & LEACH, INC.

This is to advise you that I have instructed my broker dealer to establish, on my behalf, and as my agent, a Securities Account with you. I have appointed my broker dealer as my exclusive agent to act for and on my behalf with respect to all matters regarding my Securities Account with you, including the placing of purchase, sales and liquidation orders and delivery of margin and option instructions if authorized by my Securities Account. You may look solely to my broker dealer confirmations and all other written notices, including margin maintenance calls, if applicable, to have been delivered to me and you are entitled to rely on my broker dealer, to forward the communications to me. I agree to reimburse you for any losses, costs or expenses in connection with the delivery or receipt of any of these communications. If you have acted in accordance with these instructions. These instructions are effective until I send you and/or my broker dealer written notice to the contrary. I understand and agree that you may share, pay or otherwise remit commissions, fees or sales loads, including markups and markdowns on principal trades, to my broker dealer in connection with transactions for my account.

NOTE TO CLIENT:
IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.

Notice: This agreement contains a pre-dispute arbitration clause, which is located at paragraph 19.

Account Number REDACTED 2265

Client's
Signature X _[signature]_

Joint Account Holder
Signature X _____

AUTHORIZED BY _____

Name and Address Disclosure

( ) No, I do not want my name, address and securities positions disclosed to all the companies in which I own securities that are being held for me in that account pursuant to SEC rule 14b-1(c).

DATE MARGIN ACCOUNT ESTABLISHED

2/18/04

**Taxpayer ID Certification**

A.    Under the penalties of perjury, I certify that (check all that apply):
     I am a U.S. Person (including a U.S. Resident Alien).
     The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.
C.    The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am subject to backup withholding.

REDACTED

REDACTED 2265

REDACTED 2543

Account Number

Signature X _[signature]_    Date 2/18/04

Social Security Number or Taxpayer ID

Signature (Joint Account Holder)    Date

Page 3 of 5
IBD-CAA (rev 3/18/02)

### DISCLOSURE STATEMENT OF CREDIT TERMS AND POLICIES
#### Effective May 1, 2002

The following Disclosure Statement of Credit Terms and Policies is required by the Securities and Exchange Commission and is part of your Client Agreement. Should you have any questions regarding this Disclosure Statement, please contact your Investment Consultant.

### INTEREST CHARGE

Margin Transactions normally involve the extension of credit made by Sterne, Agee & Leach, Inc., (Sterne Agee) when you deposit only a portion of the moneys or the collateral required in a transaction. Withdrawals of cash from your account, or an increase in the market value of a security sold short (or short against the box) may create or add to your debit balance, for which interest and any other applicable charges will be assessed to your account.

Your account will be charged interest on any extension of credit to you by Sterne Agee in connection with the purchase, sale or carrying of any securities. The interest charge will be based on your adjusted debit balance multiplied by the daily margin interest rate. You will receive a statement of your account, at least quarterly, showing the adjusted daily debit balance, interest charges, and the applicable interest rates.

Interest will be charged to you if we approve prepayment of the proceeds from sales prior to settlement date. Interest may also be charged on debit balances in Cash accounts due to a late payment.

### DAILY MARGIN INTEREST RATE

The "daily margin interest rate" is based on a 360-day year and is calculated by dividing the applicable margin interest rate by 360. The applicable margin interest rate is set at a percentage above Sterne Agee's Base Rate as shown in the following table.

| If the amount of your average adjusted daily debit balance is: | The interest rate charged is: |
|---|---|
| Over 100,000 | Base Rate + 0.50% |
| 75,000–99,999 | Base Rate + 1.00% |
| 50,000–74,999 | Base Rate + 1.25% |
| 25,000–49,999 | Base Rate + 1.50% |
| Under 25,000 | Base Rate + 1.75% |

Sterne Agee sets the Base Rate at its discretion with consideration to commercially recognized interest rates relating to the extension of credit, as well as general market conditions. The margin interest rate may be changed without notice to you to reflect changes in the Base Rate. If your interest rate is increased for any other reason, Sterne Agee will notify you in writing at least 30 days prior to the date of the increase. Please contact your Investment Consultant for the current Base Rate.

The term "adjusted daily debit balance," means the daily debit balance less applicable free credits, if any. The daily debit balance is the unpaid amount loaned to you as of the close of the business day. Debits and credits resulting from purchases and sales are posted to your account as of the settlement date. A credit balance in your Cash account will be applied as a reduction of a debit balance in your Margin and/or Short Account. Should you deposit a check or other item that is later returned unpaid, your account may be adjusted to reflect additional interest or other charges that apply.

### INITIAL MARGIN AND ACCOUNT MAINTENANCE REQUIREMENTS

The Federal Reserve Board and various self-regulatory organizations determine margin loan rules and regulations. The maximum amount currently available to you is 50% of the value of marginable securities purchased or held in your account ("initial margin"). The maximum loan available for debt securities varies with the type of security. Your minimum account equity must be $2,000.00, or other amount as may be required by applicable rules, regulations, or Sterne Agee house policies. Initial margin and margin maintenance requirements may change without notice. Equity securities with a market value of less than $5.00 per share are not marginable.

A margin call (notification to deposit additional collateral) may be issued if your account equity drops below the margin maintenance requirement. Normally, additional collateral will be required if your account equity declines below 30% depending upon such factors as Sterne Agee, in its sole discretion, may deem material, including but not limited to the type, price, quantities and marketability of securities, or combination thereof, held in your account. If the market value of a security falls below $3.00 per share, the security will not be assigned a value as collateral to secure your margin obligations.

## SHORT OPTION POSITIONS
Uncovered option contracts are subject to both initial margin and margin maintenance requirements. These positions involve higher levels of risk and more stringent requirements may be imposed. Please contact your Investment Consultant for details.

## SHORT SALE TRANSACTIONS
Any credit resulting from a short (including a short sale against the box) will not reduce your debit balance on which interest is charged because the securities sold short must be borrowed to make delivery to the purchaser and an amount equal to the proceeds of the short sale must be deposited with the lender. You are liable for all dividends and interest paid on securities borrowed for the purpose of short sales.

The value of securities held short in your account will be "marked to the market" daily. Any resulting increase or decrease in the market value will be included in your adjusted daily debit balance.

Sterne Agee may at its discretion, for any reason and without notice, immediately cover any short security position by purchasing securities for your account.

## LIENS AND LIQUIDATIONS
All monies or securities held by Sterne Agee at any time in any of your accounts (individual, joint or otherwise) for any purposes shall be collateral subject to a general lien and security interest for the discharge of all your obligations to Sterne Agee.

Sterne Agee may also demand repayment of any loan balance in whole, or in part, at any time and for any reason. Additionally, Sterne Agee may require you to deposit additional collateral as security for your obligations.

## SIPC PROTECTION
Assets held in your Sterne, Agee & Leach, Inc. account for investment purposes are protected by combined SIPC and excess SIPC insurance coverage up to $25,000,000. SIPC protects your account for $500,000. Excess SIPC insurance covers all accounts for an additional $24,500,000. Claims of cash are limited to $100,000. Money Market fund shares are securities, not cash, and are protected up to the full $25,000,000 limit.

SIPC protection covers more than one account in which you have an interest provided you are acting in different capacities for each account. (For instance, coverage would apply if you had an individual account and a joint account with your spouse.) SIPC does not protect against a decline in market value of securities in your brokerage account.

Sterne, Agee may elect to pay interest on credit balances awaiting reinvestment at a rate determined by Sterne Agee and reserves the right to eliminate or otherwise change the rate or manner in which interest on credit balances is paid at any time without prior notice to you.

# Award
## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Kashner Davidson Securities Corporation (Claimant) v. Steven Mscisz, Mark Mscisz, and Lynda Mscisz (Respondents) v. Victor Kashner, Matthew Meister, and Timothy Varchetto (Third-Party Respondents)

Case Number: 04-03793                    Hearing Site: Boston, Massachusetts

Nature of the Dispute:  Member vs. Customers (Initial Claim).
                        Customers vs. Member (Counterclaim)
                        Customers vs. Associated Persons (Third-Party Claims).

## REPRESENTATION OF PARTIES

Claimant Kashner Davidson Securities Corporation ("KDSC") hereinafter referred to as "Claimant" and Third-Party Respondents Victor Kashner ("V. Kashner"), Matthew Meister ("M. Meister"), and Timothy Varchetto ("T. Varchetto") hereinafter collectively referred to as "Third-Party Respondents":  Howard M. Smith, Esq., Newman & Smith, Newton, MA.  Previously represented by:  Marc J. Ross, Esq., Sichenzia Ross Friedman Ference, LLP, New York, NY.

Respondents Steven Mscisz ("S. Mscisz"), Mark Mscisz ("M. Mscisz"), and Lynda Mscisz ("L. Mscisz") hereinafter collectively referred to as "Respondents":  William P. Corbett, Jr., Esq., The Corbett Law Firm, Lynn, MA.

## CASE INFORMATION

Statement of Claim filed on or about:  May 26, 2004.
Claimant signed the Uniform Submission Agreement:  May 24, 2004.

Joint Statement of Answer, Affirmative Defenses, Counterclaims and Third-Party Claims filed by Respondents on or about:  August 26, 2004.
Respondent S. Mscisz signed the Uniform Submission Agreement:  August 26, 2004.
Respondent M. Mscisz signed the Uniform Submission Agreement:  August 26, 2004.
Respondent L. Mscisz signed the Uniform Submission Agreement:  August 26, 2004.

Joint Reply and Answer filed by Third-Party Respondents on or about:  September 9, 2004.
Third-Party Respondent Kashner signed the Uniform Submission Agreement:  October 1, 2004.
Third-Party Respondent Meister did not sign the Uniform Submission Agreement.
Third-Party Respondent Varchetto did not sign the Uniform Submission Agreement.

NASD Dispute Resolution
Arbitration No. 04-03793
Award    Page 2 of 6

## CASE SUMMARY

Claimant asserted the following causes of action: breach of contract; money lent; open book account; and fraud/fraud in the inducement. The causes of action relate to unspecified securities.

Unless specifically admitted in its Answer, Respondents denied the allegations made in the Statement of Claim and asserted various affirmative defenses. In its Counterclaims and Third-Party Claims, Claimant asserted the following causes of action: violations of Sections 7, 9, and 10(b) of the Securities Act of 1934; violations of the Florida Securities Transactions Act; violations of the Massachusetts Uniform Securities Act; violations of NASD Business Conduct Standards; common law fraud; unjust enrichment; conversion; breach of contract; violation of the Racketeer Influenced and Corrupt Organization Act; abuse of process; violation of the Massachusetts Consumer Protection Act and the Florida Consumer Protection Act.

Unless specifically admitted in their Reply and Answer of Third-Party Claims, Claimant and Third-Party Respondents denied the allegations made in the Counterclaims and Third-Party Claims and asserted various affirmative defenses.

## RELIEF REQUESTED

Claimant requested compensatory damages in the amount of $173,634.22; compensatory damages in the amount of $176,923.98; interest; costs of collection, including NASD filing and hearing fees and attorneys; fees; and such other and further relief as the Panel deems just, fair, and equitable.

Respondents requested that the Panel dismiss Claimant's Statement of Claim, with prejudice; on their Counterclaims and Third-Party Claims, unspecified compensatory damages in threefold; prejudgment interest; attorneys' fees; costs; an order that Claimant disgorge and make full restitution to Respondents; other appropriate equitable relief; and such other and further relief as the Panel deems necessary and just.

Third-Party Respondents requested that the Panel award Claimant the relief sought in the Statement of Claim; that the Panel deny and dismiss each and every claim asserted in the Counterclaims and Third-Party Claims; that the Panel issue sanctions against Respondents; and such other and further relief as the Panel deems just, equitable, and proper.

## OTHER ISSUES CONSIDERED AND DECIDED

Upon review of the file and the representations made on behalf of the Claimant, the undersigned arbitrators (the "Panel") determined that Respondent L. Msciez has been properly served with the Statement of Claim and received due notice of the hearing, and that arbitration of the matter would proceed without said Respondent present, in accordance with the NASD Code of Arbitration Procedure (the "Code").

JUN-20-2005  13:17                                                          P.07

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 3 of 6

Third-Party Respondents Meister and Varchetto did not file with NASD Dispute Resolution properly executed Uniform Submission Agreements but are required to submit to arbitration pursuant to the Code and are bound by the determination of the Panel on all issues submitted.

The Panel previously ruled that the Counterclaims and Third-Party Claims filed by Respondents are dismissed, with prejudice.

At the hearing, Claimant made an oral motion to conform the pleadings to the proof. After due consideration, the Panel determined to grant the motion.

Respondents made a motion for a stenographic transcription of the hearing. After due consideration, the Panel granted the motion and ordered the following: "Respondents are to provide NASD with a copy of the transcript. Claimant is to obtain the transcript at its own cost; Respondents do not have to pay for Claimant's transcript".

Respondents made a motion to dismiss for failure to make a prima facie case. After due consideration, the Panel denied the motion.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondents are jointly and severally liable for and shall pay Claimant compensatory damages in the amount of $421,000.00, inclusive of attorneys' fees and costs according to the margin agreement, plus interest at the WSJ prime rate from May 18, 2005 until the date of payment of the award.

2. Respondents' Counterclaims and Third-Party Claims are dismissed.

2. Any and all relief not specifically addressed herein is denied.

## FEES

Pursuant to the Code, the following fees are assessed:

**Filing Fees**
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:
    Initial claim filing fee                = $1,000.00
    Third-Party Claim filing fee         = $  250.00

**Member Fees**

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 4 of 6

Member fees are assessed to each member firm that is a party in these proceedings or to the
member firm that employed the associated persons at the time of the events giving rise to the
dispute. Accordingly, Kashner Davidson Securities Corp. is a party.

| | |
|---|---|
| Member surcharge | = $1,700.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $2,750.00 |

## Adjournment Fees

Adjournments granted during these proceedings for which fees were assessed:

| | |
|---|---|
| March 2-4, 2005, adjournment by Respondents | = Waived |

## Forum Fees and Assessments

The Panel has assessed forum fees for each session conducted. A session is any meeting
between the parties and the arbitrators, including a pre-hearing conference with the arbitrators,
that lasts four (4) hours or less. Fees associated with these proceedings are:

Tow (2) Pre-hearing sessions with a single arbitrator @ $450.00        = $  900.00
Pre-hearing conferences:   January 20, 2005    1 session
                           January 31, 2005    1 session

Three (3) Pre-hearing sessions with Panel @ $1,000.00*                 = $3,000.00
Pre-hearing conferences:   November 8, 2004    1 session
                           November 16, 2004   1 session
                           March 2, 2005       1 session

Three (3) Hearing sessions @ $1,000.00                                 = $3,000.00
Hearing Dates:   May 17, 2005    2 sessions
                 May 18, 2005    1 session

Total Forum Fees                                                       = $6,900.00

*In accordance with Rule 10332(c) of the Code of Arbitration Procedure, the forum fees
assessed against the Respondents are based on the Respondents' hearing session deposit.*

1. The Panel has assessed $6,900.00 of the forum fees jointly and severally against
   Respondents.

### Fee Summary

1. Claimant is solely liable for:

| | |
|---|---|
| Initial Filing Fee | = $1,000.00 |
| Member Fees | = $5,200.00 |
| Total Fees | = $6,200.00 |
| Less payments | = $7,325.00 |
| Refund Due Claimants | = $1,125.00 |

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 5 of 6

2.  Respondents are jointly and severally liable for:

| | |
|---|---|
| Third-Party Claim Filing Fee | = $   250.00 |
| Forum Fees | = $6,900.00 |
| Total Fees | = $7,150.00 |
| Less payments | = $1,250.00 |
| Balance Due NASD Dispute Resolution | = $5,900.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

JUN-20-2005  13:17                                                    P.10

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.          –    Public Arbitrator, Presiding Chairperson
Douglas R. Gray                     –    Public Arbitrator
Patrick W. McKeon, Esq.             –    Non-Public Arbitrator


## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.


_____                          _____
Arthur J. Giacomarra, Esq.                        Signature Date
Public Arbitrator, Presiding Chairperson


_____                          _____
Douglas R. Gray                                   Signature Date
Public Arbitrator


_____                          _____
Patrick W. McKeon, Esq.                           Signature Date
Non-Public Arbitrator


June 17, 2005
_____
Date of Service  (For NASD Dispute Resolution use only)

JUN-20-2005  13:18                                                    P.11

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.          -     Public Arbitrator, Presiding Chairperson
Douglas R. Gray                     -     Public Arbitrator
Patrick W. McKeon, Esq.             -     Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law
and Rules, that I am the individual described herein and who executed this instrument which is
my award.


_____                    _____
Arthur J. Giacomarra, Esq.                      Signature Date
Public Arbitrator, Presiding Chairperson


_____                    6-14-05
Douglas R. Gray                                 _____
Public Arbitrator                               Signature Date


_____                    _____
Patrick W. McKeon, Esq.                         Signature Date
Non-Public Arbitrator


June 17, 2005
_____
Date of Service  (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.        −        Public Arbitrator, Presiding Chairperson
Douglas R. Gray                   −        Public Arbitrator
Patrick W. McKeon, Esq.           −        Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.

_____
Arthur J. Giacomarra, Esq.
Public Arbitrator, Presiding Chairperson

_____
Signature Date

_____
Douglas R. Gray
Public Arbitrator

_____
Signature Date

_____
Patrick W. McKeon, Esq.
Non-Public Arbitrator

_6-17-05_____
Signature Date

June 17, 2005
_____
Date of Service  (For NASD Dispute Resolution use only)

Commonwealth of Massachusetts
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2005-02543
## Kashner Davidson Securities Corp v Mscisz et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 06/22/2005 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 07/12/2005 | **Session** | E - Civil E, 3 Pemberton Square, Boston | | |
| **Origin** | 1 | **Case Type** | E05 - All Arbitration | | |
| **Lead Case** | | **Track** | X | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 09/20/2005 | **Answer** | 11/19/2005 | **Rule12/19/20** | |
| **Rule 15** | | **Discovery** | | **Rule 56** | |
| **Final PTC** | 12/19/2005 | **Disposition** | 01/18/2006 | **Jury Trial** | No |

### PARTIES

**Plaintiff**
Kashner Davidson Securities Corp
Active 06/22/2005

**Private Counsel 468880**
Howard M Smith
Newman & Smith
1 Gateway Center
Suite 350
Newton, MA 02458
Phone: 617-965-9900
Fax: 617-965-9697
Active 06/22/2005 Notify

**Defendant**
Steven Mscisz
Service pending 06/22/2005

**Defendant**
Mark Mscisz
Service pending 06/22/2005

**Private Counsel 561201**
William P Corbett Jr
The Corbett Law Fiurm
85 Exchange Street, Suite 326
Lynn, MA 01901-1429
Phone: 781-596-9300
Fax: 781-596-9302
Active 07/12/2005 Notify

**Defendant**
Lynda Mscisz
Service pending 06/22/2005

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 06/22/2005 | 1.0 | Complaint (arbitration) |
| 06/22/2005 | | Origin 1, Type E05, Track X. |

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

# SUCV2005-02543
## Kashner Davidson Securities Corp v Mscisz et al

| Date | Paper | Text |
|------|-------|------|
| 06/22/2005 | 2.0 | Civil action cover sheet filed |
| 07/12/2005 | | Certified copy of petition for removal to U. S. Dist. Court of Deft. |
| | | Mark Mscisz U. S. Dist.#(05-11433-JLT). |
| 07/12/2005 | | Case REMOVED this date to US District Court of Massachusetts |

**EVENTS**

I HEREBY ATTEST AND CERTIFY ON

JULY 12, 2005 THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK