UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                                    )
KASHNER DAVIDSON SECURITIES CORPORATION,   )
VICTOR KASHNER, MATTHEW MEISTER &           )
TIMOTHY VARCHETTO,                          )
                                                    )
        *Plaintiffs/Defendants-in-Counterclaim,*   )        Case No. 05-cv-11433-JLT
                    v.                              )
                                                    )
STEVEN MSCISZ, MARK MSCISZ, & LYNDA MSCISZ,  )
                                                    )
        *Defendants/Plaintiffs-in-Counterclaim*    )
_____)


**ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS**

        The defendants/plaintiffs-in-counterclaim, Steven Mscisz, Mark Mscisz and

Lynda Mscisz (collectively "Customers") respond to the "Amended Complaint to

Modify and Confirm an Arbitration Award" ("Complaint") filed by plaintiffs/

defendants-in-counterclaim Kashner Davidson Securities Corporation ("KDSC"),

Victor Kashner ("Kashner"), Matthew Meister ("Meister") and Timothy Varchetto

("Varchetto") (collectively "Brokers") as follows:

        1.        This paragraph sets forth a general description of the Brokers' claims

to which no substantive response is required.

        2.        The Customers admit that KDSC commenced an arbitration

proceeding against them and that, with their answer, they filed counterclaims

against KDSC and third-party claims against Kashner, Meister and Varchetto.  The

Customers deny the remainder of this paragraph.

3.      The Customers admit that they submitted the dispute to arbitration (albeit conditionally), that they filed several motions in the arbitration, that they commenced a declaratory judgment action in the single justice session of the Supreme Judicial Court, and that the single justice denied their request for relief. The Customers deny the remainder of this paragraph.

4.      The Customers admit that the arbitrators purported to dismiss their counterclaims and third-party claims before the hearing.  The Customers deny the remainder of this paragraph.

5.      The Customers admit that the arbitrators held a hearing at which they purported to allow them to call witnesses and present documentary evidence, that the arbitrators purported to deliberate, and that the arbitrators issued an award against the Customers.  The Customers deny the remainder of this paragraph.

6.      This paragraph sets forth a general description of the Brokers' claims to which no substantive response is required.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     The Customers deny that there is any jurisdiction legally known as "the State of Massachusetts", but they admit the remainder of this paragraph.

12.     The Customers deny that there is any jurisdiction legally known as "the State of Massachusetts", but they admit the remainder of this paragraph.

13-004-001

13.    The Customers deny that there is any jurisdiction legally known as "the State of Massachusetts" and "that this action arises from their transaction of business" within this Commonwealth, but they admit the remainder of this paragraph.

14.    The Customers deny that there is any jurisdiction legally known as "the State of Massachusetts", but they admit the remainder of this paragraph.

15.    Denied.

16.    Admitted.

17.    The Customers deny this paragraph to the extent it implies that their submission of their counterclaims and third-party claims was unconditional or that arbitration of all counterclaims and third-party claims was mandatory, but they admit the remainder of this paragraph.

18.    Admitted.

19.    Admitted.

20.    Admitted.

21.    Admitted.

22.    Admitted.

23.    Admitted.

24.    Admitted.

25.    Admitted.

26.    Denied.

27.    The Customers deny that they were notified of the arbitrators' decision on February 23, 2005, but they admit the remainder of this paragraph.

13-004-001

28.    Admitted.

29.    The Customers deny that they filed their motion to withdraw their counterclaims and third-party claims merely "because they were unhappy with the Discovery Order", but they admit the remainder of this paragraph.

30.    The Customers deny this paragraph to the extent it purports to recite fully the substance of their declaratory judgment action, but they admit the remainder of this paragraph.

31.    Denied.

32.    Admitted.

33.    Admitted.

34.    The Customers deny that "the matters had been fully briefed for the Panel," that there had been "due deliberation," and that the arbitrators genuinely believed "that Rule 10305 of the NASD Code provided them with the authority for their actions," but they admit the remainder of this paragraph.

35.    The Customers deny this paragraph to the extent it purports to recite fully the substance of single justice's decision, but they admit the remainder of this paragraph.

36.    Admitted.

37.    Admitted.

13-004-001

38.    The Customers deny that they were permitted to present all of the witnesses and evidence they would have presented in a full and fair hearing of the matter before the arbitrators and that they submitted their counterclaims and third-party claims "for a decision of the arbitrators under the rules of the NASD," but they admit the remainder of this paragraph.

39.    The Customers deny that the award was "based on the evidence presented at the hearing," but they admit the remainder of this paragraph.

40.    Admitted.

41.    The Customers deny that the arbitrators were authorized to dismiss their counterclaims and third-party claims, but they admit the remainder of this paragraph.

42.    The Customers deny that the award was unconditionally "suppose [sic] to be a final and nonappealable decision on the controversy arbitrated", but they admit the remainder of this paragraph.

43.    Denied.

44.    Admitted.

45.    The Customers incorporate, as if fully set forth herein, their responses to paragraphs 1 through 44 of the Complaint.

46.    This paragraph sets forth a general description of the Brokers' claims to which no substantive response is required.

47.    Admitted.

48.    Admitted.

49.    Admitted.

13-004-001

50.    This paragraph sets forth a general description of the Brokers' claims to which no substantive response is required.

51.    Admitted.

52.    This paragraph sets forth a general description of the Brokers' claims to which no substantive response is required.

### First Affirmative Defense

The arbitrators exceeded their powers.

### Second Affirmative Defense

The arbitrators refused to hear evidence material to the controversy and otherwise conducted the arbitration hearing in such a way as to prejudice the rights of the Customers.

### Third Affirmative Defense

The award was procured by undue means.

### Fourth Affirmative Defense

The arbitrators acted in manifest disregard of the law.

### Fifth Affirmative Defense

The arbitrators refused to postpone the hearing at the Customers' request, notwithstanding sufficient cause for such a postponement.

- 6 -

13-004-001

### *Sixth Affirmative Defense*

The award encompassed issues the Customers had not agreed to submit to arbitration.

### *Seventh Affirmative Defense*

Even if the award is not vacated altogether, it contains errors that require correction.

### *Eighth Affirmative Defense*

The Complaint must be dismissed because it failed to join necessary parties as plaintiffs.

### *Counterclaims*

1.      Pursuant to 9 U.S.C. §§ 10 & 11 and MASS. GEN. L. c. 251 §§ 12 & 13, the Customers respectfully submit the following Counterclaims seeking *vacatur* or modification of the arbitration award ("Award") issued on June 17, 2005 against the Customers and in favor of the Brokers by panel of arbitrators ("Panel") acting under the auspices of NASD Dispute Resolution, Inc. ("NASD") in Case Number 04-03793 ("Arbitration").

13-004-001

2.     As alleged more specifically below, the Customers' Counterclaims involve the fundamentally defective process from which the Award emanated, not the substance of the claims and defenses underlying it.  Despite the "extremely narrow and exceedingly deferential" standards this Court must apply, the Arbitration was so extraordinarily unfair that the Award must be vacated.

### *Parties*

3.     Defendant/Plaintiff-in-Counterclaim Steven Mscisz ("Steven") is an individual residing in the Town of Topsfield, County of Essex, Commonwealth of Massachusetts, and he was a respondent, counterclaimant, and third party claimant in the Arbitration.

4.     Defendant/Plaintiff-in-Counterclaim Mark Mscisz ("Mark") is an individual residing in the Town of Topsfield, County of Essex, Commonwealth of Massachusetts, and he was a respondent, counterclaimant, and third party claimant in the Arbitration.

5.     Defendant/Plaintiff-in-Counterclaim Lynda Mscisz ("Lynda") is an individual residing in the Town of Topsfield, County of Essex, Commonwealth of Massachusetts, and he was a respondent, counterclaimant, and third party claimant in the Arbitration.

6.     Mark and Lynda are husband and wife.

7.     Steven and Mark are brothers.

13-004-001

8.      Defendant Kashner Davidson Securities Corporation ("KDSC" or "Broker-Dealer") is a corporation organized under the laws of the State of Florida, and it maintains its only place of business in that jurisdiction.  KDSC was the claimant and respondent-in-counterclaim in the Arbitration.

9.      Defendant Victor Kashner ("Kashner") is an individual residing in the State of Florida and a registered representative of KDSC.  KDSC's namesake, Kashner is its controlling shareholder, chairman of its board of directors, and – until suspended by the U.S. Securities and Exchange Commision in *In re Kashner,* Case No. 3-9049 (SEC 1996), and by the NASD in *In re Kashner Davidson Securities Corp.,* Case No. C07960095 (NASD 2000) – Kashner was an officer of KDSC.  Kashner was a third party respondent in the Arbitration.

10.      Defendant Matthew Meister ("Meister") is an individual residing in the State of Florida and, at the time of the events operative for purposes of the underlying arbitration, was a registered representative of KDSC.  Meister was a third party respondent in the Arbitration.

11.      Defendant Timothy Varchetto ("Varchetto") is an individual residing in the State of Florida and a registered representative of KDSC.  Varchetto was a third party respondent in the Arbitration.

### *Jurisdiction*

12.      Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over this civil action, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and because the dispute is between citizens of different States.

13-004-001

13.    Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over this civil action, which is founded on claims or rights arising under the Constitution, treaties or laws of the United States – including Sections 7, 9, 10(b), 19(g)(1) and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78g, 78i, 78j(b), 78s(g), 78aa, implementing regulations promulgated by the Securities and Exchange Commission, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964.

### Background

14.    In late 2003, the Customers appointed KDSC to serve as their agent to place securities transactions in accounts they opened at Sterne, Agee & Leach, Inc. and SAL Financial Services, Inc. (collectively "SALI") at they same time they began doing business with KDSC.

15.    KDSC was not an agent of SALI.

16.    The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced them to establish their relationships with KDSC and SALI.

17.    Meister and Varchetto were the KDSC employees responsible for the Customers' accounts.

18.    Kashner is a "controlling person" of KDSC, as that term is defined under the Federal securities laws, and he supervised the activities of Meister and Varchetto.

13-004-001

19.    SALI and the Customers entered into Client Account Agreements, and neither KDSC nor any of its agents or employees was a party to those contracts.

20.    Neither Kashner, Meister nor Varchetto was a third-party beneficiary of the Client Account Agreements between SALI and the Customers.

21.    After opening their SALI accounts and appointing KDSC to serve as their agent, the Customers – through Meister and Varchetto – purchased shares in Vaso Active Pharmaceuticals, Inc. ("VAPH").

22.    The brother of Mark and Steven was the President of VAPH, and KDSC was in the process of underwriting an initial public offering ("IPO") of VAPH stock at the time the Customers began their relationships with KDSC.

23.    In February 2004, the Client Account Agreements between the Customers and SALI were amended to add margin privileges.

24.    The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced them to begin trading on margin after the IPO, when the price of VAPH stock was rising.

25.    The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced them to make unsuitable trades or maintain imprudent positions in VAPH stock.

13-004-001

26.    The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced Mark and Lynda to pursue a "day trading" strategy with respect to VAPH stock soon after they began trading on margin.

27.    Under the amended Client Account Agreements, margin transactions involved the extension of credit by SALI only, and neither KDSC nor any of its agents ever lent money to the Customers or any of them.

28.    SALI kept the securities accounts of Steven separate from the securities accounts of Mark and Lynda, and SALI kept the margin account of Steven separate from the margin account of Mark and Lynda.

29.    Although the margin liability of Mark and Lynda was to be "joint and several" under their Client Account Agreement with SALI, there was never any agreement pursuant to which Mark and Lynda would be jointly and severally liable with Steven for deficiencies in his margin account, nor was there any agreement pursuant to which Steven would be jointly and severally liable with Mark and Lynda for deficiencies in their margin account.

30.    No Client Account Agreement between SALI and Steven was ever incorporated into a Client Account Agreement between SALI, Mark and Lynda, and no Client Account Agreement between SALI, Mark and Lynda was ever incorporated into a Client Account Agreement between SALI and Steven.

13-004-001

**The Dispute**

31.    In the Spring of 2004, the price of VAPH stock dropped precipitously, and SALI issued several margin calls to the Customers.

32.    The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care manipulated the market for VAPH stock, were complicit in such manipulation, or otherwise benefited from declines in the value of the Customers' VAPH holdings.

33.    The Customers are informed and believe, and they therefore aver, that KDSC, Kashner, Meister and Varchetto feared that the Customers would seek to hold them liable for the deficiencies in their SALI margin accounts that resulted from the declines in the price of VAPH stock.

34.    The Customers are informed and believe, and they therefore aver, that KDSC preemptively and hastily commenced the Arbitration on May 25, 2004 – only 7 weeks after the first margin call – in order to obtain a tactical advantage in proceedings to resolve their anticipated disputed with the Customers.

35.    At the time KDSC commenced the Arbitration, none of the Customers was indebted to it.

36.    KDSC's Statement of Claim nonetheless alleged that the Customers were indebted to it.

37.    KDSC never issued a margin call to the Customers.

38.    KDSC never rendered a putative statement of margin indebtedness to any of the Customers.

13-004-001

39.    At the time KDSC commenced the Arbitration, it was not party to any of the Client Account Agreements between the Customers and SALI.

40.    KDSC's Statement of Claim nonetheless alleged that it was party to the Client Account Agreements.

41.    At the time KDSC commenced the Arbitration, none of the Customers had margin accounts with KDSC.

42.    KDSC's Statement of Claim nonetheless alleged that the Customers had margin accounts with KDSC.

43.    KDSC's Statement of Claim did not allege or otherwise give the Customers notice that it contended that SALI assigned its ostensible claims against the Customers to KDSC.

44.    KDSC's Statement of Claim did not allege or otherwise give the Customers notice that it contended that it was subrogated to the putative rights of SALI against the Customers.

45.    KDSC's Statement of Claim did not allege or otherwise give the Customers notice that it contended that KDSC otherwise had some indirect standing to recover from the Customers.

46.    On August 26, 2004, the Customers filed with the NASD and caused the Brokers to be served with their Answer, Affirmative Defenses and Statement of Counterclaims & Third Party Claims ("Answer").

13-004-001

47.    As provided by Rule 10314 of the NASD's Code of Arbitration Procedure, the Customers' Answer responded to the factual averments set forth in KDSC's Statement of Claim and laid out their affirmative defenses, counterclaims against KDSC, and third party claims against Kashner, Meister and Varchetto.

48.    The Customers' Eighth Affirmative Defense was that "KDSC's claims against the Customers must fail because it is not the real party in interest."

49.    The Customers never withdrew or amended their Eighth Amended Defense, of which the Brokers and their counsel were on notice throughout the Arbitration, and which constituted a complete defense under Alabama law, which governed the Client Account Agreements.

**The Agreements to Arbitrate**

50.    The Customers' Client Account Agreements arguably compelled them to submit all disputes between them and KDSC (other than class actions) to arbitration.

51.    However, Kashner, Meister and Varcetto were not parties to or third party beneficiaries of the Client Account Agreements executed by the Customers.

52.    KDSC executed the NASD's standard form Uniform Submission Agreement when it commenced the Arbitration and, according to the Award, Kashner executed the same standard form Uniform Submission Agreement, but neither Meister nor Varchetto executed any submission agreement whatsoever.

13-004-001

53.     The Customers were not generally opposed to Arbitration, but they understood that arbitration of all of their claims was not mandatory.

54.     Accordingly, instead of executing the NASD's Uniform Submission Agreement, the Customers signed a Submission Agreement which conditioned their participation to arbitrate on their being afforded "a fair and complete opportunity to obtain adjudication of their claims and defenses."

55.     A true copy of the Submission Agreement executed by the Customers is appended to this pleading as Exhibit A.

56.     So long as they would receive a "fair and complete opportunity to obtain adjudication of their claims and defenses," the Customers were prepared to prosecute in the Arbitration even those claims for which arbitration was not mandatory, and they manifested that position in the Submission Agreement they executed.

57.     The Submission Agreement executed by the Customers represented their only agreement to arbitrate insofar as the Customers' claims against Kashner, Meister and Varchetto were concerned.

**Discovery**

58.     Pursuant to Rule 10321(b) of the NASD's Code of Arbitration Procedure, the Customers propounded comprehensive but focused requests for information relevant to KDSC's claims and the Customers' defenses, counterclaims and third party claims.

13-004-001

59.    In response, KDSC refused to produce anything but the most innocuous account statements and like documents.

60.    KDSC even refused to produce documents identified in the NASD's Discovery Guide as "presumptively discoverable" if the Arbitration involves claims like those asserted by the Customers.

61.    Despite the repeated entreaties of the Customers and their counsel, the Brokers and their counsel never agreed to confer with them in an effort to narrow their discovery disputes.

62.    The Customers were thus compelled to make a motion seeking compelled production of the requested information.

63.    The Panel's chairman largely denied the Customers' motion to compel – even refusing to compel KDSC to produce the "presumptively discoverable" information absolutely necessary to the competent prosecution of their counterclaims and third party claims.

64.    The conduct of discovery in the Arbitration was largely committed to the discretion of the Panel or its designee, but the chairman's unexplained refusal to compel production of the "presumptively discoverable" information was manifestly abusive of that discretion.

13-004-001

65.    Before the chairman's refusal to compel production of the "presumptively discoverable" information, it remained possible for the Customers to receive the "fair and complete opportunity to obtain adjudication of their claims and defenses" on which their Submission Agreement was conditioned, but the decision denying them essential discovery did irreparable, fundamentally unfair, violence to the Customers' ability to proceed.

66.    Of the limited additional information the Panel's chairman did order KDSC to produce, KDSC only produced a portion – contravening not only the chairman's order, but also the NASD's business conduct standards.

67.    The Customers subsequently moved for reconsideration of the chairman's order on their motion to compel, and for an order compelling KDSC's compliance with the portion of the order that required some additional discovery, but neither the Panel nor its chairman ever ruled on those motions.

### Dismissal of Counterclaims & Third Party Claims

68.    Consequently, regretfully, and pursuant to Rules 10305 and 10328(c) of the NASD's Code of Arbitration Procedure, the Customers moved to withdraw without prejudice their third party claims and counterclaims on February 24, 2005 – little more than two weeks after their Counsel received the fundamentally unfair discovery orders from the NASD.

13-004-001

69.    Because the discovery rulings had denied them the "fair and complete opportunity to obtain adjudication of their claims and defenses" on which their Submission Agreement was conditioned, the Customers intended to reassert their third party claims and (to the extent arbitration thereof was not compulsory) their counterclaims in a judicial forum.

70.    However, the Panel not only denied the Customers' motion to withdraw their counterclaims and third party claims without prejudice, but it went so far as to order, *sua sponte,* that those claims be dismissed with prejudice.

71.    The Brokers had not requested dismissal with prejudice in their opposition to the Customers' motion, and the Customers certainly had not requested that those claims be dismissed with prejudice.

72.    The Brokers had never moved to dismiss as factually or legally insufficient the Customers' counterclaims and third party claims, the Customers had never been called upon or afforded an opportunity to explain the specifics of those claims to the Panel, and the Customers had not been afforded notice that dismissal with prejudice was an option that might be considered by the Panel.

73.    Rule 10305(b) of the NASD's Code of Arbitration Procedure – the only provision allowing dismissal of claims with prejudice and without a hearing on their merits – limits that power of the Panel to instances where it is necessary "as a sanction for willful and intentional material failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective."

13-004-001

74.     Before the Panel purported to dismiss the Customers' counterclaims and third party claims with prejudice, the Customers had not been sanctioned in the Arbitration, so it logically follows that no lesser sanction could have "proven ineffective."

75.     Indeed, before the Panel purported to dismiss the Customers' counterclaims and third party claims with prejudice, the Customers had never been guilty of a "willful and intentional material failure to comply with an order of the arbitrator(s)", and the Panel's order dismissing their claims did not find that there had been such a failure.

76.     The Customers are informed and believe, and they therefore aver, that the members of the Panel were piqued and offended by the grounds (that they had been deprived of the "fair and complete opportunity to obtain adjudication of their claims and defenses" on which their Submission Agreement was conditioned) the Customers offered for seeking leave to withdraw without prejudice their counterclaims and third party claims, and that the Panel's dismissal with prejudice of those claims was an arbitrary, capricious, whimsical, and vindictive retaliation for the Customers' honest statement of their reasons.

77.     The Panel paid lip service to the applicability of Rule 10305 – and then ignored it – when it dismissed the counterclaims and third party claims with prejudice.

78.     The order purporting to dismiss the counterclaims and third party claims with prejudice was interlocutory until it was incorporated into the Award, so the Customers could not seek its vacation until after the Award was issued.

13-004-001

**Unauthorized Practice of Law**

79.     Pursuant to the standard operating procedures of the NASD, the hearing in the Arbitration was to be held in Boston.

80.     After the Panel set the initial date for the hearing, KDSC and the Brokers made clear that they would be represented at that hearing by attorneys who are not licensed to practice law in this Commonwealth.  The lead attorney was to be Kashner's son-in-law, Marc J. Ross, of the New York Bar.

81.     Believing that participation by those lawyers in the hearing would violate Rule 5.5(a) of the Massachusetts Rules of Professional Conduct, concerned that participation by the Customers' counsel in that hearing with knowledge of that apparent violation would itself violate Rule 5.5(b) of the Rules of Professional Conduct, and mindful that the Chief Judge of this Court had recently certified similar issues to the SJC (*see In re Lucas,* 317 B.R. 195, 215 (D. Mass. 2004)), the Customers filed a motion asking the Panel to stay the arbitration pending the SJC's resolution of the certified issues or disqualify the Brokers' counsel from the Arbitration.  The Panel's chairman denied that motion.

82.     The NASD subsequently issued a policy statement consistent with the Customers' position concerning the unauthorized practice of law issue in the Arbitration, so the Customers moved for reconsideration of the chairman's decision, but the chairman of the Panel denied that motion.

13-004-001

83.    With the law remaining unsettled, and with the continued possibility that they might unwillingly but knowingly abet the unauthorized practice of law at the hearing, the Customers sought a declaratory judgment from a single justice of the SJC (Case No. SJ-2005-0088).

84.    The single justice (Cordy, J.) accepted the Customers' reasoning but nonetheless denied their request for a declaratory judgment because he felt that strict application of Mass. R. Prof. C. 5.5(a) under the circumstances of the Arbitration would produce "too harsh a result."

85.    The Customers have appealed the single justice's decision to the full SJC, where it has been docketed under the name *Steven Mscisz, et al. v. Kashner Davidson Securities Corp., et al.* and assigned Case No. SJC-09529; although the SJC on July 22, 2005 decided the case certified by Judge Young, that decision did not resolve the questions at issue in the Customers' appeal.

**Other Pre-Hearing Procedural Defects**

86.    Because discovery motions remained outstanding, and because they wanted to establish definitively the status of their claims and counterclaims, the Customers – as was their absolute right under Rule 10321(d) of the NASD's Code of Arbitration Procedure – requested a pre-hearing conference to discuss those and other issues before final preparations for the hearings had been made.

87.    The Panel – despite the clear requirement of Rule 10321(d) – did not hold the pre-hearing conference the Customers had requested on May 11, 2005. Nor did the Panel even acknowledge that request.

13-004-001

**The Hearing**

88.    Without holding the requested pre-hearing issue to resolve unresolved issues, the Panel commenced the hearing as scheduled on May 17, 2005, and the hearing continued through the morning of May 18, 2005.

89.    Although the hearing was held in Boston, the Brokers' case was presented by an attorney not licensed to practice in the Commonwealth of Massachusetts.

90.    Steven, Mark, Varchetto and KDSC's President, Melissa Rothenbach ("Rothenbach"), were the only witnesses to testify during the hearing.

91.    Because they had been denied a fair opportunity to present the Brokers' misconduct to the Panel, the Customers' presentation was focused on the "real party in interest" defense of which the Brokers had been on notice since August 2004.

92.    Varchetto and Rothenbach consistently admitted the factual predicates of the Customers' "real party in interest" defense.

93.    KDSC did not adduce evidence establishing a contract between KDSC and the Customers or an account due and owing to KDSC by the Customers.

94.    The Brokers did not even attempt to establish the elements of a frivolous, calumnious fraud claim they had asserted against Mark and Lynda.

13-004-001

95.    Varchetto offered no testimony concerning any putative assignment, subrogation or other indirect theory giving KDSC standing to recover from the Customers, and KDSC had not given notice of any such indirect standing theory in advance of the hearing.

96.    During the testimony of the last witness in the hearing, KDSC's counsel came forward with a document – created and executed that very day – which purported to assign SALI's putative rights against the Customers to KDSC. That witness acknowledged that, prior to the mid-hearing assignment of the putative claims, SALI had remained the owner of those claims.

97.    Although the assignment had been received by KDSC and its counsel at 1:45 p.m. on the day of the hearing, they waited until the very end of the testimony – nearly two hours later – to reveal its existence.

98.    Despite these material failures in KDSC's evidence, the Panel denied the Customers' oral motion to dismiss the Arbitration, which motion was based on KDSC's failure to make out a *prima facie* case.

99.    Although KDSC had known for 9 months of the Customers' "real party in interest" defense, and despite the requirement in Rule 10321(c) of the NASD's Code of Arbitration Procedure that the parties exchange exhibits at least 20 days before the hearing, the Brokers and their counsel had never previously produced – or even intimated the existence of – any assignment of SALI's putative claims against the Customers.

13-004-001

100.    Fairness to the Customers required notice of the claims being asserted against them and a meaningful opportunity to defend themselves, and KDSC's "sandbagging" tactics deprived the Customers of both.

101.    KDSC's counsel sought to justify his 180 degree change in course with what he characterized as an oral motion to amend KDSC's Statement of Claim to conform to the evidence.

102.    KDSC's "sandbagging" of the Customers was consequential.  Under Section 8-5-25 of the Alabama Code, which governed the Client Account Agreements, KDSC would have taken SALI's claims against the Customers "subject to all payments, setoffs, and discounts" they had against SALI, but the last-minute assignment prevented the Customers from ascertaining whether they had such offsetting claims against SALI, from taking discovery concerning those offsets or the validity of the putative assignment, and from presenting relevant evidence at the hearing.

103.    Additionally, the Customers made strategic and tactical decisions based on their assumption that KDSC would seek to prove the case it pled, and the Customers expended significant resources preparing and proving their "real party in interest" defense.

104.    The Panel nonetheless allowed KDSC's post-testimony motion to amend its pleading, and the Panel accepted the last-minute assignment into evidence over the Customers' objection.

105.    At the hearing, KDSC also came forward with an affidavit purporting to justify its claim for attorneys' fees and collection costs.

13-004-001

106.    The Customers objected to the affidavit and the materials appended to it, because they contained information and incorporated documents that had been in KDSC's possession long before the 20-day deadline for the exchange of exhibits specified by Rule 10321(c) of the NASD's Code of Arbitration Procedure, and KDSC's decision to spring that evidence on the Customers at the hearing deprived them of any ability to scrutinize and counter the affidavits and exhibits.

107.  The Panel nonetheless received the affidavit and exhibits thereto into evidence.

108.    At the end of the hearing, when reading a script mandated by the NASD, the Panel's chairman asked the Customers' attorney "to state affirmatively whether [the Customers] had a full and fair opportunity to be heard" and, consistent with the averments set forth in the Customers' Counterclaims, counsel gave the only answer he could truthfully provide under the circumstances – "no."

**The Award**

109.    On June 17, 2005, the Panel issued its Award and:

a.    found the Customers jointly and severally liable to KDSC for $421,000.00 (including attorneys' fees) in what the Panel characterized as compensatory damages;

b.    reiterated and incorporated the dismissal with prejudice of the Customers counterclaims and third party claims; and

c.    directed the Customers, jointly and severally, to pay $6,900.00 in forum fees.

110.    KDSC had never pled or asserted a lawful basis for making the Customers jointly and severally liable with respect to the compensatory damages.

13-004-001

111.    The debt KDSC alleged to be owed by Steven was – as it properly should have been – pled and always treated as separate from the debt allegedly owed by Mark and Lynda.

112.    The Customers' counsel received the Award on the afternoon of June 20, 2005.

### Grounds for Vacation or Modification of Award

**Count I**
**Award Exceeding Powers of Panel**
**(9 U.S.C. § 10(a)(4) & Mass. Gen. L. c. 251, § 12(a)(3))**

113.    The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 112 of the Customers' Counterclaims.

114.    The Federal and Massachusetts Arbitration Acts permit this Court to make an order vacating the Award if it concludes that "the arbitrators exceeded their powers."

115.    Although no statute, common law rule, agreement between the Customers and Brokers, or NASD rule incorporated into such an agreement gave the Panel the power to do so under the circumstances of this Arbitration, the Panel:

    a.    Dismissed with prejudice the Customers' counterclaims and third party claims;

    b.    Granted KDSC's putative "oral motion to conform the pleadings to the proof"; and

    c.    Held the Customers "jointly and severally liable" for the so-called "compensatory damages" the Panel awarded.

116.    The Customers are therefore entitled to an order vacating the Award.

13-004-001

**Count II**
**Refusal to Hear Material Evidence**
**(9 U.S.C. § 10(a)(3) & Mass. Gen. L. c. 251, § 12(a)(4))**

117.    The Customers repeat and reallege, as if fully set forth in this

paragraph, the averments set forth in paragraphs 1 through 116 of the Customers'

Counterclaims.

118.    The Federal and Massachusetts Arbitration Acts permit this Court to

make an order vacating the Award if it concludes that the Panel refused to hear

evidence material to the controversy or otherwise conducted the Arbitration hearing

in such a way as to prejudice the rights of the Customers.

119.    The Panel refused to hear the following material evidence:

    a.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated Sections 7, 9 and 10(b) of the Securities Act of 1934;

    b.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated the Florida Securities Transactions Act;

    c.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated the Massachusetts Uniform Securities Act;

    d.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated the NASD's own Business Conduct Standards;

    e.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers engaged in common law fraud;

    f.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers were unjustly enriched;

    g.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers converted their property;

13-004-001

h.     Evidence necessary to ensure a fair and complete hearing on the Customers' claim that KDSC breached its contracts with them;

i.     Evidence necessary to ensure a fair and complete hearing on the Customers' claim that Kashner, Meister and Varchetto violated the Racketeer Influenced and Corrupt Organizations Act;

j.     Evidence necessary to ensure a fair and complete hearing on the Customers' claim that KDSC abused the NASD's process;

k.     Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers violated the Massachusetts Consumer Protection Act;

l.     Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers violated the Florida Consumer Protection Act;

m.     Evidence relevant to the Customers' counterclaims and third party claims, insofar as such evidence was necessary to establish the circumstances under which the alleged margin debts were incurred.

120.   The Panel otherwise prejudiced the rights of the Customers by:

a.     Conducting a hearing in which KDSC sought to establish alleged margin debts owed by the Customers without affording them a fair and complete opportunity to establish how the Brokers' malfeasance had given rise to those alleged debts;

b.     Depriving the Customers of a forum in which they would have a fair and complete opportunity to present their claims and defenses;

c.     Refusing to compel KDSC to produce to the Customers information concerning their claims and defenses which the NASD itself deemed "presumptively discoverable" in such cases;

d.     Failing to enforce its own order compelling KDSC to produce information to the Customers;

13-004-001

    e.    Purporting to dispose of third party claims concerning which the Customers' agreement to arbitrate was subject to the proviso that they be "afforded a fair and complete opportunity to obtain adjudication of their claims and defenses" but without fulfilling that condition precedent;

    f.    Failing to rule promptly (or, in some instances, at all) on pre-hearing motions made by the Customers;

    g.    Failing to hold the pre-hearing conference requested by the Customers on May 11, 2005;

    h.    Presenting the Customers with the "Hobson's Choice" of abetting the unauthorized practice of law by the Brokers' counsel or defaulting in the Arbitration; and

    i.    Placing its imprimatur on the "sandbagging" strategy of the Brokers and their counsel.

121.    The Customers are therefore entitled to an order vacating the Award.

## Count III
## Award Procured by Undue Means
## (9 U.S.C. § 10(a)(1) & Mass. Gen. L. c. 251, § 12(a)(1))

122.    The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 121 of the Customers' Counterclaims.

123.    The Federal and Massachusetts Arbitration Acts permit this Court to make an order vacating the Award if it concludes that the award was procured by "undue means."

124.    The Award in this case was procured by the following undue means:

    a.    KDSC's false allegations in its Statement of Claim that it was a party to the margin agreements at issue, 9 months of muteness while the Customers challenged its standing, and (after all witnesses had finished testifying in the Arbitration hearing) "sandbagging" the Customers with a document purporting to assign to KDSC the putative claims of the real party in interest;

13-004-001

b.    KDSC's abandonment of its Statement of Claim after the evidence was closed and concomitant oral motion to conform that pleading to the evidence adduced during the hearing;

c.    The Brokers' abetting the unauthorized practice of law by their counsel, who – unencumbered by the Massachusetts Rules of Professional Conduct or any need to preserve his standing in the local legal community – effectuated KDSC's "sandbagging" strategy;

d.    KDSC's failure to cooperate, as required by Rule 10321 of the NASD Code, "to the fullest extent practicable in the voluntary exchange of documents and information" to expedite the Arbitration and its failure to "endeavor to resolve disputes" concerning discovery before necessitating motion practice;

e.    KDSC's failure to produce documents in its possession or control as directed by the Panel pursuant to the NASD Code of Arbitration Procedure; and

f.    KDSC's failure to serve the Customers with copies of documents they intended to present as evidence at least 20 days prior to the hearing.

125.    The Customers are therefore entitled to an order vacating the Award.

**Count IV**
**Manifest Disregard of the Law**

126.    The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 125 of the Customers' Counterclaims.

127.    This Court is permitted to make an order vacating the Award if it concludes that the Panel acted in "manifest disregard of the law."

128.    In the following instances, the Panel "recognized the applicable law – and then ignored it":

13-004-001

a.   The dismissal with prejudice of the Customers' counterclaims and third-party claims, despite the plain language of Rule 10305 in the NASD's Code of Arbitration Procedure, which only permits dismissal with prejudice under circumstances not present in the Arbitration;

b.   The refusal to stay the Arbitration or disqualify the Brokers' counsel pending determination by the SJC of the "unauthorized practice of law" issues certified by the Chief Judge of this Court – especially after the Panel had been informed that the NASD had itself taken the position that the ability of a foreign attorney to participate in a hearing is for determination by the courts of the forum state; and

c.   The Panel chairman's refusal to compel KDSC to produce information specified as "presumptively discoverable" in the NASD's Discovery Guide.

129.   The Customers are therefore entitled to an order vacating the Award.

**Count V**
**Refusal to Postpone Hearing**
**(9 U.S.C. § 10(a)(3) & Mass. Gen. L. c. 251, § 12(a)(4))**

130.   The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 129 of the Customers' Counterclaims.

131.   The Federal and Massachusetts Arbitration Acts permit this Court to make an order vacating the Award if it concludes that the Panel refused to postpone the Hearing "upon sufficient cause."

132.   The Panel refused to postpone the hearing pending determination of the "unauthorized practice of law" issues certified to the SJC by the Chief Judge of this Court, and the unsettled nature of those issues constituted "sufficient cause" for postponement.

133.   The Customers are therefore entitled to an order vacating the Award.

13-004-001

**Count VI**
**No Agreement To Arbitrate**
**Issues Addressed In Award**
**(Mass. Gen. L. c. 251, § 12(a)(5))**

134.    The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 133 of the Customers' Counterclaims.

135.    The Massachusetts Arbitration Act permits this Court to vacate the Award if there was no arbitration agreement and the Customers did not participate in the hearing without objecting to that agreement.

136.    In this case, the Customers agreed to arbitrate disputes between them and KDSC (to the extent such claims are lawfully arbitrable), but the Customers' Submission Agreement – their only agreement to arbitrate the third party claims against Kashner, Meister and Varchetto – was subject to the proviso that they be afforded a "fair and complete opportunity to obtain adjudication of their claims and defenses."

137.    The "fair and complete" adjudication proviso in the Customers' Submission Agreement was not satisfied.

138.    Furthermore, neither Meister nor Varchetto executed an agreement submitting the third party claims to arbitration, so – even if the Customers had been afforded a "fair and complete opportunity to obtain adjudication of their claims and defenses" – there was no meeting of the minds concerning arbitrability of the third party claims against Meister and Varchetto.

13-004-001

139.    At and before the hearing, the Customers objected to the Panel's intention to dispose of the third party claims against Kashner, Meister and Varchetto.

140.    The Customers are therefore entitled to an order vacating the Award to the extent it purported to dispose of their third party claims.

## Count VII
## Correction of Errors
## (9 U.S.C. § 11 & Mass. Gen. L. c. 251, § 13)

141.    The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 140 of the Customers' Counterclaims.

142.    The Federal and Massachusetts Arbitration Acts permit this Court to modify or correct the Award if it is somehow imperfect in a manner that does not affect the merits of the controversy.

143.    The Award contains at least two such errors that should be corrected if the Award is not vacated altogether for any of the reasons claimed in Counts I through VI of the Customers' Counterclaims:

   a.    The Award states that the Customers executed a "Uniform Submission Agreement" but the record establishes that they did not.  Instead, the Customers executed a Submission Agreement expressly conditioning their assent to arbitrate on their being "afforded a fair and complete opportunity to obtain adjudication of their claims and defenses."

   b.    The Award holds the Customers "jointly and severally liable" for compensatory damages in the amount of $421,000.00, but the Arbitration actually arose from distinct margin accounts alleged by KDSC – one involving Steven, and the other involving Mark and Lynda – and any compensatory damages ultimately included in the Award should be allocated to the appropriate parties.

13-004-001

WHEREFORE, for the reasons set out above, the Customers respectfully request that the Court

    a.    Either:

           i.    Vacate the Award, direct a rehearing of KDSC's claims against the Customers by a new panel of arbitrators, order those arbitrators to afford the Customers fair and complete discovery and a fair and complete hearing concerning their counterclaims against KDSC (to the extent arbitration of such counterclaims is mandatory), and leave the Customers to their judicial remedies concerning the counterclaims and third party claims of which arbitration is not mandatory; or

          ii.    Correct or modify the Award as prayed for in Count VII of the Customers' Counterclaims; and

    b.    Grant such other relief as the Court deems necessary and just.

**TO THE EXTENT ANY ISSUE MAY BE TRIED BY A JURY, THE CUSTOMERS DEMAND SUCH A TRIAL.**

Respectfully submitted,

STEVEN MSCISZ,
MARK MSCISZ & LYNDA MSCISZ

By their attorney,

*/s/ William P. Corbett, Jr.*
_____
William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
  *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated:  August 8, 2005

13-004-001

# *Exhibit A*

THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.
ARBITRATION DEPARTMENT

| | |
|---|---|
| In the Matter of the Arbitration Between:<br><br>KASHNER DAVIDSON SECURITIES CORP.,<br><br>    *Claimant/Respondent in Counterclaim,*<br><br>                v.<br><br>STEVEN MSCISZ, MARK MSCISZ, and<br>LYNDA MSCISZ,<br><br>    *Respondents/Counterclaimants.*<br><br>                v.<br><br>VICTOR KASHNER, MATTHEW MEISTER and<br>TIMOTHY VARCHETTO,<br><br>    *Third Party Respondents.* | NASD DISPUTE RESOLUTION NO. 04-03793 |

## SUBMISSION AGREEMENT

1.      Provided that they are afforded a fair and complete opportunity to obtain adjudication of their claims and defenses, the undersigned parties hereby submit the present matter in controversy, as set forth in the statement of claim, answers, cross claims and all related counterclaims and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

2.      The undersigned parties hereby state that their attorney has read and explained to them the procedures and rules of the sponsoring organization relating to arbitration.

3.      Provided that they are afforded a fair and complete opportunity to obtain adjudication of their claims and defenses, the undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s), and that the arbitration will be conducted in accordance with the Constitution, By-Laws, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

4.  Provided that they are afforded a fair and complete opportunity to obtain adjudication of their claims and defenses, the undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5.  The undersigned parties reserve their right to seek adjudication of their claims and defenses in a court of competent jurisdiction if the sponsoring organization does not afford them a fair and complete opportunity to obtain such an adjudication.

IN WITNESS WHEREOF, the parties hereto have signed and acknowledged the foregoing Submission Agreement.

STEVEN MSCISCZ                    8/26/04
                                  Date

MARK MSCISCZ                      8/26/04
                                  Date

LYNDA MSCISCZ                     8/26/04
                                  Date

**CERTIFICATE OF SERVICE**

I hereby certify that on this twenty-sixth day of August, 2004, I caused a copy of the foregoing document to be served by overnight mail upon the attorney of record for Kashner Davidson Securities Corporation.

William P. Corbett, Jr.

- 2 -