UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

)
KASHNER DAVIDSON SECURITIES CORP.,      )
                                        )
    *Plaintiff/Defendant-in-Counterclaim*      )
                                        )
    v.                                  )
                                        )
STEVEN MSCISZ, MARK MSCISZ & LYNDA MSCISZ,  )
                                        )    Case No. 05-CV-11433-JLT
    *Defendants/Plaintiffs-in-Counterclaim*   )
                                        )
    v.                                  )
                                        )
VICTOR KASHNER, TIMOTHY VARCHETTO &      )
MATTHEW MEISTER,                         )
                                        )
    *Defendants-in-Counterclaim*            )
_____ )

**STATEMENT OF REASONS SUPPORTING
CUSTOMERS' MOTION TO STAY ACTION
<u>AND FOR PROTECTIVE ORDER</u>**

Pursuant to Local Rule 7.1, the defendants/plaintiffs-in-counterclaim, Steven Mscisz, Mark Mscisz and Lynda Mscisz ("Customers") submit this memorandum setting forth the reasons why the Court should grant the Customers' Motion to Stay Action and for Protective Order ("Motion"). In sum, well-established principles of abstention require this Court to defer ruling on potentially-dispositive issues of Massachusetts law until such time as the Supreme Judicial Court for the Commonwealth of Massachusetts issues its rescript in *Steven Mscisz,* et al., *v. Kashner Davidson Securities Corporation,* et al., Case No. SJC-09529 ("Appeal"). In further support of the Motion, the Customers state the following:

1.      This action arises from an award issued by an arbitration panel of NASD Regulation, Inc. after a defective and manifestly unfair pre-hearing and hearing process.  Despite the fundamental flaws in the process and award, KDSC and the Brokers urge the Court to enforce the award.  With their counterclaims (DE #11 at 7-35), the Customers petition this Court to vacate the award.

2.      In February 2005 – nearly four months before the award was issued, the Customers, plaintiff/defendant-in-counterclaim, Kashner Davidson Securities Corporation ("KDSC"), defendants-in-counterclaim Victor Kashner, Timothy Varchetto and Matthew Meister ("Brokers"), and counsel for KDSC and the Brokers became enmeshed in litigation before the Massachusetts Supreme Judicial Court ("SJC").  More specifically, concerned that counsel for KDSC and the Brokers would engage in the unauthorized practice of law if permitted to conduct the arbitration hearing in Boston, the Customers sought several species of declaratory relief from a single justice of the SJC.

3.      The SJC single justice (Cordy, J.) denied the Customers' request for declaratory relief, and the Customers filed the Appeal.  When presented with a motion for an injunction pending the Appeal, Justice Cordy conspicuously declined to address its merits, instead holding that "[w]hether the plaintiffs are likely to succeed on appeal is not for me to decide."  (Attachment #1 at 2)

4.      KDSC and the Brokers subsequently moved to dismiss the Appeal, but another single justice of the SJC (Cowin, J.) denied that motion.  (Attachment #2 at 4)  Justice Cowin noted in denying the motion that the core unsettled issue in the Appeal – "whether the Commonwealth recognizes an arbitration exception to the prohibition against the unauthorized practice of law" – represents "a significant question of law that merits consideration" by the full SJC.  (*Id.* at 3-4)

5.      As discussed more fully below, the outcome of the Appeal will bear heavily on the course – or dispose altogether – of the captioned action.

6.      Both factions have filed their main briefs in the Appeal.  Pages 34 through 39 of the Customers' brief (Attachment #3) and pages 23 through 27 of the brief filed for KDSC, the Brokers and their counsel (Attachment #4) make clear that issues of Massachusetts law to be decided by the SJC in the Appeal are inextricably intertwined with issues raised in Counts II, III, IV and V of the Customers' counterclaims in the captioned action (DE #11 at 28-32).

7.      For example, if the SJC rules that the arbitrators should have postponed the arbitration hearing pending resolution of the Appeal, and that Mass. Gen. L. 251, § 12(a)(4) therefore requires vacation of the award, its decision would be *res judicata,* and this Court would have no option other than to vacate the award, as prayed for in Count V of the counterclaims.

8.      Similarly, Count III of the counterclaims alleges, in pertinent part, that the Brokers' abetting the unauthorized practice of law by their counsel was an "undue means" precluding enforcement of the award, as provided by Mass. Gen. L. 251, § 12(a)(1).  The SJC's treatment of this issue also could be dispositive of the captioned action.

9.      Furthermore, the Customers assert in Count IV of their counterclaims that the arbitrators manifestly disregarded the law concerning the "unauthorized practice of law" issues now before the SJC – alleging that the panel recognized the existence of such a prohibition but nonetheless chose to ignore it.  The SJC's decision also could bear upon this issue.

10.    The Court of Appeals for the First Circuit has made clear that this Court has the inherent power to stay an action to confirm or vacate an arbitration award under circumstances like these:

> Ordinarily there could be no doubt that a court, although obliged to decide a claim, would retain discretion to defer proceedings for prudential reasons.  Indeed, a typical reason is the pendency of a related proceeding in another tribunal.  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

*Hewlett-Packard Co., Inc. v. Berg,* 61 F.3d 101, 105 (1st Cir. 1995) (quoting *Landis v. North. Amer. Co.,* 299 U.S. 248, 254 (1936)).

11.    Such a stay and the concomitant abstention from deciding unsettled issues of Massachusetts law would preserve the comity that has been a hallmark of the relations between this Court and the Commonwealth's judiciary.  Indeed, it is well-established that abstention is particularly appropriate in cases like this – "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."  *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814 (1976).  "From the standpoint of federalism and comity," there would be "something particularly offensive about hijacking a case that is pending on the docket of a state's highest tribunal."  *Cruz v. Melecio,* 204 F.3d 14, 25 (1st Cir. 2000).  Such is particularly true in this case, which involves the SJC's "inherent power over the bar" – a matter peculiarly within the province of local courts. *Romany v. Colegio de Abogados de Puerto Rico,* 742 F.2d 32, 42-43 (1st Cir. 1984).  Accordingly, "[i]n the interest of comity," this Court should retain jurisdiction over this action, but stay the proceedings pending resolution of the Appeal.  *Currie v. Group Ins. Comm'n,* 290 F.3d 1, 3 (1st Cir. 2002).

12.    Judicial economy also would be served by such a stay.  Because the SJC's opinion in the Appeal "may substantially, perhaps even fully, answer certain questions of state law in a way that will permit easy answers, relatively speaking," to the issues of Massachusetts and Federal law pending in this action, abstention "has great appeal" here.  *Kartell v. Blue Shield of Massachusetts, Inc.,* 592 F.2d 1191, 1193-94 (1st Cir. 1979).  It would be "a wise and productive discharge" of this Court's power to manage its docket for it to await determination of the potentially-dispositive Massachusetts law issues "from the only tribunal empowered to speak definitively" thereupon.  *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 29 (1959).

13.    Furthermore, because the decision of the SJC may significantly limit – if not eliminate altogether – the need for discovery, it would be unduly burdensome to require the Customers to assemble and produce the information mandated by the Court's August 29, 2005 Discovery Order (DE #13), or otherwise engage in discovery that could be rendered moot.  *See Data General Corp. v. Southwest Research Inst.,* 1988 U.S. Dist. LEXIS 4832 at *12 (D. Mass.) (McNaught, J.) (staying discovery pending decision on motion to dismiss or transfer action).

14.    Any delay inherent in the requested stay should be minimal.  Both factions' main briefs have been filed, and the Customers estimate that the Appeal will be orally argued in November 2005 and finally resolved in early 2006.  The judicial economy and comity to be achieved by waiting those few months certainly outweighs any cries of "delay" KDSC and the Brokers might make – especially since prejudgment interest would fully compensate KDSC for the time value of the award amount, if the award were ultimately enforced by this Court.

WHEREFORE, the Customers respectfully request that the Court stay the captioned action pending resolution of the Appeal, and that the Court issue a protective order excusing the Customers from producing the information specified in the August 29, 2005 Discovery Order or otherwise engaging in discovery until the Appeal is decided.

STEVEN MSCISZ,
MARK MSCISZ &
LYNDA MSCISZ,

By their attorney,

*/s/ William P. Corbett, Jr.*

William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
  *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated:  September 16, 2005

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPREME JUDICIAL COURT
                                               FOR SUFFOLK COUNTY
                                               No.  SJ-2005-0088


STEVEN MSCISZ, MARK MSCISZ and LYNDA MSCISZ

vs.

KASHNER DAVIDSON SECURITIES CORP., VICTOR KASHNER,
MATTHEW MEISTER, TIMOTHY VARCHETTO, MARC J. ROSS,
RICHARD J. BABNICK, JR., and SICHENZIA ROSS FRIEDMAN FERENCE LLP


MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS'
EMERGENCY APPLICATION FOR INJUNCTION PENDING APPEAL


The plaintiffs filed a complaint seeking declaratory and injunctive relief on February 25, 2005.  Counsel for the plaintiffs withdrew the request for injunctive relief prior to a hearing on the complaint.

On May 6, 2005, I denied the complaint which sought among other things, a declaration that an out-of-state attorney could not properly represent his longstanding client in an arbitration proceeding scheduled by the National Association of Securities Dealers to convene in Massachusetts.  The plaintiffs have filed an appeal of my ruling denying declaratory relief, and, simultaneously have filed a motion for an injunction pursuant to Mass.R.Civ.P. 62 (c) and Mass.R.App.P. 6(a) seeking to enjoin the out-of-state counsel from representing their clients in the arbitration proceeding currently scheduled for May 17, 2005,

pending the outcome of the appeal.  The motion for an injunction is DENIED for the following reasons:

To succeed in their action for an injunction, the plaintiffs must show:  (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the preliminary injunction; and (3) that, on balance, the risk of irreparable harm viewed in light of the likelihood of success on the merits outweighs the potential harm to the defendant in granting the injunction.  Package Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).  Tri-Nel Mgmt. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2000).  See also Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1980).

Whether the plaintiffs are likely to succeed on appeal is not for me to decide.  I conclude, however, that the plaintiffs have failed to show that any harm, let alone irreparable harm, will result if injunctive relief is denied.  On the other side of the equation lies the important public interest in the efficient and unimpeded arbitration of disputes, an interest that will be harmed if this arbitration is further delayed.

Accordingly, the motion for an injunction is DENIED.

Robert J. Cordy
Associate Justice

Entered:  May 12 , 2005

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                          SUPREME JUDICIAL COURT
                                     FOR SUFFOLK COUNTY
                                     NO.   SJ-2005-M002

                                     TRIAL COURT NO: SJ-2005-0088

STEVEN MSCISZ, MARK MSCISZ, and LYNDA MSCISZ

v̲s̲.

KASHNER DAVIDSON SECURITIES CORP., VICTOR KASHNER, MATTHEW
MEISTER, TIMOTHY VARCHETTO, MARC J. ROSS, RICHARD J. BABNICK JR.,
and SICHENZIA ROSS FRIEDMAN FERENCE LLP

## MEMORANDUM OF DECISION AND ORDER

This matter came before me as single justice on an order of
reference from the full court.  In earlier proceedings, the
plaintiff-appellants sought a declaratory judgment from another
single justice of this court stating that the defendants-
appellees' out-of-state lawyers would engage in the unauthorized
practice of law if they represented their clients at an upcoming
arbitration hearing in Massachusetts.  The single justice denied
appellants' petition for relief.  Four days after the issuance of
the single justice's decision, appellants filed a notice of
appeal.  However, appellants paid the requisite docket fee to
have the appeal entered upon the docket only after appellants
received the arbitrator's unfavorable award -- approximately one
month after the time period set forth in Mass. R. A. P. 10 (a)

2

$(1)^1$ for paying the fee had expired.

Appellees now move, under Mass. R. App. P. 10 (c),[2] to dismiss the appellants' appeal of the single justice's decision on the ground that appellants failed to make timely payment of the docket fee. Pursuant to Rules 2, 10 (a) (1) and 14 (b), of the Mass. R.A.P., appellants move to enlarge until June 24, 2005 the time for docketing their appeal. After review of the papers, and for the reasons set forth below, the appellees motion to dismiss is denied and the appellants motion to enlarge is allowed.

By failing to pay the filing fee until after receipt of the adverse arbitration award, appellants essentially filed their notice of appeal as a mere option to take an appeal in the event of an adverse arbitration ruling. "When an appellant files a notice of appeal he must treat that step as something more than taking out an option to appeal." <u>Points East, Inc.</u> v. <u>City Council of Gloucester</u>, 15 Mass. App. Ct. 722, 726 (1983). The

---

[1] Mass. R.A.P. 10 (a) (1), provides: "Within ten days after receiving from the clerk of the lower court notice of assembly of the record . . . each appellant . . . shall pay to the clerk of the appellate court the docket fee fixed by law, and the clerk shall thereupon enter the appeal of such appellant or cross-appellant upon the docket."

[2] Mass. R.A.P. 10 (c) provides: "If any appellant in a civil case shall fail to comply with . . . Rule 10 (a) (1) . . . the lower court may, on motion with notice by any appellee, dismiss the appeal, but only upon a finding of inexcusable neglect; otherwise, the court shall enlarge the appellant's time for taking the required action.

3

appellants' assertion that their delay was necessary because "the appeal was not justiciable at the time specified for its docketing" rings hollow.  The delay constituted a purposeful refusal to comply with the rules for appellants' own benefit rather than "excusable neglect," as we have recognized that concept.  See <u>Mailer</u> v. <u>Mailer</u>, 387 Mass. 401, 406 (1982); <u>Feltch</u> v. <u>General Rental Co.</u>, 383 Mass. 603, 613-614 (1981), and cases cited.

However, pursuant to Mass. R. A. P. 10 (c), the decision whether to dismiss the appeal, is committed to the court's discretion.  See Mass. R. A. P. 10 (c) ("lower court <u>may</u> . . . dismiss appeal") (emphasis added); <u>Doten</u> v. <u>Doten</u>, 395 Mass. 135, 140 (1985).  I choose not to exercise my discretion to dismiss this appeal for two reasons.  First, I find no evidence in the record that the relatively minimal delay of approximately one month occasioned by the late payment has resulted in any material prejudice to the appellees.  See <u>Mailer</u> v. <u>Mailer</u>, <u>supra</u> ("an appeal should not be dismissed for failure to follow the rules of appellate procedure if the procedural error . . . does not materially prejudice the appellee").  To the extent the arbitration award has been frustrated or delayed, that is largely the result of appellants' appeal of the arbitration award to the U.S. District Court, rather than the appeal of the single justice order that is the subject of the instant motions.  Second, the

4

issue presented in the appellants' appeal -- whether the Commonwealth recognizes an arbitration exception to the prohibition against the unauthorized practice of law -- is a significant question of law that merits consideration by this court.  Because I find dismissal inappropriate in the circumstances of this case, I allow the motion to enlarge the appellants' time for paying the docket fee until June 24, 2005. See Mass. R. A. P. 10 (c).

For the foregoing reasons, it is ORDERED that the defendants-appellees' motion to dismiss be denied and the plaintiffs-appellants' motion to enlarge the time for docketing the appeal until June 24, 2005 be allowed.

By the Court

Judith A. Cowin
Associate Justice

Entered: August 3l , 2005

SUPREME JUDICIAL COURT
FOR THE
COMMONWEALTH OF MASSACHUSETTS

Case No. SJC-09529

_____

STEVEN MSCISZ,
MARK MSCISZ & LYNDA MSCISZ,

*Appellants*

*v.*

KASHNER DAVIDSON SECURITIES CORP.,
VICTOR KASHNER, MATTHEW MEISTER,
TIMOTHY VARCHETTO, MARC J. ROSS,
RICHARD J. BABNICK, JR. &
SICHENZIA ROSS FRIEDMAN FERENCE LLP,

*Appellees*

_____

*ON APPEAL FROM JUDGMENT OF THE*
*SUPREME JUDICIAL COURT FOR SUFFOLK COUNTY*
_____

**BRIEF OF APPELLANTS**

William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
*A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

*Attorney for Appellants*

Dated:  August 3, 2005

*TABLE OF CONTENTS*

*TABLE OF CONTENTS*                                          i

*TABLE OF AUTHORITIES*                                     iii

*INTRODUCTION*                                              1

*STATEMENT OF ISSUES PRESENTED FOR REVIEW*                 2

*STANDARD OF REVIEW*                                        3

*STATEMENT OF THE CASE*                                     3

*STATEMENT OF FACTS*                                        9

*SUMMARY OF ARGUMENT*                                       9

*ARGUMENT*                                                 10

I.    THE CONDUCT OF ARBITRATION HEARINGS BY OUT-OF-
      STATE ATTORNEYS IS NOT AUTHORIZED UNDER
      MASSACHUSETTS LAW.                                   13

      A.   *To Conduct An Arbitration Hearing Is To
           "Practice Law."*                                16

      B.   *There Is No "Arbitration Exception" To
           The Proscription Against The Unauthorized
           Practice Of Law.*                               19

           1.   The Single Justice Approached The
                "Unauthorized Practice Of Law" Issue
                From The Wrong Perspective.                 20

           2.   The Single Justice Mistakenly
                Assumed That The Prohibition Against
                The "Unauthorized Practice Of Law"
                Only Benefits Massachusetts Clients.        25

II.   THE DECLARATORY JUDGMENT ACT REQUIRED FAITHFUL
      ADHERENCE TO MASS. R. PROF. C. 5.5.                  27

III.  THE SINGLE JUSTICE SHOULD HAVE ADDRESSED ALL
      ISSUES ON WHICH DECLARATIONS WERE SOUGHT.           34

A.    *An Attorney May Not Turn A Blind Eye To The Unauthorized Practice Of Law.*    35

B.    *The Arbitrators Should Have Postponed The Hearing Until Resolution Of The Unauthorized Practice Of Law Issues.*    36

C.    *An Arbitration Award Must Be Vacated If It Was The Product Of A Hearing Conducted By Lawyers Not Authorized To Do So.*    38

*CONCLUSION*    39

# TABLE OF AUTHORITIES

## *Cases*

Baldassari v. Public Fin. Tr.,
369 Mass. 33 (1975)                                    32

Bates v. Superior Court,
432 Mass. 1021 (2000)                                  28

Birbrower, Montalbano, Condon & Frank, P.C.
v. Superior Court, 17 Cal. 4th 119,
cert. denied, 525 U.S. 920 (1998)          22, 32, 33

Board of Selectmen of Truro v. Outdoor
Advertising Bd., 346 Mass. 754 (1964)                  30

Cambridge Trust Co. v. Hanify & King, P.C.,
430 Mass. 472 (1999)                                   33

Cepulonis v. Commonwealth,
443 Mass. 1019 (2005)                                   3

Ciszewski v. Industrial Accident Board,
367 Mass. 135 (1975)                                   34

City of Everett v. Local 1656, IAFF,
411 Mass. 361 (1991)                                   29

                                                        5,
Collins v. Godfrey, 324 Mass. 574 (1949)     29, 32, 39

Colmar, LTD v. Fremantlemedia North
America, Inc., 344 Ill. App. 3d 977 (2003)             33

Commonwealth v. Rahim, 441 Mass. 273 (2004)            19

Connecticut Valley San. Waste Disp. v.
Zielinski, 436 Mass. 263 (2002)                        36

DiLuzio v. United Electrical, Radio & Mach.
Workers of Am., 391 Mass. 211 (1984)                5, 20

Essex Co. v. Goldman, 357 Mass. 427 (1970)             34

Florida Bar v. Rapoport, 845 So.2d 874,
cert. denied, 540 U.S. 967 (2003)                  22, 33

Goldfarb v. Virginia State Bar,
421 U.S. 773 (1975)                                    26

Haddad v. Gonzalez, 410 Mass. 855 (1991)              32

In re Chimko, 2005 Mass. LEXIS 422
(July 22, 2005)                              16, 17, 32

In re Lucas, 317 B.R. 195 (D. Mass. 2004)            25

In re Lyon, 301 Mass. 30 (1938)              14, 17, 18

In re Maclub of America, Inc.,
295 Mass. 45 (1936)                                   26

In re Shoe Manuf. Prot. Ass'n,
295 Mass. 369 (1936)                             14, 18

Jean W. v. Commonwealth,
414 Mass. 496 (1993)                                  13

Kartell v. Blue Shield of Mass., Inc.,
592 F.2d 1191 (1st Cir. 1979)                        12

Keene v. Brigham & Womens' Hosp.,
439 Mass. 223 (2003)                                 30

Kilroy v. O'Connor, 324 Mass. 238 (1949)             34

LeBlanc v. Friedman, 438 Mass. 592 (2003)            13

Leis v. Flynt, 439 U.S. 438 (1979)                   21

Lowell Bar Ass'n v. Loeb,
315 Mass. 176 (1943)                          5, 16, 18

Marino v. Tagaris, 395 Mass. 397 (1985)              39

Massachusetts Hwy Dep't v. Perini Corp.,
444 Mass. 366 (2005)                                  8

McInerney v. Lally, 384 Mass. 810 (1981)             39

National Shawmut Bank v. Morey,
320 Mass. 492 (1946)                                 11

<u>Opinion of the Justices</u>,
279 Mass. 607 (1932)                    14, 27, 32

<u>Pazolt v. Director of Div. of Marine
Fisheries</u>, 417 Mass. 565 (1994)              28

<u>Plymouth-Carver Reg. Sch. Dist. v. J.
Farmer & Co.</u>, 407 Mass. 1006 (1990)          36

<u>Romany v. Colegio de Abogados de Puerto
Rico</u>, 742 F.2d 32 (1st Cir. 1984)              11

<u>Superadio L.P. v. Walt "Baby" Love
Productions, Inc.</u>, 62 Mass. App. Ct. 546
(2004), <u>further review granted</u>,
444 Mass. 1106 (2005)                   19

<u>Vesce v. Gottfried</u>, 353 Mass. 568 (1968)      34

<u>Zaltman v. Daris,</u> 331 Mass. 458 (1954)        34

### *Statutes*

Cal. C. Civ. P. § 1282.4(b)               33

G.L. c. 93A, § 9                          32

G.L. c. 221, § 46A                 4, 5, 6, 35

G.L. c. 231, § 114                         7

G.L. c. 231A, § 1                   10, 11, 28

                                        2,
G.L. c. 231A, § 3                   10, 28, 29

G.L. c. 231A, § 5                         31

G.L. c. 231A, § 9                     11, 38

G.L. c. 231A, § 10                         7

G.L. c. 251, § 12                          6

G.L. c. 251, § 12(a)(1)                   38

G.L. c. 251, § 12(a)(4)                                    37, 38

G.L. c. 251, § 12(a)(5)                                        5

G.L. c. 251, § 12(c)                                          38

### *Court Rules*

Mass. R. App. P. 4(a)                                         7

Mass. R. Prof. C. 3.3                                        26

Mass. R. Prof. C. 3.4                                        26

Mass. R. Prof. C. 3.5                                        27

Mass. R. Prof. C. 3.6                                        27

Mass. R. Prof. C. 3.7                                        27

Mass. R. Prof. C. 3.8                                        27

Mass. R. Prof. C. 3.9                                        27

Mass. R. Prof. C. 4.1                                        27

Mass. R. Prof. C. 4.2                                        27

Mass. R. Prof. C. 4.3                                        27

Mass. R. Prof. C. 4.4                                        27

                                                         12, 13,
                                                      15, 21, 23,
                                                      25, 26, 27,
Mass. R. Prof. C. 5.5                                 30, 31, 32

                                                          1, 2, 4,
                                                          5, 6, 10,
                                                        29, 31, 33,
Mass. R. Prof. C. 5.5(a)                              34, 35, 40

Mass. R. Prof. C. 5.5(b)                               4, 5, 35

Mass. R. Prof. C. 6.1                                        27

Mass. R. Prof. C. 6.2                                        27

Mass. R. Prof. C. 6.3                               27

Mass. R. Prof. C. 6.4                               27

Mass. R. Prof. C. 8.1                               27

Mass. R. Prof. C. 8.2                               27

Mass. R. Prof. C. 8.3                               27

Mass. R. Prof. C. 8.4                               27

Mass. R. Prof. C. 8.4(a)                       4, 5, 35

Mass. R. Prof. C. 8.5                               27

### *Secondary Materials*

ABA Mod. R. Prof. C. 5.5                      23, 24, 25

Borchard, <u>Declaratory Judgments</u> (1941)        29

Gillers, "Lessons from the Multijuris-
dictional Practice Commission:  The Art of
Making Change", 44 ARIZ. L. REV. 685 (2002)        22

Page Intentionally Left Blank

*INTRODUCTION*

This appeal is one of a trio currently before (or recently decided by) this Court, where the parameters of its prohibition against the unauthorized practice of law, in this era of increasing multijurisdictional practice, have come into sharp focus.  In re Chimko, Case No. SJC-09388, was decided on July 22, 2005.  Two days earlier, this Court granted further appellate review in Superadio L.P. v. Walt "Baby" Love Productions, Inc., Case No. SJC-09542.  Like this appeal, which was docketed on June 24, 2005, Chimko and Superadio required this Court to define important aspects of its unauthorized practice of law rule, Mass. R. Prof. C. 5.5(a), and the potential ramifications of such unauthorized activities.

In this case, as discussed more fully below, the single justice abused his direction and clearly erred when he declined to make the declarations sought by appellants Steven Mscisz, Mark Msisz and Lynda Mscisz ("Customers").  The single justice properly determined that the conduct of arbitration hearings constitutes the "practice of law," and that faithful adherence to Mass. R. Prof. C. 5.5(a) would preclude out-of-state attorneys from engaging in such activities.  However,

his conclusion that "strict application" of that Rule "would create too harsh a result" was not a "sufficient reason[]", within the meaning of G.L. c. 231A, § 3, for refusing to render the declaratory judgment requested by the Customers.  Nor were the single justice's reasons for declining to address the other issues framed by the Customers "sufficient." The Judgment should be reversed, and the full Court should make the declarations sought by the Customers.

### *STATEMENT OF ISSUES PRESENTED FOR REVIEW*

1.    Whether the conduct of arbitration hearings by out-of-state attorneys is authorized under the laws of this Commonwealth.

2.    Whether the single justice's belief that faithful adherence to Mass. R. Prof. C. 5.5(a) "would create too harsh a result" was a "sufficient reason[]", within the meaning of G.L. c. 231A, § 3, for refusing to render a declaratory judgment.

3.    Whether the single justice, after refusing to grant a declaratory judgment on the "unauthorized practice of law" issue, could permissibly decline to address the remaining issues on which declarations were sought.

### *STANDARD OF REVIEW*

A denial of declaratory relief by a single justice of this Court is reviewed for error of law or abuse of discretion.  <u>Cepulonis v. Commonwealth</u>, 443 Mass. 1019 (2005).

### *STATEMENT OF THE CASE*

This appeal arises from an arbitration pending before a panel appointed by the dispute resolution subsidiary of the National Association of Securities Dealers, Inc. ("NASD"), a self-regulatory organization which is not a party to this appeal.  App. at 7-8.[1] The arbitration involved three Massachusetts customers, a Florida broker-dealer, and three registered representatives of the broker-dealer who also reside in Florida.  App. at 439.  Originally scheduled to begin on March 2, 2005, the arbitration hearing was postponed until May 17, 2005.  <u>Id</u>. Florida-domiciled appellees Kashner Davidson Securities Corporation, Victor Kashner, Matthew Meister and Timothy Varchetto ("Broker Appellees") indicated that they would be represented at the

---

[1] Citations to specific pages of the record appendix shall take the form "App. at ___."

hearing by New York-based Marc J. Ross, Richard J. Babnick, Jr., and Sichenzia Ross Friedman Ference LLP ("Lawyer Appellees"), none of whom was admitted to practice law in the Commonwealth.  App. at 129.

Believing that the participation of out-of-state lawyers in a Massachusetts arbitration hearing could violate G.L. c. 221, § 46A and Mass. R. Prof. C. 5.5(a), and concerned that their own counsel's participation might constitute knowing assistance of that violation, in violation of Mass. R. Prof. C. 5.5(b) and 8.4(a), the Customers filed in the arbitration a motion to disqualify the Lawyer Appellees or postpone the hearing until after the full Court resolved <u>Chimko</u>.  App. at 22-74.  The Customers filed that motion on December 17, 2004 – more than ten weeks before the date originally scheduled for the arbitration hearing, and five months before the hearing actually began.  <u>Id</u>. at 26.  The Broker Appellees opposed the Customers' motion, and the chairman of the arbitration panel orally denied the Customers' motion on January 31, 2005.  App. at 88. The Customers subsequently sought reconsideration of that decision, but that request was denied orally on March 2, 2005.  <u>Id</u>. at 89.

On February 22, 2005, the Customers commenced a civil action in the Suffolk County session of this Court, seeking binding declarations of:

- Whether a lawyer admitted in another United States jurisdiction, but not Massachusetts, would violate Mass. R. Prof. C. 5.5(a) and G.L. c. 221, § 46A,[2] by representing a party or parties at an arbitration hearing held in this Commonwealth (App. at 16);

- Whether a Massachusetts attorney, by participating in an arbitration hearing held within the Commonwealth where parties are represented by lawyers not licensed to practice in this jurisdiction, would knowingly assist a violation of Mass. R. Prof. C. 5.5(a) and G.L. c. 221, § 46A, in violation of Mass. R. Prof. C. 5.5(b) and 8.4(a) (App. at 17);

- Whether an arbitrator's refusal to postpone the hearing until this Court resolved the "unauthorized practice of law" issue would subject any award issued to vacation under the Uniform Arbitration Act, G.L. c. 251, § 12(a)(5) (App. at 18); and

---

[2] Although the Complaint invoked both Mass. R. Prof. C. 5.5(a) and G.L. c. 221, § 46A (App. at 7-20), Rule 5.5(a) is the substantively operative provision. The cited statute merely complements this Court's Rule "by providing machinery and criminal penalties, but may not extend the privilege of practising law to persons not admitted to practice by the judicial department." Lowell Bar Ass'n v. Loeb, 315 Mass. 176, 179 (1943). It is simply "an expression of policy for the guidance of the judicial department in exercising its constitutional prerogative of controlling the practice of law in the Commonwealth." DiLuzio v. United Electrical, Radio & Mach. Workers of Am., 391 Mass. 211, 215 (1984). Operation of the statute is "in all respects subject to the 'ultimate power of control' of the judiciary." Id. (quoting Collins v. Godfrey, 324 Mass. 574, 576 (1949)).

- Whether an award issued after an arbitration hearing in which attorneys violated Mass. R. Prof. C. 5.5(a) and G.L. c. 221, § 46A would be procured by "undue means" and subject to vacation under the Uniform Arbitration Act, G.L. c. 251, § 12 (App. at 19).

On March 2, 2005, the Customers filed their First Amended Complaint ("Complaint"), which reflected the arbitrators' denial of their motion for reconsideration. App. at 5, 7-85. The case was extensively briefed by the parties (see App. at 123-44, 398-435), who also participated in a telephonic hearing before a single justice of this Court (Cordy, J.) on April 20, 20005.[3]

The pleadings, affidavits, legal memoranda and oral argument revealed no disputed issues of fact material to the declaratory judgment action. It was questions of law that were argued, and each was to some extent intertwined with the "unauthorized practice of law" issue presented in Count I of the Complaint. The Customers urged the single justice to apply Mass. R. Prof. C. 5.5(a) as it is currently written (App. at 403-413), and the appellees essentially urged him to bypass the Court's procedures for amending its Rules of

---

[3] Because of technical glitches associated with the Court's transition to its new facilities at the John Adams Courthouse, no electronic recording or transcript of that hearing was available for inclusion in the record appendix.

Professional Conduct and imply an "arbitration exception" into that Rule.  App. at 129-139.

Five days before the scheduled commencement of the arbitration hearing, the single justice issued a Memorandum of Decision and Judgment ("Judgment") which accepted the Customers' analysis – agreeing that "strict application" of the current rule supported their position – but nonetheless declined to make the declarations they sought because it "would create too harsh a result."  App. at 441, 443.  The Customers had until June 6, 2005 to appeal from the Judgment.  See Mass. R. App. P. 4(a) (notice of appeal must be filed within 30 days of entry of judgment); G.L. c. 231A, § 10 ("orders, judgments, decrees and refusals under this chapter may be reviewed as other orders, judgments and decrees"); G.L. c. 231, § 114 (party aggrieved by final judgment of single justice of SJC may appeal to full Court).  However, they filed their notice of appeal more than three weeks early, on May 10, 2005.  App. at 5. With their notice of appeal, the Customers filed a motion for an injunction pending their appeal, with a supporting memorandum of law.  Id.  Two days later, the same single justice (Cordy, J.) denied the Customers' motion without a hearing.  Id.

For the reasons set forth in Appellants' Memorandum of Points and Authorities Opposing Appellees' "Notice of Motion to Dismiss the Appeal for Failure to Comply With Mass. R.A.P. 10(a)(1)" and Supporting Their Cross-Motion for Enlargement of Time for Docketing Appeal,[4] the Customers did not cause their appeal to be docketed until June 24, 2005.  The "actual controversy" giving rise to the declaratory judgment action had abated, temporarily rendering this appeal moot.  Massachusetts Hwy Dep't v. Perini Corp., 444 Mass. 366, 372 (2005). When the Customers again had a stake in its outcome, they promptly paid this Court's fee, caused the appeal to be docketed, and worked with the appellees to assemble the record appendix.  Despite the Customers' unprompted, diligent efforts to prosecute this appeal, the appellees moved on July 19, 2005 – 25 days after the appellants paid the docket fee and the Clerk of this Court docketed this appeal – for dismissal.  That motion and the Customers' cross-motion to extend the time for docketing the appeal remain undecided.

---

[4] That memorandum was filed in this appeal on July 26, 2005; it is noted as Docket Entry #2.

### STATEMENT OF FACTS

Although the factual issues in the underlying
arbitration were (and remain) vigorously contested,
there was no dispute concerning the operative facts in
the declaratory judgment proceeding:

- The Commonwealth's regulatory framework
  governing the practice of law limits that
  privilege to attorneys licensed by and subject
  to the disciplinary oversight of this Court;

- Appellees Marc J. Ross, Richard J. Babnick,
  Jr., and Sichenzia Ross Friedman Ference LLP (
  "Lawyer Appellees") expressed their intention
  to represent Kashner Davidson Securities Corp.,
  Victor Kashner, Matthew Meister and Timothy
  Varchetto ( "Broker Appellees") at an
  arbitration hearing scheduled to commence in
  Boston beginning on May 17, 2005; and

- None of the Lawyer Appellees is an attorney
  admitted to practice law in this Commonwealth.

App. at 439-440, 8-15, 28, 30, 125-129, 146-148, 153-
156.

### SUMMARY OF ARGUMENT

Though he might have acted with commendable
intentions, the single justice nonetheless abused his
direction and clearly erred when he declined to render
the declaratory judgment sought by the Customers.
After all, the conduct of arbitration hearings
constitutes the "practice of law," and – as the single
justice himself concedes – faithful adherence to Mass.

R. Prof. C. 5.5(a) would preclude out-of-state
attorneys from engaging in such activities within this
Commonwealth.  The single justice's belief that
"strict application" of that Rule "would create too
harsh a result" was not a "sufficient reason[]",
within the meaning of G.L. c. 231A, § 3, for refusing
to render the declaratory judgment requested by the
Customers.  Nor did the single justice specify on the
record "sufficient reasons" for declining to address
the other three issues on which the Customers sought
binding declarations; those unsettled issues were
significant and called out for decision.  The Judgment
should be reversed, and the declarations sought by the
appellants should be rendered by the full Court.

### *ARGUMENT*

The single justice's Judgment did not serve any
of the salutary purposes for which the Commonwealth's
Declaratory Judgment Act was promulgated.  This Court
has concurrent jurisdiction (which it has delegated to
its single justice session) with several departments
of the Trial Court, "on appropriate proceedings," to
"make binding declarations of right, duty, status and
other legal relations sought thereby."  G.L. c. 231A,

§ 1.  The statute is remedial, and the Legislature
mandated that it "be liberally construed and
administered."  Id., § 9.  See National Shawmut Bank
v. Morey, 320 Mass. 492, 496 (1946) (statute "should
be construed liberally").  It exists to "remove, and
to afford relief from" precisely the sort of
"uncertainty and insecurity with respect to rights,
duties, status and other legal relations" precipitated
by the Lawyer Appellees' declared intention to conduct
an arbitration hearing in Boston.  G.L. c. 231A, § 1.

Resolution of the unsettled questions presented
by this case would have terminated the controversy
giving rise to the proceedings, but the Judgment
continued the uncertainty.  As noted in the Customers'
opposition to the appellees' motion to dismiss their
appeal, several questions the single justice declined
to address are at issue in Kashner Davidson Securities
Corp., et al., v. Steven Mscisz, et al., Case No. 05-
cv-11433-JLT (D. Mass.).[5]

---

[5] Once the pleadings are complete and the issues are
fully joined in the Federal litigation, the Customers
will ask the U.S. District Court to abstain from
determining those issues until after this Court
addresses them.  See Romany v. Colegio de Abogados de
Puerto Rico, 742 F.2d 32, 42-43 (1st Cir. 1984) (when
state law questions concern matters "peculiarly within

- 11 -

Nor did the single justice's ultimate conclusion logically follow from the analysis which preceded it. As discussed below, the single justice agreed that the Lawyer Appellees' participation in the arbitration hearing would constitute the "practice of law," and that nothing in the law of this Commonwealth provides that the Lawyer Appellees could do so.  Despite his agreement with the Customers' interpretation of Rule 5.5, the single justice focused on what he perceived as the "harsh" results that would ensue from its enforcement, holding "that the lawyer defendants will not engage in the unauthorized practice of law by representing the broker defendants at this particular arbitration hearing in Massachusetts."  App. at 445.

Perhaps the single justice is correct in his apparent belief that out-of-state attorneys should be allowed to represent parties in securities arbitration hearings held within the Commonwealth, but the governing rule, as currently written, does not permit such activities.  His well-intended but misplaced

---

the province of local courts," Federal courts lean
toward abstention); Kartell v. Blue Shield of Mass.,
Inc., 592 F.2d 1191, 1195 (1st Cir. 1979) (remanding
with instructions to retain jurisdiction and abstain
pending resolution of state law issues).

reasoning is typical of "analyses that result when
courts seek to avoid ... harsh results without
squarely facing the underlying problem." <u>Jean W. v.
Commonwealth</u>, 414 Mass. 496, 511 (1993) (Liacos, C.J.,
concurring).  The Judgment "is an example of a hard
case making bad law." <u>LeBlanc v. Friedman</u>, 438 Mass.
592, 603 (2003) (Cowin, J., dissenting).  It was
abusive of the single justice's discretion and
manifested a clear error of law.

**I.    THE CONDUCT OF ARBITRATION HEARINGS BY OUT-OF-
        STATE ATTORNEYS IS NOT AUTHORIZED UNDER
        MASSACHUSETTS LAW.**

Although the single justice denied the Customers'
petition, he did not disagree with their
interpretation of the governing law.  The single
justice was instead concerned that "strict
application" of Mass. R. Prof. C. 5.5 "would create
too harsh a result."  App. at 443.  Accordingly,
although the single justice agreed that the conduct of
an arbitration is indeed the "practice of law" and
that there is no rule allowing non-Massachusetts
lawyers to conduct such hearings in this Commonwealth,
his concerns about the potential consequences of
faithful application of that rule led him to "conclude

- 13 -

that the lawyer defendants will not engage in the
unauthorized practice of law by representing the
broker defendants at this particular arbitration
hearing in Massachusetts." Id. at 445.

The single justice erred in his legal analysis
and otherwise abused his discretion. It is the
declared policy of this Commonwealth that only members
of its bar should practise law..." In re Lyon, 301
Mass. 30, 35 (1938). As this Court made clear more
than seven decades ago:

> It is indispensable to the administration of
> justice and the interpretation of the laws
> that there be members of the bar of
> sufficient ability, adequate learning and
> sound moral character. This arises from the
> need of enlightened assistance to the
> honest, and restraining authority over the
> knavish, litigant. It is highly important,
> also, that the public be protected from
> incompetent and vicious practitioners, whose
> opportunity for doing mischief is wide.

Opinion of the Justices, 279 Mass. 607 (1932). "Long
experience":

> has demonstrated that such activities cannot
> be carried on with fairness to the public,
> except by those … who are subject to
> professional discipline, and who act under
> the constant sense of professional
> responsibility.

In re Shoe Manuf. Prot. Ass'n, 295 Mass. 369, 372
(1936). That policy is currently manifested in Rule

5.5 of the Massachusetts Rules of Professional Conduct, which provides:

> A lawyer shall not:
>
> (a)  practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or
>
> (b)  assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

As discussed more fully below, it is clear that the conduct of arbitration hearings constitutes the practice of law, that the laws of this Commonwealth limit the practice of law to attorneys admitted by this Court, and that none of the Lawyer Appellees is a member of the Massachusetts Bar.  It is equally true that there is no inherent right of a foreign attorney to conduct an arbitration hearing in a jurisdiction where the lawyer is not admitted to practice law.  Nor are there any binding precedents relieving the Lawyer Appellees from the operation of Mass. R. Prof. C. 5.5. Accordingly, unless this Court affirms the single justice's tacit promulgation of the "arbitration exception" urged by the appellees, the Court must reverse the single justice's Judgment and issue the declaratory judgment requested by the Customers.

### A. To Conduct An Arbitration Hearing Is To "Practice Law."

As this Court recently noted, it is not always "easy to define the practice of law." In re Chimko, 2005 Mass. LEXIS 422 at *13 (July 22, 2005) (quoting Lowell Bar Ass'n, 315 Mass. at 180). However, there could be no *bona fide* dispute, given this Court's many precedents, that the Lawyer Appellees' conduct of an arbitration hearing for the Broker Appellees would constitute the "practice of law." The single justice properly credited the Customers' argument that such activities embody "the practice of law." App. at 441.

That conclusion was not subverted by the Court's response to the first certified question in Chimko, where this Court (in an opinion authored by the same justice whose Judgment is at issue in this appeal) concluded that it was not the "practice of law" for an attorney not admitted in Massachusetts to completing a loan reaffirmation agreement, providing a bankruptcy debtor with a notice of *pro se* reaffirmation, and corresponding with the debtor and Bankruptcy Court using law firm letterhead. 2005 Mass. LEXIS 422 at *2. As the Court properly observed, none of those activities involved "either rendering legal advice to

or soliciting Massachusetts clients, or even engaging
in a legal contest in a Massachusetts forum on behalf
of an out-of-State client." <u>Id</u>. at *20.  Even if the
Court had concluded that any of those activities
constituted the practice of law, "they would be
services falling at the very periphery of such
practice." <u>Id</u>.

    <u>Chimko</u> therefore stands in stark contrast to this
appeal, where the only activity at issue is the Lawyer
Appellees' engagement "in a legal contest in a
Massachusetts forum on behalf of an out-of-State
client" – an activity at the core of the attorney's
professional function.  For purposes of determining
whether the Lawyer Appellees were engaged in the
"practice of law," it is of no consequence that the
legal contest in which they participated was an
arbitration, and not a judicial proceeding.  The
practice of law is not confined to acts performed in
the courts of this Commonwealth or before its judicial
officers.  <u>Lyon</u>, 301 Mass. at 34.  It is well-
established that:

> in general the practice of directing and
> managing the enforcement of legal claims and
> the establishment of the legal rights of
> others, where it is necessary to form and to
> act upon opinions as to what those rights
> are and as to the legal methods which must
> be adopted to enforce them, the practice of
> giving or furnishing legal advise as to such
> rights and methods and the practice, as an
> occupation, of drafting documents by which
> such rights are created, modified,
> surrendered or secured are all aspects of
> the practice of law.

Shoe Manuf. Prot. Ass'n, 295 Mass. at 372.  Because an

arbitration hearing necessarily involves "the

examination of statutes, judicial decisions, and

departmental rulings" and the rendering of opinions

thereon, its conduct is "part of the practice of law

in which only members of the bar may engage."  Lowell

Bar Ass'n, 315 Mass. at 183.  When an unauthorized

person does acts "similar to and concurrent with those

done in relation to proceedings in State courts ..."[6]

the resulting evils are the same and reach into the

community in the same way as if the subject matter

related to litigation in State courts."  Lyon, 301

Mass. at 34.

---

[6] Indeed, arbitrations often generate collateral
litigation (like the declaratory judgment action
underlying this appeal) and judicial proceedings to
vacate or confirm an award (like the pending Federal
case).  No rigid barrier between the arbitration process
and the judicial process is workable.

**B.    There Is No "Arbitration Exception" To The Proscription Against The Unauthorized Practice Of Law.**

Not only did the single justice agree that the Lawyer Appellees were engaged in the "practice of law," but he also agreed that "[n]othing in Massachusetts law ... explicitly permits an attorney not licensed to practice in Massachusetts to serve as legal counsel at a Massachusetts arbitration proceeding."[7]  App. at 442 n.5.  The Single Justice

_____

[7] The single justice nonetheless also appears to have relied improvidently upon the recent dictum a panel of the Appeals Court belatedly inserted into a footnote of its opinion in Superadio L.P. v. Walt "Baby" Love Productions, Inc.  App. at 442 n.5.  In that case, the appellant argued that the underlying arbitration award "was obtained by undue means" because the appellee's attorney, "who had been admitted to practice law in New York and not Massachusetts, engaged in an unauthorized practice of law during the arbitration proceedings."  62 Mass. App. Ct. 546 (2004), further review granted, 444 Mass. 1106 (2005).  Initially, the panel did not "discuss the unauthorized practice of law issue" because it otherwise ruled in favor of the appellant.  Id. at 552 n.5.  Nearly four months later, the panel replaced the original footnote 5 with a dictum purporting to address that issue, and it was that dictum quoted by the single justice.  The new footnote contains no substantive analysis or discussion of the issue, and it does not set forth any explanation of the panel's reasons for changing course.  As the single justice recently reasoned for the majority in Commonwealth v. Rahim, 441 Mass. 273, 284-86 (2004), this Court should "give ... little weight" to such a cursory dictum collateral to the core holding.  In any event, this Court has granted further review of Superadio, so the revised footnote 5 is not the final word on the issue.

further agreed "that there is no explicit 'arbitration exception' in either Mass. R. Prof. C. 5.5 or G.L. c. 221, § 46A." App. at 441-442. Those conclusions required the single justice to grant the relief requested in Count I of the Complaint.

      1.    The Single Justice Approached The "Unauthorized Practice Of Law" Issue From The Wrong Perspective.

Implicit in the single justice's Judgment is a fundamental analytical mistake. It is axiomatic that "the right of a litigant to counsel of his choosing is not absolute and cannot always predominate." DiLuzio, 391 Mass. at 216. Yet the single justice appears to assume that everyone is permitted to engage in activities constituting the practice of law unless those activities are specifically prohibited. Of course, it is the converse which is true. Unlicensed persons are prohibited from practicing here unless specifically authorized to do so, not *vice versa.* "[P]ermission of the judicial department" – whether through permanent admission to the Bar or admission *pro hac vice* – "is not merely important but is essential to the right to appear as an attorney." Id., at 215.

There is presently no statute or rule of this Court by which the Lawyer Appellees could have obtained such permission in connection with the arbitration. Nor do out-of-state lawyers find a safe harbor in the "full faith and credit clause" or any other provision of U.S. Constitution; simply "because a lawyer has been admitted to the bar of one State," there is no requirement that "he or she must be allowed to practice in another." Leis v. Flynt, 439 U.S. 438, 443 (1979). In other words, there is currently no mechanism under the laws of this Commonwealth pursuant to which lawyers from outside Massachusetts might be authorized to appear at arbitration hearings.

Even the NASD – the very organization sponsoring the forum where the underlying arbitration is pending – recognizes the potential that Rule 5.5 could preclude attorneys from conducting arbitration hearings in jurisdictions where they are not admitted. App. at 98-100. Consequently, instead of embracing the reasoning offered by the appellees, the NASD recently asked the Securities & Exchange Commission to "expand the concept of representation in arbitration" and allow lawyers, under specified circumstances, to

appear in arbitration hearings in jurisdictions where they are not admitted to practice.  App. at 96, 100.

That proposed rule change represented the NASD's response to recent decisions by other states' highest courts that – when called upon to analyze "unauthorized practice of law" rules substantially indistinguishable from this Commonwealth's – held that participation in arbitration hearings by out-of-state attorneys is unlawful,  App. at 98-99 & n.2 (citing Florida Bar v. Rapoport, 845 So.2d 874, cert. denied, 540 U.S. 967 (2003) and Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court, 17 Cal. 4th 119, 133-34, cert. denied, 525 U.S. 920 (1998)).[8]  The NASD acknowledged Birbrower and Rapoport, recognized that "it can be a violation of state unauthorized practice of law provisions" for attorneys to appear in hearings conducted in jurisdictions where they are not admitted, and expressed its belief that changes are "needed to address the issue of multi-jurisdictional practice of law in arbitration."  App. at 98.

---

[8] Birbrower, in particular, "was a conceptual torpedo."  Gillers, "Lessons from the Multijurisdictional Practice Commission:  The Art of Making Change", 44 ARIZ. L. REV. 685, 688 (2002).

Like the NASD, the American Bar Association
("ABA") acted to address some of the "unauthorized
practice of law" issues present in this case.  Before
2002, the ABA's Model Rule 5.5 and the Commonwealth's
cognate Rule were identical and did not afford the
"arbitration exception" urged by the appellees and
effected by the single justice.  The ABA thereafter
amended Model Rule 5.5, which now takes this form:

> **Rule 5.5 Unauthorized Practice of Law;**
> **Multijurisdictional Practice of Law**
>
> (a)  A lawyer shall not practice law in a
> jurisdiction in violation of the regulation
> of the legal profession in that
> jurisdiction, or assist another in doing so.
>
> (b)  A lawyer who is not admitted to practice in
> this jurisdiction shall not:
>
>> (1)  except as authorized by these Rules or
>> other law, establish an office or other
>> systematic and continuous presence in
>> this jurisdiction for the practice of
>> law; or
>>
>> (2)  hold out to the public or otherwise
>> represent that the lawyer is admitted
>> to practice law in this jurisdiction.
>
> *(c)  A lawyer admitted in another United States*
> *jurisdiction, and not disbarred or suspended*
> *from practice in any jurisdiction, may*
> *provide legal services on a temporary basis*
> *in this jurisdiction that:*
>
>> (1)  are undertaken in association with a
>> lawyer who is admitted to practice in
>> this jurisdiction and who actively
>> participates in the matter;

> **(2)  are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized;**
>
> (3)  are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission; or
>
> (4)  are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.

(d)  A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that:

> (1)  are provided to the lawyer's employer or its organizational affiliates and are not services for which the forum requires pro hac vice admission; or
>
> (2)  are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction.

(**Emphasis** added)  The **emphasized** portions of this amended Model Rule set forth an "arbitration exception" like that urged by the appellees.  However,

as the NASD cautioned, this amendment "can be enforced only if the states adopt it into their laws." App. at 99. The single justice himself purported to recognize that, until a corresponding amendment is adopted by this Court, the language of our Rule 5.5 "differs from the recently amended version" of the ABA's Model Rule. App. at 442.[9]

> 2.   The Single Justice Mistakenly Assumed That The Prohibition Against The "Unauthorized Practice Of Law" Only Benefits Massachusetts Clients.

The single justice oversimplified the policy underlying the prohibition against the unauthorized practice of law. As the single justice purported to recognize (App. at 443), it is "the public" which the rule was intended to protect. Mass. R. Prof. C. 5.5, cmt 1. Yet he appears to assume that Rule 5.5 only

---

[9] As Judge Young noted in the opinion to which Chimko responded, In re Lucas, 317 B.R. 195, 210 n.11 (D. Mass. 2004), the Court "might otherwise weigh the 'merits of uniformity' in favor of adoption, but the states remain in 'considerable disagreement' regarding amended Model Rule 5.5." As of February 2005, only 14 states had adopted rules equivalent to that amendment. App. at 99 n.4. "[T]he long history of the present Massachusetts Rules, adopted only after 'careful consideration of each ABA model rule with the view toward … adaptation to Massachusetts needs and preferences,'" makes it impracticable for outsiders to predict whether this Court will adopt the amended Model Rule 5.5. Lucas, 317 B.R. at 210.

protects Massachusetts-domiciled clients from the potential evils of unlicensed providers of legal services.  See App. at 443-444 (focusing exclusively on residence of clients).

The single justice conspicuously failed to acknowledge that the rules governing the practice of law not only operate to maintain "the highly fiduciary relations between attorney and client" but they also exist "for the protection of the courts and the public in order to maintain unimpaired the independence, integrity and ethical standards of the bar…"  In re Maclub of America, Inc., 295 Mass. 45, 50 (1936). "Lawyers are essential to the primary governmental function of administering justice…"  Goldfarb v. Virginia State Bar, 421 U.S. 773, 792 (1975).

Clients and potential clients are but a subset of the persons protected by this Court's prohibition against the unauthorized practice of law.  Rule 5.5 is an integral component of a regulatory regime which does seek to protect clients, but which also contains safeguards intended for the protection of tribunals, opposing parties, opposing counsel, various third persons, the legal profession, and the justice system as a whole.  See, e.g., Mass. R. Prof. C. 3.3, 3.4,

3.5, 3.6, 3.7, 3.8, 3.9, 4.1, 4.2, 4.3, 4.4, 6.1, 6.2, 6.3, 6.4, 8.1, 8.2, 8.3, 8.4 & 8.5.  Certainly, honest consumers of legal services require "enlightened assistance," but their adversaries and the justice system itself are also entitled to a "restraining authority over the knavish litigant."  Opinion of the Justices, 279 Mass. 607.  It is "highly important" that the public in general "be protected from incompetent and vicious practitioners, whose opportunity for doing mischief is wide."  Id.

In short, the Florida-domiciled Broker Appellees may be the only clients represented in this matter by the New York-based Lawyer Appellees (App. at 445), but Massachusetts citizens like the Customers are also entitled to the protection intended by Rule 5.5, as are their Massachusetts-based attorney and all other persons and entities that might have come into contact with the Lawyer Appellees during the arbitration.

## II.  THE DECLARATORY JUDGMENT ACT REQUIRED FAITHFUL ADHERENCE TO MASS. R. PROF. C. 5.5.

The Declaratory Judgment Act required the single justice to discern and declare the current state of the law – not to allow concerns about the potential results to dictate the outcome.  The role of the

single justice was to "make binding declarations of
right, duty, status and other legal relations." G.L.
231A, § 1. It undercuts the predictability of the law
when a judge can contort a rule solely out of
discomfort with the result it mandates.

Of course, a judge – especially a single justice
of this Court – "enjoys some discretion in deciding
whether a case is appropriate for declaratory relief."
Bates v. Superior Court, 432 Mass. 1021, 1022 n.3
(2000) (quoting Pazolt v. Director of Div. of Marine
Fisheries, 417 Mass. 565, 569 (1994)). That
discretion is not without boundaries, however:

> The court may refuse to render or enter a
> declaratory judgment or decree where such
> judgment or decree, if rendered or entered,
> would not terminate the uncertainty or
> controversy giving rise to the proceedings
> or for other sufficient reasons.

G.L. c. 231A, § 3. The single justice also was
required to state on the record his reasons for
refusing the requested declaratory relief. Id. The
reasons stated by the single justice in the record of
this case indicate that he ventured far beyond the
discretion entrusted to him.

The single justice properly did not conclude that
a declaratory judgment on the "unauthorized practice

of law" issue would not terminate the dispute between
the parties.  This Court being the ultimate supervisor
of the legal profession in this Commonwealth, Collins,
324 Mass. at 577-579, such a declaration, if affirmed
by the full Court, would have represented a definitive
statement with respect to the scope and proper
application of Mass. R. Prof. C. 5.5(a).

     Nor did the single justice conclude that the
Customers misread Rule 5.5(a).  The sole reason he
offered for disregarding the plain text of this
Court's own rule is that "its strict application in
this matter would create too harsh a result."  App. at
443.  Well-intentioned as that rationale might have
been, it was not one of the "other sufficient reasons"
that warrant denial of declaratory relief pursuant to
G.L. c. 231A, § 3.  Such "sufficient reasons" exist:

          where another court has jurisdiction of the
          issue, where a proceeding involving
          identical issues is already pending in
          another tribunal … or where another remedy
          will be more effective or appropriate under
          the circumstances.

City of Everett v. Local 1656, IAFF, 411 Mass. 361,
369 (1991) (quoting Borchard, Declaratory Judgments
302 (1941)).  This Court has also found "sufficient
reasons" when the record was insufficiently complete.

Board of Selectmen of Truro v. Outdoor Advertising
Bd., 346 Mass. 754, 759-60 (1964).  However, there is
no reported decision of this Court finding "sufficient
reasons" to deny a declaratory judgment simply because
the judge below was uncomfortable with the potential
consequences of faithfully applying the law.

The single justice thus overstepped the
boundaries of his discretion when he found "no public
policy reason to grant the plaintiffs' request for
declaratory relief," primarily because "strict
application" of the Commonwealth's proscription
against the unauthorized practice of law in this case
"would create too harsh a result."  App. at 443-444.
Just as there is no "arbitration exception" to Mass.
R. Prof. C. 5.5, so too is there no exception
applicable when the rule might require a "harsh"
result.  That the rule as written might yield an
undesirable outcome is a reason for changing the rule
– not a reason for declining to enforce it.  See,
e.g., Keene v. Brigham & Womens' Hosp., 439 Mass. 223,
242 (2003) (Court bound by existing law despite "harsh
results" in particular case).  Regardless of the
remedial course the single justice chose to follow,

the case required faithful application of the current rule, not an exegesis of what the rule should be.

There were several other options which would have permitted the single justice to apply the law faithfully without the unspecified "harsh" consequences he sought to avoid. For instance, the single justice could have declared that the Lawyer Appellees' conduct of the arbitration hearing would violate Rule 5.5(a) without granting the ancillary relief sought by the Customers pursuant to G.L. c. 231A, § 5. The Customers had prayed for a permanent injunction ancillary to the declaratory judgment they requested, and it would have been within the power of the single justice to decline to enter such an injunction after declaring that the Lawyer Appellees' participation in the arbitration hearing would violate Rule 5.5 as presently written. The Declaratory Judgment Act expressly provides for such declarations "whether … or not" the single justice saw fit to grant "any consequential judgment or relief." App. at 437 (quoting G.L. c. 231A, § 1))

Alternatively, if the single justice believed that Rule 5.5 should be amended to afford the "arbitration exception" urged by the appellees, he

could have reported the case to the full Court, which
might have allayed such concerns by "laying down a
rule for future guidance." <u>Collins</u>, 324 Mass. at 578.
<u>See also</u> <u>Opinion of the Justices</u>, 279 Mass. 607 (if
"established principles as to the practice of law are
ever to be changed, the judicial department of the
government must act to that end"); <u>Haddad v. Gonzalez</u>,
410 Mass. 855, 866 (1991) (1979 amendment to G.L. c.
93A, § 9, "at least partly a response to the harsh
result of <u>Baldassari v. Public Fin. Tr.</u>, 369 Mass. 33
(1975)). Indeed, if (as the Court noted in <u>Chimko</u>,
2005 Mass. LEXIS 442 at 11 n.4) the ABA's recent
amendment to Model Rule 5.5 "is currently under
consideration in Massachusetts", the single justice
might have enjoined the Lawyer Appellees from
participating in the arbitration hearing, but only
until such an amendment might take effect.

By all means, however, the single justice should
have declined the appellees' implicit "invitation to
craft an arbitration exception" to its proscription
against the unauthorized practice of law, just as the
California Supreme Court did in <u>Birbrower</u>, 17 Cal. 4th
at 134. It was not within the discretion of the
single justice to amend Rule 5.5 himself –

manufacturing an "arbitration exception" inconsistent
with the plain text of the current rule – without any
rulemaking activity by the full Court.[10]  Any potential
amendments should have been left to the standing
advisory committee on the rules of professional
conduct, which could, after appropriate inquiry,
recommend such a revision.  <u>Cambridge Trust Co. v.
Hanify & King, P.C.</u>, 430 Mass. 472, 481–82 (1999).[11]

---

[10] The single justice nonetheless followed the lonely
path charted by the intermediate appellate court of
Illinois.  App. at 444.  In the decision on which the
single justice relied, <u>Colmar, LTD v. Fremantlemedia
North America, Inc.</u>, 344 Ill. App. 3d 977, 1026 (2003),
the panel noted that amended "ABA Model Rule 5.5 has not
been adopted by the Illinois Supreme Court" but
nonetheless found it "persuasive in that it reflects the
modern trend in the law of multijurisdictional practice"
and applied its reasoning to craft an arbitration
exception in the case before it.  Tellingly, there is no
reported decision in any United States jurisdiction that
similarly embraced the reasoning of <u>Colmar</u>.

[11] By way of example, after the California Supreme
Court faithfully applied that State's unauthorized
practice of law rule in <u>Birbrower</u>, the legislature
adopted a new *pro hac vice* statute expressly applicable
in the context of arbitration.  <u>See</u> App. at 137 n.5.
Accordingly, instead of supporting the Judgment, the
single justice's citation to Cal. C. Civ. P. § 1282.4(b)
(App. at 442) provides a cogent example of a more
appropriate alternative course.  Similarly, after
<u>Rapoport</u>, a separate rulemaking proceeding was commenced
to amend the rule which required the Florida Supreme
Court to rule as it did.  App. at 138 n.6.  If this
Court believes that there should be an "arbitration
exception" to Mass. R. Prof. C. 5.5(a), then a similar
process could be undertaken here.  Absent such an
amendment, the rule should be enforced as written.

Our rule should be interpreted and enforced as it is currently written.  Until such a recommendation is made and a corresponding amendment adopted by this Court, Rule 5.5(a) remains unchanged.

**III. THE SINGLE JUSTICE SHOULD HAVE ADDRESSED ALL ISSUES ON WHICH DECLARATIONS WERE SOUGHT.**

"One of the principal purposes of the declaratory judgment law … is to settle completely the controversy submitted for decision."  Kilroy v. O'Connor, 324 Mass. 238, 242 (1949).  "It therefore follows that, in proceedings under Chapter 231A, "it is the duty of the judge to adjudicate the decisive issues involved in the controversy between the parties and to make binding declarations concerning such issues, thus putting the controversy to rest."  Zaltman v. Daris, 331 Mass. 458, 462 (1954).  The single justice should have determined "the whole controversy between the parties," and he should not have "left for future determination" any issue reasonably raised by the pleadings and prayers for relief.  Essex Co. v. Goldman, 357 Mass. 427, 434 (1970) (quoting Vesce v. Gottfried, 353 Mass. 568, 569 (1968)).  See Ciszewski v. Industrial Accident Board, 367 Mass. 135, 142 (1975) (expressing Court's hope, in weighing petitions

for interlocutory relief, "to avoid unnecessary court proceedings and 'dispose of the controversy without further delay'").

Despite this unambiguous mandate, the single justice abdicated his responsibility, declining to address the questions framed by Counts II through IV of the Complaint. App. at 445. Those issue remain unresolved, and they are now intertwined with the litigation now pending in the U.S. District Court, where the appellants are seeking vacation of the arbitrators' award. Had the single justice addressed those issues, much of the uncertainty would be gone, limiting (if not altogether eliminating) the need for the Federal lawsuit.

### A.  *An Attorney May Not Turn A Blind Eye To The Unauthorized Practice Of Law.*

Count II of the Complaint frames the issue of whether a Massachusetts attorney, by participating in an arbitration hearing held within the Commonwealth where parties are represented by lawyers not admitted here, would knowingly assist a violation of Mass. R. Prof. C. 5.5(a) and G.L. c. 221, § 46A, in violation of Mass. R. Prof. C. 5.5(b) and 8.4(a).  Both of those provisions essentially bar lawyers from assisting or

inducing another attorney's violation of a Rule of Professional Conduct.  Clearly, by willfully participating in a hearing where she knows that another lawyer is engaged in the unauthorized practice of law, an attorney would run afoul of those rules.[12]

**B.   *The Arbitrators Should Have Postponed The Hearing Until Resolution Of The Unauthorized Practice Of Law Issue.***

Writing for the full Court, the single justice recently reaffirmed the Commonwealth's "strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes."  <u>Connecticut Valley San. Waste Disp. v. Zielinski</u>, 436 Mass. 263, 267 (2002) (quoting <u>Plymouth-Carver Reg. Sch. Dist. v. J. Farmer & Co.</u>, 407 Mass. 1006, 1007 (1990)).  Although the single justice recognized the "policy of limited judicial review" of arbitration, he also acknowledged the general rule that an arbitration award may properly be reviewed "to determine if the arbitrator has exceeded

---

[12] The appellees did not dispute this point.  <u>See</u> App. at 139-140.  Instead, they circled back to their baseline position that the Lawyer Appellees' participation in the hearing of the arbitration underlying this case would not constitute the unauthorized practice of law.  <u>Id</u>.  For the reasons set forth above, that argument was plainly wrong.

the scope of his authority, or decided the matter based on 'fraud, arbitrary conduct, or procedural irregularity in the hearings.'"  <u>Id</u>.

One "procedural irregularity" requiring a court to vacate an arbitral award occurs when "the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor."  G.L. c. 251, § 12(a)(4), and the potential for such a "procedural irregularity" was at issue before the single justice in this case.  After all, the motion to disqualify the Lawyer Appellees from the underlying arbitration had been presented in the alternative; the Customers asked the arbitrators either to disqualify the Lawyer Appellees or postpone the hearing until after the unauthorized practice of law issue was resolved.  App. at 22-26.  The selfsame alternative species of relief were requested in the Customers' formal motion for reconsideration.  App. at 113-119.  Both of those motions were denied.  In other words, the arbitrators not only refused to disqualify the Lawyer Appellees, but they also refused to postpone the hearing until this Court could address the unresolved unauthorized practice of law issues presented by this appeal, <u>Chimko</u> and <u>Superadio</u>.

- 37 -

That violated G.L. c. 251, § 12(a)(4), but the single justice declined to address the issue, preventing a cure of that violation before the arbitration hearing commenced.  Now, if the Customers prevail in the pending Federal litigation, the parties would again have to expend the time and resources necessary to prepare for and conduct such a hearing. Id., § 12(c).  The potential for such wasteful re-litigation is precisely the sort of "uncertainty and insecurity with respect to rights, duties, status and other legal relations" from which the Declaratory Judgment Act was intended to afford relief. G.L. c. 231A, § 9.

### C.   An Arbitration Award Must Be Vacated If It Was The Product Of A Hearing Conducted By Lawyers Not Authorized To Do So.

A court of this Commonwealth also must vacate an arbitral award if it is "procured by corruption, fraud or other undue means."  G.L. c. 251, § 12(a)(1). Certainly, an award obtained by attorneys who elected to violate the Commonwealth's proscription against the unauthorized practice of law, and who were allowed to do so by the arbitrators, would be "procured by ... undue means."  Accordingly, the same considerations that required a declaratory judgment concerning the

- 38 -

arbitrators' obligation to postpone the hearing until
the unauthorized practice of law issue was resolved
also warranted such a declaration with respect to the
effect of such unauthorized practice on the
arbitrators' award.

### CONCLUSION

This Court "has summary jurisdiction to inquire
into practices at the Bar" that could bring the
administration of justice into disrepute.  McInerney
v. Lally, 384 Mass. 810, 811 (1981).  When necessary
to provide guidance or standards concerning the
practice of law, it is "the Supreme Judicial Court, as
under the Constitution the highest court in the
Commonwealth, is the proper representative of the
judicial department and the repository of the power"
to do so.  Collins, 324 Mass. at 578-79.  The Court
therefore "may intervene 'whenever it appears that, in
the practice of law, methods, customs, or habits have
grown up among members of the bar which are
undermining the confidence of the public in the
courts."  Marino v. Tagaris, 395 Mass. 397, 401 (1985)
(quoting Collins, 324 Mass. at 578).

Inconsistent adherence to the proscription against the unauthorized practice of law in the context of arbitration is certainly such a "method, custom or habit" that should be corrected by the full Court.  Under Rule 5.5(a), in its current form, there is no "arbitration exception."  That the Lawyer Appellees and others like them nonetheless conduct arbitration hearings – engaging in the unauthorized practice of law – in Massachusetts is a situation that requires action by this Court.  The Court should therefore reverse the Judgment of the single justice and make the declarations prayed for in the Complaint.

STEVEN MSCISZ, MARK MSCISZ & LYNDA MSCISZ

By their attorney,

William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
*A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated:  August 3, 2005

SUPREME JUDICIAL COURT
*FOR THE*
COMMONWEALTH OF MASSACHUSETTS

Case No. SJC-09529

---

STEVEN MSCISZ, MARK MSCISZ, and
LYNDA MSCISZ,

Appellants,

v.

KASHNER DAVIDSON SECURITIES CORP.,
VICTOR KASHNER, MATTHEW MEISTER,
TIMOTHY VARCHETTO, MARC J. ROSS,
RICHARD J. BABNICK JR. &
SICHENZIA ROSS FRIEDMAN FERENCE LLP,

Appellees,

---

*ON APPEAL FROM JUDGMENT OF THE SINGLE JUSTICE*
*OF THE SUPREME JUDICIAL COURT FOR SUFFOLK COUNTY*

---

**APPELLEES' BRIEF**

Of Counsel:

Howard M. Smith, BBO# 468880
NEWMAN & SMITH
One Gateway Center
Newton, Massachusetts 02458
(617) 965-9697
Attorneys for Appellees

Dated:    August 31, 2005

*TABLE OF CONTENTS*

*TABLE OF CONTENTS*                                                        i

*TABLE OF AUTHORITIES*                                                    ii

*INTRODUCTION*                                                             1

*STATEMENT OF ISSUES PRESENTED FOR REVIEW*                                 3

*STANDARD OF REVIEW*                                                       5

*STATEMENT OF THE CASE*                                                    6

*STATEMENT OF FACTS*                                                      11

*ARGUMENT*                                                                13

I.    THE COURT SHOULD AFFIRM THE JUDGMENT
      BECAUSE THE SINGLE JUSTICE DID NOT ABUSE
      HIS DISCRETION BY ISSUING THE DECLARATION
      THAT THE LAWYERS' PARTICIPATION AT THE
      HEARING, BASED ON THE "PARTICULAR
      CIRCUMSTANCES PRESENTED" DOES NOT
      CONSTITUTE ENGAGING IN THE UNAUTHORIZED
      PRACTICE OF LAW.                                                    13

II.   THE SINGLE JUSTICE PROPERLY FULFILLED HIS
      DUTIES UNDER THE DECLARATORY JUDGMENT ACT
      BY DECLARING THE STATUS AND LEGAL
      RELATIONS OF THE PARTIES BEFORE HIM.                                20

III.  THE SINGLE JUSTICE PROPERLY DECLINED TO
      RENDER DECLARATIONS ON ISSUES THAT WERE
      MOOTED BY THE DECLARATION THAT THE
      LAWYERS' CONDUCT WOULD NOT CONSTITUTE THE
      UNAUTHORIZED PRACTICE OF LAW.                                       23

*CONCLUSION*                                                              28

**TABLE OF AUTHORITIES**

**Cases**

*Bates v. Superior Court*, 432 Mass. 1021 (2000)          20

*Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court*, 17 Cal. 4th 119 (Cal. 1998)          17

*Boston Herald, Inc. v. Superior Court Dep't Of Trial Court*, 421 Mass. 502 (1995)          23

*Boston Safe Deposit & Trust Co. v. Dean*, 361 Mass. 244 (1972)          25

*City of Boston v. Mass. Bay Trans. Auth.*, 373 Mass. 819 (1977)          22

*Colmar, Ltd. v. Fremantlemedia N. Am., Inc.*, 334 Ill. App. 3d 977, 801 N.E.2d 1017 (Ill. App. 2003)          16

*DiLuzio v. United Elec., Radio & Mach. Workers of Am., Local 274*, 391 Mass. 211 (1984)          14, 18

*Florida Bar v. Rapoport*, 845 So.2d 847 (Fl. 2003)          17

*Gay & Lesbian Advocates & Defenders v. Attorney General*, 436 Mass. 132 (2002)          25

*Haverhill Manor v. Comm'r of Public Welfare*, 368 Mass. 15 (1975)          21

*In re Chimko*, 2005 Mass. LEXIS 422 (July 22, 2005)          14

*Keene v. Brigham & Women's Hosp., Inc.*, 439 Mass. 223 (2003)          17, 18

*Levine v. Chief Justice of the Dist. Court Dep't of the Trial Court*, 434 Mass. 1014 (2001)          5, 20

*Mass. Assoc. of Indep. Ins. Agents &
Brokers v. Comm'r of Ins.*, 373 Mass. 290
(1977)                                                          23

*Mass. Conveyancers Assoc., Inc. v.
Colonial Title & Escrow, Inc.*,
Civ.A. 96-2746-C, 2001 WL 669280
(Mass. Super. June 5, 2001)                               13, 14

*Opinion of the Justices*, 279 Mass. 607 (1932)              13

*Opinion of the Justices*, 289 Mass. 607 (1935)              13

*Pina v. Liberty Mut. Inc. Co.*, 388 Mass. 1001
(1983)                                                         21

*Smith v. Bldg. Comm'r of Brookline*,
367 Mass. 765 (1975)                                           5

*Williamson, P.A. v. John D. Quinn Constr.
Corp.*, 537 F. Supp. 613 (S.D.N.Y. 1982)                      16

*Zaltman v. Daris*, 331 Mass. 458 (1954)                     21

### Statutes

G.L. c. 221 § 46A                                             18

G.L. c. 231A, § 1                                          5, 20

### Rules

Mass. R. Prof. C. 5.5                                     15, 17,
                                                          18, 22

### Other Authorities

N.J. Comm. Unauth. Prac. Opinion No. 28,
1994 WL 719208 (Dec. 19, 1994)                            16, 17

Va. UPL Unauth. Prac. Law Opinion No. 92,
(May 2, 1986)                                                17

### *INTRODUCTION*

Steven Mscisz, Mark Mscisz and Lynda Mscisz (the "Customers") filed a petition seeking four declaratory judgments from a Single Justice of this Court that focused upon whether a lawyer licensed in another jurisdiction but not admitted to practice law in Massachusetts engages in the unauthorized practice of law by representing non-Massachusetts residents at an arbitration hearing scheduled to occur within the state.  The Customers sought a declaratory judgment because they were concerned that their counsel's participation at an upcoming arbitration hearing might constitute the knowing assistance of the unauthorized practice of law.

The Single Justice denied their petition and rendered a declaratory judgment declaring that, in the particular circumstances presented, Marc J. Ross, Richard J. Babnick Jr., and the law firm Sichenzia Ross Friedman Ference LLP ("SRFF") (the "Lawyers") would not be engaging in the unauthorized practice of law by representing non-Massachusetts residents Kashner Davidson Securities Corporation ("KDSC"), Victor Kashner, Matthew Meister, and Timothy Varchetto (the "Brokers" and collectively with the Lawyers, the

"Defendants") at an arbitration hearing scheduled to take place in Massachusetts.

With the issue resolved by the Single Justice, the Customers no longer had to fear that their counsel's participation at the hearing would constitute the knowing assistance of the unauthorized practice of law.  In reliance upon the Single Justice's decision, the arbitration hearing proceeded with the Customers represented by their counsel and KDSC represented by Mr. Ross –all parties assured that their counsel's conduct would not constitute, or assist in, the unauthorized practice of law.

Now, after losing in the arbitration proceeding, the Customers belatedly attack the Single Justice's decision in an effort to upset the arbitration award, which is presently before the U.S. District Court for confirmation, modification or vacatur.  In their effort to overturn the sound decision of the Single Justice, the Customers give scant attention to the operative facts, fail to address the Single Justice's thoughtful policy considerations, and seek to broaden the narrow issue decided by the Single Justice.

The Single Justice gave thorough consideration to the questions presented to him and to the policy

considerations and rationale behind the rules
governing the practice of law when he reached his
narrow decision concerning the status of the Lawyers
before him - a sound decision that the Full Court
should affirm.

### *STATEMENT OF ISSUES PRESENTED FOR REVIEW*

Although the Customers have framed the issues
presented for review, Defendants are dissatisfied with
the Customers attempt to broaden the issues decided by
the Single Justice and have recast the issues
presented as follows:

1.    Whether a lawyer admitted to practice in
another United States jurisdiction but not admitted in
Massachusetts engages in the unauthorized practice of
law when the lawyer appears, on behalf of a non-
Massachusetts resident, at an arbitration hearing held
in Massachusetts - a state that was selected by the
governing arbitration body as a convenience to one of
the parties?

Defendants submit that the Single Justice
properly exercised his discretion in declaring

that, in the particular circumstances of this
case, the Lawyers' representation of non-
Massachusetts residents at the arbitration
hearing to be held in Boston, Massachusetts - a
site selected by the NASD as a convenience to the
Customers - would not constitute the unauthorized
practice of law.

2.    Whether the Single Justice properly
fulfilled his duties under the Declaratory Judgment
Act by declining to issue a broad declaration on the
current state of the law sought by the Customers and
issuing a declaration on the decisive issue regarding
the status of the Lawyers?

Defendants submit that the Single Justice
properly fulfilled his duties under the
Declaratory Judgment Act by declaring the status
and legal relations of the parties before him -
namely, the Lawyers status with respect to the
arbitration hearing scheduled to occur in Boston,
Massachusetts.

3.     Whether the Single Justice properly declined
to entertain the three remaining declarations, which
were all premised upon a holding that the Lawyers'
conduct would constitute the unauthorized practice of
law, after the Single Justice declared that the
Lawyers would not be engaging in the unauthorized
practice of law by representing their non-
Massachusetts clients at the hearing scheduled to take
place in Massachusetts.

Defendants submit that the Single Justice properly
declined to address the remaining declarations
sought by the Customers because his ruling as to
the status of the Lawyers rendered a decision on
the remaining declarations as either unripe, moot,
or no longer an actual controversy.

### *STANDARD OF REVIEW*

A denial of declaratory relief, under G.L. c.
231A, § 1, by a single justice of this Court is
reviewed for abuse of discretion.  *Levine v. Chief
Justice of the District Court Department of the Trial
Court*, 434 Mass. 1014, 1014 (2001); *Smith v. Building
Commissioner of Brookline*, 367 Mass. 765, 769 (1975).

### STATEMENT OF THE CASE

The genesis of this appeal arises out of an arbitration proceeding filed by the Lawyers on behalf of their non-Massachusetts client KDSC, for whom Mr. Ross has a family relationship, in the New York office of the National Association of Securities Dealers, Inc. ("NASD"). App. at 147.[1] The parties filed all pleadings, motions and other papers with the NASD's New York Office. Id. at 154.

The NASD drew the arbitration panel from individuals residing in Massachusetts and New Hampshire. Id. at 439. Because of an NASD Policy, the NASD selected Boston, Massachusetts as the location for the hearing as a convenience to the Customers. App. at 154, 209.

On December 17, 2004, the Customers moved the arbitration panel to disqualify the Lawyers and/or stay the arbitration proceeding on the basis that they believed that the Lawyers' participation at the hearing would constitute the unauthorized practice of law. Id. at 22-74. The Brokers opposed the motion.

---

[1] Citations to the Record Appendix shall take the form of "App. at ___."

Further, based on information provided by the Clerk in
the Clerk's Office of the Supreme Judicial Court for
the State of Massachusetts, the Lawyers requested that
the arbitration panel admit them *pro hac vice* to
appear before the arbitration panel at the arbitration
hearing.  App. at 150, 151, 155.  On January 31, 2005,
the Chairperson of the arbitration panel orally denied
the Customers' motion to disqualify the Lawyers.  *Id*
*at 88.*

On February 25, 2005 - a day after they filed a
motion with the arbitration panel to withdraw their
counterclaims and third-party claims without prejudice
because they were dissatisfied with the arbitrator's
discovery rulings, the Customers commenced the
underlying action by filing a Complaint seeking four
declarations with respect to the Lawyers including,
*inter alia,* whether the Lawyers' participation at the
hearing would constitute the unauthorized practice of
law and whether their counsel's participation at the
hearing with the Lawyers would constitute the knowing
assistance of the unauthorized practice of law.  App.
at 4, 10, 11, 255.

In the interim, on March 2, 2005, the Customers
orally requested the Chairperson of the arbitration

panel to reconsider his order denying Defendants'
motion to disqualify the Lawyers, which the
Chairperson denied.  *Id.* at 155.  That same day, the
Customers filed their First Amended Complaint, which
reflected the Chairperson's oral denial of the their
motion for reconsideration.  *Id.* at 5, 7-85.

A week later, on March 9, 2005, the Customers
moved the arbitration panel, once again, to reconsider
the Chairperson's denial of their motion to disqualify
the Lawyers.  *Id.* at 113, 155.

On March 30, 2005, the arbitration panel issued
an order denying the Customers' motion for
reconsideration of the denial of their motion to
disqualify the Lawyers, and further "rule[d] that it
is not necessary for [the Lawyers] to be admitted *pro
hac vice* in this matter."  App. at 255.  In this same
Order, the arbitration panel dismissed, with
prejudice, the Customers' counterclaims and third-
party claims – leaving only claims arising under the
substantive laws of Florida and Alabama at issue in
the arbitration proceeding.  *Id.* at 163-175, 255.

On April 20, 2005, after the issues in the
underlying case were fully briefed, the Single Justice
of this Court (Cordy, J.) heard argument from the

parties.  *Id.* at 5.  On May 6, 2005, the Single
Justice issued his Memorandum of Decision and Judgment
(the "Judgment") denying the Customers' petition and
making a declaration that, "in the particular
circumstances presented", the Lawyers would not be
engaging in the unauthorized practice of law by
representing their non-Massachusetts resident-clients
at the arbitration hearing scheduled to take place in
Massachusetts.  App. at 437-446.

Although the declaration by the Single Justice
resolved the actual controversy between the parties,
on May 10, 2005, the Customers filed a notice of
appeal and an emergency application for injunction
pending the appeal – not out of concern that their
counsel may assist in the unauthorized practice of
law, which the Judgment resolved, but for the purposes
of upsetting and staying the arbitration proceeding.
*Id*. at 5.  On May 12, 2005, the Single Justice denied
the Customers' application for an injunction.  *Id.*

On May 17 and 18, 2005, the parties and their
counsel, including Mr. Ross, on behalf of the Lawyers,
participated in the arbitration hearing held in
Boston, Massachusetts.

By May 31, 2005, the Customers had failed to pay the docket fee fixed by law to have the appeal entered upon the docket. *See* Docket Entry #2. Three weeks later, on June 20, 2005, the NASD delivered the award issued by the arbitrators in the arbitration proceeding to the parties. *Id.* The arbitrators issued an award against the Customers and in favor of KDSC in the amount of $421,000. *Id.*

On June 24, 2005, after losing the arbitration, the Customers docketed this appeal in an effort to upset the arbitration award by collaterally attacking the Single Justice's Judgment. App. at 5.

Defendants have filed a motion to dismiss the appeal and the Customers have cross-moved to extend the time for docketing the appeal. The Court has referred these motions to a Single Justice for decision, which are currently pending.

### *STATEMENT OF FACTS*

Contrary to the Customers' narrowly-focused view of the operative facts, Defendants submit that the following undisputed facts are the operative facts in this matter:

- The Lawyers are admitted to practice law before all courts in the State of New York.  App. at 84, 85.  The Lawyers do not operate a law practice in the State of Massachusetts; they do not advertise within the State of Massachusetts; and they do not hold themselves out to the citizenry of the State of Massachusetts or the general public that they can represent them in the State of Massachusetts.  *Id.* at 148.

- KDSC and Messrs. Kashner, Meister, and Varchetto are all residents of the State of Florida.  *Id.* at 147.

- Mr. Kashner, an owner of KDSC, is the father-in-law of Mr. Ross.  *Id.*  The Lawyers have represented KDSC and Messrs. Kashner, Meister, and Varchetto for the past seven years.  *Id.*

- KDSC filed its demand for arbitration with the Customers in the State of New York.  App. at 147.

- All subsequent pleadings, motions, and other filings by all parties to the arbitration proceeding, including filings by the Customers, occurred in the State of New York.  *Id.* at 154.

- The NASD appointed arbitration panel was comprised of arbitrators drawn from Massachusetts and New Hampshire.  App. at 439.

- Because of an NASD Policy, the NASD selected Boston, Massachusetts as the location for the hearing as a convenience to the Customers.  *Id.* at 154, 209.

- Under the NASD Code of Arbitration Procedure, the Arbitrators, in their sole discretion, could have held the hearing in any location of their determination – whether in Massachusetts or another state. *Id.* at 236 (NASD Rule 10315).

- The NASD's Code of Arbitration Procedure provided the uniform procedural rules governing the arbitration – not any procedural statute, rule, or regulation of the State of Massachusetts. *Id.* at 154, 211-251.

- After the arbitration panel's dismissal of the counterclaims and third-party claims with prejudice, the only remaining claims at the hearing were KDSC's claims against the Customers that were governed by the substantive laws of the States of Florida and Alabama – not Massachusetts. App. at 163-195.

- In accordance with the guidance provided by the Clerk's Office of the Supreme Judicial Court for the State of Massachusetts, the Lawyers requested the arbitration panel admit them *pro hac vice* for purposes of appearing at the arbitration hearing. *Id.* at 155. The arbitration panel, which included a Senior Justice of the New Hampshire Superior Court, subsequently "rule[d] that it is not necessary for [the Lawyers] to be admitted *pro hac vice* in this matter." *Id.* at 156.

*ARGUMENT*

I.    **THE COURT SHOULD AFFIRM THE JUDGMENT BECAUSE THE SINGLE JUSTICE DID NOT ABUSE HIS DISCRETION BY ISSUING THE DECLARATION THAT THE LAWYERS' PARTICIPATION AT THE HEARING, BASED ON THE "PARTICULAR CIRCUMSTANCES PRESENTED" DOES NOT CONSTITUTE ENGAGING IN THE UNAUTHORIZED PRACTICE OF LAW.**

The Customers argue that the Single Justice abused his discretion when he denied their petition for equitable relief and declared that, in the "particular circumstances presented", the Lawyers would not be engaging in the unauthorized practice of law by representing the Brokers at the arbitration hearing scheduled to take place in Massachusetts. *See* Appellants' Brief at 10-13. The Customers are mistaken.

It has long been recognized that the judiciary has the inherent authority to control the practice of law within the Commonwealth, *Opinion of the Justices*, 289 Mass. 607, 612 (1935), and "[n]o statute can control the judicial department in the performance of its duty to decide who shall enjoy the privilege of practicing law." *Opinion of the Justices*, 279 Mass. 607, 610 (1932); *see also Massachusetts Conveyancers Assoc., Inc. v. Colonial Title & Escrow, Inc.*, No. Civ.A. 96-2746-C, 2001 WL 669280 at *4 (Mass.Super.

June 5, 2001)("judicial branch of government has the
exclusive power . . . to determine what constitutes
the practice of law."). Thus, rules and statutes
affecting the practice of law are "expressions of
policy for the guidance of the judicial department in
exercising its constitutional prerogative of
controlling the practice of law in the Commonwealth."
*DiLuzio v. United Electrical, Radio and Machine
Workers of Am., Local 274*, 391 Mass. 211, 215 (1984).
Indeed, within the past two months, this Court
considered the public policies underlying the
unauthorized practice of law rules to determine that
certain limited practices before the Court – in
particular, the factual circumstances before the Court
– would not be "in contravention of [Massachusetts']
rules of professional conduct, or contrary to the
public policies on which they are based." *In re
Chimko*, No. SJC-09388, 2005 Mass. LEXIS 422 at *21
(July 22, 2005).

So too, the Single Justice properly considered
the public policies and rationale behind the
unauthorized practice of law statute and rule and
determined that, in the particular circumstances of
this case, the Lawyers' would not be engaging in the

unauthorized practice of law by participating at the
hearing to be held in Boston.  App. at 438, 443.  In
particular, the Single Justice considered the comments
to Mass. R. Prof. C. 5.5 and the implicit policy
espoused therein that the rule was designed to protect
"Massachusetts citizens" against the practice of law
by unqualified persons.  *Id.* at 443 (emphasis in
original).  Further, the Single Justice examined the
context in which the Lawyers would be providing legal
services to their non-Massachusetts clients and
determined that this context was "an important
consideration" in reaching his decision.  *Id.* at 444.

Here, the Single Justice noted that the Lawyers
had represented KDSC in securities matters for many
years.  App. at 439.  The Lawyers filed the
arbitration claim on behalf of KDSC in New York –
their home state – and all subsequent pleadings,
motions and other filings occurred in New York.  *Id.*
at 439, 444. There was no rule requiring that the
arbitration hearing must occur in Massachusetts, and
the only reason the NASD selected Boston,
Massachusetts as the hearing location was as a
convenience to the Customers.  *Id.* at 439, 444.
Indeed, the NASD drew the arbitrators selected to

conduct the hearing from Massachusetts and New Hampshire. *See id.* at 439. Finally, the Single Justice noted that the Lawyers had requested the arbitration panel to admit them *pro hac vice* for purposes of the hearing, and that the arbitration panel ruled "that it is not necessary for counsel to be admitted *pro hac vice* in this matter." *Id.* at 440.

In light of the particular facts before him, the Single Justice properly exercised his discretion to determine that there was no public policy reason to hold that the Lawyers' participation at the hearing would constitute the unauthorized practice of law. App. at 445. In drawing this conclusion, the Single Justice considered the persuasive authority from sister jurisdictions who have been confronted with similar factual situations, as well as the ABA Commission on Multijurisdictional Practice's Report to the House of Delegates. App. at 444, 445.[2]

---

[2] The States of Illinois, New York, New Jersey, and Virginia have determined that the participation by out-of-state counsel, on behalf of their out-of-state client, at an arbitration hearing held within the state would not constitute the unauthorized practice of law. *Colmar, Ltd. v. Fremantlemedia North America, Inc.*, 334 Ill. App.3d 977, 801 N.E.2d 1017 (Ill. App. 2003); *Williamson, P.A. v. John D. Quinn Construction Corp.,* 537 F. Supp. 613, 616 (S.D.N.Y. 1982); N.J. Comm. Unauth. Prac. Opinion No. 28, 1994 WL 719208

While acknowledging that the public policies addressed by the Single Justice are "currently manifest in Rule 5.5 of the Massachusetts Rules of Professional Conduct," the Customers, nevertheless, urge the Court to ignore these policies in favor of a strict construction of Mass. R. Prof. C. 5.5 in an effort to upset a duly rendered arbitration award. Appellants' Brief at 14-15. In arguing for a strict interpretation of Mass. R. Prof. C. 5.5, the Customers rely on *Keene v. Brigham and Women's Hospital, Inc.* as authority for requiring the Court to strictly construe the rule despite the unusually harsh result of such application. *Id.* at 30. *Keene*, however, is not applicable in this case because the *Keene* Court was "bound by the Legislature's determination of the matter", which required it to construe a legislative statute within the scope intended by the Legislature.

(Dec. 19, 1994); Va. UPL Unauth. Prac. Law Opinion No. 92 (May 2, 1986). Although the Customers rely heavily on the judicial holdings from the States of California and Florida, these holdings are inapposite to the facts before the Court because both cases involved out-of-state attorneys representing in-state clients. *See Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court*, 17 Cal.4[th] 119, 124 (Cal. 1998) (out-of-state lawyers representing California based-client in California); *Florida Bar v. Rapoport*, 845 So.2d 874 (Fl. 2003) (out-of-state lawyer advertising in Florida and representing Florida residents in Florida).

*Keene v. Brigham and Women's Hospital, Inc.*, 439 Mass.
223, 242 (2003)(addressing statutory damage cap for
damages against a charitable entity). Here, unlike
the statute in *Keene*, Mass. R. Prof. C. 5.5 and G.L.
c. 221 § 46A are a rule and statute concerning the
practice of law, which is within the exclusive realm
of the judicial department – not the Legislature – and
designed to serve as guidance to the Courts. *DiLuzio*,
391 Mass. at 215 (1984). Therefore, the Single
Justice was not limited to a strict interpretation of
Mass. R. Prof. C. 5.5 as suggested by the Customers.

Despite the Customers' protestations, the Single
Justice properly looked to the public policies
espoused in Mass. R. Prof. C. 5.5 and G.L. c. 221 §
46A when he declared that the Lawyers participation in
the scheduled hearing would not harm the residents of
the Commonwealth. Moreover, while Mass. R. Prof. C.
5.5 may extend beyond the public for the protection of
the courts and justice system as a whole, there is no
factual basis in the record for the Customers to argue
that such policy considerations were impacted in this
case. *See* App. at 26-27. The arbitration proceeding
was not before a Massachusetts' Court and had no
impact on the "justice system as a whole". Indeed,

the arbitration panel, for which the Lawyers would appear, declared that it did not need "protection" from the Lawyers as the arbitration panel had already ruled that it was not necessary for the Lawyers to be admitted *pro hac vice* to participate at the hearing.[3] App. at 255.

Accordingly, the Single Justice properly exercised his discretion to consider the policy and rationale behind the unauthorized practice of law statue and rule when he declared that, in the particular circumstances presented, the Lawyers' participation at the hearing would not constitute the unauthorized practice of law.

---

[3] Moreover, in the dispute between the Customers and Defendants, which has spilled-over from the arbitration to the state and federal courts, the courts have admitted the Lawyers *pro hac vice* to appear on behalf of the Brokers. *See* App. at 5 (Docket Entry 6 and 7. The Single Justice subsequently granted the Lawyers' request for *pro hac vice* at the telephonic hearing for purposes of the argument and noted in the Docket, entry dated April 20, 2005, that "Atty. Ross and Atty. Babnick participated in the telephone hearing."); *Kashner Davidson Securities Corporation, et. al. v. Steven Mscisz, et. al.,* No. 05-CV-11433-JLT (D. Mass)(Docket Entry dated July 28, 2005 granting Motion by Lawyers to appear *pro hac vice* on behalf of Brokers).

II.  **THE SINGLE JUSTICE PROPERLY FULFILLED HIS DUTIES UNDER THE DECLARATORY JUDGMENT ACT BY DECLARING THE STATUS AND LEGAL RELATIONS OF THE PARTIES BEFORE HIM.**

In a further attack on the Single Justice's decision, the Customers argue that the Declaratory Judgment Act required the Single Justice to "discern and declare the current state of the law" on the broad, sweeping questions submitted by the Customers - questions that went far beyond declaring the legal rights of the parties before the Single Justice.  *See* Appellants' Brief at 27-28.  The Customers are in error.

The Declaratory Judgment Act authorizes the Single Justice to make "binding declarations of right, duty, status and other legal relations" between the parties.  G.L. c. 231A, §1.  In making such declarations, the Single Justice enjoys discretion in deciding the issues presented.  *See Levine v. Chief Justice of the District Court Department of the Trial Court*, 434 Mass. 1014, 1014 (2001); *Bates v. Superior Court*, 432 Mass. 1021, 1022, n.3 (2000).  Further, the purpose of the Declaratory Judgment Act is not to provide advisory opinions on broad pronouncements of the law sought by a plaintiff but to decide "decisive

issues involved in the controversy between the parties
and to make binding declarations concerning such
issues." *Zaltman v. Daris*, 331 Mass. 458, 462 (1954)
(emphasis added); *Pina v. Liberty Mutual Ins. Co.*, 388
Mass. 1001, 1002 (1983)("statutory purpose of an
action for declaratory judgment is to enable the judge
to afford relief from uncertainty and insecurity with
respect to the rights of the parties.")(internal
quotation omitted; emphasis added); *Haverhill Manor v.
Commissioner of Public Welfare*, 368 Mass. 15, 31
(1975)(under Declaratory Judgment Act, parties are
entitled to a decree declaring "the rights of the
litigants").

Here, the Customers sought a general declaration
on the status of the law concerning a broad question
pertaining to the unauthorized practice of law in
arbitration proceedings rather than the particular
legal rights and status of the parties before the
Court. *See* App. at 10.  The Single Justice properly
exercised his discretion to narrow the issue to the
parties before him, and, in the particular
circumstances of this case, he issued a declaration
establishing the status and legal rights of the
litigants before him – namely, the Lawyers'

participation at the hearing would not constitute the unauthorized practice of law. *Id.* at 437-446. Thus, even though he denied the Customers' petition for equitable relief, the Single Justice properly made a declaration as to the rights of the Customers and the Lawyers. *See City of Boston v. Massachusetts Bay Trans. Auth.*, 373 Mass. 819, 829 (1977)("even if relief is denied on the merits, there must be a declaration of the rights of the parties").

Moreover, contrary to the Customers' protestations, the Single Justice did not make a cursory declaration of the parties' rights without "sufficient reasons". *See* Appellants' Brief at 29. Rather, the Single Justice issued a comprehensive ten-page decision that considered the unique facts in this case, explored the rationale and public policy embodied in Mass. R. Prof. C. 5.5, looked at persuasive authority from sister jurisdictions and the ABA Commission on Multijurisdictional Practice's Report to the House of Delegates, and weighed the context in which the Lawyers would be providing legal services to their clients. *See* App. at 437-446.

Accordingly, the Single Justice did not abuse his discretion and properly fulfilled his duties under the

Declaratory Judgment Act when he determined the legal rights of the parties before him in reaching the declaration, in the particular circumstances, that the Lawyers' participation at the hearing would not constitute the unauthorized practice of law.

### III. THE SINGLE JUSTICE PROPERLY DECLINED TO RENDER DECLARATIONS ON ISSUES THAT WERE MOOTED BY THE DECLARATION THAT THE LAWYERS' CONDUCT WOULD NOT CONSTITUTE THE UNAUTHORIZED PRACTICE OF LAW.

The Customers assert that the Single Justice should have addressed "all issues on which declarations were sought" after he had declared that the Lawyers' participation at the hearing would not constitute the unauthorized practice of law. Appellants' Brief at 34. Once again, the Customers are mistaken.

A declaratory judgment "is a vehicle for resolving actual, not hypothetical, controversies." *Boston Herald, Inc. v. Superior Court Department of Trial Court*, 421 Mass. 502, 504 (1995). Such proceedings are concerned with the resolution of real controversies and "the declaration issued is intended to have an immediate impact on the rights of the parties." *Massachusetts Assoc. of Independent Ins.*

*Agents and Brokers v. Commissioner of Ins.*, 373 Mass. 290, 292 (1977). Here, the Customers sought four declaratory judgments from the Single Justice. App. at 10. The first and primary declaration sought a determination concerning whether the Lawyers' participation at the upcoming arbitration hearing would constitute the unauthorized practice of law. *Id.* In addition to this declaration, the Customers sought three additional declarations concerning: whether their counsel would be assisting in the unauthorized practice of law (Declaration II); whether the arbitrators' refusal to adjourn the hearing until after the unauthorized practice of law issue was resolved would be a violation of the Massachusetts' Arbitration Act (Declaration III); and whether the unauthorized practice of law would constitute procuring an arbitration award by "undue means" under the Massachusetts' Arbitration Act (Declaration IV) (Declarations II through IV are collectively referred to as the "Secondary Declarations"). App. at 17-19. The fundamental and underlying condition for the Secondary Declarations rested upon the primary declaration that the Lawyers' participation at the

hearing would violate the unauthorized practice of law rule and statute. *Id.*

When the Single Justice declared that the Lawyers' participation at the hearing would not constitute the unauthorized practice of law, the Secondary Declarations ceased to be an actual controversy between the parties and any declaration on the Secondary Declarations sought by the Customers would have amounted to nothing more than an advisory opinion. As this Court recognized, if there is not an actual controversy, then declaratory relief is not available. *Gay & Lesbian Advocates & Defenders v. Attorney General*, 436 Mass. 132, 134-135 (2002)(request for declaratory relief was denied as "nothing more than a request for an advisory opinion"). In such instances, a Court has a "substantial range of discretion" to deny declaratory relief where the Court justifiably concludes that declaratory relief will not end a controversy, is premature, or for other reasons. *Boston Safe Deposit and Trust Co. v. Dean*, 361 Mass. 244, 248 (1972). Here, rather than give an advisory opinion on three broad areas of the law, the Single Justice properly exercised his discretion to decline to decide the

Secondary Declarations after he declared that the Lawyers' participation at the hearing would not constitute the unauthorized practice of law.  App. at 445.

Finally, the Customers argue that had the Single Justice issued the three advisory opinions sought by them – the Secondary Declarations - he would have limited, "if not altogether eliminat[ed]", the Federal Action.  *See* Appellants' Brief at 35.  Again, the Customers are in error, and they are not being completely candid with the Court.

Beyond the Customers' collateral attack on the Single Justice's decision, the Customers have raised numerous issues before the U.S. District Court in an effort to upset the arbitration award and further delay their day of reckoning.  *See Kashner Davidson Securities Corporation, et. al. v. Steven Mscisz, et. al.,* No. 05-CV-11433-JLT (D. Mass)(Docket Entry 11).  In particular, they have moved to vacate the award by asserting that the arbitrators abused their discretion in deciding discovery issues, the arbitrators exceeded their power in issuing the award, the arbitrators refused to hear evidence, the award was procured through undue means, and the arbitrators' manifestly

disregarded the law. *Id.* Similarly, the Customers'
stated intention to request the U.S. District Court to
abstain from confirming the arbitration award until
this Court resolves the unauthorized practice of law
issue is also without merit. *See* Appellants' Brief at
n.5. There are very limited grounds to upset an
arbitration award under the Federal Arbitration Act,
and the Customers have not provided any legal
authority holding that the unauthorized practice of
law by a party to an arbitration proceeding may serve
as a basis to vacate an award under the Federal
Arbitration Act. Rather, such vexatious litigation
demonstrates the lengths to which the Customers will
go to in order to avoid having to pay KDSC the monies
that they have long-owed the firm.

### CONCLUSION

The parties came before the Single Justice and sought a declaration as to the status and rights of the parties before him — the Lawyers — with respect to their participation at an arbitration hearing that the NASD had selected to take place in Boston, Massachusetts.  Contrary to the Customers' numerous attacks on the Single Justice's Judgment, the record demonstrates that the Single Justice did not abuse his discretion when he denied the Customers' petition and declared the rights of the parties.

The Single Justice looked at the pertinent facts in this case, the context in which the legal services were to be performed, and the rationale and policy espoused by the statute and rule concerning the unauthorized practice of law when he properly exercised his discretion and declared, in the particular circumstances presented, that the Lawyers' participation at the hearing would not constitute the unauthorized practice of law.  Similarly, the Single Justice properly exercised his discretion to decline to issue an advisory opinion on the Secondary Declarations after his declaration concerning the Lawyers' status extinguished any actual controversy

between the parties and rendered them moot for further
consideration.

Accordingly, this Court should affirm the
decision by the Single Justice and assess the costs of
this appeal against the Customers.

Dated:  August 31, 2005

> Respectfully submitted,
>
> _____
> Howard M. Smith, BBO# 468880
> NEWMAN & SMITH
> One Gateway Center
> Newton, Massachusetts 02458
> (617) 965-9697
>
> Attorneys for Appellees

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of this
document was served upon the attorney of
record for each party by mail/by hand.

Dated: _____    _____