UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case No. 05-CV-11433-JLT

---

KASHNER DAVIDSON SECURITIES CORP.,
VICTOR KASHNER, MATTHEW MEISTER,
And TIMOTHY VARCHETTO

Plaintiffs,

v.

STEVEN MSCISZ, MARK MSCISZ, and
LYNDA MSCISZ

Defendants.

---

**MOTION TO MODIFY AND CONFIRM ARBITRATION AWARD
AND ENTRY OF JUDGEMENT THEREON.**

Of Counsel:

Howard M. Smith, BBO# 468880
NEWMAN & SMITH
One Gateway Center
Newton, Massachusetts 02458
(617) 965-9697

Attorneys for Defendants

## PRELIMINARY STATEMENT

Plaintiff Kashner Davidson Securities Corp. ("KDSC"), Victor Kashner, Matthew Meister, and Timothy Varchetto move this Court, pursuant to 9 U.S.C. §§ 9 and 11 and Mass. Gen. L. c. 251 §§ 11 and 13, to modify and confirm an arbitration award (hereinafter the "Award") entered against Defendants Steven Mscisz, Mark Mscisz, and Lynda Mscisz by a panel of arbitrators (the "Panel") in an arbitration proceeding before the National Association of Securities Dealers, Inc. ("NASD") entitled *Kashner Davidson Securities Corp. v. Steven Mscisz, Mark Mscisz, and Lynda Mscisz v. Victor Kashner, Matthew Meister, and Timothy Varchetto,* NASD No. 04-03793 (hereinafter the "Arbitration").

KDSC had sued Defendants to collect nearly $350,000 in margin debt that Defendants had incurred in their non-discretionary brokerage accounts. When Defendants answered KDSC's claim, they filed a counterclaim and third-party claims against the individual plaintiffs.

After submitting their disputes to arbitration before three arbitrators that had been empanelled by the NASD and accepted by the parties (the arbitrators consisted of a Senior Justice of the New Hampshire Superior Court, a practicing attorney, and a Chief Compliance Officer of a broker-dealer who held an M.B.A, a J.D., and a C.F.P. designation), Defendants filed numerous motions latter in the case in an effort to avoid their day of reckoning, including the following motions: a discovery motion; a motion to disqualify counsel and/or stay the proceeding; an emergency motion for additional time to comply with the discovery order; an emergency motion to postpone the hearing; a motion for reconsideration of the discovery order; a motion for reconsideration of the order denying the motion to disqualify counsel; and a motion to withdrawal their counterclaims and third-party claims because they were unsatisfied with the discovery order. Each motion was in turn, considered and ruled upon by the panel.

In a further effort to derail the arbitration proceeding, Defendants filed a declaratory judgment action before a Single Justice of the Massachusetts' Supreme Judicial Court seeking a ruling that Plaintiffs' out-of-state-counsel's participation at the hearing would constitute the unauthorized practice of law. The Single Justice denied Defendants' application and held that, in this instance, Plaintiffs' Counsel's participation at the hearing would not constitute the unauthorized practice of law.

After concluding that they had the authority under the NASD Rules, the Panel dismissed Defendants' counterclaim and third-party claims on the merits, with prejudice, prior to the commencement of the hearing.

Subsequently, the Panel conducted an in-person hearing in which all parties were allowed to call witnesses and present documentary evidence. After due deliberation, the Panel issued the Award against Defendants, jointly and severally, and in favor of KDSC. It is this Award that Plaintiffs seek to confirm – subject to a limited modification to apportion the liability found, jointly and severally, to the respective parties as set forth more fully herein. Also, Plaintiffs seek for the Court to issue additional relief in the form of KDSC's reasonable attorneys' fees against Defendants in connection with collecting upon the underlying debt at issue in the Arbitration, as provided by the contract between the parties and after the time through which attorney's fees were awarded by the panel in the Award.

## **ARGUMENT**

## I.    THE COURT SHOULD MODIFY AND CONFIRM THE AWARD

The Court should modify and confirm the award, under 9 U.S.C. §§ 9 and 11(c) and Mass. Gen. L. c. 251 §§ 11 and 13, as the Award is imperfect in minor matter of form not

affecting the merits of the controversy.  In the Arbitration, KDSC sought: a) an award against

Steven Mscisz in the amount of $173,634.22 in compensatory damages; b) an award against

Mark Mscisz and Lynda Mscisz, jointly and severally, in the amount of $176,923.98 in

compensatory damages; and c) the costs of collection including filing fees, hearing fees,

reasonable attorneys' fees and costs.[1]  In the Award, however, the Panel issued an award as

follows:

> Respondents [Steven Mscisz, Mark Mscisz and Lynda Mscisz] are jointly and
> severally liable and shall pay Claimant [KDSC] compensatory damages in the
> amount of $421,000.00, inclusive of attorneys' fees and costs according to the
> margin agreement, plus interest at the WSJ prime rate from May 18, 2005 until
> the date of payment of the award.[2]

Rather than allocate $173,634.22 in compensatory damages to Steven Mscisz, allocate

$176,923.98 to Mark and Lynda Mscisz, jointly and severally, and then allocate the balance

$70,441.80 – representing attorneys' fees and costs – jointly and severally among all Defendants,

the Panel issued a total award against Defendants jointly and severally.  Therefore, Plaintiffs

request that the Court issue an order modifying the Award to distribute liability, which does not

affect the merits of the controversy, as follows: a) as against Steven Mscisz, compensatory

damages in the amount of $173,634.22; b); as against Mark Mscisz and Lynda Mscisz, jointly

and severally, compensatory damages in the amount of $176,923.98; and c) as against Steven

Mscisz, Mark Mscisz and Lynda Mscisz, jointly and severally, the reasonable attorneys' fees and

costs in the amount of $70,441.80, which was incurred in collecting the debt against them as a

---

[1] *See* Affirmation of Richard J. Babnick Jr. dated May 4, 2006 (hereinafter "Babnick Affm.") at
Exh. 1 (the "Complaint") at Exh. B thereto (the "Award") at p. 2.

[2] Award at p. 3.

result of their joint defense in the Arbitration.  This modification in form does not affect the merits of the controversy and serves the true intent of the arbitrators.  *See* 9 U.S.C. §11(c).

Accordingly, Plaintiffs request that the Court issue an Order modifying and confirming the Award and confirming judgment thereon.

## II.    DEFENDANTS' GROUNDS FOR VACATING THE AWARD ARE WITHOUT MERIT

In light of the unfavorable Award against Defendants, Defendants have asserted a laundry list of Counterclaims as to how the Award is imperfect and request the Court to vacate the Award.[3]  The Court should reject Defendants' attempt to evade liability because the grounds raised by Defendants to vacate the Award are without merit.

The First Circuit Court of Appeals has held that "review of arbitrator's decisions is 'extremely narrow and exceeding deferential'" such that "judicial review of an arbitration award is among the narrowest known to the law."  *Gupta v. Cisco Systems, Inc.*, 274 F.3d 1, 3 (1st Cir. 2001).  Massachusetts Courts similarly hold that a Court's review of an arbitration award is subject to a very narrow scope of review and confined to certain narrow grounds.  *See Restaurant Consulting Serv., Inc. v. Mountzuris*, 253 F.Supp.2d 45, 57 (D. Mass. 2003); *Softkey, Inc. v. Useful Software, Inc.*, 52 Mass.App.Ct. 837, 756 N.E.2d 631, 633 (Mass. App. 2001).  Such review is so narrow that even if an "arbitrator in assessing damages commits an error of law or fact, but does not overstep the limits of the issues submitted to [the arbitrator], a court may not substitute its judgment on the matter."  *Softkey*, 756 N.E.2d at 633-34.  As a result, there is a legal presumption that arbitrators decide only the matters submitted to them, and the burden

---

[3] *See* Babnick Affm. at Exh. 2 (the "Counterclaims") at pp. 27-34.

to impeach an arbitrator's award falls upon the party seeking to vacate the award. *Barletta v. French*, 34 Mass.App.Ct. 87, 607 N.E.2d 410, 415 (Mass. App. 1992).

As set forth below, in light of this narrow standard of review, each of the grounds raised by Defendants to vacate the Award are without merit.

## III.    THE ARBITRATORS DID NOT EXCEED THEIR AUTHORITY

In Count I, Defendants seek to vacate the Award, under 9 U.S.C. §10(a)(4) and Mass. Gen. L. c. 251, §12(a)(3), by asserting that the Arbitrators exceeded their power when they dismissed Defendants' counterclaims and third-party claims in the Arbitration, and granted KDSC's oral motion to confirm the pleadings to the proof offered.[4]  Further, in a related Count, Count VI, Defendants argue that vacatur is warranted, under Mass. Gen. L. c. 251, §12(a)(5), because they argue that there was no agreement to arbitrate the issues addressed – the third-party claims asserted against Messrs. Kashner, Meister, and Varchetto, which were ultimately dismissed by the Arbitrators – in the Award.[5]  Contrary to Defendants' assertions, Defendants submitted their third-party claims to arbitration and the Arbitrators acted within their scope of authority in dismissing the third-party claims and by allowing KDSC to amend its pleadings to the proof submitted.

### A.    Defendants Irrevocably Submitted the Third-Party Claims to Arbitration

When Defendants filed their Answer and Counterclaims against KDSC, they also filed Third-Party Claims with the NASD against Messrs. Kashner, Meister and Varchetto, as well as submission agreements, submitting "the present matter in controversy, as set forth in the

---

[4] *See* Counterclaims at p. 27.  For ease of reference, each individual counterclaim raised by Defendants shall be referred to herein by the Count # identified by Defendants in the Counterclaims.

[5] *Id*. at p. 33.

5

statement of claim, answers, cross claims and all related counterclaims and/or *third-party claims* which may be asserted, to arbitration . . ." before the NASD.[6]  Under Rule 10101(c) of the NASD Code of Arbitration (the "NASD Code"), Defendants' submission of their dispute with Messrs. Kashner, Meister and Varchetto was a matter eligible for submission to arbitration before the NASD because it was a dispute between associated persons of an NASD member firm (Kashner, Meister and Varchetto) and public customers (Defendants).  Further, under Rule 10301(a) of the NASD Code, Messrs. Kashner, Meister and Varchetto *were required* to submit the dispute to arbitration because Defendants, as public customers, had demanded that they arbitrate this dispute before the NASD.  *See* NASD Code, Rule 10301(a).  As they were required to submit to arbitration, Messrs. Kashner, Meister and Varchetto filed an Answer to the Third-Party Claims.

After receiving what they determined to be an "unfavorable" decision on discovery sought, Defendants argued to the Panel that they did not execute a "Uniform Submission Agreement", but rather, they filed an executed Submission Agreement wherein they agreed to submit their claims to arbitration only if they would be afforded a "fair and complete opportunity to obtain adjudication of their claims and defenses."[7]  Notwithstanding Defendants' attempts to play games with the NASD and the Arbitration Panel, Courts have held that counsel's fancy draftsmanship to conditionally submit to arbitration is of no avail – the submission to arbitration is *irrevocable.*

For example, in *Kelleher v. Cersosimo*, the Appeals Court of Massachusetts held that the "use of the 'condition precedent' terminology [in an arbitration submission provision] *does not*

---

[6] *See* Counterclaim at Exh. A (emphasis added).

[7] *See id.*

take this agreement out from under the aegis of the Uniform Arbitration Act for Commercial Disputes" and "consequently it is valid, enforceable *and irrevocable*." 2 Mass.App.Ct. 904, 905, 320 N.E.2d 840 (Mass. App. Ct. 1974) (noting that the defendant had participated in the arbitration proceedings). Here, Defendants submitted the Third-Party Claims to arbitration and *required* Messrs. Kashner, Meister and Varchetto to incur substantial fees and costs, such as pre-hearing costs assessed at the Initial Pre-Hearing Conference and legal fees, as a result of Defendants' submission of their Third-Party Claims against these individuals to arbitration. Thus, by affirmatively submitting the Third-Party Claims to arbitration, Defendants irrevocably submitted their dispute with Messrs. Kashner, Varchetto and Meister to arbitration before the NASD.

1.    *Defendants Actively Participated in the Arbitration Proceeding and Prosecuted The Third-Party Claims Against Messrs. Kashner, Meister and Varchetto*

Defendants actively participated in the arbitration proceeding and required Messrs. Kashner, Varchetto and Meister to incur substantial legal fees in defending same. For instance, Defendants participated in the selection of the arbitration panel; Defendants participated in a Scheduling Conference with the Panel; and Defendants actively engaged in discovery in pursuit of their Third-Party Claims.

On November 16, 2004, Defendants, through their Counsel, participated in the Initial Pre-Hearing Conference – by accepting the Arbitration Panel, scheduling discovery dates, and scheduling hearing dates for Defendants' Counterclaims and Third-Party Claims.[8] Pursuant to the agreed-upon schedule, Defendants thereafter filed a fifty-eight page discovery motion seeking affirmative relief from the Arbitrators in support of their Counterclaims and Third-Party

---

[8] Babnick Affm. at Exh. 3.

Claims – relief that Defendants were granted, in part.  Further, Defendants' Counsel actively

participated in the discovery conference held by the Chairperson on the discovery motions.

Subsequently, on February 7, 2005, Defendants filed "Emergency" motions for additional time

to comply with the discovery order and to adjourn the hearing on the Counterclaims and Third-

Party Claims – notably, the Panel granted Defendants' motion to adjourn.  Thus, it is

indisputable that Defendants, over Plaintiffs' objections, – for over a six month period of time –

actively participated in the arbitration and prosecuted their Third-Party Claims.

On February 24, 2004, *after* the time for Defendants to comply with the discovery order

had expired, *after* Defendants had failed to comply with the discovery order, *and six days before*

*the scheduled hearing date*, Defendants sought to withdraw their Third-Party Claims because

they were unhappy with the discovery order and claimed that they were not receiving a "fair and

complete opportunity to obtain adjudication of their claims and defenses".  As set forth below,

however, the law does not allow a party – Defendants and their Counsel – to play so fast and

loose with the arbitration process.

2.    *Defendants Participation in the Arbitration Operates as a*
      *Waiver of Any Right to Pursue Judicial Remedies Before the Courts*

Messrs. Kashner, Varchetto and Meister all are residents of the State of Florida and

entitled to the protection of the laws of the State of Florida.  The Courts of the State of Florida

have held that "just as a party who has a right to arbitration can waive that right by participating

in a judicial proceeding, so can a party having a right to judicial determination of arbitrable issue

*waive that right by participating in arbitration*." *Victor v. Dean Witter Reynolds, Inc.*, 606

So.2d 681, 686 (Fla. Dist. Ct. App. 1992) (emphasis added).  Indeed, "because federal law favors

arbitration over litigation for resolution of private litigation, the burden to establish waiver may

be less." Id. In *Victor*, the Court held that Respondent had waived its right to pursue a judicial remedy by actively participating in the arbitration process for seven months, including the selection of the arbitrators, and raising its object to arbitration "on the brink of the final hearing." *Id.*

Not surprisingly, the law is similar in the State of Massachusetts. In particular, the Appeals Courts of the State of Massachusetts have held that by a party's submission of a claim to arbitration and active participation in the arbitration proceeding, including engaging in discovery with respect to such claims, that party waives their right to pursue such claims before the Courts. *Gargano & Associates, P.C. v. John Swider & Associates*, 55 Mass.App.Ct. 256, 262, 770 N.E.2d 506 (Mass. App. Ct. 2002). In *Gargano*, the Plaintiff, having received an adverse ruling from the arbitrator on one of its claims, sought to litigate his other claims in Court. In soundly rejecting the Plaintiffs attempt to circumvent the arbitrators, the Court held that "having elected to submit their [G.L. 93A] §9 claim to arbitration, [Plaintiffs] were foreclosed from pursuing the same claim in Superior Court". *Id.* at 262; *see also, Boston Police Patrolmen's Association v. City of Boston*, 60 Mass.App.Ct. 672, 805 N.E.2d 80 (Mass. App. Ct. 2004)(parties that submit claim to be determined by arbitrator cannot ordinarily obtain judicial relief if they disagree with the decisions rendered by the arbitrator who they have empowered to adjudicate the controversy).

As in *Gargano*, Defendants submitted numerous claims to arbitration, including a claim under the Massachusetts Consumer Protection Act, G.L. 39A, §9, against Messrs. Kashner, Varchetto and Meister, and Defendants subsequently sought to assert this very same claim in Court because they had received what they determined to be an unfavorable discovery ruling – a ruling that Defendants self-servingly assert denied them a fair and complete opportunity to

obtain adjudication of their claims and defenses. The Massachusetts' Courts, however, have expressly held that an individual cannot do exactly what Defendants sought to do in the Arbitration, to wit, remove a claim under the Massachusetts Consumer Protection Act that has already been submit to arbitration from the arbitrators to the Courts. *See Gargano*, 55 Mass.App.Ct. 256, 262.

Moreover, not only did Defendants initiate the Third-Party Claims in arbitration against Messrs. Kashner, Varchetto and Meister, but here, as in *Victor*, Defendants had been actively participating in the Arbitration proceeding for over six months when they sought to remove their claims to Court on the brink of the final hearing. The law does not allow such shenanigans, and the Panel subsequently denied Defendants' motion to withdraw their Third-Party Claims from the Arbitration– an issue that was well within the matters submitted to them in the Arbitration. *See Barletta,* 607 N.E.2d at 414 ("once in the arena of Arbitration, the powers of the arbitrators concerning the issues before them are wide and the scope of judicial review of the arbitration proceedings is narrow.").

The Arbitrators' decision to deny Defendants' attempts to circumvent the arbitration procedure was well within the issues submitted to them. The Arbitrators' decision was also grounded in solid public policy. In a similar circumstance, the District Court for the Southern District of West Virginia held that to allow a party to submit a matter to arbitration and later attempt to revoke that submission on the eve of hearing would undermine the binding arbitration system that Congress, the U.S. Supreme Court, and Courts of Appeals have repeatedly and enthusiastically endorsed. *Oakwood Mobile Homes, Inc. v. Stevens*, 204 F.Supp.2d 947, 951 (S.D. W. Va. 2002)(failure to challenge arbitrability in timely fashion and participation in arbitration results in waiver of right to object).

Accordingly, Defendants' Third-Party Claims were submitted to arbitration before the Arbitrators, and the Arbitrators acted within the scope of their authority when they dismissed such claims. The Court should reject Defendants efforts to vacate that portion of the Award addressing the Third-Party Claims.

### B. The Panel Did Not Exceed Its Authority by Dismissing the Counterclaims and Third-Party Claims With Prejudice

In an effort to attack the Award, Defendants argue that the Panel exceeded its authority by dismissing the Counterclaims and Third-Party Claims with prejudice. Defendants are in error.

Here, it is undisputed that the Chairperson had ordered Defendants to produce documents to KDSC.[9] Thereafter, in connection with obtaining additional time to respond to the discovery order, Defendants' Counsel affirmatively represented to the Arbitrators that "the Customers [Defendants] intend to comply fully with the Chairman's order directing them to provide information to the Third Party Respondents and Claimant/Respondent-Counterclaim."[10] Subsequently, Defendants *refused* to comply with the discovery order – after obtaining additional time to respond to the order – and willfully and intentionally disregarded the discovery order when they sought to remove the Counterclaims and Third-Party Claims from the arbitration proceeding to the Courts.

Rule 10305 of the NASD Code provides that the arbitrators may dismiss a claim or defense with prejudice as a sanction for a party's willful and intentional failure to comply with

---

[9] *See* Complaint at ¶24; Counterclaims (admitting ¶24).

[10] *See* Complaint at ¶25; Counterclaims (admitting ¶25).

11

an order of the arbitrators if lesser sanctions have proven ineffective. *See* NASD Code, Rule 10305(b). Rule 10305, however, is not viewed or interpreted in a vacuum. To the contrary, Rule 10324 empowers the arbitrators to interpret this and other rules under the NASD Code and take all actions appropriate to obtain compliance with their orders. Specifically, Rule 10324 provides:

> The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding upon the parties.

NASD Code, Rule 10324. Indeed, the United States Supreme Court has held that, "NASD arbitrators, comparatively more expert in the meaning of their own rule, are comparatively better able to interpret and to apply it." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)(deferring issue to arbitrators and noting that Rule 10324 empowers NASD arbitrators to interpret the rules governing the arbitration proceeding). It is precisely this authority that the Arbitrators invoked in reaching their ruling to dismiss the Counterclaims and Third-Party Claims.

As the arbitration transcript reflects, Defendants argued, as they do here, that Rule 10305 does not allow dismissal of their claims for their willful disobedience of the discovery order because there had been no lesser sanction imposed against them.[11] In response, the Chairperson unequivocally stated,

> I think we do have authority beyond what you've quoted [Rule 10305], and that was what our ruling was based on. It was after thoughtful consideration that the panel reviewed that and made that ruling. So we feel we do have authority.

* * * *

---

[11] *See* Babnick Affm. at Exh. 4 (the "Reply") at Exh. B, p. 19 thereto.

After review of the matter, the panel is upholding their decision of dismissing the counterclaims with prejudice. We feel it's within our rights under Rule 1035 – 10305.[12]

Therefore, the Panel was well within its authority, under the NASD Code, to interpret the NASD Code and issue orders and take appropriate measures to obtain compliance with its prior orders – orders that Defendants had willfully disobeyed. Accordingly, the Court should reject Defendants' efforts to vacate that portion of the Award addressing the Counterclaims and Third-Party Claims.

### C.    The Panel Did Not Exceed Its Authority in Granting KDSC's Motion to Amend the Pleadings to Conform to the Proof at the Hearing

Defendants assert that the Court should upset the Arbitrators' duly issued Award because the Arbitrators purportedly exceeded their authority by granting KDSC's oral motion to conform the pleadings to the proof at the hearing.[13] Once again, Claimants are in error.

The NASD Code expressly provides that any party may amend their pleading at any stage of the proceeding – the only caveat is that the Arbitration Panel's consent is required after the Arbitrators have been appointed. *See* NASD Code, Rule 10328(c). Whether to deny or grant an amendment, at any stage of the proceeding, is at the complete discretion of the Arbitration Panel who are the ultimate interpreters of the NASD Code. *See* NASD Code, Rule 10314, *Howsam,* 537 U.S. at 85. Here, the Arbitration Panel gave "due consideration" to Claimant's oral motion to conform the pleadings to the proof adduced at the hearing and granted the motion to conform the pleadings[14] – a matter wholly within their authority and discretion under the NASD Code.

---

[12] *Id.* at p. 19-20.

[13] *See* Counterclaim at ¶115(c).

[14] *See* Award at p. 3.

Accordingly, the Court should reject Defendants' efforts to vacate the Award because the Panel's decision to grant KDSC's motion to conform the pleadings to the evidence was wholly within their authority and discretion.

## IV.    THE ARBITRATORS DID NOT REFUSE TO HEAR MATERIAL EVIDENCE

In Count II, Defendants seek to vacate the Award, under 9 U.S.C. §10(a)(3) and Mass. Gen. L. c. 251, §12(a)(4), by asserting that: i) the Arbitrators refused to hear material evidence concerning a litany of purported defenses, counterclaims and third-party claims by refusing to compel KDSC to produced documents to Defendants; ii) dismissing the Counterclaims and Third-Party Claims; iii) failing to hold a pre-hearing conference requested by Defendants; iv) presenting Defendants with a "Hobson's Choice" of abetting the unauthorized practice of law by the Brokers' Counsel or defaulting in the Arbitration; and v) placing an imprimatur on the 'sandbagging' strategy of the Brokers and their counsel.[15] Notwithstanding Defendants' protestation concerning *discovery* and other issues, the Arbitration Panel did not refuse to hear material evidence at the hearing.

### A.    Defendants' Dissatisfaction with Discovery Rulings Does Not Amount to the Arbitrators Refusal to Hearing Material Evidence at the Hearing

Defendants bemoan that the Arbitrators "refused to hear evidence material to the controversy" concerning such matters as "evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated Sections 7, 9, and 10(b) of the Securities Act of 1934".[16] But Defendants *do not* cite or make reference to any *specific* piece of evidence that the

---

[15] *See* Counterclaims at pp. 29-30.

[16] Id. at ¶119(a).  The following paragraphs (b) through (m) contain similar statements concerning each of the various claims raised by Defendants.

Panel refused to hear at the hearing. Rather, as reflected early in the Counterclaims, Defendants are distorting their dissatisfaction with the Chairperson's <u>discovery</u> <u>rulings</u> into a failure by the Panel to hear material evidence.[17] Such discovery issues, however, do not give rise to a basis to vacate an arbitration award.

As Defendants' acknowledge, the "conduct of discovery in the Arbitration was largely committed to the discretion of the Panel or its designee."[18] It was well within the Arbitrators' discretion to grant or deny the parties discovery requests. While Defendants argue that the Arbitrator did not require KDSC to produce documents that the NASD Discovery Guide states are "presumptively discoverable", Defendants ignore the fact that the Discovery Guide is precisely that – a Guide – to the Arbitrators and it is for the Arbitrators to decide the scope and bounds of discovery in the particular case before them. The Arbitrators' ***discovery*** rulings do not serve as a basis to vacate an arbitration award.[19]

The Federal Arbitration Act and Massachusetts' Arbitration Act do not provide that the denial of discovery is a basis to upset an arbitration award. *See generally*, 9 U.S.C. §10; Mass. Gen. L. c. 251, §12. Rather, these Acts require a party to have actually presented evidence at the hearing and the Panel's refusal to hear such presented evidence. *See Restaurant Consulting Services, Inc. v. Mountzuris*, 253 F.Supp.2d 45, 56 (D. Mass. 2003); *see also, Grinnell Housing*

---

[17] *See* Counterclaims at pp. 16-18.

[18] *Id*. at ¶64.

[19] Similarly, it is within the Panel's discretion to determine if a party has complied with the Panel's order or directive. Here, Defendants took issue with KDSC redacting the ***personal information of its other customers and non-party employees*** from records produced to Defendants. The Panel did not find such redacted production to violate their order to produce documents concerning telephone calls with Defendants or documents concerning the named parties.

*Development Fund Corp. v. Local 32B-32J Service Employee Int'l Union, AFL-CIO*, 767

F.Supp. 63, (S.D.N.Y. 1991)(noting that a party must set forth with "specificity what evidence, if

any, it would have presented or indeed what specific evidence it proffered to the arbitrator which

the arbitrator refused to hear.").

Accordingly, the Arbitration Panel acted within its discretion in ruling on discovery

matters and such decisions do not provide for a basis to upset the Award.

### B.    The Panel's Dismissal of the Counterclaims and Third-Party Claims Does Not Constitute Refusal to Hear Material Evidence

Defendants also assert that the Panel refused to hear material evidence concerning their

Counterclaims and Third-Party Claims after the Panel had dismissed such claims with

prejudice.[20] This argument is also wholly without merit.

As discussed above, the Panel acted within its authority when it dismissed the

Counterclaims and Third-Party Claims. *See, infra*, Point III(B).  Moreover, Defendants do not –

and cannot – point to any evidence that they offered at the hearing in support of these dismissed

claims that the Arbitrators refused to hear.

Accordingly, the Court should reject Defendants' efforts to upset the award.

### C.    The Panel Did Not Refuse to Hearing Material Evidence When it Failed to Hold A Pre-Hearing Conference on Defendants' Motions for Reconsideration That Was Requested Just Days Before the Hearing

In a further effort to shove a square peg into a round hole, Defendants argue that the

Arbitrators' failure to hold a pre-hearing conference, which they requested three business days

before the hearing, to argue for reconsideration of discovery issues and the dismissal of their

---

[20] *See* Counterclaim at ¶120(e).

claims, was somehow a refusal by the Panel to hear material evidence.[21] Defendants are, again, mistaken.

Not only is the failure to hold a pre-hearing conference to discuss motions for reconsideration not a "refusal to hear material evidence", *see Mountzuris*, 253 F.Supp.2d at 56, but the Panel specifically addressed any open issues at the commencement of the hearing on May 17, 2006.[22] Accordingly, the Court should deny Defendants' efforts to upset the duly issued Award.

      **D.**    **The "Hobson's Choice" of Abetting the Unauthorized Practice of Law by Brokers' Counsel or Defaulting in the Arbitration Argument is Frivolous and Not a Refusal by the Arbitrators to Hear Material Evidence**.

Defendants assertion that their Counsel was presented with a "Hobson's Choice" of abetting the unauthorized practice of law by Plaintiffs' Counsel or default in the arbitration is frivolous and does not amount to the Arbitrators' failure to hear material evidence.[23]

Initially, a Single Justice of Massachusetts' Supreme Judicial Court had affirmatively held that Plaintiffs' Counsel's participation at the arbitration hearing would not constitute the unauthorized practice of law.[24] Given that the U.S. Supreme Court has held that "[i]n Massachusetts, as in most jurisdictions, the determinations of a judge acting within his jurisdiction, even if erroneous, are valid and binding *until* they are set aside under some recognized procedure," *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984), it is not surprising

---

[21] *See* Counterclaim at ¶120(g).  Further discussion of the basis for Defendants' request for the pre-hearing conference is located at ¶¶86-87 of the Counterclaim.

[22] *See e.g.*, Reply at Exh. B (addressing Defendants' request for reconsideration of the dismissal of the Counterclaims and Third-Party Claims).

[23] *See* Counterclaim at ¶120(h).

[24] Reply at Exh. A.

that *at the arbitration hearing*, Defendants' Counsel, William Corbett, Jr., Esq., acknowledged that Plaintiffs' actions to retain local counsel to appear at the hearing "was not necessary . . . because of the order of the single justice last week.  Mr. Ross was not enjoined from participating at this proceeding."[25]

In the Massachusetts Supreme Judicial Court recently issued decision, *Superadio Limited Partnership v. Winstar Radio Productions, LLC*, the Court declined to address whether a licensed out-of-state counsel's participation at an in-state arbitration hearing constituted the unauthorized practice of law.  *Superadio Limited Partnership v. Winstar Radio Productions, LLC*, No. SJC-09542 (Mass. March 28, 2006).  Rather, the Supreme Judicial Court held in *Superadio* that even if such actions amounted to the unauthorized practice of law – a decision not reached – the conduct would ***not*** provide a basis to vacate an arbitration award.  *Id.*

So too, in reviewing the Single Justice's Decision in *Mscisz v. Kashner Davidson Securities Corp.*, the Supreme Judicial Court held that the Broker's Counsel's participation at the arbitration hearing did ***not*** provide for a basis to vacate the Award.  *Mscisz v. Kashner Davidson Securities Corp.*, No. SJC-09529 (Mass. March 28, 2006).

Accordingly, this purported basis for upsetting the Award is without merit and the Court should reject such argument.

E.    **The Panel's Admission of Newly Acquired Evidence at the Hearing Does Not Amount to the Refusal to Hear Material Evidence**

Finally, Defendants argue that the Panel refused to hear material evidence when it placed its "imprimatur on the 'sandbagging' strategy of the Brokers and their Counsel" when KDSC

---

[25] Babnick Affm. at Exh. 5.  The quoted text appears at lines 4 through 6 of page 214.

sought admission of an assignment from KDSC's Clearing Firm to KDSC of any putative rights against Defendants.[26]  This argument is without merit.

It is wholly within the Arbitration Panel's unfettered discretion to determine whether to allow documents into evidence that were not previously exchanged between the parties.  Rule 10321(c) of the NASD Code provides that the Arbitration Panel "may" exclude from the arbitration any documents not exchanged between the parties more than twenty days prior to the hearing.  *See* NASD Code, Rule 10321(c).  Here, the Panel heard the arguments of both counsel before it determined to allow the entry of the assignment, which had been given that same day and was not previously available, into evidence[27] – a matter wholly within the Panel's discretion.  *See e.g., Nitram, Inc. v. Industrial Risk Insurers*, 848 F.Supp. 162, (M.D. Fl. 1994)(admission of "last minute" report not basis for vacating arbitration award as Federal Courts give great deference to arbitrator's decision to control the order, procedure and presentation of evidence).  Thus, there was no "refusal" to hear evidence, but rather, Defendants take issue with the "admittance" of evidence in the case – and such admitted evidence cannot serve as a basis for vacating the Award.

Accordingly, the Court should reject this argument.

## V.    PLAINTIFFS DID NOT PROCURE THE AWARD BY UNDUE MEANS

In Count III, Defendants further attack the Award and argue that the Court should vacate the Award, under 9 U.S.C. §10(a)(1) and Mass. Gen. L. c. 251, §12(a)(1), because it was obtained by "undue means".  Once again, Claimants efforts to evade paying the debt owed to KDSC is without merit.

---

[26] *See* Counterclaim at ¶¶95-102; 120(j).

[27] *See* Counterclaim at ¶97.

A.    **The Purported Unauthorized Practice of Law**
      **Does Not Give Rise to Procuring an Award by Undue Means**

Defendants assert that Plaintiffs obtained the Award through undue means because the

Brokers' abetted the unauthorized practice of law by their counsel.[28]  This argument is frivolous.

In considering what activity would constitute "undue means", Massachusetts Courts have

held that "undue means", in the context of the Massachusetts' Arbitration Act, are acts

"associated with fraud" and noted that other courts have "said 'undue means' was equivalent in

gravity to corruption or fraud, such as a physical threat to an arbitrator." *Garcia v. Briggs*, 60

Mass. App. Ct. 1107, 800 N.E.2d 346, 2003 WL 22941820 (Mass. App. Ct. 2003)(citing to

federal law interpreting provisions of the Federal Arbitration Act, which parallels Massachusetts'

Arbitration Act).  Similarly, Federal Courts construing Section 10(a)(1) of the Federal

Arbitration Act ("FAA"), have held that the term 'undue means' "must be read in conjunction

with the words 'fraud' and 'corruption' and thus requires proof of intentional misconduct . . . .

Undue means, warranting a vacatur of award, include measures equal in gravity to bribery,

corruption, or physical threat to an arbitration . . . ." *Liberty Securities Corp. v. Fetcho*, 114

F.Supp.2d 1319, 1321 (S.D. Fl. 2000)(citing *Painewebber Group, Inc. v. Zinsmeyer Trusts*

*Partnership*, 187 F.3d 988, 991 (8th Cir. 1999).

Here, Plaintiffs' Lawyers participation at the hearing was not conduct that would give

rise to obtaining an arbitration award by "undue means".  Prior to the arbitration hearing,

Plaintiffs, their Lawyers, and Defendants were parties to an action before a Single Justice of the

Supreme Judicial Court seeking a declaratory judgment as to whether the Lawyers' participation

---

[28] *See* Counterclaim at ¶124(d).

at the hearing would constitute the unauthorized practice of law.[29]  The Single Justice issued a decision and judgment wherein the Single Justice declared, in the particular circumstances presented, that the Lawyers would not be engaging in the unauthorized practice of law by representing Plaintiffs at the arbitration hearing scheduled to occur in Boston, Massachusetts.[30] The Panel has been fully informed of the proceeding before the Single Justice, and the Single Justices' decision.  Thus, there was no "fraud" upon the Arbitration Panel.

Finally, the Massachusetts Supreme Judicial Court recently held that "even assuming that the representation [by counsel licensed in another jurisdiction but not in Massachusetts] might constitute the unauthorized practice of law, the conduct would not provide a basis to vacate the award." *Superadio Limited Partnership v. Winstar Radio Productions, LLC*, No. SJC-09542 at p. 3. (Mass. March 28, 2006).  And in resolving the issue for the parties before this Court, the Massachusetts Supreme Court, *citing Superadio*, held that Defendants' Counsel's participation at the arbitration hearing does ***not*** provide a basis to vacate the Award.  *Mscisz v. Kashner Davidson Securities Corp.*, No. SJC-09529 (Mass. March 28, 2006).

Thus, there is no basis to Defendants' assertion that Plaintiffs' Counsel's status as out-of-state attorneys gives rise to a basis to vacate the arbitration award.

**B.    Discovery Issues Did Not Give Rise to Procuring an Award by Undue Means**

Defendants also seek to collaterally attack the Award by asserting that Plaintiffs obtained the Award by undue means because: they failed to cooperate in discovery by voluntarily exchanging documents; they purportedly failed to produce documents ordered to be produced;

---

[29] *See* Reply at Exh. A.

[30] *Id.*

and they failed to provide copies of documents that they intended to present at the hearing at least twenty days prior to the hearing as provided by the NASD Code.[31]  Claimants are in error.

As previously stated, Courts have held that 'undue means' was equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator." *Garcia*, 60 Mass. App. Ct. 1107. Here, the basis of Defendants' argument are ***discovery issues*** that were resolved by the Arbitration Panel – after hearing both parties full arguments on the issues.  Such trivial and regular discovery disputes, which are controlled by the Arbitration Panel, do not give rise to procuring an award by "undue means".

Accordingly, the Court should reject this baseless attempt to vacate the Award.

**C.    The Amendment of the Statement of Claim to the Proof Adduced at the Hearing Does Not Give Rise to Procuring an Award by Undue Means**

Finally, Defendants assert that KDSC's allegations in the Statement of Claim and KDSC's subsequent amendment of the Statement of Claim to the proof adduced at the hearing gave rise to procuring an award by undue means.[32]  Claimants are in error.

Arbitration proceedings are far less formal than proceedings before the judiciary and there is no stringent pleading standard imposed on arbitration claims – as opposed to Complaints filed with the Courts.  The Statement of Claim put Defendants on notice of the nature of the claim, in general, and that KDSC sought to collect the margin debt owed by Claimants, in particular.  To resolve any issue of KDSC holding the debt, KDSC offered an assignment from its Clearing Firm to KDSC of the debt owed by Claimants – the Panel was fully aware of the facts, which were fully argued by the parties.  After due deliberation, the Panel granted KDSC's

---

[31] *See* Counterclaim at ¶124(d)-(f).

[32] *See* Counterclaim at ¶124(a)-(b).

oral motion to conform its pleadings to the proof and admitted the assignment – matters within the Panel's discretion.

The Panel was fully informed of these facts, and accordingly, there is no basis for the assertion that Award was procured by undue means. The Court should reject Defendants' attempt to upset the Award and evade paying the debt justly owed to KDSC.

## VI.    THE PANEL DID NOT MANIFESTLY DISREGARD THE LAW

In Count IV, Defendants argue that the Court should vacate the Award because the Panel, which included a Senior Justice of the New Hampshire Superior Court, manifestly disregarded the law by recognizing the applicable law and then ignoring it when they: i) dismissed the Counterclaims and Third-Party Claims; ii) refused to stay the arbitration or disqualify the Brokers' Counsel until the unauthorized practice of law issue was resolved; and iii) refused to compel KDSC to produce documents "presumptively discoverable" in the NASD Discovery Guide.[33]  Defendants are in error.

While judicial review of an arbitration award is available where arbitrators have acted in manifest disregard of the law, a party seeking to upset the award on this basis must demonstrate that the "arbitrators knew the law and explicitly disregarded it." *Puerto Rico Telephone Co. v. U.S. Phone Manufacturing Corp.,* 427 F.3d 21, 32 (1st Cir. 2005). Put differently by the First Circuit, "disregard implies that the arbitrators appreciated the existence of a governing legal rule but **willfully decided not to apply it**." *Id.* (emphasis added). The party seeking to set aside an award on this basis must satisfy "exacting criteria" and bears a heavy burden of demonstrating that the arbitrators manifestly disregarded the law. *Id.* (party must "satisfy the exacting criteria

---

[33] Counterclaim at ¶128.

for invocation of the doctrine."); *see, GMS Group, LLC v. Benderson*, 326 F.3d 75, (2d Cir.

2003)(party challenging award bears heavy burden to demonstrate manifest disregard of law).

Thus, "a mere mistake of law by an arbitrator cannot serve as the basis for judicial review."

*Puerto Rico Telephone*, 427 F.3d at 32.  As demonstrated below, Defendants cannot satisfy the

exacting criteria or heavy burden required to upset the Arbitration Panel's Award.

### A.     The Panel Did Not Manifestly Disregard the Law
###        When It Dismissed the Counterclaims and Third-Party Claims

Initially, Defendants argue that the Arbitrators manifestly disregarded the law when they

interpreted and applied the NASD Code of Arbitration Procedure in dismissing Defendants'

Counterclaims and Third-Party Claims.[34]  The Panel did not manifest disregard the law because

i) their decision was based on their interpretation and understanding of the NASD Code – not

purposefully ignoring the law, and ii) the NASD Code is not "law" that would serve as a basis

for an arbitrator to manifestly disregard.

Initially, as evidenced by the arbitration transcript, the Arbitration Panel did not

"willfully disregarded" the law when it issued its decision to dismiss the Counterclaims and

Third-Party Claims.  To the contrary, the Panel made a reasoned decision that they believed was

supported by their authority under the NASD Code.

As evidenced by the arbitration transcript, in response to Defendants' Counsel's

questioning, the Chairperson unequivocally stated,

> I think we do have authority beyond what you've quoted [Rule 10305], and that
> was what our ruling was based on.  It was after thoughtful consideration that the
> panel reviewed that and made that ruling.  So we feel we do have authority.

* * * *

---

[34] *See* Counterclaim at ¶128(a).

24

> After review of the matter, the panel is upholding their decision of dismissing the counterclaims with prejudice. We feel it's within our rights under Rule 1035 – 10305.[35]

Therefore, the Panel did not intentionally or willfully disregard the law, but rather, the Panel made a decision based on their interpretation and understanding of their authority under the NASD Code. Such a good faith decision, even if a mistake of law, cannot serve as a basis for vacating the Award. *See Puerto Rico Telephone*, 427 F.3d at 32; *see also, Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)(NASD Arbitrators empowered to interpret the NASD Code and Courts give deference to such interpretations).

Further, Defendants cannot demonstrate that the Panel manifestly disregarded the "law" because they only assert that the Panel disregarded the NASD Code[36] – a set of private dispute resolution rules that are not law.

Courts that have addressed the issue of whether an Arbitration Panel manifestly disregarded the law when it applied the NASD Code have uniformly held that such arguments are without merit because NASD rules are not "law". *See Max Marx Color & Chemical Co. Employees' Profit Sharing Plan v. Barnes*, 37 F.Supp.2d 248, 253 (S.D.N.Y. 1999); *Card v. Stratton Oakmont, Inc.*, 933 F.Supp. 806, (D.C. Minn. 1996). As stated by the *Card* Court, even if the NASD Code may have been violated by the Panel, "it does not follow that the award must be nullified as the Code does not have the force of law". *Card*, 933 F.Supp. at 815. A party seeking to upset an arbitration award "must point to a statutory violation to warrant vacation of an arbitration award, not a violation of the Code of Arbitration Procedure." *Id.*; *Max Marx*, 37 F.Supp.2d at 253 (same). Here, Defendants' argument that the Panel's disregard of the NASD

---

[35] Reply at Exh. B, pp. 19-20.

[36] *See* Counterclaim at 128(a).

Code – a set of arbitration procedures that is not "law" - cannot serve as a basis to vacate the Award.

Accordingly, the Court should deny Defendants' efforts to vacate the Award.

### B.    The Panel Did Not Manifestly Disregard the Law When It Refused to Stay the Arbitration Pending the Unauthorized Practice of Law Issue

Defendants claim that the Arbitration Panel "recognized the applicable law—and then ignored it" when they refused to stay the arbitration or disqualify the Brokers' counsel pending the determination by the "SJC of the 'unauthorized practice of law' issues certified by the Chief Judge of this Court."[37] Defendants' argument is factually erroneous and without merit.

Initially, the unauthorized practice of law issue certified by the Chief Judge of this Court in the matter *In re Lucas*, 317 B.R. 195 (D. Mass. 2004) is inapposite to the issue before the Arbitration Panel and Single Justice in this case. The certified question in *Lucas* focused on whether the practice of an out-of-state attorney before the U.S. Bankruptcy Court sitting in the State of Massachusetts was the unauthorized practice of law. 317 B.R. 195. Here, the question was not whether an out-of-state attorneys' practice before a Bankruptcy Court was the unauthorized practice of law, but rather, whether out-of-state counsel representing a non-Massachusetts resident in a private, non-judicial, dispute resolution forum constituted the unauthorized practice of law.

When the issue of out-of-state counsels' participation ***in an arbitration hearing*** was pending before the Single Justice, the Arbitration Panel adjourned the original hearing dates to

---

[37] *See* Counterclaim at ¶128(b). The "issues certified by the Chief Judge of this Court" referenced by Defendants refers to the certified questions in the matter of *In re Lucas*, 317 B.R. 195 (D. Mass. 2004), and concerned the practice of an out-of-state attorney before the U.S. Bankruptcy Court sitting in the State of Massachusetts – not counsel appearing at a hearing in a private, non-judicial arbitration proceeding.

provide for sufficient time for the Single Justice to determine this issue.[38]  Thereafter, prior to the commencement of the rescheduled arbitration hearing dates, the Single Justice issued his decision holding that the Brokers' Counsel's participation at the hearing would not constitute the unauthorized practice of law.[39]

Further, while Defendants immediately filed a Motion for Injunction Pending Appeal, the Single Justice, in denying the motion, held that "[Defendants] have failed to show any harm, let alone irreparable harm, will result if injunctive relief is denied.  On the other side of the equation lies the important public interest in the efficient and unimpeded arbitration of disputes, an interest *that will be harmed if this arbitration is further delayed*."[40]  Thus, the last Court directive to the Arbitration Panel and parties issued prior to the hearing declined to stay the action and directed that the arbitration proceeding should go forward to avoid any further delay.

Defendants also have failed to identify any statutory law that the Panel purportedly knew and explicitly disregarded.  *See Puerto Rico Telephone,* 427 F.3d at 32, *Max Marx,* 37 F.Supp.2d at 253.

Therefore, Defendants have failed to demonstrate that the Panel's decision to go forward with the hearing, after the Single Justice had denied Defendants' request for an injunction to stay same, was the manifest disregard of the law.  Accordingly, the Court should reject this argument.

---

[38] *See* Award at p. 4 (March 2-4, 2005 hearing dates adjourned by Defendants).

[39] *See* Reply at Exh. A.

[40] Babnick Affm. at Exh. 6.

### C.    The Panel Did Not Manifestly Disregard
###          the Law When It Resolved Discovery Issues

Finally, Defendants incredulously assert that the Arbitration Panel recognized the

applicable law and then ignored it when he exercised his discretion to deny Defendants' requests

to compel KDSC to produce documents specified as "presumptively discoverable" in the

NASD's Discovery Guide.[41]  This argument is patently frivolous.

There is, however, no "law" mandating the Arbitration Panel to compel KDSC to

produce documents to Defendants.  Rather, the NASD Code empowers the Arbitration Panel to

decide discovery disputes and make appropriate orders – in their discretion – to either deny

discovery requests or compel the production of documents.  *See* NASD Code, Rule 10321(e).  As

previously stated, the NASD Code is not "law" that may serve as the basis for upsetting an

arbitration award under the manifest disregard of the law doctrine.  *See Puerto Rico Telephone*,

427 F.3d at 32, *Max Marx*, 37 F.Supp.2d  at 253.

Moreover, the discovery that Defendants' bemoan are documents that Defendants

identify as "presumptively discoverable" under the NASD Discovery Guide.[42]  The Discovery

Guide, however, is precisely that – a ***guide*** to the parties and arbitrators to resolve discovery

disputes.  While documents identified in Document Production Lists therein are "presumptively

discoverable", the documents identified therein are subject to a rebuttable presumption in which

"the arbitrator, in the exercise of discretion, determines that some or all of the documents in the

relevant Document Production Lists should not be produced."  NASD Discovery Guide, Notice

to Members 99-90 at p. 688 (November 1999).  Thus, the Arbitration Panel acted well within

---

[41] *See* Counterclaim at ¶128(c).

[42] *See* Counterclaim at ¶128(c).

their discretion when they determined, after arguments by the parties, that certain documents were not relevant to the issues in the proceeding and should not be produced.

Accordingly, the Arbitration Panel did not manifestly disregard the law when they exercised their discretion in resolving discovery disputes.

## VII.    THE PANEL DID NOT UNREASONABLY REFUSE TO POSTPONE THE HEARING

Finally, in Count V, Defendants argue that this Court should vacate the Award because the Arbitration Panel refused to further postpone the hearing pending the determination of the unauthorized practice of law issues certified to the Supreme Judicial Court by the Chief Judge of this Court in the matter *In re Lucas*.  Contrary to Defendants' assertions, the Arbitration Panel acted reasonably and did not abuse their discretion in continuing the hearing after the Single Justice had resolve the unauthorized practice of law issue – in this case – and denied Defendants' request for injunctive relief.

The "granting of a continuance [by an arbitration panel] is a matter of discretion, and refusal to grant it will be held to be error ***only if*** there was an abuse of discretion." *Bay State York Co. v. Canter Construction Co.*, 5 Mass. App. Ct. 192, 194, 360 N.E.2d 900 (Mass. App. Ct. 1977)(emphasis added).  In this regard, an "arbitrator has wide discretion to grant or deny a request for adjournment.  If there is any reasonable basis for the arbitrator's decision not to postpone a hearing, the court should not intervene." *Card v. Stratton Oakmont, Inc.*, 933 F.Supp. 806, 811 (D.C. Minn. 1996)(citations omitted).  Here, the Panel did not abuse its discretion and had a reasonable basis for denying any further continuances of the hearing.

Initially, the unauthorized practice of law issue certified by the Chief Judge of this Court in the matter *In re Lucas*, 317 B.R. 195 (D. Mass. 2004) is inapposite to the issue before the Arbitration Panel.  The certified question in *Lucas* focused on whether the practice of an out-of-

state attorney before the U.S. Bankruptcy Court sitting in the State of Massachusetts was the unauthorized practice of law, 317 B.R. 195, not whether an out-of-state counsel's representation of a non-Massachusetts resident in a private, non-judicial, dispute resolution forum constituted the unauthorized practice of law.

Notably, when the issue of out-of-state counsels' participation *in an arbitration hearing* was pending before the Single Justice, the Arbitration Panel adjourned the original hearing dates to provide for sufficient time for the Single Justice to determine this issue.[43]

Subsequently, a week prior to the hearing dates, the Single Justice issued a detailed decision in which he held that the Brokers' Lawyers would not be engaging in the unauthorized practice of law by representing Plaintiffs at the arbitration hearing scheduled to take place in Massachusetts.[44] Thereafter, Defendants immediately filed a Motion for Injunction Pending Appeal. The Single Justice, in denying the motion, held that "[Defendants] have failed to show any harm, let alone irreparable harm, will result if injunctive relief is denied. On the other side of the equation lies the important public interest in the efficient and unimpeded arbitration of disputes, an interest *that will be harmed if this arbitration is further delayed.*"[45] Based on the Single Justice's decision and his denial of any further stay or delay of this proceeding, the Arbitration Panel reasonably exercised their discretion to deny, as the Single Justice had denied, any further postponement of the arbitration proceeding.

---

[43] *See* Award at p. 4 (March 2-4, 2005 hearing dates adjourned by Defendants).

[44] Reply at Exh. A.

[45] Babnick Affm. at Exh. 6.

Accordingly, the Arbitration Panel did not abuse its discretion when it declined to further postpone the arbitration hearing after the Single Justice had issued a ruling deciding the issue and had similarly denied Defendants' efforts to further postpone the hearing.

## VIII.   THE COURT SHOULD AWARD PLAINTIFFS THEIR ATTORNEYS' FEES

In the Arbitration, KDSC requested, and was awarded, its reasonable attorneys' fees because the relevant contract between the parties provided that Defendants were responsible for all costs (including attorneys' fees) incurred by KDSC in connection with the collection of the debit balance owed by Defendants.[46]  As a result, in the Award, the Arbitration Panel awarded KDSC its reasonable attorneys fees incurred in collecting the debit balance owed – to wit, the Panel awarded KDSC "the amount of $421,000.00, *inclusive of attorneys' fees and costs according to the margin agreement.*"[47]

Since the Arbitration Panel issued the Award, KDSC has continued to incur attorneys' fees and costs in connection with collecting the debit balance owed, including the substantial fees and costs stemming from Defendants' appeal of the Single Justice's Decision to the Full Massachusetts Supreme Judicial Court as well as in connection with this proceeding to confirm the Award.  In this regard, KDSC, has through March 31, 2006, incurred $55,186.75[48] in additional attorneys' fees and costs to collect the debit balance owed.

Accordingly, KDSC respectfully requests that the Court enter judgment upon the modified Award, as well as an additional amount of $55,186.75, jointly and severally, against

---

[46] *See* Complaint at Exh. A, ¶6.

[47] Award at p. 3 (emphasis added).

[48] Babnick Affm. at Exh. 9.

Defendants for KDSC's reasonable attorneys' fees incurred in continuing to collect upon the debit balance.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court:

a.     Enter an Order modifying and confirming the Award:

    i.     as against Steven Mscisz, compensatory damages in the amount of $173,634.22;

    ii.     as against Mark Mscisz and Lynda Mscisz, jointly and severally, compensatory damages in the amount of $176,923.98; and

    iii.     as against Steven Mscisz, Mark Mscisz and Lynda Mscisz, jointly and severally, the reasonable attorneys' fees and costs in the amount of $70,441.80;

b.     Enter an Order, as against Steven Mscisz, Mark Mscisz and Lynda Mscisz, jointly and severally, awarding KDSC its additional attorneys' fees incurred in the amount of $55,187.75 incurred in connection with collecting upon the debit balance owed;

c.     Enter judgment upon the confirmed Award and Order as follows:

    i.     as against Steven Mscisz, compensatory damages in the amount of $173,634.22;

    ii.     as against Mark Mscisz and Lynda Mscisz, jointly and severally, compensatory damages in the amount of $176,923.98; and

iii    as against Steven Mscisz, Mark Mscisz and Lynda Mscisz, jointly and

severally, the reasonable attorneys' fees and costs in the amount of $122,923.43;

and

iv.    interest thereon, pursuant to the confirmed Award, at rate of 6.00% per

annum, which is the WSJ prime rate[49] from May 18, 2005 to the date of

payment of the Judgment;

d.    Such other and further relief as the Court deems necessary and just.

Respectfully submitted by:

_____

Howard M. Smith
NEWMAN & SMITH
One Gateway Center
Newton, Massachusetts 02458
(617) 965-9697
BBO# 468880
Attorneys for Plaintiffs

To:    William P. Corbett, Jr.
The Corbett Law Firm
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429

---

[49] Babnick Affm. at Exh. 10.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------

KASHNER DAVIDSON SECURITIES CORP.,  )
VICTOR KASHNER, MATTHEW MEISTER,    )
and TIMOTHY VARCHETTO,              )     Case No. 05-CV-11433-JLT
                                    )
        Plaintiffs,                 )
                                    )
    vs.                             )
                                    )
STEVEN MSCISZ, MARK MSCISZ, and     )
LYNDA MSCISZ,                       )
                                    )
        Defendants.                 )
                                    )

---------------------------------------------------------------

RICHARD J. BABNICK JR., an attorney duly admitted to the practice of law before the

Courts of the State of New York, hereby affirms under the penalties of perjury that:

1.      I am a member of the firm Sichenzia Ross Friedman & Ference LLP, attorneys

for Plaintiffs, and I have been admitted *pro hac vice* to represent them in this matter.  I make this

affirmation to place before the Court the pleadings and other documents relevant to Plaintiffs'

Motion to modify, confirm, and enter judgment upon the Arbitration Award.

2.      Attached as Exhibit 1 is a true and correct copy of the Amended Complaint and

the exhibits annexed thereto.

3.      Attached as Exhibit 2 is a true and correct copy of the Answer, Affirmative

Defenses and Counterclaims and the exhibit annexed thereto.

4.      Attached as Exhibit 3 is a true and correct copy of the Arbitration Panel's Initial

Pre-Hearing Conference Scheduling Order dated November 16, 2004.

5.      Attached as Exhibit 4 is a true and correct copy of the Reply to the Counterclaims and the exhibits annexed thereto.

6.      Attached as Exhibit 5 is a true and correct copy of page 214 of the hearing transcript for the second day of the arbitration hearing, which occurred on May 18, 2002.

7.      Attached as Exhibit 6 is a true and correct copy of the Memorandum of Decision and Order on Plaintiffs' Emergency Application for Injunction Pending Appeal dated May 12, 2005 entered in *Mscisz v. Kashner Davidson Securities Corp.*, No. SJ-2005-0088 before the Supreme Judicial Court for Suffolk County.

8.      Attached as Exhibit 7 is a true and correct copy of the decision issued in *Superadio Limited Partnership v. Winstar Radio Productions, LLC*, No. SJC-09542 (Mass. March 28, 2006).

9.      Attached as Exhibit 8 is a true and correct copy of the decision issued in *Mscisz v. Kashner Davidson Securities Corp.*, No. SJC-09529 (Mass. March 28, 2006).

10.     Attached as Exhibit 9 hereto are the true and correct copies of the legal billings incurred by Kashner Davidson Securities Corp. since the arbitration hearing incurred in connection with collecting upon the margin debt owed by Defendants.

11.     Attached as Exhibit 10 is a true and correct copy of the print-out of the historical Wall Street Journal Prime Rate obtained from the website www.hsh.com.

Dated: May 4, 2006

_____
RICHARD J. BABNICK JR. (RB-3374)

# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------

KASHNER DAVIDSON SECURITIES CORP.,    )
VICTOR KASHNER, MATTHEW MEISTER,      )    Case No. 05-CV-11433-JLT
and TIMOTHY VARCHETTO,                )
                                      )
        Plaintiffs,                   )
                                      )
        vs.                           )
                                      )
STEVEN MSCISZ, MARK MSCISZ, and       )
LYNDA MSCISZ,                         )
                                      )
        Defendants.                   )
                                      )

-------------------------------------------------------------

## AMENDED COMPLAINT TO MODIFY
## AND CONFIRM AN ARBITRATION AWARD

Plaintiffs Kashner Davidson Securities Corporation, ("KDSC"), Victor Kashner,

Matthew Meister, and Timothy Varchetto, by their undersigned counsel, for their Amended

Complaint to modify and confirm an arbitration award entered in their favor and against

Defendants Steven Mscisz, Mark Mscisz, and Lynda Mscisz, allege as follows:

## INTRODUCTION

1.      This is an action, pursuant to 9 U.S.C. §§ 9 and 11 and Mass. Gen. L. c. 251 §§ 11

and 13, to modify and confirm an arbitration award (hereinafter the "Award") entered against

Defendants by a panel of arbitrators (the "Panel") in an arbitration proceeding before the

National Association of Securities Dealers, Inc. ("NASD") entitled *Kashner Davidson Securities*

*Corp. v. Steven Mscisz, Mark Mscisz, and Lynda Mscisz v. Victor Kashner, Matthew Meister,*

*and Timothy Varchetto*, NASD No. 04-03793 (hereinafter the "Arbitration").

2.      KDSC had sued Defendants to collect nearly $350,000 in margin debt that

Defendants had incurred in their non-discretionary brokerage accounts.  When Defendants

answered KDSC's claim, they filed a counterclaim and third-party claims against the individual

plaintiffs.

3.      After submitting their disputes to arbitration before three arbitrators, which

included a Senior Justice of the New Hampshire Superior Court, a practicing attorney, and a

Chief Compliance Officer of a broker-dealer who held an M.B.A, a J.D., and a C.F.P.

designation, that had been empanelled by the NASD and accepted by the parties, Defendants

filed numerous motions including a discovery motion, a motion to disqualify counsel and/or stay

the proceeding, an emergency motion for additional time to comply with the discovery order, an

emergency motion to postpone the hearing, a motion for reconsideration of the discovery order, a

motion for reconsideration of the order denying the motion to disqualify counsel, and a motion to

withdrawal their counterclaims and third-party claims because they were unsatisfied with the

discovery order.  In a further effort to derail the arbitration proceeding, Defendants filed a

declaratory judgment action before the Single Justice of the Massachusetts' Supreme Judicial

Court seeking a ruling that Plaintiffs' out-of-state-counsel's participation at the hearing would

constitute the unauthorized practice of law – the Single Justice denied Defendants' application

and held that, in this instance, Plaintiffs' Counsel's participation at the hearing would not

constitute the unauthorized practice of law.

4.      After believing that they had the authority under the NASD Rules, the Panel

dismissed Defendants' counterclaim and third-party claims on the merits, with prejudice, prior to

the hearing.

5. Subsequently, the Panel held a hearing in which all parties were allowed to call witnesses and present documentary evidence. After due deliberation, the Panel issued the Award against Defendants, jointly and severally, and in favor of KDSC.

6. It is this Award that Plaintiffs seek to confirm – subject to a limited modification to apportion the liability found, jointly and severally, to the respective parties as set forth more fully herein.

## THE PARTIES

7. Plaintiff Kashner Davidson Securities Corp. ("KDSC") is a corporation organized under the laws of the State of Florida with its principal place of business in Sarasota, Florida. KDSC is a broker-dealer registered with the U.S. Securities and Exchange Commission and it is a member of NASD. KDSC was the Claimant and Counterclaim-Respondent in the Arbitration.

8. Plaintiff Victor Kashner is a resident of the State of Florida. Kashner is an owner of KDSC, and he was a Third-Party Respondent in the Arbitration.

9. Plaintiff Matthew Meister is a resident of the State of Florida. During the relevant time period at issue in the underlying arbitration, Meister was the President of KDSC, and he was a Third-Party Respondent in the Arbitration.

10. Plaintiff Timothy Varchetto is a resident of the State of Florida. During the relevant time period, Varchetto was a registered representative of KDSC, and he was a Third-Party Respondent in the Arbitration.

11. Defendants Steven Mscisz, Mark Mscisz and Lynda Mscisz (collectively, "Defendants") are residents of the State of Massachusetts. Mark and Lynda Mscisz are husband and wife, and Steven and Mark Mscisz are brothers. Defendants were the Respondents, Counterclaim-Claimants, and Third-Party Claimants in the Arbitration.

3

## JURISDICTION AND VENUE

12.    Although originally filed in the State Court of the State of Massachusetts and

removed to this Court, this Court has original jurisdiction over this action, under 28 U.S.C.

§1332(a), because the dispute is between citizens of different states and the amount in

controversy exceeds the sum of $75,000. Further, this Court has original jurisdiction over this

action, under 28 U.S.C. §1331, as the underlying counterclaims at dispute in the Arbitration

included claims arising under Section 10(b) of the Securities and Exchange Act of 1934.

13.    The Court has personal jurisdiction over Defendants as they reside within the

State of Massachusetts and this action arises from their transaction of business within the State of

Massachusetts.

14.    Venue is proper in this District, under 9 U.S.C. §10(a) and 28 U.S.C. §1391(a),

because the arbitration hearing that gave rise to the Award occurred within the State of

Massachusetts.  Under Local Rule 40.1(d)(1), this case was properly assigned to a judge sitting

in the Eastern Division as the only parties residing within this District reside in its Eastern

Division.

### COUNT I
### Confirmation of Arbitration Award
### (9 U.S.C. §9 and Mass. Gen. L. c. 251 § 11)

15.    In or about December 2003, Defendants opened retail brokerage accounts with

KDSC pursuant to written customer agreements, which were updated in February 2004 to add

margin privileges to Defendants' brokerage accounts (hereinafter the "Accounts").  The

customer agreements governing the Accounts contained an express, unambiguous written

agreement to submit any and all controversies between KDSC and Defendants to arbitration

before an arbitration panel convened by the NASD.  (A true and correct copies of the relevant

arbitration agreements are annexed hereto as Exhibit A.)

16.    Thereafter, a controversy arose out of the Accounts, and subsequently, on or

about May 26, 2004, KDSC filed a Statement of Claim with the NASD requesting arbitration of

its dispute with Defendants that sought, *inter alia*: a) judgment against Steven Mscisz in the

amount of $173,634.22 to collect upon the margin debt in his brokerage account; b) judgment

against Mark Mscisz and Lynda Mscisz, jointly and severally, in the amount of $176,923.98 to

collect upon the margin debt in their joint brokerage account; and c) the costs of collection

including filing fees, hearing fees, reasonable attorneys' fees and costs, pursuant to the

applicable margin agreements.

17.    On or about August 26, 2004, Defendants filed their Answer and Counterclaims

against KDSC.  In addition, Defendants filed Third-Party Claims with the NASD against

Kashner, Meister and Varchetto, as well as submission agreements, submitting the dispute with

Plaintiffs to arbitration before the NASD.  Under Rule 10101(c) of the NASD Code of

Arbitration (the "NASD Code"), Defendants submission of their dispute with Kashner, Meister

and Varchetto was a matter eligible for submission to arbitration before the NASD because it

was a dispute between associated persons of an NASD member firm (Kashner, Meister and

Varchetto) and public customers (Defendants).  Further, under Rule 10301(a) of the NASD

Code, Kashner, Meister and Varchetto were required to submit the dispute to arbitration because

Defendants, as public customers, had demanded that they arbitration this dispute before the

NASD.

18.    Subsequently, KDSC filed a Reply to the Counterclaim, and Kashner, Meister and

Varchetto filed an Answer to the Third-Party Claims.

19.     Defendants fully participated at the Initial Pre-Hearing Conference with the Panel and agreed to discovery and motion dates and the scheduling of the hearing on March 2, 2005 through March 4, 2005.

20.     Thereafter, discover disputes arose between the parties.

21.     On December 15, 2004, the parties filed motions to compel the production of discovery from each other.  Notably, Defendants filed a fifty-eight page motion that fully argued their position on discovery.  Subsequently, the parties filed oppositions to each others motions.

22.     Two days later, on December 17, 2004, Defendants filed a Motion to Disqualify Plaintiff's Counsel and to Stay the Arbitration Proceeding – a motion that the Panel subsequently denied.

23.     After Counsel for Plaintiffs and Defendants had both consented to the Chairperson to render a decision on the discovery motions submitted on-the-papers without oral argument, on February 3, 2005, the Chairperson issued a discovery order granting and denying individual discovery requests sought by both parties (the "Discovery Order").  The Discovery Order required the parties to comply therewith by February 10, 2005.

24.     On February 7, 2005, Defendants filed an Emergency Motion for Additional Time to Comply with the Discovery Order, which sought an additional seven days to comply therewith.  In their Emergency Motion, Defendants' Counsel represented to the Panel that "the Customers [Defendants] intend to comply fully with the Chairman's order directing them to provide information to the Third Party Respondents and Claimant/Respondent-Counterclaim."

25.     Contemporaneously with filing the Emergency Motion for Additional Time to Comply with the Discovery Order, Defendants filed an Emergency Motion to Postpone the Hearing, which was scheduled to commence on March 2, 2005.

26.     After the time-period had expired for Defendants to comply with the Discovery Order, Plaintiffs filed a motion with the Panel requesting sanctions for Defendants' failure to comply with the Discovery Order. Defendants subsequently produced limited documents and **refused** to produce other documents required by the Discovery Order.

27.     On February 23, 2005, the NASD notified the parties that the Panel had granted Defendants' Emergency Motion to Postpone the Hearing.

28.     The following day, February 24, 2005, after Defendants had represented that they would fully comply with the Discovery Order and after they had requested additional time to comply with same, Defendants filed a Motion for Reconsideration of the Discovery Order.

29.     Simultaneously, Defendants filed a Motion to Withdraw their Counterclaim and Third-Party Claims Without Prejudice because they were unhappy with the Discovery Order – a motion that Plaintiffs subsequently opposed.

30.     Finally, on this same date, February 24, 2005, Defendants filed a declaratory judgment action before a Single Justice of the Massachusetts' Supreme Judicial Court seeking a ruling that Plaintiffs' out-of-state-counsel's participation at the hearing would be the unauthorized practice of law.

31.     In a subsequent opposition to a motion seeking sanctions, Defendants' Counsel stated that Defendants' deliberately violated the Discovery Order because they were seeking to withdraw their counterclaim and third-party claims without prejudice.

32.     On March 2, 2005, the date of the original hearing date, the Panel held a conference with the parties wherein the Panel established new hearing dates (May 17, 18, 19, and 20, 2005) and denied Defendants' Motion for Reconsideration of the Discovery Order and other discovery motions.

33.     On March 9, 2005, Defendants filed a Motion for Reconsideration of the Panel's denial of Defendants' Motion to Disqualify Counsel.

34.     On March 30, 2005, after the matters had been fully briefed for the Panel and after due deliberation, the Panel denied Defendants' Motion for Reconsideration of the Panel's denial of their Motion to Disqualify Counsel, and the Panel denied Defendants' Motion to Withdraw their Counterclaims and Third-Party Claims Without Prejudice.  Finally, after believing that Rule 10305 of the NASD Code provided them with the authority for their actions, the Panel dismissed the Counterclaim and Third-Party Claims on the merits with prejudice.

35.     On May 6, 2005, after the matter was fully briefed and argued, the Single Justice of the Massachusetts' Supreme Judicial Court denied Defendants' application and held, in this instance, that Plaintiff's Counsel's participation at the scheduled hearing would not be the unauthorized practice of law.

36.     Subsequently, Defendants filed a Notice of Appeal and an Emergency Application for an Injunction to Stay the Arbitration pending their appeal with the Single Justice of the Court.

37.     On May 12, 2005, the Single Justice denied Defendants' Application for an Injunction.

38.     On May 17 and 18, 2005, the Panel held a hearing in Boston, Massachusetts, at which time the parties presented their witnesses and evidence, cross-examined witnesses, and the parties submitted the controversy for a decision of the arbitrators under the rules of the NASD.

39.     On June 17, 2005, based on the evidence presented at the hearing, the Panel issued the written Award.  (A true and correct copy of the Award is annexed hereto as Exhibit B.)

40.    Pursuant to the Award, the Arbitrators issued an award in favor of KDSC and against Respondents Steven Mscisz, Mark Mscisz and Lynda Mscisz, jointly and severally, in the amount of $421,000.00 in compensatory damages, inclusive of attorneys' fees and costs under the margin agreement, together with interest thereon from May 18, 2005 until the date of the payment of the Award at the prime rate published in the Wall Street Journal.  (See Exhibit B at p. 3.)

41.    In addition, as part of the Award, the Arbitrators dismissed the Counterclaim and Third-Party Claims with prejudice.  (See id.)

42.    Under the provisions of the arbitration agreement, this Court was granted power to enter judgment on any award resulting from arbitration because the arbitration award resulting from arbitration was suppose to be a final and nonappealable decision on the controversy arbitrated.  In particular the agreements provided, "the award rendered by the arbitrators shall be final, and judgement (sic) may be entered upon it in any court having jurisdiction thereof."  (See Exhibit A at ¶19).

43.    A confirmation Order and confirming judgment is, therefore, authorized by the terms of the arbitration agreement, 9 U.S.C. §9, Mass. G. L. c. 251, §11, and the award itself.

44.    Plaintiffs filed this action to confirm the Award within one year after the Award was made.

## COUNT II
### Modification of Arbitration Award
### (9 U.S.C. §11 and Mass. Gen. L. c. 251 § 13)

45.     Plaintiffs repeat and reallage each of the allegations set forth above as though fully set forth herein.

46.     In the alternative, Plaintiffs move the Court, under 9 U.S.C. §§ 9 and 11(c) and Mass. Gen. L. c. 251 §§ 11 and 13, for an order modifying, correcting and confirming the Award as the Award is imperfect in matter of form not affecting the merits of the controversy.

47.     In the Arbitration, KDSC sought: a) an award against Steven Mscisz in the amount of $173,634.22 in compensatory damages; b) an award against Mark Mscisz and Lynda Mscisz, jointly and severally, in the amount of $176,923.98 in compensatory damages; and c) the costs of collection including filing fees, hearing fees, reasonable attorneys' fees and costs.  (See Exhibit B at p. 2).

48.     In the Award, however, the Panel issued an award as follows:

Respondents [Steven Mscisz, Mark Mscisz and Lynda Mscisz] are jointly and severally liable and shall pay Claimant [KDSC] compensatory damages in the amount of $421,000.00, inclusive of attorneys' fees and costs according to the margin agreement, plus interest at the WSJ prime rate from May 18, 2005 until the date of payment of the award. (Exhibit B, p. 3).

49.     Rather than allocate $173,634.22 in compensatory damages to Steven Mscisz, allocate $176,923.98 to Mark and Lynda Mscisz, jointly and severally, and then allocate the balance $70,441.80 – representing attorneys' fees and costs – jointly and severally among all Defendants, the Panel issued a total award against Defendants jointly and severally.

50.     Therefore, and in the alternative, Plaintiffs request that the Court issue an order modifying the Award to distribute liability, which does not affect the merits of the controversy, as follows:

a.      As against Steven Mscisz, compensatory damages in the amount of $173,634.22;

b.      As against Mark Mscisz and Lynda Mscisz, jointly and severally, compensatory damages in the amount of $176,923.98; and

c.      As against Steven Mscisz, Mark Mscisz and Lynda Mscisz, jointly and severally, the reasonable attorneys' fees and costs in the amount of $70,441.80, which was incurred in collecting the debt against them as a result of their joint defense in the Arbitration.

51.      This modification in form does not affect the merits of the controversy and serves the true intent of the arbitrators.

52.      Accordingly, and in the alternative, Plaintiffs request that the Court issue an Order modifying and confirming the Award and a confirming judgment thereon.

**WHEREFORE**, pursuant to 9 U.S.C. §§ 9 and 11 and Mass. Gen. L. c. 251 §§ 11 and 13, Plaintiffs respectfully request that this Court grant the Amended Complaint and:

a.      Enter an Order confirming the Award and a confirming judgment thereon;

b.      In the alternative, enter an Order modifying and confirming the Award and confirming judgment thereon, and

c.      Grant such other and further relief as the Court deems necessary and just.

Respectfully submitted by:

Howard M. Smith
NEWMAN & SMITH
One Gateway Center
Newton, Massachusetts 02458
(617) 965-9697
BBO# 468880
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail by hand.

Dated: 7/28/05

11

To:     William P. Corbett, Jr.
        The Corbett Law Firm
        85 Exchange Street, Suite 326
        Lynn, Massachusetts 01901-1429

# Exhibit A

CLIENT ACCOUNT AGREEMENT

TO: SAL Financial Services, Inc. ("SAL"), Sterne, Agee & Leach, Inc. ("Sterne Agee") and its authorized agents.

In consideration of SAL opening a securities account ("Securities Account"), on my behalf, I agree as follows:

1. **Meaning of Words in this Agreement.** The words "I," "me," "my," and "us," refer to the person(s) who signed this Agreement. The words "you" and "your" refer to SAL or its authorized agents. "My broker" refers to the broker dealer introducing my account to SAL.

2. **Authority and Ownership.** I have the requisite legal capacity, am authorized to enter into this Agreement and have obtained and will provide you with all necessary authorizations from third parties to open accounts and effect securities transactions under this agreement. I will be the owner of all securities purchased, held, and sold by me through you, or will otherwise have the authority to purchase, hold or sell such securities.

3. **Clearing Broker Agreement.** I understand that my broker dealer entered into an agreement with SAL, who entered into an agreement with Sterne Agee to execute and clear securities transactions presented to SAL in my Securities Account. I further understand and agree that Sterne Agee will carry and maintain my Securities Account (as defined by SEC Securities Investors Protection Act), under the terms of the fully disclosed clearing agreement, except as may otherwise be provided in this agreement. I further understand that my broker dealer is not an agent of, or supervised by SAL. I understand that SAL has no control relationship over my broker dealer and is not responsible for the suitability or appropriateness of investments made by me or the genuineness of any transaction made on my behalf by my broker dealer.

4. **Appointment of broker dealer as Agent.** I appoint my broker as my agent for the purpose of carrying out my directions with respect to the purchase, sale or liquidation of securities in accordance with the terms and conditions of this Agreement, and I assume all risks with respect to the purchase, sale or liquidation of securities. All transactions will be executed only on my order or on the order of my authorized delegate except as otherwise provided in paragraph 6 below. To carry out your duties, you are authorized to appoint and use sub-agents. You and your sub-agents are authorized to open and close brokerage accounts, maintain customer records, hold securities in bearer, registered or book entry form, place and withdraw orders, provide information to third parties, including your affiliates, and take such other steps as are reasonable in connection with your duties.

5. **Settlement.** I agree to have collected funds available in the settlement Account, or to deliver to you sufficient collected funds to cover the amounts due on purchases of securities by the settlement date for payment for all securities purchased by my Securities Account (including commissions and fees) and that you may refuse to execute an order, or may cancel an order, if such funds are not available. You may charge my cash account interest on any past settlement date debits. I agree to deliver all properly endorsed securities which I have in my possession in good form prior to settlement of the sell or liquidation order, and such securities must be received by SAL prior to the settlement date. If I have established a Settlement Account, you shall deposit proceeds of any sale or liquidation of securities into the Settlement Account; otherwise such proceeds shall be distributed to me by check, or swept to my money market fund, if established.

6. **Indebtedness to SAL and Security Interest.** I authorize you to take any steps which you, in your sole discretion, determine to be necessary to complete or cancel a securities transaction or to minimize your losses, if any. I shall, at all times, be liable for the payment upon demand of any debit balance, and the interest thereon, or other obligations owing in my Securities Account or other account which I have with you. As security for the repayment of any and all present or future indebtedness owed to you by me under this agreement or otherwise, I grant you a continuing security interest and lien in, and a right of set-off with respect to all securities or other property that are, now or in the future, held, carried, or maintained for any purpose in or through my Securities Account to the extent of my interest, any present or future brokerage account with you in which I have an interest. I agree to reimburse you for all cost (including attorneys' fees), losses, or liabilities incurred by you in connection with the collection of any debit balance or unpaid deficiency in my Securities Account.

7. **Force Majeure.** You shall not be liable for loss or delay caused directly or indirectly by war, natural disasters, government restrictions, exchange or market rulings or other conditions beyond the control of SAL.

8. **Recording Conversations.** I understand and agree that, for your mutual protection, my broker and Sterne Agee may record any of our telephone conversations without further notice.

9. **Credit Investigation.** You may exchange credit information about me with others. You may request a credit report on me (1) if the purpose is to establish or maintain my margin and/or option account, (2) if I have chosen to settle transactions by check, (3) to comply with government agency or court orders, or (4) if, you determine it prudent for customary risk management procedures. If I ask, you will tell me the name and address of the consumer reporting agency that furnished the report. You may request a new credit report at any time without notice to me.

10. **Relationship with other Banks and Brokers.** From commissions and/or fees charged to my securities account for services rendered, I understand and agree that you may share, remit or otherwise pay banks or broker-dealers for their services in handling transactions for my account. In addition, I also understand and agree that other banks or broker-dealers, including Sterne Agee, may share, or otherwise remit commissions, fees and sales loads, including markups and markdowns on principal trades, to my broker in connection with transactions for my Securities Account. I understand and agree that brokers or dealers may refuse to accept or process any transactions that I may wish to effect.

11. **Margins Loans and Options.** *This paragraph is effective only when an account is maintained as a General Margin account as specified in Regulation T, as amended, issued by the Board of Governors of the Federal Reserve System.* (a) Securities purchased on margin or deposited against monies owed or borrowed may be maintained by SAL as collateral for my indebtedness. All property, now and hereafter held by SAL, or carried for the undersigned (either individually or jointly with

Page 1 of 5<br>IBD-CAA(rev 3/18/02)

others), or deposited to secure the same, may from time to time and without notice to me, be carried in SAL general loans and may be pledged, repledged and hypothecated, separately or in common with any other property, for the sum due to SAL thereon or for a greater sum and without retaining in SAL possession or control for delivery a like amount of similar property. (b) The undersigned will at all times maintain margins for said accounts, as required by SAL from time to time. No arrangement conflicting with the terms usual requirements for margin shall be binding upon the firm or have any effect unless expressly agreed to in writing and signed for SAL by the CFO, Director of Clearing, or Compliance Officer. (c) Debit balances of the accounts of the undersigned shall be charged interest, in accordance with SAL usual custom, and with any increase in rates caused by market conditions and with such other charges as you may make to cover your facilities and extra services. *The undersigned acknowledges having received from you a statement setting forth the details of the conditions under which interest will be charged, the method of computing such interest, and the conditions under which additional collateral may be required.* (d) At any time and from time to time, in your discretion, you may without notice to the undersigned apply or transfer any or all monies and other property of the undersigned interchangeably between any accounts of the undersigned in order to avoid a margin call. (e) Until you receive written notice of revocation from the undersigned, you are hereby authorized to lend or hypothecate, to yourselves as brokers or to others, any securities held by SAL as collateral for the account of, or under the control of, the undersigned. I will not request that any transactions in options be effected for my account unless such request is in connection with my brokers options compliance program.

12. **Applicable Laws and Regulations.** All transactions shall be subject to rules, regulations, customs and usages of the exchange, market or clearing house where executed, and to all applicable federal and state laws and regulations. I will not buy, sell or liquidate any securities of a corporation of which I am an affiliate, or sell or liquidate any restricted securities, except in compliance with applicable laws and regulations and with notice, to you, that the securities are restricted.

13. **Fees and Charges.** I agree to the fees and charges indicated on my brokers fee schedule and that of SAL which I have received. I understand and agree that I will be charged an annual administration fee if I hold securities in my Securities Account and no trading activity occurs during any calendar year. You may debit my Securities Account for any fees or charges, which I incur, or any out-of-pocket expenses you may incur on my behalf, if applicable. I understand that you may change the fee schedule from time to time and I agree to be bound by such changed fee schedule.

14. **Certain Mutual Fund and UIT Transactions.** I understand and agree that sales loads or sales charges may be imposed in connection with purchases of shares or interests in mutual funds and unit investment trusts ("UITs") or other registered investment companies, that may be paid to my broker through SAL.

15. **Joint Accounts.** If this is a joint account, we understand and agree that you may follow the instructions of either of us without obtaining the consent of the other. Each of us will be fully liable for any amounts due you under this Agreement. Upon the death of either of us, you will treat the property in the account as belonging to the joint tenant with right of survivorship unless we have expressly elected to own the account as tenants in common or other registration, but you may first require the production of necessary legal documents. The liability regarding this account shall be joint and several.

16. **Amendments and Termination.** You may amend this Agreement at any time, in any respect, effective upon written notice to me. You may terminate any or all services contemplated hereunder at any time, effective upon written notice to me. I may close my Securities Account at any time by giving written notice to my broker or SAL. Closing my Securities Account or terminating services under this Agreement will not affect any rights and obligations incurred prior to such closure or termination.

17. **Notice of Changed Name, Address.** I agree to promptly notify you, or my broker dealer, in writing of any change to my name or address.

18. **Governing Laws.** This Agreement shall be governed by the laws of the State of Alabama.

19. **ARBITRATION DISCLOSURES**

   - ARBITRATION IS FINAL AND BINDING TO THE PARTIES.

   - THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

   - PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

   - THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OR RULING BY THE ARBITRATORS IS STRICTLY LIMITED.

   - THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILATED WITH THE SECURITIES INDUSTRY.

   - NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT, AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL; (I) THE CLASS CERTIFICATION IS DENIED; OR (II) THE CLASS IS DECERTIFIED; OR (III) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT. SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

# KASHNER DAVIDSON SECURITIES CORP
## UPDATED CLIENT AGREEMENT
### ADDING MARGIN TO CLIENT ACCOUNT

*Coded*

ARBITRATION: I EXPRESSLY ACKNOWLEDGE AND AGREE THAT ALL CLAIMS, DISPUTES AND OTHER MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE SUBMITTED TO THE ARBITRATION BOARD OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. (NASD), UNLESS OTHERWISE PROVIDED BY LAW. THIS EXPRESS AGREEMENT TO SUBMIT TO BE BOUND BY ARBITRATION INCLUDES, BUT IS NOT LIMITED TO, DISPUTES ARISING UNDER THE SECURITIES ACT OF 1933, THE EXCHANGE ACT OF 1934, CLAIMS ARISING UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), STATE OR COMMON LAW FRAUD AND SECURITIES STATUTES, AS WELL AS OTHERS SPECIFICALLY ENFORCEABLE UNDER THE PREVAILING ARBITRATION LAW AND PROCEDURES. THE AWARD RENDERED BY THE ARBITRATORS SHALL BE FINAL, AND JUDGEMENT MAY BE ENTERED UPON IT IN ANY COURT HAVING JURISDICTION THEREOF. COUNSEL CAN ADVISE ME ON HOW THIS PROVISION MAY AFFECT ME.

20. Inactive Accounts. I understand and agree that if I do not place a securities trade during any eighteen (18) month period, and there are no securities held in my Securities Account, my Securities Account may be automatically removed from your system. I will thereafter be required to re-establish a Securities Account prior to placing any further securities trades.

21. Effectiveness. I understand that this Agreement is effective upon receipt by you and evidenced by a notation on the internal records of SAL and Sterne Agee.

### NOTICE TO STERNE, AGEE & LEACH, INC.

This is to advise you that I have instructed my broker dealer to establish, on my behalf, and as my agent, a Securities Account with you. I have appointed my broker dealer as my exclusive agent to act for and on my behalf with respect to all matters regarding my Securities Account with you, including the placing of purchase, sales and liquidation orders and delivery of margin and option instructions if authorized by my Securities Account. You may look solely to my broker dealer and not to me with respect to any such orders or instructions. I understand that you may consider by delivering to my broker dealer confirmations and all other written notices, including margin maintenance calls, if applicable, to have been delivered to me and you are entitled to rely on my broker dealer, to forward the communications to me. I agree to reimburse you for any losses, costs or expenses in connection with the delivery or receipt of any of these communications, if you have acted in accordance with these instructions. These instructions are effective until I send you and/or my broker dealer written notice to the contrary. I understand and agree that you may share, pay or otherwise remit commissions, fees or sales loads, including markups and markdowns on principal trades, to my broker dealer in connection with transactions for my account.

NOTE TO CLIENT:
IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.

Notice: This agreement contains a pre-dispute arbitration clause, which is located at paragraph 19.

Account Numb: **REDACTED** 7459

Name and Address Disclosure

( ) No, I do not want my name, address and securities positions disclosed to all the companies in which I own securities that are being held for me in that account pursuant to SEC rule 14b-1(c).

Client's Signature X _____

Joint Account Holder Signature X _____

DATE MARGIN ACCOUNT ESTABLISHED

2/12/04

AUTHORIZED BY _____

'04 FEB 13 AM 11:42

**Taxpayer ID Certification**

A. Under the penalties of perjury, I certify that (check all that apply):

☒ I am a U.S. Person (including a U.S. Resident Alien).

☒ The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.

☐ The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am subject to backup withholding.

**REDACTED** 7459

**REDACTED** 2737

Account Number

X _____
Signature

2/12/04
Date

Social Security Number or Taxpayer ID

X _____
Signature (Joint Account Holder)

2/12/04
Date

## DISCLOSURE STATEMENT OF CREDIT TERMS AND POLICIES
### Effective May 1, 2002

The following Disclosure Statement of Credit Terms and Policies is required by the Securities and Exchange Commission and is part of your Client Agreement. Should you have any questions regarding this Disclosure Statement, please contact your Investment Consultant.

### INTEREST CHARGE

Margin Transactions normally involve the extension of credit made by Sterne, Agee & Leach, Inc., (Sterne Agee) when you deposit only a portion of the moneys or the collateral required in a transaction. Withdrawals of cash from your account, or an increase in the market value of a security sold short (or short against the box) may create or add to your debit balance, for which interest and any other applicable charges will be assessed to your account.

Your account will be charged interest on any extension of credit to you by Sterne Agee in connection with the purchase, sale or carrying of any securities. The interest charge will be based on your adjusted debit balance multiplied by the daily margin interest rate. You will receive a statement of your account, at least quarterly, showing the adjusted daily debit balance, interest charges, and the applicable interest rates.

Interest will be charged to you if we approve prepayment of the proceeds from sales prior to settlement date. Interest may also be charged on debit balances in Cash accounts due to a late payment.

### DAILY MARGIN INTEREST RATE

The "daily margin interest rate" is based on a 360-day year and is calculated by dividing the applicable margin interest rate by 360. The applicable margin interest rate is set at a percentage above Sterne Agee's Base Rate as shown in the following table.

| If the amount of your average adjusted daily debit balance is: | The interest rate charged is: |
| --- | --- |
| Over 100,000 | Base Rate + 0.50% |
| 75,000-99,999 | Base Rate + 1.00% |
| 50,000-74,999 | Base Rate + 1.25% |
| 25,000-49,999 | Base Rate + 1.50% |
| Under 25,000 | Base Rate + 1.75% |

Sterne Agee sets the Base Rate at its discretion with consideration to commercially recognized interest rates relating to the extension of credit, as well as general market conditions. The margin interest rate may be changed without notice to you to reflect changes in the Base Rate. If your interest rate is increased for any other reason, Sterne Agee will notify you in writing at least 30 days prior to the date of the increase. Please contact your Investment Consultant for the current Base Rate.

The term "adjusted daily debit balance," means the daily debit balance less applicable free credits, if any. The daily debit balance is the unpaid amount loaned to you as of the close of the business day. Debits and credits resulting from purchases and sales are posted to your account as of the settlement date. A credit balance in your Cash account will be applied as a reduction of a debit balance in your Margin and/or Short Account. Should you deposit a check or other item that is later returned unpaid, your account may be adjusted to reflect additional interest or other charges that apply.

### INITIAL MARGIN AND ACCOUNT MAINTENANCE REQUIREMENTS

The Federal Reserve Board and various self- regulatory organizations determine margin loan rules and regulations. The maximum amount currently available to you is 50% of the value of marginable securities purchased or held in your account ("initial margin"). The maximum loan available for debt securities varies with the type of security. Your minimum account equity must be $2,000.00, or other amount as may be required by applicable rules, regulations, or Sterne Agee house policies. Initial margin and margin maintenance requirements may change without notice. Equity securities with a market value of less than $5.00 per share are not marginable.

A margin call (notification to deposit additional collateral) may be issued if your account equity drops below the margin maintenance requirement. Normally, additional collateral will be required if your account equity declines below 30% depending upon such factors as Sterne Agee, in its sole discretion, may deem material, including but not limited to the type, price, quantities and marketability of securities, or combination thereof, held in your account. If the market value of a security falls below $3.00 per share, the security will not be assigned a value as collateral to secure your margin obligations.

## SHORT OPTION POSITIONS
Uncovered option contracts are subject to both initial margin and margin maintenance requirements. These positions involve higher levels of risk and more stringent requirements may be imposed. Please contact your Investment Consultant for details.

## SHORT SALE TRANSACTIONS
Any credit resulting from a short (including a short sale against the box) will not reduce your debit balance on which interest is charged because the securities sold short must be borrowed to make delivery to the purchaser and an amount equal to the proceeds of the short sale must be deposited with the lender. You are liable for all dividends and interest paid on securities borrowed for the purpose of short sales.

The value of securities held short in your account will be "marked to the market" daily. Any resulting increase or decrease in the market value will be included in your adjusted daily debit balance.

Sterne Agee may at its discretion, for any reason and without notice, immediately cover any short security position by purchasing securities for your account.

## LIENS AND LIQUIDATIONS
All monies or securities held by Sterne Agee at any time in any of your accounts (individual, joint or otherwise) for any purposes shall be collateral subject to a general lien and security interest for the discharge of all your obligations to Sterne Agee.

Sterne Agee may also demand repayment of any loan balance in whole, or in part, at any time and for any reason. Additionally, Sterne Agee may require you to deposit additional collateral as security for your obligations.

## SIPC PROTECTION
Assets held in your Sterne, Agee & Leach, Inc. account for investment purposes are protected by combined SIPC and excess SIPC insurance coverage up to $25,000,000. SIPC protects your account for $500,000. Excess SIPC insurance covers all accounts for an additional $24,500,000. Claims of cash are limited to $100,000. Money Market fund shares are securities, not cash, and are protected up to the full $25,000,000 limit.

SIPC protection covers more than one account in which you have an interest provided you are acting in different capacities for each account. (For instance, coverage would apply if you had an individual account and a joint account with your spouse.) SIPC does not protect against a decline in market value of securities in your brokerage account.

Sterne, Agee may elect to pay interest on credit balances awaiting reinvestment at a rate determined by Sterne Agee and reserves the right to eliminate or otherwise change the rate or manner in which interest on credit balances is paid at any time without prior notice to you.

## CLIENT ACCOUNT AGREEMENT

TO: SAL Financial Services, Inc. ("SAL"), Sterne, Agee & Leach, Inc. ("Sterne Agee") and its authorized agents.

In consideration of SAL opening a securities account ("Securities Account"), on my behalf, I agree as follows:

1. **Meaning of Words in this Agreement.** The words "I," "me," "my," and "us," refer to the person(s) who signed this Agreement. The words "you" and "your" refer to SAL or its authorized agents. "My broker" refers to the broker dealer introducing my account to SAL.

2. **Authority and Ownership.** I have the requisite legal capacity, am authorized to enter into this Agreement and have obtained and will provide you with all necessary authorizations from third parties to open accounts and effect securities transactions under this agreement. I will be the owner of all securities purchased, held, and sold by me through you, or will otherwise have the authority to purchase, hold or sell such securities.

3. **Clearing Broker Agreement.** I understand that my broker dealer entered into an agreement with SAL, who entered into an agreement with Sterne Agee to execute and clear securities transactions presented to SAL in my Securities Account. I further understand and agree that Sterne Agee will carry and maintain my Securities Account (as defined by SEC Securities Investors Protection Act), under the terms of the fully disclosed clearing agreement, except as may otherwise be provided in this agreement. I further understand that my broker dealer is not an agent of, or supervised by SAL. I understand that SAL has no control relationship over my broker dealer and is not responsible for the suitability or appropriateness of investments made by me or the genuineness of any transaction made on my behalf by my broker dealer.

4. **Appointment of broker dealer as Agent.** I appoint my broker as my agent for the purpose of carrying out my directions with respect to the purchase, sale or liquidation of securities in accordance with the terms and conditions of this Agreement, and I assume all risks with respect to the purchase, sale or liquidation of securities. All transactions will be executed only on my order or on the order of my authorized delegate except as otherwise provided in paragraph 6 below. To carry out your duties, you are authorized to appoint and use sub-agents. You and your sub-agents are authorized to open and close brokerage accounts, maintain customer records, hold securities in bearer, registered or book entry form, place and withdraw orders, provide information to third parties, including your affiliates, and take such other steps as are reasonable in connection with your duties.

5. **Settlement.** I agree to have collected funds available in the settlement Account, or to deliver to you sufficient collected funds to cover the amounts due on purchases of securities by the settlement date for payment for all securities purchased by my Securities Account (including commissions and fees) and that you may refuse to execute an order, or may cancel an order, if such funds are not available. You may charge my cash account interest on any post settlement date debits. I agree to deliver all properly endorsed securities which I have in my possession in good form prior to settlement of the sale or liquidation order, and such securities must be received by SAL prior to the settlement date. If I have established a Settlement Account, you shall deposit proceeds of any sale or liquidation of securities into the Settlement Account; otherwise such proceeds shall be distributed to me by check, or swept to my money market fund, if established.

6. **Indebtedness to SAL and Security Interest.** I authorize you to take any steps which you, in your sole discretion, determine to be necessary to complete or cancel a securities transaction or to minimize your losses, if any. I shall, at all times, be liable for the payment upon demand of any debit balance, and the interest thereon, or other obligations owing in my Securities Account or other account which I have with you. As security for the repayment of any and all present or future indebtedness owed to you by me under this agreement or otherwise, I grant you a continuing security interest and lien in, and a right of set-off with respect to all securities or other property that are, now or in the future, held, carried, or maintained for any purpose in or through my Securities Account to the extent of my interest, any present or future brokerage account with you in which I have an interest. I agree to reimburse you for all cost (including attorneys' fees), losses, or liabilities incurred by you in connection with the collection of any debit balance or unpaid deficiency in my Securities Account.

7. **Force Majeure.** You shall not be liable for loss or delay caused directly or indirectly by war, natural disasters, government restrictions, exchange or market rulings or other conditions beyond the control of SAL.

8. **Recording Conversations.** I understand and agree that, for your mutual protection, my broker and Sterne Agee may record any of our telephone conversations without further notice.

9. **Credit Investigation.** You may exchange credit information about me with others. You may request a credit report on me (1) if the purpose is to establish or maintain my margin and/or option account, (2) if I have chosen to settle transactions by check, (3) to comply with government agency or court orders, or (4) if, you determine it prudent for customary risk management procedures. If I ask, you will tell me the name and address of the consumer reporting agency that furnished the report. You may request a new credit report at any time without notice to me.

10. **Relationship with other Banks and Brokers.** From commissions and/or fees charged to my securities account for services rendered, I understand and agree that you may share, remit or otherwise pay banks or broker-dealers for their services in handling transactions for my account. In addition, I also understand and agree that other banks or broker-dealers, including Sterne Agee, may share, or otherwise remit commissions, fees and sales loads, including markups and markdowns on principal trades, to my broker in connection with transactions for my Securities Account. I understand and agree that brokers or dealers may refuse to accept or process any transactions that I may wish to effect.

11. **Margins Loans and Options.** *This paragraph is effective only when an account is maintained as a General Margin account as specified in Regulation T, as amended, issued by the Board of Governors of the Federal Reserve System.* (a) Securities purchased on margin or deposited against monies owed or borrowed may be maintained by SAL as collateral for my indebtedness. All property, now and hereafter held by SAL, or carried for the undersigned (either individually or jointly with

others), or deposited to secure the same, may from time to time and without notice to me, be carried in SAL general loans and may be pledged, repledged and hypothecated, separately or in common with any other property, for the sum due to SAL thereon or for a greater sum and without retaining in SAL possession or control for delivery a like amount of similar property. (b) The undersigned will at all times maintain margins for said accounts, as required by SAL from time to time. No arrangement conflicting with the firms usual requirements for margin shall be binding upon the firm or have any effect unless expressly agreed to in writing and signed for SAL by the CFO, Director of Clearing, or Compliance Officer. (c) Debit balances of the accounts of the undersigned shall be charged interest, in accordance with SAL usual custom, and with any increases in rates caused by market conditions and with such other charges as you may make to cover your facilities and extra services. *The undersigned acknowledges having received from you a statement setting forth the details of the conditions under which interest will be charged, the method of computing such interest, and the conditions under which additional collateral may be required.* (d) At any time and from time to time, in your discretion, you may without notice to the undersigned apply or transfer any or all monies and other property of the undersigned interchangeably between any accounts of the undersigned in order to avoid a margin call. (e) Until you receive written notice of revocation from the undersigned, you are hereby authorized to lend or hypothecate, to yourselves as brokers or to others, any securities held by SAL as collateral for the account of, or under the control of, the undersigned. I will not request that any transactions in options be effected for my account unless such request is in connection with my brokers options compliance program.

12.  **Applicable Laws and Regulations.** All transactions shall be subject to rules, regulations, customs and usages of the exchange, market or clearing house where executed, and to all applicable federal and state laws and regulations. I will not buy, sell or liquidate any securities of a corporation of which I am an affiliate, or sell or liquidate any restricted securities, except in compliance with applicable laws and regulations and with notice, to you, that the securities are restricted.

13.  **Fees and Charges.** I agree to the fees and charges indicated on my brokers fee schedule and that of SAL which I have received. I understand and agree that I will be charged an annual administration fee if I hold securities in my Securities Account and no trading activity occurs during any calendar year. You may debit my Securities Account for any fees or charges, which I incur, or any out-of-pocket expenses you may incur on my behalf, if applicable. I understand that you may change the fee schedule from time to time and I agree to be bound by such changed fee schedule.

14.  **Certain Mutual Fund and UIT Transactions.** I understand and agree that sales loads or sales charges may be imposed in connection with purchases of shares or interests in mutual funds and unit investment trusts ("UITs") or other registered investment companies, that may be paid to my broker through SAL.

15.  **Joint Accounts.** If this is a joint account, we understand and agree that you may follow the instructions of either of us without obtaining the consent of the other. Each of us will be fully liable for any amounts due you under this Agreement. Upon the death of either of us, you will treat the property in the account as belonging to the joint tenant with right of survivorship unless we have expressly elected to own the account as tenants in common or other registration, but you may first require the production of necessary legal documents. The liability regarding this account shall be joint and several.

16.  **Amendments and Termination.** You may amend this Agreement at any time, in any respect, effective upon written notice to me. You may terminate any or all services contemplated hereunder at any time, effective upon written notice to me. I may close my Securities Account at any time by giving written notice to my broker or SAL. Closing my Securities Account or terminating services under this Agreement will not affect any rights and obligations incurred prior to such closure or termination.

17.  **Notice of Changed Name, Address.** I agree to promptly notify you, or my broker dealer, in writing of any change to my name or address.

18.  **Governing Laws.** This Agreement shall be governed by the laws of the State of Alabama.

19.  **ARBITRATION DISCLOSURES**

     -  ARBITRATION IS FINAL AND BINDING TO THE PARTIES.

     -  THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

     -  PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

     -  THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OR RULING BY THE ARBITRATORS IS STRICTLY LIMITED.

     -  THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILATED WITH THE SECURITIES INDUSTRY.

     -  NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT, AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL: (I) THE CLASS CERTIFICATION IS DENIED; OR (II) THE CLASS IS DECERTIFIED; OR (III) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT. SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

02/18/2004 11:08 FAX 978 887 2660                                                   @001

## KASHNER DAVIDSON SECURITIES CORP
### UPDATED CLIENT AGREEMENT
### ADDING MARGIN TO CLIENT ACCOUNT

*Copied*

**ARBITRATION:** I EXPRESSLY ACKNOWLEDGE AND AGREE THAT ALL CLAIMS, DISPUTES AND OTHER MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE SUBMITTED TO THE ARBITRATION BOARD OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. (NASD), UNLESS OTHERWISE PROVIDED BY LAW. THIS EXPRESS AGREEMENT TO SUBMIT TO BE BOUND BY ARBITRATION INCLUDES, BUT IS NOT LIMITED TO, DISPUTES ARISING UNDER THE SECURITIES ACT OF 1933, THE EXCHANGE ACT OF 1934, CLAIMS ARISING UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), STATE OR COMMON LAW FRAUD AND SECURITIES STATUTES, AS WELL AS OTHERS ENFORCEABLE UNDER THE PREVAILING ARBITRATION LAW AND PROCEDURES. THE AWARD RENDERED BY THE ARBITRATORS SHALL BE FINAL, AND JUDGEMENT MAY BE ENTERED UPON IT IN ANY COURT HAVING JURISDICTION THEREOF. COUNSEL CAN ADVISE ME ON HOW THIS PROVISION MAY AFFECT ME.

20. **Inactive Accounts.** I understand and agree that if I do not place a securities trade during any eighteen (18) month period, and there are no securities held in my Securities Account, my Securities Account may be automatically removed from your system. I will thereafter be required to re-establish a Securities Account prior to placing any further securities trades.

21. **Effectiveness.** I understand that this Agreement is effective upon receipt by you and evidenced by a notation on the internal records of SAL and Sterne Agee.

### NOTICE TO STERNE, AGEE & LEACH, INC.

This is to advise you that I have instructed my broker dealer to establish, on my behalf, and as my agent, a Securities Account with you. I have appointed my broker dealer as my exclusive agent to act for and on my behalf with respect to all matters regarding my Securities Account with you, including the placing of purchase, sales and liquidation orders and delivery of margin and option instructions if authorized by my Securities Account. You may look solely to my broker dealer confirmations and all other written orders or instructions. I understand that you may consider by delivering to me and you are entitled to rely on my broker notices, including margin maintenance calls, if applicable, to have been delivered to me and you are entitled to rely on my broker dealer, to forward the communications to me. I agree to reimburse you for any losses, costs or expenses in connection with the delivery or receipt of any of these communications, if you have acted in accordance with these instructions. These instructions are effective until I send you and/or my broker dealer written notice to the contrary. I understand and agree that you may share, pay or otherwise remit commissions, fees or sales loads, including markups and markdowns on principal trades, to my broker dealer in connection with transactions for my account.

**NOTE TO CLIENT:**
IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.

Notice: This agreement contains a pre-dispute arbitration clause, which is located at paragraph 19.

Account Number REDACTED **2265**

Client's Signature X _Steve Macuy_

Joint Account Holder
Signature X _____

AUTHORIZED BY _____

**Name and Address Disclosure**

( ) No, I do not want my name, address and securities positions disclosed to all the companies in which I own securities that are being held for me in that account pursuant to SEC rule 14b-1(c).

### DATE MARGIN ACCOUNT ESTABLISHED

**2/18/04**

---

**Taxpayer ID Certification**

A.  Under the penalties of perjury, I certify that (check all that apply):
    I am a U.S. Person (including a U.S. Resident Alien).
    The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.

B.  The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and I am subject to backup withholding.

REDACTED **2265**
Account Number

X _Steve Macuy_          **2/18/04**
Signature                Date

REDACTED **2543**
Social Security Number or Taxpayer ID

_____          _____
Signature (Joint Account Holder)   Date

Page 3 of 5
IBD-CAA (rev 3/18/02)

## DISCLOSURE STATEMENT OF CREDIT TERMS AND POLICIES
### Effective May 1, 2002

The following Disclosure Statement of Credit Terms and Policies is required by the Securities and Exchange Commission and is part of your Client Agreement. Should you have any questions regarding this Disclosure Statement, please contact your Investment Consultant.

### INTEREST CHARGE

Margin Transactions normally involve the extension of credit made by Sterne, Agee & Leach, Inc., (Sterne Agee) when you deposit only a portion of the moneys or the collateral required in a transaction. Withdrawals of cash from your account, or an increase in the market value of a security sold short (or short against the box) may create or add to your debit balance, for which interest and any other applicable charges will be assessed to your account.

Your account will be charged interest on any extension of credit to you by Sterne Agee in connection with the purchase, sale or carrying of any securities. The interest charge will be based on your adjusted debit balance multiplied by the daily margin interest rate. You will receive a statement of your account, at least quarterly, showing the adjusted daily debit balance, interest charges, and the applicable interest rates.

Interest will be charged to you if we approve prepayment of the proceeds from sales prior to settlement date. Interest may also be charged on debit balances in Cash accounts due to a late payment.

### DAILY MARGIN INTEREST RATE

The "daily margin interest rate" is based on a 360-day year and is calculated by dividing the applicable margin interest rate by 360. The applicable margin interest rate is set at a percentage above Sterne Agee's Base Rate as shown in the following table.

| If the amount of your average adjusted daily debit balance is: | The interest rate charged is: |
|---|---|
| Over 100,000 | Base Rate + 0.50% |
| 75,000–99,999 | Base Rate + 1.00% |
| 50,000–74,999 | Base Rate + 1.25% |
| 25,000–49,999 | Base Rate + 1.50% |
| Under 25,000 | Base Rate + 1.75% |

Sterne Agee sets the Base Rate at its discretion with consideration to commercially recognized interest rates relating to the extension of credit, as well as general market conditions. The margin interest rate may be changed without notice to you to reflect changes in the Base Rate. If your interest rate is increased for any other reason, Sterne Agee will notify you in writing at least 30 days prior to the date of the increase. Please contact your Investment Consultant for the current Base Rate.

The term "adjusted daily debit balance," means the daily debit balance less applicable free credits, if any. The daily debit balance is the unpaid amount loaned to you as of the close of the business day. Debits and credits resulting from purchases and sales are posted to your account as of the settlement date. A credit balance in your Cash account will be applied as a reduction of a debit balance in your Margin and/or Short Account. Should you deposit a check or other item that is later returned unpaid, your account may be adjusted to reflect additional interest or other charges that apply.

### INITIAL MARGIN AND ACCOUNT MAINTENANCE REQUIREMENTS

The Federal Reserve Board and various self-regulatory organizations determine margin loan rules and regulations. The maximum amount currently available to you is 50% of the value of marginable securities purchased or held in your account ("initial margin"). The maximum loan available for debt securities varies with the type of security. Your minimum account equity must be $2,000.00, or other amount as may be required by applicable rules, regulations, or Sterne Agee house policies. Initial margin and margin maintenance requirements may change without notice. Equity securities with a market value of less than $5.00 per share are not marginable.

A margin call (notification to deposit additional collateral) may be issued if your account equity drops below the margin maintenance requirement. Normally, additional collateral will be required if your account equity declines below 30% depending upon such factors as Sterne Agee, in its sole discretion, may deem material, including but not limited to the type, price, quantities and marketability of securities, or combination thereof, held in your account. If the market value of a security falls below $3.00 per share, the security will not be assigned a value as collateral to secure your margin obligations.

## SHORT OPTION POSITIONS

Uncovered option contracts are subject to both initial margin and margin maintenance requirements. These positions involve higher levels of risk and more stringent requirements may be imposed. Please contact your Investment Consultant for details.

## SHORT SALE TRANSACTIONS

Any credit resulting from a short (including a short sale against the box) will not reduce your debit balance on which interest is charged because the securities sold short must be borrowed to make delivery to the purchaser and an amount equal to the proceeds of the short sale must be deposited with the lender. You are liable for all dividends and interest paid on securities borrowed for the purpose of short sales.

The value of securities held short in your account will be "marked to the market" daily. Any resulting increase or decrease in the market value will be included in your adjusted daily debit balance.

Sterne Agee may at its discretion, for any reason and without notice, immediately cover any short security position by purchasing securities for your account.

## LIENS AND LIQUIDATIONS

All monies or securities held by Sterne Agee at any time in any of your accounts (individual, joint or otherwise) for any purposes shall be collateral subject to a general lien and security interest for the discharge of all your obligations to Sterne Agee.

Sterne Agee may also demand repayment of any loan balance in whole, or in part, at any time and for any reason. Additionally, Sterne Agee may require you to deposit additional collateral as security for your obligations.

## SIPC PROTECTION

Assets held in your Sterne, Agee & Leach, Inc. account for investment purposes are protected by combined SIPC and excess SIPC insurance coverage up to $25,000,000. SIPC protects your account for $500,000. Excess SIPC insurance covers all accounts for an additional $24,500,000. Claims of cash are limited to $100,000. Money Market fund shares are securities, not cash, and are protected up to the full $25,000,000 limit.

SIPC protection covers more than one account in which you have an interest provided you are acting in different capacities for each account. (For instance, coverage would apply if you had an individual account and a joint account with your spouse.) SIPC does not protect against a decline in market value of securities in your brokerage account.

Sterne, Agee may elect to pay interest on credit balances awaiting reinvestment at a rate determined by Sterne Agee and reserves the right to eliminate or otherwise change the rate or manner in which interest on credit balances is paid at any time without prior notice to you.

# Exhibit B

# Award
## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Kashner Davidson Securities Corporation (Claimant) v. Steven Mscisz, Mark Mscisz, and Lynda Mscisz (Respondents) v. Victor Kashner, Matthew Meister, and Timothy Varchetto (Third-Party Respondents)

Case Number: 04-03793                           Hearing Site: Boston, Massachusetts

Nature of the Dispute:  Member vs. Customers (Initial Claim).
                        Customers vs. Member (Counterclaim)
                        Customers vs. Associated Persons (Third-Party Claims).

## REPRESENTATION OF PARTIES

Claimant Kashner Davidson Securities Corporation ("KDSC") hereinafter referred to as "Claimant" and Third-Party Respondents Victor Kashner ("V. Kashner"), Matthew Meister ("M. Meister"), and Timothy Varchetto ("T. Varchetto") hereinafter collectively referred to as "Third-Party Respondents": Howard M. Smith, Esq., Newman & Smith, Newton, MA. Previously represented by: Marc J. Ross, Esq., Sichenzia Ross Friedman Ference, LLP, New York, NY.

Respondents Steven Mscisz ("S. Mscisz"), Mark Mscisz ("M. Mscisz"), and Lynda Mscisz ("L. Mscisz") hereinafter collectively referred to as "Respondents": William P. Corbett, Jr., Esq., The Corbett Law Firm, Lynn, MA.

## CASE INFORMATION

Statement of Claim filed on or about: May 26, 2004.
Claimant signed the Uniform Submission Agreement: May 24, 2004.

Joint Statement of Answer, Affirmative Defenses, Counterclaims and Third-Party Claims filed by Respondents on or about: August 26, 2004.
Respondent S. Mscisz signed the Uniform Submission Agreement: August 26, 2004.
Respondent M. Mscisz signed the Uniform Submission Agreement: August 26, 2004.
Respondent L. Mscisz signed the Uniform Submission Agreement: August 26, 2004.

Joint Reply and Answer filed by Third-Party Respondents on or about: September 9, 2004.
Third-Party Respondent Kashner signed the Uniform Submission Agreement: October 1, 2004.
Third-Party Respondent Meister did not sign the Uniform Submission Agreement.
Third-Party Respondent Varchetto did not sign the Uniform Submission Agreement.

JUN-20-2005  13:17                                                        P.06

NASD Dispute Resolution
Arbitration No. 04-03793
Award  Page 2 of 6

## CASE SUMMARY

Claimant asserted the following causes of action: breach of contract; money lent; open book account; and fraud/fraud in the inducement. The causes of action relate to unspecified securities.

Unless specifically admitted in its Answer, Respondents denied the allegations made in the Statement of Claim and asserted various affirmative defenses. In its Counterclaims and Third-Party Claims, Claimant asserted the following causes of action: violations of Sections 7, 9, and 10(b) of the Securities Act of 1934; violations of the Florida Securities Transactions Act; violations of the Massachusetts Uniform Securities Act; violations of NASD Business Conduct Standards; common law fraud; unjust enrichment; conversion; breach of contract; violation of the Racketeer Influenced and Corrupt Organization Act; abuse of process; violation of the Massachusetts Consumer Protection Act and the Florida Consumer Protection Act.

Unless specifically admitted in their Reply and Answer of Third-Party Claims, Claimant and Third-Party Respondents denied the allegations made in the Counterclaims and Third-Party Claims and asserted various affirmative defenses.

## RELIEF REQUESTED

Claimant requested compensatory damages in the amount of $173,634.22; compensatory damages in the amount of $176,923.98; interest; costs of collection, including NASD filing and hearing fees and attorneys; fees; and such other and further relief as the Panel deems just, fair, and equitable.

Respondents requested that the Panel dismiss Claimant's Statement of Claim, with prejudice; on their Counterclaims and Third-Party Claims, unspecified compensatory damages in threefold; prejudgment interest; attorneys' fees; costs; an order that Claimant disgorge and make full restitution to Respondents; other appropriate equitable relief; and such other and further relief as the Panel deems necessary and just.

Third-Party Respondents requested that the Panel award Claimant the relief sought in the Statement of Claim; that the Panel deny and dismiss each and every claim asserted in the Counterclaims and Third-Party Claims; that the Panel issue sanctions against Respondents; and such other and further relief as the Panel deems just, equitable, and proper.

## OTHER ISSUES CONSIDERED AND DECIDED

Upon review of the file and the representations made on behalf of the Claimant, the undersigned arbitrators (the "Panel") determined that Respondent L. Mscicz has been properly served with the Statement of Claim and received due notice of the hearing, and that arbitration of the matter would proceed without said Respondent present, in accordance with the NASD Code of Arbitration Procedure (the "Code").

JUN-20-2005  13:17                    P.07

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 3 of 6

Third-Party Respondents Meister and Varchetto did not file with NASD Dispute Resolution properly executed Uniform Submission Agreements but are required to submit to arbitration pursuant to the Code and are bound by the determination of the Panel on all issues submitted.

The Panel previously ruled that the Counterclaims and Third-Party Claims filed by Respondents are dismissed, with prejudice.

At the hearing, Claimant made an oral motion to conform the pleadings to the proof. After due consideration, the Panel determined to grant the motion.

Respondents made a motion for a stenographic transcription of the hearing. After due consideration, the Panel granted the motion and ordered the following: "Respondents are to provide NASD with a copy of the transcript. Claimant is to obtain the transcript at its own cost; Respondents do not have to pay for Claimant's transcript".

Respondents made a motion to dismiss for failure to make a prima facie case. After due consideration, the Panel denied the motion.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondents are jointly and severally liable for and shall pay Claimant compensatory damages in the amount of $421,000.00, inclusive of attorneys' fees and costs according to the margin agreement, plus interest at the WSJ prime rate from May 18, 2005 until the date of payment of the award.

2. Respondents' Counterclaims and Third-Party Claims are dismissed.

2. Any and all relief not specifically addressed herein is denied.

## FEES

Pursuant to the Code, the following fees are assessed:

**Filing Fees**
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:
      Initial claim filing fee           = $1,000.00
      Third-Party Claim filing fee    = $  250.00

**Member Fees**

JUN-20-2005  13:17                                                          P.09

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 4 of 6

Member fees are assessed to each member firm that is a party in these proceedings or to the
member firm that employed the associated persons at the time of the events giving rise to the
dispute. Accordingly, Kashner Davidson Securities Corp. is a party.

| | |
|---|---|
| Member surcharge | = $1,700.00 |
| Pre-hearing process fee | = $  750.00 |
| Hearing process fee | = $2,750.00 |

## Adjournment Fees
Adjournments granted during these proceedings for which fees were assessed:

| | |
|---|---|
| March 2-4, 2005, adjournment by Respondents | = Waived |

## Forum Fees and Assessments
The Panel has assessed forum fees for each session conducted.  A session is any meeting
between the parties and the arbitrators, including a pre-hearing conference with the arbitrators,
that lasts four (4) hours or less.  Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Tow (2) Pre-hearing sessions with a single arbitrator @ $450.00 | | | = $  900.00 |
| Pre-hearing conferences: | January 20, 2005 | 1 session | |
| | January 31, 2005 | 1 session | |
| | | | |
| Three (3) Pre-hearing sessions with Panel @ $1,000.00* | | | = $3,000.00 |
| Pre-hearing conferences: | November 8, 2004 | 1 session | |
| | November 16, 2004 | 1 session | |
| | March 2, 2005 | 1 session | |
| | | | |
| Three (3) Hearing sessions @ $1,000.00 | | | = $3,000.00 |
| Hearing Dates: | May 17, 2005 | 2 sessions | |
| | May 18, 2005 | 1 session | |
| Total Forum Fees | | | = $6,900.00 |

*In accordance with Rule 10332(c) of the Code of Arbitration Procedure, the forum fees
assessed against the Respondents are based on the Respondents' hearing session deposit.*

1.  The Panel has assessed $6,900.00 of the forum fees jointly and severally against
    Respondents.

### Fee Summary

1.  Claimant is solely liable for:

| | |
|---|---|
| Initial Filing Fee | = $1,000.00 |
| Member Fees | = $5,200.00 |
| Total Fees | = $6,200.00 |
| Less payments | = $7,325.00 |
| Refund Due Claimants | = $1,125.00 |

JUN-20-2005  13:17                                                              P.09

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 5 of 6

2.  Respondents are jointly and severally liable for:

| | |
|---|---|
| Third-Party Claim Filing Fee | = $ 250.00 |
| Forum Fees | = $6,900.00 |
| Total Fees | = $7,150.00 |
| Less payments | = $1,250.00 |
| Balance Due NASD Dispute Resolution | = $5,900.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

JUN-20-2005   13:17                                                          P.10

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.       -       Public Arbitrator, Presiding Chairperson
Douglas R. Gray                  -       Public Arbitrator
Patrick W. McKeon, Esq.          -       Non-Public Arbitrator

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.

_____          _____
Arthur J. Giacomarra, Esq.                Signature Date
Public Arbitrator, Presiding Chairperson

_____          _____
Douglas R. Gray                           Signature Date
Public Arbitrator

_____          _____
Patrick W. McKeon, Esq.                   Signature Date
Non-Public Arbitrator

June 17, 2005
_____
Date of Service  (For NASD Dispute Resolution use only)

JUN-20-2005  13:18                                                           P. 11

NASD Dispute Resolution
Arbitration No. 04-03793
Award    Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.        -        Public Arbitrator, Presiding Chairperson
Douglas R. Gray                   -        Public Arbitrator
Patrick W. McKeon, Esq.           -        Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law
and Rules, that I am the individual described herein and who executed this instrument which is
my award.

_____                          _____
Arthur J. Giacomarra, Esq.                        Signature Date
Public Arbitrator, Presiding Chairperson

_____                          _____6-14-05_____
Douglas R. Gray                                   Signature Date
Public Arbitrator

_____                          _____
Patrick W. McKeon, Esq.                           Signature Date
Non-Public Arbitrator

___June 17, 2005_____
Date of Service  (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

| Arthur J. Giacomarra, Esq. | - | Public Arbitrator, Presiding Chairperson |
| Douglas R. Gray | - | Public Arbitrator |
| Patrick W. McKeon, Esq. | - | Non-Public Arbitrator |

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.

_____
Arthur J. Giacomarra, Esq.
Public Arbitrator, Presiding Chairperson

_____
Signature Date

_____
Douglas R. Gray
Public Arbitrator

_____
Signature Date

_____
Patrick W. McKeon, Esq.
Non-Public Arbitrator

*6-17-05*
_____
Signature Date

*June 17, 2005*
_____
Date of Service  (For NASD Dispute Resolution use only)

# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

———————————————————————

KASHNER DAVIDSON SECURITIES CORPORATION,  )
VICTOR KASHNER, MATTHEW MEISTER &         )
TIMOTHY VARCHETTO,                         )
                                           )
        *Plaintiffs/Defendants-in-Counterclaim,*  )    Case No. 05-cv-11433-JLT
                        v.                 )
                                           )
STEVEN MSCISZ, MARK MSCISZ, & LYNDA MSCISZ, )
                                           )
        *Defendants/Plaintiffs-in-Counterclaim*  )
———————————————————————

**ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS**

The defendants/plaintiffs-in-counterclaim, Steven Mscisz, Mark Mscisz and

Lynda Mscisz (collectively "Customers") respond to the "Amended Complaint to

Modify and Confirm an Arbitration Award" ("Complaint") filed by plaintiffs/

defendants-in-counterclaim Kashner Davidson Securities Corporation ("KDSC"),

Victor Kashner ("Kashner"), Matthew Meister ("Meister") and Timothy Varchetto

("Varchetto") (collectively "Brokers") as follows:

1.      This paragraph sets forth a general description of the Brokers' claims

to which no substantive response is required.

2.      The Customers admit that KDSC commenced an arbitration

proceeding against them and that, with their answer, they filed counterclaims

against KDSC and third-party claims against Kashner, Meister and Varchetto.  The

Customers deny the remainder of this paragraph.

3.    The Customers admit that they submitted the dispute to arbitration (albeit conditionally), that they filed several motions in the arbitration, that they commenced a declaratory judgment action in the single justice session of the Supreme Judicial Court, and that the single justice denied their request for relief. The Customers deny the remainder of this paragraph.

4.    The Customers admit that the arbitrators purported to dismiss their counterclaims and third-party claims before the hearing.  The Customers deny the remainder of this paragraph.

5.    The Customers admit that the arbitrators held a hearing at which they purported to allow them to call witnesses and present documentary evidence, that the arbitrators purported to deliberate, and that the arbitrators issued an award against the Customers.  The Customers deny the remainder of this paragraph.

6.    This paragraph sets forth a general description of the Brokers' claims to which no substantive response is required.

7.    Admitted.

8.    Admitted.

9.    Admitted.

10.    Admitted.

11.    The Customers deny that there is any jurisdiction legally known as "the State of Massachusetts", but they admit the remainder of this paragraph.

12.    The Customers deny that there is any jurisdiction legally known as "the State of Massachusetts", but they admit the remainder of this paragraph.

13-004-001

13.    The Customers deny that there is any jurisdiction legally known as "the State of Massachusetts" and "that this action arises from their transaction of business" within this Commonwealth, but they admit the remainder of this paragraph.

14.    The Customers deny that there is any jurisdiction legally known as "the State of Massachusetts", but they admit the remainder of this paragraph.

15.    Denied.

16.    Admitted.

17.    The Customers deny this paragraph to the extent it implies that their submission of their counterclaims and third-party claims was unconditional or that arbitration of all counterclaims and third-party claims was mandatory, but they admit the remainder of this paragraph.

18.    Admitted.

19.    Admitted.

20.    Admitted.

21.    Admitted.

22.    Admitted.

23.    Admitted.

24.    Admitted.

25.    Admitted.

26.    Denied.

27.    The Customers deny that they were notified of the arbitrators' decision on February 23, 2005, but they admit the remainder of this paragraph.

13-004-001

28.    Admitted.

29.    The Customers deny that they filed their motion to withdraw their counterclaims and third-party claims merely "because they were unhappy with the Discovery Order", but they admit the remainder of this paragraph.

30.    The Customers deny this paragraph to the extent it purports to recite fully the substance of their declaratory judgment action, but they admit the remainder of this paragraph.

31.    Denied.

32.    Admitted.

33.    Admitted.

34.    The Customers deny that "the matters had been fully briefed for the Panel," that there had been "due deliberation," and that the arbitrators genuinely believed "that Rule 10305 of the NASD Code provided them with the authority for their actions," but they admit the remainder of this paragraph.

35.    The Customers deny this paragraph to the extent it purports to recite fully the substance of single justice's decision, but they admit the remainder of this paragraph.

36.    Admitted.

37.    Admitted.

13-004-001

38.    The Customers deny that they were permitted to present all of the witnesses and evidence they would have presented in a full and fair hearing of the matter before the arbitrators and that they submitted their counterclaims and third-party claims "for a decision of the arbitrators under the rules of the NASD," but they admit the remainder of this paragraph.

39.    The Customers deny that the award was "based on the evidence presented at the hearing," but they admit the remainder of this paragraph.

40.    Admitted.

41.    The Customers deny that the arbitrators were authorized to dismiss their counterclaims and third-party claims, but they admit the remainder of this paragraph.

42.    The Customers deny that the award was unconditionally "suppose [sic] to be a final and nonappealable decision on the controversy arbitrated", but they admit the remainder of this paragraph.

43.    Denied.

44.    Admitted.

45.    The Customers incorporate, as if fully set forth herein, their responses to paragraphs 1 through 44 of the Complaint.

46.    This paragraph sets forth a general description of the Brokers' claims to which no substantive response is required.

47.    Admitted.

48.    Admitted.

49.    Admitted.

13-004-001

50.    This paragraph sets forth a general description of the Brokers' claims to which no substantive response is required.

51.    Admitted.

52.    This paragraph sets forth a general description of the Brokers' claims to which no substantive response is required.

### First Affirmative Defense

The arbitrators exceeded their powers.

### Second Affirmative Defense

The arbitrators refused to hear evidence material to the controversy and otherwise conducted the arbitration hearing in such a way as to prejudice the rights of the Customers.

### Third Affirmative Defense

The award was procured by undue means.

### Fourth Affirmative Defense

The arbitrators acted in manifest disregard of the law.

### Fifth Affirmative Defense

The arbitrators refused to postpone the hearing at the Customers' request, notwithstanding sufficient cause for such a postponement.

13-004-001

### Sixth Affirmative Defense

The award encompassed issues the Customers had not agreed to submit to arbitration.

### Seventh Affirmative Defense

Even if the award is not vacated altogether, it contains errors that require correction.

### Eighth Affirmative Defense

The Complaint must be dismissed because it failed to join necessary parties as plaintiffs.

### Counterclaims

1.     Pursuant to 9 U.S.C. §§ 10 & 11 and Mass. Gen. L. c. 251 §§ 12 & 13, the Customers respectfully submit the following Counterclaims seeking *vacatur* or modification of the arbitration award ("Award") issued on June 17, 2005 against the Customers and in favor of the Brokers by panel of arbitrators ("Panel") acting under the auspices of NASD Dispute Resolution, Inc. ("NASD") in Case Number 04-03793 ("Arbitration").

13-004-001

2.      As alleged more specifically below, the Customers' Counterclaims involve the fundamentally defective process from which the Award emanated, not the substance of the claims and defenses underlying it.  Despite the "extremely narrow and exceedingly deferential" standards this Court must apply, the Arbitration was so extraordinarily unfair that the Award must be vacated.

### *Parties*

3.      Defendant/Plaintiff-in-Counterclaim Steven Mscisz ("Steven") is an individual residing in the Town of Topsfield, County of Essex, Commonwealth of Massachusetts, and he was a respondent, counterclaimant, and third party claimant in the Arbitration.

4.      Defendant/Plaintiff-in-Counterclaim Mark Mscisz ("Mark") is an individual residing in the Town of Topsfield, County of Essex, Commonwealth of Massachusetts, and he was a respondent, counterclaimant, and third party claimant in the Arbitration.

5.      Defendant/Plaintiff-in-Counterclaim Lynda Mscisz ("Lynda") is an individual residing in the Town of Topsfield, County of Essex, Commonwealth of Massachusetts, and he was a respondent, counterclaimant, and third party claimant in the Arbitration.

6.      Mark and Lynda are husband and wife.

7.      Steven and Mark are brothers.

13-004-001

8.     Defendant Kashner Davidson Securities Corporation ("KDSC" or "Broker-Dealer") is a corporation organized under the laws of the State of Florida, and it maintains its only place of business in that jurisdiction.  KDSC was the claimant and respondent-in-counterclaim in the Arbitration.

9.     Defendant Victor Kashner ("Kashner") is an individual residing in the State of Florida and a registered representative of KDSC.  KDSC's namesake, Kashner is its controlling shareholder, chairman of its board of directors, and – until suspended by the U.S. Securities and Exchange Commision in *In re Kashner,* Case No. 3-9049 (SEC 1996), and by the NASD in *In re Kashner Davidson Securities Corp.,* Case No. C07960095 (NASD 2000) – Kashner was an officer of KDSC.  Kashner was a third party respondent in the Arbitration.

10.     Defendant Matthew Meister ("Meister") is an individual residing in the State of Florida and, at the time of the events operative for purposes of the underlying arbitration, was a registered representative of KDSC.  Meister was a third party respondent in the Arbitration.

11.     Defendant Timothy Varchetto ("Varchetto") is an individual residing in the State of Florida and a registered representative of KDSC.  Varchetto was a third party respondent in the Arbitration.

### Jurisdiction

12.     Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over this civil action, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and because the dispute is between citizens of different States.

13-004-001

13.    Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over this civil action, which is founded on claims or rights arising under the Constitution, treaties or laws of the United States – including Sections 7, 9, 10(b), 19(g)(1) and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78g, 78i, 78j(b), 78s(g), 78aa, implementing regulations promulgated by the Securities and Exchange Commission, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964.

### Background

14.    In late 2003, the Customers appointed KDSC to serve as their agent to place securities transactions in accounts they opened at Sterne, Agee & Leach, Inc. and SAL Financial Services, Inc. (collectively "SALI") at they same time they began doing business with KDSC.

15.    KDSC was not an agent of SALI.

16.    The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced them to establish their relationships with KDSC and SALI.

17.    Meister and Varchetto were the KDSC employees responsible for the Customers' accounts.

18.    Kashner is a "controlling person" of KDSC, as that term is defined under the Federal securities laws, and he supervised the activities of Meister and Varchetto.

13-004-001

19.     SALI and the Customers entered into Client Account Agreements, and neither KDSC nor any of its agents or employees was a party to those contracts.

20.     Neither Kashner, Meister nor Varchetto was a third-party beneficiary of the Client Account Agreements between SALI and the Customers.

21.     After opening their SALI accounts and appointing KDSC to serve as their agent, the Customers – through Meister and Varchetto – purchased shares in Vaso Active Pharmaceuticals, Inc. ("VAPH").

22.     The brother of Mark and Steven was the President of VAPH, and KDSC was in the process of underwriting an initial public offering ("IPO") of VAPH stock at the time the Customers began their relationships with KDSC.

23.     In February 2004, the Client Account Agreements between the Customers and SALI were amended to add margin privileges.

24.     The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced them to begin trading on margin after the IPO, when the price of VAPH stock was rising.

25.     The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced them to make unsuitable trades or maintain imprudent positions in VAPH stock.

13-004-001

26.    The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced Mark and Lynda to pursue a "day trading" strategy with respect to VAPH stock soon after they began trading on margin.

27.    Under the amended Client Account Agreements, margin transactions involved the extension of credit by SALI only, and neither KDSC nor any of its agents ever lent money to the Customers or any of them.

28.    SALI kept the securities accounts of Steven separate from the securities accounts of Mark and Lynda, and SALI kept the margin account of Steven separate from the margin account of Mark and Lynda.

29.    Although the margin liability of Mark and Lynda was to be "joint and several" under their Client Account Agreement with SALI, there was never any agreement pursuant to which Mark and Lynda would be jointly and severally liable with Steven for deficiencies in his margin account, nor was there any agreement pursuant to which Steven would be jointly and severally liable with Mark and Lynda for deficiencies in their margin account.

30.    No Client Account Agreement between SALI and Steven was ever incorporated into a Client Account Agreement between SALI, Mark and Lynda, and no Client Account Agreement between SALI, Mark and Lynda was ever incorporated into a Client Account Agreement between SALI and Steven.

13-004-001

### The Dispute

31.    In the Spring of 2004, the price of VAPH stock dropped precipitously, and SALI issued several margin calls to the Customers.

32.    The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care manipulated the market for VAPH stock, were complicit in such manipulation, or otherwise benefited from declines in the value of the Customers' VAPH holdings.

33.    The Customers are informed and believe, and they therefore aver, that KDSC, Kashner, Meister and Varchetto feared that the Customers would seek to hold them liable for the deficiencies in their SALI margin accounts that resulted from the declines in the price of VAPH stock.

34.    The Customers are informed and believe, and they therefore aver, that KDSC preemptively and hastily commenced the Arbitration on May 25, 2004 – only 7 weeks after the first margin call – in order to obtain a tactical advantage in proceedings to resolve their anticipated disputed with the Customers.

35.    At the time KDSC commenced the Arbitration, none of the Customers was indebted to it.

36.    KDSC's Statement of Claim nonetheless alleged that the Customers were indebted to it.

37.    KDSC never issued a margin call to the Customers.

38.    KDSC never rendered a putative statement of margin indebtedness to any of the Customers.

13-004-001

39.     At the time KDSC commenced the Arbitration, it was not party to any of the Client Account Agreements between the Customers and SALI.

40.     KDSC's Statement of Claim nonetheless alleged that it was party to the Client Account Agreements.

41.     At the time KDSC commenced the Arbitration, none of the Customers had margin accounts with KDSC.

42.     KDSC's Statement of Claim nonetheless alleged that the Customers had margin accounts with KDSC.

43.     KDSC's Statement of Claim did not allege or otherwise give the Customers notice that it contended that SALI assigned its ostensible claims against the Customers to KDSC.

44.     KDSC's Statement of Claim did not allege or otherwise give the Customers notice that it contended that it was subrogated to the putative rights of SALI against the Customers.

45.     KDSC's Statement of Claim did not allege or otherwise give the Customers notice that it contended that KDSC otherwise had some indirect standing to recover from the Customers.

46.     On August 26, 2004, the Customers filed with the NASD and caused the Brokers to be served with their Answer, Affirmative Defenses and Statement of Counterclaims & Third Party Claims ("Answer").

13-004-001

47.    As provided by Rule 10314 of the NASD's Code of Arbitration Procedure, the Customers' Answer responded to the factual averments set forth in KDSC's Statement of Claim and laid out their affirmative defenses, counterclaims against KDSC, and third party claims against Kashner, Meister and Varchetto.

48.    The Customers' Eighth Affirmative Defense was that "KDSC's claims against the Customers must fail because it is not the real party in interest."

49.    The Customers never withdrew or amended their Eighth Amended Defense, of which the Brokers and their counsel were on notice throughout the Arbitration, and which constituted a complete defense under Alabama law, which governed the Client Account Agreements.

### The Agreements to Arbitrate

50.    The Customers' Client Account Agreements arguably compelled them to submit all disputes between them and KDSC (other than class actions) to arbitration.

51.    However, Kashner, Meister and Varcetto were not parties to or third party beneficiaries of the Client Account Agreements executed by the Customers.

52.    KDSC executed the NASD's standard form Uniform Submission Agreement when it commenced the Arbitration and, according to the Award, Kashner executed the same standard form Uniform Submission Agreement, but neither Meister nor Varchetto executed any submission agreement whatsoever.

13-004-001

53.    The Customers were not generally opposed to Arbitration, but they understood that arbitration of all of their claims was not mandatory.

54.    Accordingly, instead of executing the NASD's Uniform Submission Agreement, the Customers signed a Submission Agreement which conditioned their participation to arbitrate on their being afforded "a fair and complete opportunity to obtain adjudication of their claims and defenses."

55.    A true copy of the Submission Agreement executed by the Customers is appended to this pleading as Exhibit A.

56.    So long as they would receive a "fair and complete opportunity to obtain adjudication of their claims and defenses," the Customers were prepared to prosecute in the Arbitration even those claims for which arbitration was not mandatory, and they manifested that position in the Submission Agreement they executed.

57.    The Submission Agreement executed by the Customers represented their only agreement to arbitrate insofar as the Customers' claims against Kashner, Meister and Varchetto were concerned.

**Discovery**

58.    Pursuant to Rule 10321(b) of the NASD's Code of Arbitration Procedure, the Customers propounded comprehensive but focused requests for information relevant to KDSC's claims and the Customers' defenses, counterclaims and third party claims.

13-004-001

59.    In response, KDSC refused to produce anything but the most innocuous account statements and like documents.

60.    KDSC even refused to produce documents identified in the NASD's Discovery Guide as "presumptively discoverable" if the Arbitration involves claims like those asserted by the Customers.

61.    Despite the repeated entreaties of the Customers and their counsel, the Brokers and their counsel never agreed to confer with them in an effort to narrow their discovery disputes.

62.    The Customers were thus compelled to make a motion seeking compelled production of the requested information.

63.    The Panel's chairman largely denied the Customers' motion to compel – even refusing to compel KDSC to produce the "presumptively discoverable" information absolutely necessary to the competent prosecution of their counterclaims and third party claims.

64.    The conduct of discovery in the Arbitration was largely committed to the discretion of the Panel or its designee, but the chairman's unexplained refusal to compel production of the "presumptively discoverable" information was manifestly abusive of that discretion.

13-004-001

65.     Before the chairman's refusal to compel production of the "presumptively discoverable" information, it remained possible for the Customers to receive the "fair and complete opportunity to obtain adjudication of their claims and defenses" on which their Submission Agreement was conditioned, but the decision denying them essential discovery did irreparable, fundamentally unfair, violence to the Customers' ability to proceed.

66.     Of the limited additional information the Panel's chairman did order KDSC to produce, KDSC only produced a portion – contravening not only the chairman's order, but also the NASD's business conduct standards.

67.     The Customers subsequently moved for reconsideration of the chairman's order on their motion to compel, and for an order compelling KDSC's compliance with the portion of the order that required some additional discovery, but neither the Panel nor its chairman ever ruled on those motions.

### Dismissal of Counterclaims & Third Party Claims

68.     Consequently, regretfully, and pursuant to Rules 10305 and 10328(c) of the NASD's Code of Arbitration Procedure, the Customers moved to withdraw without prejudice their third party claims and counterclaims on February 24, 2005 – little more than two weeks after their Counsel received the fundamentally unfair discovery orders from the NASD.

13-004-001

69.    Because the discovery rulings had denied them the "fair and complete opportunity to obtain adjudication of their claims and defenses" on which their Submission Agreement was conditioned, the Customers intended to reassert their third party claims and (to the extent arbitration thereof was not compulsory) their counterclaims in a judicial forum.

70.    However, the Panel not only denied the Customers' motion to withdraw their counterclaims and third party claims without prejudice, but it went so far as to order, *sua sponte,* that those claims be dismissed with prejudice.

71.    The Brokers had not requested dismissal with prejudice in their opposition to the Customers' motion, and the Customers certainly had not requested that those claims be dismissed with prejudice.

72.    The Brokers had never moved to dismiss as factually or legally insufficient the Customers' counterclaims and third party claims, the Customers had never been called upon or afforded an opportunity to explain the specifics of those claims to the Panel, and the Customers had not been afforded notice that dismissal with prejudice was an option that might be considered by the Panel.

73.    Rule 10305(b) of the NASD's Code of Arbitration Procedure – the only provision allowing dismissal of claims with prejudice and without a hearing on their merits – limits that power of the Panel to instances where it is necessary "as a sanction for willful and intentional material failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective."

13-004-001

74.     Before the Panel purported to dismiss the Customers' counterclaims and third party claims with prejudice, the Customers had not been sanctioned in the Arbitration, so it logically follows that no lesser sanction could have "proven ineffective."

75.     Indeed, before the Panel purported to dismiss the Customers' counterclaims and third party claims with prejudice, the Customers had never been guilty of a "willful and intentional material failure to comply with an order of the arbitrator(s)", and the Panel's order dismissing their claims did not find that there had been such a failure.

76.     The Customers are informed and believe, and they therefore aver, that the members of the Panel were piqued and offended by the grounds (that they had been deprived of the "fair and complete opportunity to obtain adjudication of their claims and defenses" on which their Submission Agreement was conditioned) the Customers offered for seeking leave to withdraw without prejudice their counterclaims and third party claims, and that the Panel's dismissal with prejudice of those claims was an arbitrary, capricious, whimsical, and vindictive retaliation for the Customers' honest statement of their reasons.

77.     The Panel paid lip service to the applicability of Rule 10305 – and then ignored it – when it dismissed the counterclaims and third party claims with prejudice.

78.     The order purporting to dismiss the counterclaims and third party claims with prejudice was interlocutory until it was incorporated into the Award, so the Customers could not seek its vacation until after the Award was issued.

13-004-001

### Unauthorized Practice of Law

79.    Pursuant to the standard operating procedures of the NASD, the hearing in the Arbitration was to be held in Boston.

80.    After the Panel set the initial date for the hearing, KDSC and the Brokers made clear that they would be represented at that hearing by attorneys who are not licensed to practice law in this Commonwealth.  The lead attorney was to be Kashner's son-in-law, Marc J. Ross, of the New York Bar.

81.    Believing that participation by those lawyers in the hearing would violate Rule 5.5(a) of the Massachusetts Rules of Professional Conduct, concerned that participation by the Customers' counsel in that hearing with knowledge of that apparent violation would itself violate Rule 5.5(b) of the Rules of Professional Conduct, and mindful that the Chief Judge of this Court had recently certified similar issues to the SJC (*see In re Lucas,* 317 B.R. 195, 215 (D. Mass. 2004)), the Customers filed a motion asking the Panel to stay the arbitration pending the SJC's resolution of the certified issues or disqualify the Brokers' counsel from the Arbitration.  The Panel's chairman denied that motion.

82.    The NASD subsequently issued a policy statement consistent with the Customers' position concerning the unauthorized practice of law issue in the Arbitration, so the Customers moved for reconsideration of the chairman's decision, but the chairman of the Panel denied that motion.

13-004-001

83.    With the law remaining unsettled, and with the continued possibility that they might unwillingly but knowingly abet the unauthorized practice of law at the hearing, the Customers sought a declaratory judgment from a single justice of the SJC (Case No. SJ-2005-0088).

84.    The single justice (Cordy, J.) accepted the Customers' reasoning but nonetheless denied their request for a declaratory judgment because he felt that strict application of Mass. R. Prof. C. 5.5(a) under the circumstances of the Arbitration would produce "too harsh a result."

85.    The Customers have appealed the single justice's decision to the full SJC, where it has been docketed under the name *Steven Mscisz, et al. v. Kashner Davidson Securities Corp., et al.* and assigned Case No. SJC-09529; although the SJC on July 22, 2005 decided the case certified by Judge Young, that decision did not resolve the questions at issue in the Customers' appeal.

### Other Pre-Hearing Procedural Defects

86.    Because discovery motions remained outstanding, and because they wanted to establish definitively the status of their claims and counterclaims, the Customers – as was their absolute right under Rule 10321(d) of the NASD's Code of Arbitration Procedure – requested a pre-hearing conference to discuss those and other issues before final preparations for the hearings had been made.

87.    The Panel – despite the clear requirement of Rule 10321(d) – did not hold the pre-hearing conference the Customers had requested on May 11, 2005. Nor did the Panel even acknowledge that request.

- 22 -

**The Hearing**

88.    Without holding the requested pre-hearing issue to resolve unresolved issues, the Panel commenced the hearing as scheduled on May 17, 2005, and the hearing continued through the morning of May 18, 2005.

89.    Although the hearing was held in Boston, the Brokers' case was presented by an attorney not licensed to practice in the Commonwealth of Massachusetts.

90.    Steven, Mark, Varchetto and KDSC's President, Melissa Rothenbach ("Rothenbach"), were the only witnesses to testify during the hearing.

91.    Because they had been denied a fair opportunity to present the Brokers' misconduct to the Panel, the Customers' presentation was focused on the "real party in interest" defense of which the Brokers had been on notice since August 2004.

92.    Varchetto and Rothenbach consistently admitted the factual predicates of the Customers' "real party in interest" defense.

93.    KDSC did not adduce evidence establishing a contract between KDSC and the Customers or an account due and owing to KDSC by the Customers.

94.    The Brokers did not even attempt to establish the elements of a frivolous, calumnious fraud claim they had asserted against Mark and Lynda.

13-004-001

95.    Varchetto offered no testimony concerning any putative assignment, subrogation or other indirect theory giving KDSC standing to recover from the Customers, and KDSC had not given notice of any such indirect standing theory in advance of the hearing.

96.    During the testimony of the last witness in the hearing, KDSC's counsel came forward with a document – created and executed that very day – which purported to assign SALI's putative rights against the Customers to KDSC. That witness acknowledged that, prior to the mid-hearing assignment of the putative claims, SALI had remained the owner of those claims.

97.    Although the assignment had been received by KDSC and its counsel at 1:45 p.m. on the day of the hearing, they waited until the very end of the testimony – nearly two hours later – to reveal its existence.

98.    Despite these material failures in KDSC's evidence, the Panel denied the Customers' oral motion to dismiss the Arbitration, which motion was based on KDSC's failure to make out a *prima facie* case.

99.    Although KDSC had known for 9 months of the Customers' "real party in interest" defense, and despite the requirement in Rule 10321(c) of the NASD's Code of Arbitration Procedure that the parties exchange exhibits at least 20 days before the hearing, the Brokers and their counsel had never previously produced – or even intimated the existence of – any assignment of SALI's putative claims against the Customers.

13-004-001

100.    Fairness to the Customers required notice of the claims being asserted against them and a meaningful opportunity to defend themselves, and KDSC's "sandbagging" tactics deprived the Customers of both.

101.    KDSC's counsel sought to justify his 180 degree change in course with what he characterized as an oral motion to amend KDSC's Statement of Claim to conform to the evidence.

102.    KDSC's "sandbagging" of the Customers was consequential.  Under Section 8-5-25 of the Alabama Code, which governed the Client Account Agreements, KDSC would have taken SALI's claims against the Customers "subject to all payments, setoffs, and discounts" they had against SALI, but the last-minute assignment prevented the Customers from ascertaining whether they had such offsetting claims against SALI, from taking discovery concerning those offsets or the validity of the putative assignment, and from presenting relevant evidence at the hearing.

103.    Additionally, the Customers made strategic and tactical decisions based on their assumption that KDSC would seek to prove the case it pled, and the Customers expended significant resources preparing and proving their "real party in interest" defense.

104.    The Panel nonetheless allowed KDSC's post-testimony motion to amend its pleading, and the Panel accepted the last-minute assignment into evidence over the Customers' objection.

105.    At the hearing, KDSC also came forward with an affidavit purporting to justify its claim for attorneys' fees and collection costs.

13-004-001

106.    The Customers objected to the affidavit and the materials appended to it, because they contained information and incorporated documents that had been in KDSC's possession long before the 20-day deadline for the exchange of exhibits specified by Rule 10321(c) of the NASD's Code of Arbitration Procedure, and KDSC's decision to spring that evidence on the Customers at the hearing deprived them of any ability to scrutinize and counter the affidavits and exhibits.

107.    The Panel nonetheless received the affidavit and exhibits thereto into evidence.

108.    At the end of the hearing, when reading a script mandated by the NASD, the Panel's chairman asked the Customers' attorney "to state affirmatively whether [the Customers] had a full and fair opportunity to be heard" and, consistent with the averments set forth in the Customers' Counterclaims, counsel gave the only answer he could truthfully provide under the circumstances – "no."

### The Award

109.    On June 17, 2005, the Panel issued its Award and:

a.    found the Customers jointly and severally liable to KDSC for $421,000.00 (including attorneys' fees) in what the Panel characterized as compensatory damages;

b.    reiterated and incorporated the dismissal with prejudice of the Customers counterclaims and third party claims; and

c.    directed the Customers, jointly and severally, to pay $6,900.00 in forum fees.

110.    KDSC had never pled or asserted a lawful basis for making the Customers jointly and severally liable with respect to the compensatory damages.

13-004-001

111.    The debt KDSC alleged to be owed by Steven was – as it properly should have been – pled and always treated as separate from the debt allegedly owed by Mark and Lynda.

112.    The Customers' counsel received the Award on the afternoon of June 20, 2005.

### Grounds for Vacation or Modification of Award

### Count I
### Award Exceeding Powers of Panel
### (9 U.S.C. § 10(a)(4) & Mass. Gen. L. c. 251, § 12(a)(3))

113.    The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 112 of the Customers' Counterclaims.

114.    The Federal and Massachusetts Arbitration Acts permit this Court to make an order vacating the Award if it concludes that "the arbitrators exceeded their powers."

115.    Although no statute, common law rule, agreement between the Customers and Brokers, or NASD rule incorporated into such an agreement gave the Panel the power to do so under the circumstances of this Arbitration, the Panel:

    a.    Dismissed with prejudice the Customers' counterclaims and third party claims;

    b.    Granted KDSC's putative "oral motion to conform the pleadings to the proof"; and

    c.    Held the Customers "jointly and severally liable" for the so-called "compensatory damages" the Panel awarded.

116.    The Customers are therefore entitled to an order vacating the Award.

13-004-001

## Count II
### Refusal to Hear Material Evidence
#### (9 U.S.C. § 10(a)(3) & Mass. Gen. L. c. 251, § 12(a)(4))

117.    The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 116 of the Customers' Counterclaims.

118.    The Federal and Massachusetts Arbitration Acts permit this Court to make an order vacating the Award if it concludes that the Panel refused to hear evidence material to the controversy or otherwise conducted the Arbitration hearing in such a way as to prejudice the rights of the Customers.

119.    The Panel refused to hear the following material evidence:

a.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated Sections 7, 9 and 10(b) of the Securities Act of 1934;

b.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated the Florida Securities Transactions Act;

c.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated the Massachusetts Uniform Securities Act;

d.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated the NASD's own Business Conduct Standards;

e.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers engaged in common law fraud;

f.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers were unjustly enriched;

g.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers converted their property;

13-004-001

h.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that KDSC breached its contracts with them;

i.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that Kashner, Meister and Varchetto violated the Racketeer Influenced and Corrupt Organizations Act;

j.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that KDSC abused the NASD's process;

k.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers violated the Massachusetts Consumer Protection Act;

l.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers violated the Florida Consumer Protection Act;

m.    Evidence relevant to the Customers' counterclaims and third party claims, insofar as such evidence was necessary to establish the circumstances under which the alleged margin debts were incurred.

120.    The Panel otherwise prejudiced the rights of the Customers by:

a.    Conducting a hearing in which KDSC sought to establish alleged margin debts owed by the Customers without affording them a fair and complete opportunity to establish how the Brokers' malfeasance had given rise to those alleged debts;

b.    Depriving the Customers of a forum in which they would have a fair and complete opportunity to present their claims and defenses;

c.    Refusing to compel KDSC to produce to the Customers information concerning their claims and defenses which the NASD itself deemed "presumptively discoverable" in such cases;

d.    Failing to enforce its own order compelling KDSC to produce information to the Customers;

13-004-001

e.  Purporting to dispose of third party claims concerning which the Customers' agreement to arbitrate was subject to the proviso that they be "afforded a fair and complete opportunity to obtain adjudication of their claims and defenses" but without fulfilling that condition precedent;

f.  Failing to rule promptly (or, in some instances, at all) on pre-hearing motions made by the Customers;

g.  Failing to hold the pre-hearing conference requested by the Customers on May 11, 2005;

h.  Presenting the Customers with the "Hobson's Choice" of abetting the unauthorized practice of law by the Brokers' counsel or defaulting in the Arbitration; and

i.  Placing its imprimatur on the "sandbagging" strategy of the Brokers and their counsel.

121.  The Customers are therefore entitled to an order vacating the Award.

### Count III
### Award Procured by Undue Means
### (9 U.S.C. § 10(a)(1) & Mass. Gen. L. c. 251, § 12(a)(1))

122.  The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 121 of the Customers' Counterclaims.

123.  The Federal and Massachusetts Arbitration Acts permit this Court to make an order vacating the Award if it concludes that the award was procured by "undue means."

124.  The Award in this case was procured by the following undue means:

a.  KDSC's false allegations in its Statement of Claim that it was a party to the margin agreements at issue, 9 months of muteness while the Customers challenged its standing, and (after all witnesses had finished testifying in the Arbitration hearing) "sandbagging" the Customers with a document purporting to assign to KDSC the putative claims of the real party in interest;

13-004-001

b.    KDSC's abandonment of its Statement of Claim after the evidence was closed and concomitant oral motion to conform that pleading to the evidence adduced during the hearing;

c.    The Brokers' abetting the unauthorized practice of law by their counsel, who – unencumbered by the Massachusetts Rules of Professional Conduct or any need to preserve his standing in the local legal community – effectuated KDSC's "sandbagging" strategy;

d.    KDSC's failure to cooperate, as required by Rule 10321 of the NASD Code, "to the fullest extent practicable in the voluntary exchange of documents and information" to expedite the Arbitration and its failure to "endeavor to resolve disputes" concerning discovery before necessitating motion practice;

e.    KDSC's failure to produce documents in its possession or control as directed by the Panel pursuant to the NASD Code of Arbitration Procedure; and

f.    KDSC's failure to serve the Customers with copies of documents they intended to present as evidence at least 20 days prior to the hearing.

125.    The Customers are therefore entitled to an order vacating the Award.

## Count IV
## Manifest Disregard of the Law

126.    The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 125 of the Customers' Counterclaims.

127.    This Court is permitted to make an order vacating the Award if it concludes that the Panel acted in "manifest disregard of the law."

128.    In the following instances, the Panel "recognized the applicable law – and then ignored it":

13-004-001

a.  The dismissal with prejudice of the Customers' counterclaims
and third-party claims, despite the plain language of Rule
10305 in the NASD's Code of Arbitration Procedure, which
only permits dismissal with prejudice under circumstances not
present in the Arbitration;

b.  The refusal to stay the Arbitration or disqualify the Brokers'
counsel pending determination by the SJC of the
"unauthorized practice of law" issues certified by the Chief
Judge of this Court – especially after the Panel had been
informed that the NASD had itself taken the position that the
ability of a foreign attorney to participate in a hearing is for
determination by the courts of the forum state; and

c.  The Panel chairman's refusal to compel KDSC to produce
information specified as "presumptively discoverable" in the
NASD's Discovery Guide.

129.  The Customers are therefore entitled to an order vacating the Award.

## Count V
## Refusal to Postpone Hearing
### (9 U.S.C. § 10(a)(3) & Mass. Gen. L. c. 251, § 12(a)(4))

130.  The Customers repeat and reallege, as if fully set forth in this

paragraph, the averments set forth in paragraphs 1 through 129 of the Customers'

Counterclaims.

131.  The Federal and Massachusetts Arbitration Acts permit this Court to

make an order vacating the Award if it concludes that the Panel refused to

postpone the Hearing "upon sufficient cause."

132.  The Panel refused to postpone the hearing pending determination of

the "unauthorized practice of law" issues certified to the SJC by the Chief Judge of

this Court, and the unsettled nature of those issues constituted "sufficient cause"

for postponement.

133.  The Customers are therefore entitled to an order vacating the Award.

13-004-001

**Count VI**
**No Agreement To Arbitrate**
**Issues Addressed In Award**
**(Mass. Gen. L. c. 251, § 12(a)(5))**

134.    The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 133 of the Customers' Counterclaims.

135.    The Massachusetts Arbitration Act permits this Court to vacate the Award if there was no arbitration agreement and the Customers did not participate in the hearing without objecting to that agreement.

136.    In this case, the Customers agreed to arbitrate disputes between them and KDSC (to the extent such claims are lawfully arbitrable), but the Customers' Submission Agreement – their only agreement to arbitrate the third party claims against Kashner, Meister and Varchetto – was subject to the proviso that they be afforded a "fair and complete opportunity to obtain adjudication of their claims and defenses."

137.    The "fair and complete" adjudication proviso in the Customers' Submission Agreement was not satisfied.

138.    Furthermore, neither Meister nor Varchetto executed an agreement submitting the third party claims to arbitration, so – even if the Customers had been afforded a "fair and complete opportunity to obtain adjudication of their claims and defenses" – there was no meeting of the minds concerning arbitrability of the third party claims against Meister and Varchetto.

13-004-001

139.    At and before the hearing, the Customers objected to the Panel's

intention to dispose of the third party claims against Kashner, Meister and

Varchetto.

140.    The Customers are therefore entitled to an order vacating the Award

to the extent it purported to dispose of their third party claims.

**Count VII**
**Correction of Errors**
**(9 U.S.C. § 11 & Mass. Gen. L. c. 251, § 13)**

141.    The Customers repeat and reallege, as if fully set forth in this

paragraph, the averments set forth in paragraphs 1 through 140 of the Customers'

Counterclaims.

142.    The Federal and Massachusetts Arbitration Acts permit this Court to

modify or correct the Award if it is somehow imperfect in a manner that does not

affect the merits of the controversy.

143.    The Award contains at least two such errors that should be corrected

if the Award is not vacated altogether for any of the reasons claimed in Counts I

through VI of the Customers' Counterclaims:

    a.    The Award states that the Customers executed a "Uniform
Submission Agreement" but the record establishes that they
did not.  Instead, the Customers executed a Submission
Agreement expressly conditioning their assent to arbitrate on
their being "afforded a fair and complete opportunity to obtain
adjudication of their claims and defenses."

    b.    The Award holds the Customers "jointly and severally liable"
for compensatory damages in the amount of $421,000.00, but
the Arbitration actually arose from distinct margin accounts
alleged by KDSC – one involving Steven, and the other
involving Mark and Lynda – and any compensatory damages
ultimately included in the Award should be allocated to the
appropriate parties.

- 34 -

WHEREFORE, for the reasons set out above, the Customers respectfully request that the Court

    a.    Either:

        i.  Vacate the Award, direct a rehearing of KDSC's claims against the Customers by a new panel of arbitrators, order those arbitrators to afford the Customers fair and complete discovery and a fair and complete hearing concerning their counterclaims against KDSC (to the extent arbitration of such counterclaims is mandatory), and leave the Customers to their judicial remedies concerning the counterclaims and third party claims of which arbitration is not mandatory; or

        ii.  Correct or modify the Award as prayed for in Count VII of the Customers' Counterclaims; and

    b.    Grant such other relief as the Court deems necessary and just.

**TO THE EXTENT ANY ISSUE MAY BE TRIED BY A JURY, THE CUSTOMERS DEMAND SUCH A TRIAL.**

Respectfully submitted,

STEVEN MSCISZ,
MARK MSCISZ & LYNDA MSCISZ

By their attorney,

*/s/ William P. Corbett, Jr.*

_____
William P. Corbett, Jr. (BBO #561201)
THE CORBETT LAW FIRM
  *A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated:  August 8, 2005

13-004-001

# Exhibit A

# *Exhibit A*

THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.
ARBITRATION DEPARTMENT

|  |  |
|---|---|
| In the Matter of the Arbitration Between:<br><br>KASHNER DAVIDSON SECURITIES CORP.,<br><br>    *Claimant/Respondent in Counterclaim,*<br><br>      v.<br><br>STEVEN MSCISZ, MARK MSCISZ, and<br>LYNDA MSCISZ,<br><br>    *Respondents/Counterclaimants.*<br><br>      v.<br><br>VICTOR KASHNER, MATTHEW MEISTER and<br>TIMOTHY VARCHETTO,<br><br>    *Third Party Respondents.* | NASD DISPUTE RESOLUTION NO. 04-03793 |

**SUBMISSION AGREEMENT**

1.  Provided that they are afforded a fair and complete opportunity to obtain adjudication of their claims and defenses, the undersigned parties hereby submit the present matter in controversy, as set forth in the statement of claim, answers, cross claims and all related counterclaims and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

2.  The undersigned parties hereby state that their attorney has read and explained to them the procedures and rules of the sponsoring organization relating to arbitration.

3.  Provided that they are afforded a fair and complete opportunity to obtain adjudication of their claims and defenses, the undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s), and that the arbitration will be conducted in accordance with the Constitution, By-Laws, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

4.     Provided that they are afforded a fair and complete opportunity to obtain adjudication of their claims and defenses, the undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5.     The undersigned parties reserve their right to seek adjudication of their claims and defenses in a court of competent jurisdiction if the sponsoring organization does not afford them a fair and complete opportunity to obtain such an adjudication.

IN WITNESS WHEREOF, the parties hereto have signed and acknowledged the foregoing Submission Agreement.

STEVEN MSCISCZ                          Date  8/26/04

MARK MSCISCZ                            Date  8/26/04

LYNDA MSCISCZ                           Date  8/26/04

CERTIFICATE OF SERVICE

I hereby certify that on this twenty-sixth day of August, 2004, I caused a copy of the foregoing document to be served by overnight mail upon the attorney of record for Kashner Davidson Securities Corporation.

William P. Corbett, Jr.

- 2 -

# Exhibit 3

Initial Pre-hearing Conference Scheduling Order



**Initial Pre-hearing Conference**
**Scheduling Order**

---

NASD DISPUTE RESOLUTION

INITIAL PRE-HEARING CONFERENCE
SCHEDULING ORDER IN THE MATTER OF:

CLAIMANT(S): *KASHNER  DAVIDSON  SECURITIES  CORPORATION*

RESPONDENT(S): *STEVEN  MSCISZ  MARK  MSCISZ & LYNDA  MSCISZ*
3RD PARTY CLAIMANT: VICTOR KASHNER, MATTIFEN MEISTER & TIMOTHY VARCHETTO
CASE #: *04 - 03793*

An initial pre-hearing telephonic conference was held in the above-captioned matter on
*1/16/04* (month/date/year). Participating in the hearing were: [list the
attending individuals]

Chairperson: *ARTHUR  J.  GIRCOMARRA*

Panelist: *DENISE  L.  PRESLEY*

Panelist: *PATRICK  W.  McKEON*

Claimant's Representative: *RICHARD  BABNICK*
3RD PARTY CLAIMANT'S REP

#1 Respondent's Representative: *WILLIAM  P  CORBETT*

#2 Respondent's Representative: *"        "*

NASD Dispute Resolution Staff: *N/A*

The following was agreed upon during the conference and is now entered as the Initial
Pre-hearing Conference Scheduling Order:

1. The parties accepted the panel's composition. (If not, please explain.) *subj to claimants*
   *counsel reservation for Ms Presley Bankruptcy disclosure*
2. The first scheduled hearing session in this matter will begin at: *9 30 Am* (time)
   on *3/2/05* (month/date/year). The following dates have also been reserved for
   this hearing:
   *3/3/05*
   *3/4/05*

30

3. The arbitrators and parties have tentatively reserved _____ N/A _____
(month/day/year) at _____ (time) for a pre-hearing date to resolve _____

_____

_____

4. The Chairperson and parties have tentatively reserved __1/20/2005__
(month/day/year) at ___2pm___ (time) for a pre-hearing date to resolve discovery
matters _____

_____

5. If pre-hearing briefs are filed, they must be filed by: __20 DAYS PRIOR TO__
_____HEARING DATE_____

6. Other rulings (i.e., extra fees to be deposited): __MOTIONS TO COMPEL DOCUMENTS__
__& DISCOVERY DUE BY 12/15/04  RESPONSE TO MOTIONS__
__TO COMPEL DOCUMENTS DUE BY 1/7/05__

7. If the parties settle this matter with no further hearings:
                                    11/16/04
   a) The cost of this IPHC will be borne as follows: __1/2 BY CLAIMANTS &__
      __1/2 BY RESPONDENTS__

      __COST OF 11/8/04 IPHC WILL BE BORNE BY RESPONDENTS__

   b) Is this preliminary assessment joint and several? (Yes)  No

   c) If this preliminary assessment is joint and several, state below the parties against
      whom it is made:
      __ALL CLAIMANTS INCLUDING 3RD PARTY CLAIMANTS__
      __ALL RESPONDENTS__

NOTE: Pursuant to Rule 10306 of the *NASD Code of Arbitration Procedure*,
effective November 19, 2001, outstanding forum fees that have not yet been
resolved or assessed by the panel, the parties or another Rule will be divided
equally among the parties when settling parties fail to allocate fees in their
settlement agreements.

This order will remain in effect unless amended by the arbitration panel.

Dated: __11/16/04__

_____
Chairperson
On behalf of the arbitration panel

# Exhibit 4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------
                                          )
KASHNER DAVIDSON SECURITIES CORP.,        )
VICTOR KASHNER, MATTHEW MEISTER,          )        Case No. 05-CV-11433-JLT
and TIMOTHY VARCHETTO,                     )
                                          )
        Plaintiffs,                       )
                                          )
        vs.                               )
                                          )
STEVEN MSCISZ, MARK MSCISZ, and           )
LYNDA MSCISZ,                             )
                                          )
        Defendants.                       )
                                          )
------------------------------------------------------------

### REPLY TO COUNTERCLAIMS

Plaintiffs Kashner Davidson Securities Corporation, ("KDSC"), Victor Kashner,

Matthew Meister, and Timothy Varchetto, by their undersigned counsel, for their Reply to

Defendants' Counterclaims to their Amended Complaint to modify and confirm an arbitration

award entered in their favor and against Defendants Steven Mscisz, Mark Mscisz, and Lynda

Mscisz, respond as follows:

1.      Plaintiffs aver that paragraph 1 sets forth a general description of Defendants'

claims to which no responsive response is required.

2.      Plaintiffs deny the allegations contained in paragraph 2.

3.      Plaintiffs admit the allegations contained in paragraph 3.

4.      Plaintiffs admit the allegations contained in paragraph 4.

5.      Plaintiffs admit the allegations contained in paragraph 5.

6.      Plaintiffs admit the allegations contained in paragraph 6.

7.    Plaintiffs admit the allegations contained in paragraph 7.

8.    Plaintiffs admit the allegations contained in paragraph 8.

9.    Plaintiffs admit the allegations contained in paragraph 9 that Kashner resides in Florida, he is a registered representative of KDSC, he is a shareholder of KDSC, Chairman of KDSC, and he was a third-party respondent in the Arbitration.  With respect to the remaining allegations, Plaintiffs refer to the cases therein for the contents thereof – the facts of which are not material to this proceeding to confirm an arbitration award.

10.    Plaintiffs admit the allegations contained in paragraph 10.

11.    Plaintiffs admit the allegations contained in paragraph 11.

12.    Plaintiffs admit the allegations contained in paragraph 12.

13.    Plaintiffs admit that this Court has jurisdiction over this matter and otherwise aver that paragraph 13 sets forth a general legal opinion of counsel as to the additional basis for jurisdiction for which no responsive response is required.

14.    Plaintiffs deny the allegations contained in paragraph 14 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

15.    Plaintiffs deny the allegation contained in paragraph 15 on the grounds that this allegation has already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

16.    Plaintiffs deny the allegations contained in paragraph 16.

17.    Plaintiffs deny the allegations contained in paragraph 17 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

18.    Plaintiffs deny the allegations contained in paragraph 18.

19.    Plaintiffs deny the allegations contained in paragraph 19 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding, except admit that Defendants entered into agreements with SALI concerning their accounts maintained at KDSC.

20.    Plaintiffs deny the allegations contained in paragraph 20 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

21.    Plaintiffs deny the allegations contained in paragraph 21 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding, except admit that Defendants purchased shares of VAPH in their accounts at KDSC.

22.    Plaintiffs admit the allegations contained in paragraph 22.

23.    Plaintiffs admit the allegations contained in paragraph 23.

24.    Plaintiffs deny the allegations contained in paragraph 24.

25.    Plaintiffs deny the allegations contained in paragraph 25.

26.    Plaintiffs deny the allegations contained in paragraph 26.

27.    Plaintiffs deny the allegations contained in paragraph 27 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

28.    Plaintiffs admit the allegations contained in paragraph 28 that the account maintained by Steven at KDSC was a separate account from the joint account maintained by Mark and Lynda at KDSC.

29.    Plaintiffs admit the allegations contained in paragraph 29.

30.    Plaintiffs admit the allegations contained in paragraph 30.

31.    Plaintiffs admit the allegations contained in paragraph 31.

32.    Plaintiffs deny the allegations contained in paragraph 32.

33.    Plaintiffs deny the allegations contained in paragraph 33.

34.    Plaintiffs deny the allegations contained in paragraph 34.

35.    Plaintiffs deny the allegations contained in paragraph 35 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

36.    Plaintiffs deny the allegations contained in paragraph 36 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

37.    Plaintiffs deny the allegations contained in paragraph 37 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

38.    Plaintiffs deny the allegations contained in paragraph 38 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

39.    Plaintiffs deny the allegations contained in paragraph 39 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

40.     Plaintiffs deny the allegations contained in paragraph 40 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

41.     Plaintiffs deny the allegations contained in paragraph 41 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

42.     Plaintiffs deny the allegations contained in paragraph 42 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

43.     Plaintiffs deny the allegations contained in paragraph 43 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

44.     Plaintiffs deny the allegations contained in paragraph 44 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

45.     Plaintiffs deny the allegations contained in paragraph 45 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

46.     Plaintiffs admit the allegations contained in paragraph 46.

47.     Plaintiffs deny the allegation contained in paragraph 47, except admit that the Defendants' Answer asserted affirmative defenses, counterclaims against KDSC, and third-party claims against Kashner, Meister, and Varchetto.

48.     Plaintiffs admit the allegation contained in paragraph 48.

49.    Plaintiffs deny the allegations contained in paragraph 49 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

50.    Plaintiffs admit the allegations contained in paragraph 50.

51.    Plaintiffs deny the allegations contained in paragraph 51 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

52.    Plaintiffs deny the allegations contained in paragraph 52 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding, except admit that Kashner and KDSC signed Uniform Submission Agreements.

53.    Plaintiffs deny the allegations contained in paragraph 53 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

54.    Plaintiffs deny the allegations contained in paragraph 54 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding, except admit that Defendants signed a submission agreement and submitted their claims against Plaintiffs to arbitration before the NASD.

55.    Plaintiffs admit the allegations contained in paragraph 55.

56.    Plaintiffs deny the allegations contained in paragraph 56 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

57.     Plaintiffs deny the allegations contained in paragraph 57 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

58.     Plaintiffs deny the allegations contained in paragraph 58 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding, except admit that Defendants submitted discovery requests in the arbitration.

59.     Plaintiffs deny the allegations contained in paragraph 59 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

60.     Plaintiffs deny the allegations contained in paragraph 60 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

61.     Plaintiffs deny the allegations contained in paragraph 61 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

62.     Plaintiffs deny the allegations contained in paragraph 62 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding, except admit that Defendants made a motion to compel discovery.

63.     Plaintiffs deny the allegations contained in paragraph 63 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the

subject-matter of this proceeding, except admit that the learned Chairperson, after the matter had

been fully briefed, largely denied Defendants' motion to compel.

64.    Plaintiffs deny the allegations contained in paragraph 64, except admit that

discovery in the arbitration is committed to the discretion of the Panel or its designee.

65.    Plaintiffs deny the allegations contained in paragraph 65.

66.    Plaintiffs deny the allegations contained in paragraph 66.

67.    Plaintiffs deny the allegations contained in paragraph 67, except admit that

Defendants made motions for reconsideration of the discovery order and other discovery

motions.

68.    Plaintiffs deny the allegations contained in paragraph 68, except admit that

Defendants made a motion to withdraw their counterclaim and third-party claims.

69.    Plaintiffs deny the allegations contained in paragraph 69.

70.    Plaintiffs deny the allegations contained in paragraph 70, except admit that the

Panel denied Defendants' motion to withdraw their counterclaim and third-party claims and

admit that the Panel dismissed Defendants' counterclaim and third-party claims with prejudice.

71.    Plaintiffs deny the allegations contained in paragraph 71 on the grounds that these

allegations have already been decided by the arbitration panel in the arbitration that is the

subject-matter of this proceeding.

72.    Plaintiffs deny the allegations contained in paragraph 72 on the grounds that these

allegations have already been decided by the arbitration panel in the arbitration that is the

subject-matter of this proceeding.

73.    Plaintiffs deny the allegations contained in paragraph 73 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

74.    Plaintiffs deny the allegations contained in paragraph 74 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

75.    Plaintiffs deny the allegations contained in paragraph 75 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

76.    Plaintiffs deny the allegations contained in paragraph 76.

77.    Plaintiffs deny the allegations contained in paragraph 77.

78.    Plaintiffs admit the allegations contained in paragraph 78.

79.    Plaintiffs admit the allegations contained in paragraph 79 that the NASD selected Boston as the hearing location as an accommodation for the Defendants.

80.    Plaintiffs admit the allegations contained in paragraph 80.

81.    Plaintiffs admit the allegations contained in paragraph 81.

82.    Plaintiffs deny the allegations contained in paragraph 82, except admit that Defendants filed a motion for reconsideration of their motion to disqualify counsel, which the Panel denied.

83.    Plaintiffs deny the allegations contained in paragraph 83, except admit that Defendants filed an action seeking a declaratory judgment before the Single Justice.

84.    Plaintiffs deny the allegations contained in paragraph 84 and refer the Court to the Memorandum of Decision and Judgment issued by Judge Cordy. A copy of which is annexed hereto as Exhibit A.

85.    Plaintiffs admit the allegations contained in paragraph 85 and further aver that there is a motion pending to dismiss the appeal, which has been referred by the Full Court to a Single Justice for determination.

86.    Plaintiffs deny the allegations contained in paragraph 86 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

87.    Plaintiffs deny the allegations contained in paragraph 87 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

88.    Plaintiffs deny the allegations contained in paragraph 88, except admit that the hearing occurred on May 17 and 18, 2005.

89.    Plaintiffs admit the allegations contained in paragraph 89 and aver that the Single Justice had determined that Counsel's participation at the hearing was not the unauthorized practice of law. *See* Exhibit A.

90.    Plaintiffs admit the allegations contained in paragraph 90.

91.    Plaintiffs deny the allegations contained in paragraph 91.

92.    Plaintiffs deny the allegations contained in paragraph 92 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

93.     Plaintiffs deny the allegations contained in paragraph 93 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

94.     Plaintiffs deny the allegations contained in paragraph 94 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

95.     Plaintiffs deny the allegations contained in paragraph 95 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

96.     Plaintiffs deny the allegations contained in paragraph 96 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

97.     Plaintiffs deny the allegations contained in paragraph 97 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

98.     Plaintiffs deny the allegations contained in paragraph 98 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding, except admit that during the hearing, Defendants made an oral motion to dismiss, which was denied.

99.     Plaintiffs deny the allegations contained in paragraph 99 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

100.    Plaintiffs deny the allegations contained in paragraph 100 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

101.    Plaintiffs deny the allegations contained in paragraph 101 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding, except admit that Plaintiffs made a motion to amend the pleadings to confirm to the evidence, which the Panel granted.

102.    Plaintiffs deny the allegations contained in paragraph 102.

103.    Plaintiffs deny the allegations contained in paragraph 103.

104.    Plaintiffs admit the allegations contained in paragraph 104.

105.    Plaintiffs admit the allegations contained in paragraph 105.

106.    Plaintiffs deny the allegations contained in paragraph 106 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding.

107.    Plaintiffs admit the allegations contained in paragraph 107.

108.    Plaintiffs deny the allegations contained in paragraph 108 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding, except admit that, after being asked to "state affirmatively whether you have had a full and fair opportunity to be heard", Defendants' Counsel stated "no" and aver that he later qualified his response.

109.    Plaintiffs admit the allegations contained in paragraph 109 and respectfully refer the Court to the arbitration award – a copy of which is annexed to the Amended Complaint.

110.    Plaintiffs deny the allegations contained in paragraph 110 and aver that Plaintiffs pled that Mark and Lynda Mscisz to be held joint and severally liable.

111.    Plaintiffs admit the allegations contained in paragraph 111.

112.    Plaintiffs deny knowledge or information sufficient to form the basis as to the truth of the allegations contained in paragraph 112.

113.    Plaintiffs repeat and reallege each of the aforementioned responses as though fully set forth herein in response to the allegations contained in paragraph 113.

114.    Plaintiffs aver that there are no factual allegations to either admit or deny in paragraph 114, which sets forth a statement of law.

115.    Plaintiffs deny the allegations contained in paragraph 115.

116.    Plaintiffs deny the allegations contained in paragraph 116.

117.    Plaintiffs repeat and reallege each of the aforementioned responses as though fully set forth herein in response to the allegations contained in paragraph 117.

118.    Plaintiffs deny the allegations contained in paragraph 118.

119.    Plaintiffs deny the allegations contained in paragraph 119.

120.    Plaintiffs deny the allegations contained in paragraph 120.

121.    Plaintiffs deny the allegations contained in paragraph 121.

122.    Plaintiffs repeat and reallege each of the aforementioned responses as though fully set forth herein in response to the allegations contained in paragraph 122.

123.    Plaintiffs aver that there are no factual allegations to either admit or deny in paragraph 123, which sets forth a statement of law.

124.    Plaintiffs deny the allegations contained in paragraph 124.

125.    Plaintiffs deny the allegations contained in paragraph 125.

126.    Plaintiffs repeat and reallege each of the aforementioned responses as though fully set forth herein in response to the allegations contained in paragraph 126.

127.    Plaintiffs aver that there are no factual allegations to either admit or deny in paragraph 127, which sets forth a statement of law.

128.    Plaintiffs deny the allegations contained in paragraph 128.

129.    Plaintiffs deny the allegations contained in paragraph 129.

130.    Plaintiffs repeat and reallege each of the aforementioned responses as though fully set forth herein in response to the allegations contained in paragraph 130.

131.    Plaintiffs aver that there are no factual allegations to either admit or deny in paragraph 131, which sets forth a statement of law.

132.    Plaintiffs deny the allegations contained in paragraph 132.

133.    Plaintiffs deny the allegations contained in paragraph 133.

134.    Plaintiffs repeat and reallege each of the aforementioned responses as though fully set forth herein in response to the allegations contained in paragraph 134.

135.    Plaintiffs deny the allegations contained in paragraph 135, which purports to set forth a statement of law.

136.    Plaintiffs deny the allegations contained in paragraph 136 on the grounds that these allegations have already been decided by the arbitration panel in the arbitration that is the subject-matter of this proceeding, except admit that Defendants agreed to arbitrate disputes with KDSC.

137.    Plaintiffs deny the allegations contained in paragraph 137.

138.    Plaintiffs deny the allegations contained in paragraph 138, except admit that neither Meister nor Varchetto executed an agreement to arbitrate and aver that, as associated

persons of an NASD member firm that they were required to submit to arbitration any claim filed

by a public customer, here Defendants, and submitted to the jurisdiction of the NASD when they

filed their Answer to the claims filed by Defendants.

139.    Plaintiffs deny the allegations contained in paragraph 139 on the grounds that

these allegations have already been decided by the arbitration panel in the arbitration that is the

subject-matter of this proceeding.

140.    Plaintiffs deny the allegations contained in paragraph 140.

141.    Plaintiffs repeat and reallege each of the aforementioned responses as though

fully set forth herein in response to the allegations contained in paragraph 141.

142.    Plaintiffs admit the allegations contained in paragraph 142, which set forth a

statement of law.

143.    Plaintiffs deny the allegations contained in paragraph 143, except admit that any

compensatory damages should be allocated to the appropriate parties and aver that the attorneys'

fees should be joint and several among the Defendants.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

A Court's review of an arbitrator's decision is extremely narrow and exceedingly

deferential; accordingly, an arbitrator's decision may only be vacated upon: one of the statutory

provisions set forth in section 10(a) of the Federal Arbitration Act, one of the statutory

provisions set forth in section 12 of the Massachusetts Uniform Arbitration Act, or the limited

judicially created ground of manifest disregard of the law – none of which are present in this

case.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

The Arbitrators did not exceed their powers or scope of authority, and they properly ruled on all disputes submitted to arbitration by the parties.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

Under Rule 10101(c) of the NASD Code, Defendants' submission of their dispute with Kashner, Meister and Varchetto was a matter eligible for submission to arbitration before the NASD because it was a dispute between associated persons of an NASD member firm (Kashner, Meister and Varchetto) and public customers (Defendants). Further, under Rule 10301(a) of the NASD Code, Kashner, Meister and Varchetto were required to submit the dispute to arbitration because Defendants, as public customers, had demanded that they arbitration this dispute before the NASD. Accordingly, as public customers demanding the Individual Plaintiffs to submit their dispute to arbitration, Defendants unequivocally and irrevocably submitted their dispute with Kashner, Meister and Varchetto to arbitration before the NASD.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

By demanding arbitration and submitting their dispute with the Individual Plaintiffs to arbitration before the NASD and their active participation in the arbitration proceeding – *inter alia,* accepting the Panel, requesting discovery, filing motions – Defendants affirmative waived the right to pursue their dispute before the Courts.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

Notwithstanding their counsel's crafty draftsmanship of a "conditional" arbitration submission agreement, Defendants' active participation and filing of motions seeking relief from the Panel operated as a waiver of their right to pursue their judicial remedies.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

The Arbitration Panel did not exceed its powers as they duly exercised their discretion to make rulings and interpret the NASD Code as provided by Rule 10324 of the NASD Code and as a matter of law.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

The Arbitration Panel did not exceed its powers by allowing KDSC to amend its pleading to the proof adduced at the hearing.

### AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

The Arbitration Panel's decision to deny certain of Defendants' onerous discovery requests did not result in the refusal to hear evidence.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

The purported manifest abuse of discretion in deciding discovery issues is not a basis to vacate an award under the Federal Arbitration Act or Massachusetts' Uniform Arbitration Act.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

The NASD Code vest full discretion in the Arbitration Panel to govern and render decision on discovery issues. While the NASD Discovery Guide identifies documents that are presumptively discoverable, a party may overcome such a presumption. Here, the Arbitrator ordered the production of documents concerning Defendants' accounts at KDSC – such as account statements, new account documentation, documentation concerning the transactions in the account, and telephone records of calls between KDSC and Defendants, which were timely produced to Defendants. Thus, Defendants had documents available to them to offer into evidence in connection with their purported fraud, suitability, unauthorized trading, or other

trumped-up claims and/or defenses – Defendants simply chose not to submit such evidence to the Panel.

### AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

Defendants had the opportunity to present any documentary evidence concerning any of their affirmative defenses; Defendants had the opportunity to fully cross-examine their broker, Varchetto, concerning the activity in their KDSC accounts; and Defendants had the opportunity to call any other person as a witness in their direct case concerning the trading in their KDSC accounts. Accordingly, the Panel did not refuse to hear evidence presented by the parties at the hearing.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

The Panel dismissal of Defendants' Counterclaims and Third-Party Claims was not manifest disregard of the law. The Panel stated, on the record, that they believed that NASD Rule 10305 and other law provided them the authority for their decision, which they made their ruling after "thoughtful consideration" and due deliberation. A true and correct copy of the relevant portion of the hearing transcript setting forth the Panel's belief is annexed hereto as Exhibit B.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

The Panel's dismissal of Defendants' Counterclaims and Third-Party Claims was not manifest disregard of the law. Defendants had intentionally, openly, and willfully refused to comply with a written discovery order. Incredulously, Defendants openly refused to comply with the order after they had represented to the Panel that they would fully comply with the order in a prior motion to obtain relief from the Panel – an additional period of time to comply with the order.

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

The Panel decision to further deny Defendants' efforts to stay the arbitration proceeding or to disqualify Plaintiffs' counsel was not manifest disregard of the law. Indeed, a Single Justice of Massachusetts' Supreme Judicial Court has ruled that Plaintiff's Counsel's participation at the hearing would not constitute the unauthorized practice of law, and the Single Justice denied Defendants' request for an emergency stay of the arbitration proceeding pending appeal of his decision.

### AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' out-of-state-counsel's participation at the hearing does not constitute the procurement of an award by undue means under the Federal Arbitration Act. Indeed, a Single Justice of Massachusetts' Supreme Judicial Court has ruled that Plaintiff's Counsel's participation at the hearing would not constitute the unauthorized practice of law. See Exhibit A.

### AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

Defendants were not precluded from presenting witnesses or evidence at the hearing. The Panel acted within its discretion to admit into evidence the assignment of rights offered by KDSC, and Defendants were not prejudiced by such admission into evidence as they had no legal basis to challenged the assignment. Indeed, since the Panel issued the Award, KDSC's clearing firm has transferred KDSC's monies that it had frozen with respect Defendants' margin debt and transferred the Defendants' margin debt to KDSC's cross-guarantee account. A true and correct copy of the relevant account statements for KDSC's gross-guarantee account and Defendants' accounts reflecting the transfer are annexed hereto as Exhibit C.

### AS AND FOR A EIGHTEENTH AFFIRMATIVE DEFENSE

The Panel acted within its discretion under the NASD Code in allowing documents into evidence that had not been previously exchanged by the parties at least twenty days prior to the hearing.

### AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE

The Award was not procured by undue means under either the Federal Arbitration Act or Massachusetts' Uniform Arbitration Act as the Statement of Claim provided Defendants adequate notice of the claims asserted.

### AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE

The participation of counsel licensed to practice law in a state other than the state holding the hearing location does not amount to procuring an award by undue means under either the Federal Arbitration Act or Massachusetts' Uniform Arbitration Act.  Further, in this instance, a Single Justice of Massachusetts' Supreme Judicial Court had ruled that Plaintiff's Counsel's participation at the hearing would not constitute the unauthorized practice of law.

### AS AND FOR A TWENTY-FIRST AFFIRMATIVE DEFENSE

The Panel did not unreasonable refuse to postpone the hearing.  The Panel, at the request of Defendants, initially postponed the hearing for a two-month time period so the parties and Panel could address issues that were open on the eve of the originally scheduled hearing.  In the interim, a Single Justice of Massachusetts' Supreme Judicial Court ruled that Plaintiff's Counsel's participation at the hearing would not constitute the unauthorized practice of law, and the Single Justice denied Defendants' request for an emergency stay of the arbitration proceeding pending appeal of his decision.  Thus, the Panel reasonably concluded that there was insufficient

cause to further postpone the hearing – a hearing in which the Court had denied an application to

stay.

**WHEREFORE,** pursuant to 9 U.S.C. §§ 9 and 11 and Mass. Gen. L. c. 251 §§ 11 and

13, Plaintiffs respectfully request that this Court deny the counterclaims and grant the Amended

Complaint by:

      a.     Entering an Order confirming the Award and a confirming judgment

thereon;

      b.     In the alternative, entering an Order modifying and confirming the Award

and confirming judgment thereon, and

      c.     Granting such other and further relief as the Court deems necessary and

just.

Dated: August 29, 2005

                      Respectfully submitted by:

                      /s/ Howard M. Smith
                      Howard M. Smith
                      NEWMAN & SMITH
                      One Gateway Center
                      Newton, Massachusetts 02458
                      (617) 965-9697
                      BBO# 468880
                      Attorneys for Plaintiffs

To:    William P. Corbett, Jr.
       The Corbett Law Firm
       85 Exchange Street, Suite 326
       Lynn, Massachusetts 01901-1429

# Exhibit A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY
NO. SJ-05-0088

STEVEN MSCISZ, MARK MSCISZ and LYNDA MSCISZ

**vs.**

KASHNER DAVIDSON SECURITIES CORP., VICTOR KASHNER, MATTHEW
MEISTER, TIMOTHY VARCHETTO, MARC J. ROSS, RICHARD J. BABNICK, JR.
and SICHENZIA ROSS FRIEDMAN FERENCE LLP

**MEMORANDUM OF DECISION AND JUDGMENT**

This matter came before me on a petition pursuant to G. L.
c. 231A, § 1, filed by Steven Mscisz, Mark Mscisz, and Lynda
Mscisz (the plaintiffs).[1] The plaintiffs request that I issue
the following declaratory judgments:

"a.  [A] lawyer admitted to practice in another United
States jurisdiction but not admitted to practice in
Massachusetts engages in the unauthorized practice of
law, in violation of . . . Mass. R. Prof. C. 5.5(a), as
well as G. L. c. 221, § 46A, by representing a party or
parties at an arbitration hearing held in this
Commonwealth;

"b.  [A] Massachusetts attorney, by participating in an

---

[1] General Laws c. 231A, § 1, provides in relevant part:

"The supreme judicial court . . . may on appropriate
proceedings make binding the declarations of right, duty,
status and other legal relations sought thereby, either
before or after a breach or violation thereof has occurred
in any case in which an actual controversy has arisen and is
specifically set forth in the pleadings and whether any
consequential judgment or relief is or could be claimed at
law or in equity or not; and such proceeding shall not be
open to objection on the ground that a merely declaratory
judgment or decree is sought thereby and such declaration,
when made, shall have the force and effect of a final
judgment or decree and be reviewable as such."

2

arbitration hearing held within the Commonwealth where parties are represented by lawyers not licensed to practice in this jurisdiction, would knowingly assist a violation of Mass. R. Prof. C. 5.5(a) and G. L. c. 221, § 46A, in violation of Mass. R. Prof. C. 5.5(b) and 8.4(a);

"c.    [A]n arbitrator's refusal to postpone the hearing until after this Court resolves the 'unauthorized practice of law' issue would subject any award to vacation under the Commonwealth's version of the Uniform Arbitration Act, G. L. c. 251, § 12 (a) (5); and

"d.    [A]n award issued after an arbitration hearing in which attorneys violated Mass. R. Prof. C. 5.5(a) and G. L. c. 221, § 46A would be procured by 'undue means' and thus subject to vacation under the Commonwealth's version of the Uniform Arbitration Act, G. L. c. 251, § 12."

For the reasons set forth below, I deny the petition.[2] In the particular circumstances presented, defendant attorneys Marc J. Ross and Richard J. Babnick, Jr., and the law firm Sichenzia Ross Friedman Ference LLP (SRFF) will not be engaging in the unauthorized practice of law by representing defendants Kashner Davidson Securities Corporation (KDSC), Victor Kashner, Matthew Meister, and Timothy Varchetto at an arbitration hearing scheduled to take place in Massachusetts.

---

[2] Steven Mscisz, Mark Mscisz, and Lynda Mscisz (the plaintiffs) have also filed a motion to strike the answer and supporting memorandum of law filed by Kashner Davidson Securities Corp., Victor Kashner, Matthew Meister, Timothy Varchetto, Marc J. Ross, Richard J. Babnick, Jr., and Sichenzia Ross Friedman Ference LLP (collectively the defendants) in connection with this petition. Because the defendants' answer and supporting memorandum of law conformed with the practices and procedures of the Supreme Judicial Court for Suffolk County, I deny the motion.

3

1. <u>Background</u>.  KDSC, a broker-dealer, is a Florida corporation that maintains its only place of business in Florida. Defendants Kashner, Meister, and Varchetto are Florida residents and registered representatives of KDSC (collectively the broker defendants).  Defendants Ross and Babnick, attorneys of record for the broker defendants, are affiliated with the New York City law firm of SRFF (collectively the lawyer defendants).  They are admitted to practice law in the State of New York and have represented KDSC in securities-related matters for many years. Neither individual is a member of the Massachusetts bar.[3]

On May 25, 2004, the lawyer defendants filed a claim with the New York office of the National Association of Securities Dealers, Inc. (NASD) on behalf of KDSC, demanding arbitration against the plaintiffs, who are residents of Massachusetts.  The plaintiffs filed an answer, counterclaim, and third-party claims against Kashner, Meister, and Varchetto.  The NASD selected Boston as the site for the arbitration, in accordance with its general policy to "select the hearing location closest to the [public] customer's residence at the time the dispute arose." The arbitrators selected to decide the case were drawn from Massachusetts and New Hampshire.  The plaintiffs subsequently

---

[3] SRFF does not operate a law practice in Massachusetts, nor does it advertise within the Commonwealth.  No attorney affiliated with SRFF is currently an active member of the Massachusetts bar.

4

filed a motion with the arbitration panel to disqualify the lawyer defendants from representing the broker defendants at the hearing on the basis that they were not admitted to practice law in Massachusetts.  The lawyer defendants then requested that the arbitration panel admit them <u>pro hac vice</u> for the purposes of the hearing.  The chairperson of the arbitration panel orally denied the plaintiffs' motion to disqualify the lawyer defendants and the plaintiffs' subsequent motion for reconsideration.  After the plaintiffs moved for reconsideration a second time, the arbitration panel issued an order denying that motion and ruling "that it is not necessary for counsel to be admitted <u>pro hac vice</u> in this matter."<sup>4</sup>/ The arbitration hearing is currently scheduled for May 17, 2005.

2.  <u>Discussion</u>.  Mass. R. Prof. C. 5.5, 426 Mass. 1410 (1998) provides in relevant part: "A lawyer shall not . . . practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction." General Laws c. 221, § 46A, states that "[n]o individual, other than a member, in good standing, of the bar of this commonwealth shall practice law . . . provided, that a member of the bar, in good standing, of any other state may appear, by permission of the court, as attorney or counselor, in any case pending therein,

---

<sup>4</sup>/ The arbitration panel also dismissed the plaintiffs' counterclaims and third-party claims with prejudice in this order.

5

if such other state grants like privileges to members of the bar, in good standing, of this commonwealth."

The plaintiffs argue for a strict interpretation of Mass. R. Prof. C. 5.5 and G. L. c. 221, § 46A.  They contend that legal representation at an arbitration proceeding constitutes the practice of law and, consequently, an out-of-state attorney who represents a party in an arbitration proceeding that has been assigned to take place in Massachusetts engages in the unauthorized practice of law.  I do not disagree with the general proposition that an attorney's conduct in connection with an arbitration may fall within the broad scope of "the practice of law."  The Supreme Judicial Court has defined this scope to include at least "the practice of directing and managing the enforcement of legal claims and the establishment of the legal rights of others," "the practice of giving or furnishing legal advice as to such rights," and "the practice . . . of drafting documents by which such rights are created."  In the Matter of The Shoe Mfrs. Protective Ass'n, Inc., 295 Mass. 369, 372 (1936).  Ross's and Babnick's representation of KDSC in its claim against the plaintiffs would appear to involve such activities.

I also agree that there is no explicit "arbitration exception" in either Mass. R. Prof. C. 5.5 or G. L. c. 221, §

6

46A.5/ The language of rule 5.5 differs from the recently amended

version of rule 5.5 of the American Bar Association Model Rules

of Professional Conduct, which provide in relevant part:

> "(a)  A lawyer shall not practice law in a jurisdiction in
> violation of the regulation of the legal profession in that
> jurisdiction, or assist another in doing so.
>
> "  . . .
>
> "(c)  A lawyer admitted in another United States
> jurisdiction, and not disbarred or suspended from practice
> in any jurisdiction, may provide legal services on a
> temporary basis in this jurisdiction that:
>
> "  . . .
>
> "  . . .
>
> "(3) are in or reasonably related to a pending or potential
> arbitration, mediation, or other alternative dispute
> resolution proceeding in this or another jurisdiction, if
> the services arise out of or are reasonably related to the
> lawyer's practice in a jurisdiction in which the lawyer is
> admitted to practice and are not services for which the
> forum requires <u>pro hac vice</u> admission."

ABA Model Rule 5.5 (2002).  Adoption of this amended rule is

currently under consideration here.  See also Cal. C. Civ. P.

§ 1282.4(b) ("Notwithstanding any other provision of law,

including section 6125 of the Business and Professions Code [the

unauthorized practice of law statute], an attorney admitted to

---

5/The Appeals Court has recently concluded that "[n]othing
in Massachusetts law requires that a party's representative in
arbitration proceedings be admitted to practice in
Massachusetts."  <u>Superadio Ltd. Partnership</u> v. <u>Walt "Baby" Love
Prods., Inc.</u>, 62 Mass. App. Ct. 546, 552 n.5 (2004).  Nothing in
Massachusetts law, however, explicitly permits an attorney not
licensed to practice in Massachusetts to serve as legal counsel
at a Massachusetts arbitration proceeding.

7

the bar of any other state may represent the parties in the court

of, or in connection with, an arbitration proceeding in this

state").

My understanding of the rationale behind Mass. R. Prof. C.

5.5, however, convinces me that its strict application in this

matter would create too harsh a result.  The comments to rule 5.5

explain that "[l]imiting the practice of law to members of the

bar protects the public against rendition of legal services by

unqualified persons."  Implicit in this policy is a concern for

Massachusetts citizens.  As the Supreme Court of California noted

in Birbrower, Montalbano, Condon & Frank, P.C., v. Superior Court

of Santa Clara County, 17 Cal. 4th 119, 132 (1998) (quotations

and citations omitted):

> "Many states have substantially similar statutes that serve
> to protect their citizens from unlicensed attorneys who
> engage in unauthorized legal practice.  Like [California's]
> section 6125, these other state statutes protect local
> citizens against the dangers of legal representation and
> advice given by persons not trained, examined and licensed
> for such work, whether they be laymen or lawyers from other
> jurisdictions."[6]

See also Condon v. McHenry, 65 Cal. App. 4th 1138, 1145-1146

(1998) ("the client's residence or its principal place of

---

[6] In Birbrower, Montalbano, Condon & Frank, P.C. v. Superior
Court of Santa Clara County, 17 Cal. 4th 119, 124 (1998), the
Supreme Court of California determined that a law firm not
licensed to practice law in California violated California's
unauthorized practice of law statute "when it performed legal
services in California for a California-based client under a fee
agreement that stipulated that California law would govern all
matters in the representation."

8

business is determinative of the question of whether the practice
is proscribed by section 6125").  Here, the clients are not
Massachusetts citizens, but rather citizens of Florida regularly
represented by the lawyer defendants in securities arbitrations
who have a significant understanding of KDSC's business,
industry, and management.

Further, the context in which the lawyers will be providing
legal services to the broker defendants is an important
consideration that weighs against allowing the plaintiffs'
petition.  Colmar, Ltd. v. Fremantlemedia North America, Inc.,
344 Ill. App. 3d 977, 986 (2003), quoting Restatement (Third) of
Law Governing Lawyers § 3 (2000) ("When . . . activities of a
lawyer in a non-home state are challenged as impermissible for
lack of admission to the state's bar, the context in which and
purposes for which the lawyer acts should be carefully
assessed").  Their representation of KDSC in the underlying
arbitration has to date not involved the practice of law in
Massachusetts, but rather in the firm's home state of New York.
KDSC's claim demanding arbitration against the plaintiffs was
filed with the NASD in New York, as were all pleadings and
motions in the matter.  Boston was selected as the situs of the
arbitration hearing not because of Massachusetts's connection to
the substantive claims at issue, but because of the NASD policy
to select a hearing location close to public customers'

Case 1:05-cv-11433-MLW    Document 20-4    Filed 05/15/2006    Page 32 of 37
Case 1:05-cv-11433-JLT    Document 14-2    Filed 08/29/2005    Page 9 of 10

9

residences.  The NASD Code of Arbitration Procedure will govern

the proceeding, and has no provision for <u>pro hac vice</u> admission,

and no provision limiting who may appear in its proceedings as

counsel.

In light of these particular circumstances, I find no public

policy reason to grant the plaintiffs' request for declaratory

relief.  As the ABA's Commission on Multijurisdictional Practice

has contended:

> "[I]n the [alternative dispute resolution] context, there is
> often a strong justification for choosing a lawyer who is
> not admitted to practice law in the jurisdiction in which
> the proceeding takes place but who has an ongoing
> relationship with the client . . . or has developed a
> particular knowledge of expertise that would be advantageous
> in providing the representation.  Admission to practice law
> in the jurisdiction in which the proceeding takes place may
> be relatively unimportant, in part, because that
> jurisdiction may have no relation to the law governing the
> proceeding or to the dispute.  Unlike litigation, in
> [alternative dispute resolution] parties may select the site
> of the proceedings simply on the basis of convenience.
> . . .  Thus, in [alternative dispute resolution]
> proceedings, the in-state lawyer is not ordinarily better
> qualified than other lawyers by virtue of greater
> familiarity with state law, state legal processes and state
> institutions."

ABA Commission on Multijurisdictional Practice, Report to the

House of Delegates, Report 201B, at 6 (2002),

http://www.abanet.org/cpr/mjp/201b.doc.  Because I conclude that

the lawyer defendants will not engage in the unauthorized

practice of law by representing the broker defendants at this

particular arbitration hearing in Massachusetts, I decline to

address the remaining issues raised by the plaintiffs' petition.

10

The plaintiffs' petition is denied.

Robert J. Cordy
Associate Justice

Entered:  May 06, 2005

# Exhibit B

Page 18

1          (Mark Mscisz sworn.)

2          CHAIRMAN GIACOMARRA:  We have no other

3   witnesses to swear in at this point?

4          MR. CORBETT:  Not at this point.

5          CHAIRMAN GIACOMARRA:  Thank you.  The

6   arbitrators have read the papers that have been

7   submitted by the parties.  These papers, along

8   with the executed submission agreements, will be

9   marked and received into evidence as arbitrators

10  Exhibit 1.  We have the statement of claim, we

11  have the answer, affirmative defense and

12  statement of counterclaims and third-party claims

13  of Steven Mscisz, Mark Mscisz and Lynda Mscisz,

14  and submission agreements and the reply and

15  answer of third-party respondents.

16          Now we come to the other open matters

17  at this time; and, Mr. Corbett, we can deal with

18  your issue now.  I know I made a ruling after

19  consulting with the panel that the counterclaims

20  were dismissed with prejudice.

21          MR. CORBETT:  Yes, sir.

22          CHAIRMAN GIACOMARRA:  And you seem to

23  have a problem with that?

24          MR. CORBETT:  I do because that was

6b4c1a60-4f4e-404a-b95f-09c764e60078

Page 19

1    beyond the authority of the panel under the

2    dismissal rule of the Code.  Rule 10305 of the

3    Code allows dismissal under three circumstances:

4    You can dismiss an entire proceeding with the

5    agreement of the parties; you can dismiss the

6    claims at issue without prejudice at the request

7    of the parties, which is what we had requested;

8    or you can dismiss claims with prejudice, but

9    only after, as a sanction, when other sanctions

10   have proven ineffective for eliminating willful

11   disobedience with panel authority.

12          There's never been a finding of

13   willful disobedience of a panel order by the

14   Msciszes, there's never been a sanction assessed

15   against them, and this was not phrased in terms

16   of a sanction either.

17          CHAIRMAN GIACOMARRA:  I think you're

18   missing the point.  I think we do have authority

19   beyond what you've quoted, and that was what our

20   ruling was based on.  It was after thoughtful

21   consideration that the panel reviewed that and

22   made that ruling.  So we feel we do have

23   authority.

24          MR. CORBETT:  Did the panel consider

6b4c1a60-4f4e-404a-b95f-09c764e60078

Page 20

1    the merits of the counterclaim?

2                CHAIRMAN GIACOMARRA:  We did.

3                MR. CORBETT:  When?  They weren't

4    briefed, they weren't argued.  I never had an

5    opportunity --

6                CHAIRMAN GIACOMARRA:  We had the claim

7    in front of us, but we had -- we'll go off the

8    record, take an executive session for a moment

9    here, and if you could leave the room again.

10               (Brief recess.)

11               CHAIRMAN GIACOMARRA:  We're going back

12   on the record.  After review of the matter, the

13   panel is upholding their decision of dismissing

14   the counterclaims with prejudice.  We feel it's

15   within our rights under rule 1035 -- 10305.

16               MR. CORBETT:  Okay.

17               CHAIRMAN GIACOMARRA:  Okay.  Any other

18   matters at this point?

19               MR. CORBETT:  Yes, Mr. Chairman.

20   First I want to note my objection for the record

21   to the ruling on the dismissal with prejudice,

22   but there are also a couple of outstanding

23   discovery motions that we filed on February 24

24   that still have not been ruled upon.  One had

# Exhibit C

# KASHNER DAVIDSON
## SECURITIES CORPORATION
MEMBERS NASD, SIPC

941-951-2626

CARRIED BY
STERNE, AGEE & LEACH, INC
INVESTMENTS SINCE 1901
205-444-7205

INTRODUCED BY
STERNE AGEE CAPITAL MARKETS, INC.
205-414-3301

SIPC

PO# 212 06  00   87.275  20.296
IlluIIuIIuIIulIIuIlIuIluIIIuIluIlIuIIIuIIuIIluIIuIIuIlIuII
KASHNER DAVIDSON SECURITIES
CROSS GUARANTEE ACCOUNT
77 SOUTH PALM
SARASOTA FL 34236-5810

**REDACTED**

Account Number: 1256
Taxpayer ID Number: PLEASE PROVIDE
Branch Code: KD99
Statement Period: 07/01/05 to 07/31/05

Your Investment Consultant is:
DEFAULT REP
77 SOUTH PALM AVENUE
SARASOTA FL 34236
941 951 2626

Page  1 of  2

| ASSET CATEGORY | PRIOR MONTH VALUE | CURRENT MONTH VALUE | PERCENT OF EQUITY | ESTIMATED ANNUAL INCOME | ESTIMATED CURRENT YIELD |
|---|---|---|---|---|---|
| CASH/CASH EQUIVALENT | 361,177.00 | 154.06 | | | |
| SECURITIES | | | | | |
| TOTAL PORTFOLIO SECURITY VALUE | 0.00 | 0.00 | — | 0.00 | 0.35% |
| YOUR ACCOUNT NET PORTFOLIO EQUITY | 361,177.00 | 154.06 | | | |

| MONTHLY ACTIVITY SUMMARY | | |
|---|---|---|
| | | CASH |
| OPENING BALANCE | | 361,177.00 |
| ADDITIONS: | | |
| DEDUCTIONS: | | |
| OTHER | | 361,022.94 |
| CLOSING BALANCE | | 154.06 |

Any questions concerning your monthly statement, please contact us at 941-951-2626. Thank you for your business.

REDACTED

Account Number: 7266
Taxpayer ID Number: PLEASE PROVIDE
Branch Code: M099
Statement Period: 07/01/05 to 07/31/05

Your Investment Consultant is:
DEFAULT REP

Page    2  of  2

KASHIER DAVIDSON SECURITIES
CROSS GUARANTEE ACCOUNT

OTHER ACTIVITY

| DATE | TRANSACTION | LOC | QUANTITY | DESCRIPTION | DEBIT | CREDIT |
|------|-------------|-----|----------|-------------|-------|--------|
| 07/19/05 | JOURNAL | C | | VS    .7459 | 180,850.75 | |
| 07/19/05 | JOURNAL | C | | VS L .7265 | 180,172.19 | |
| | | | | TOTALS | 361,022.94 | |

REDACTED

END OF STATEMENT

PDF  272.00   00        87,274         30,376

# KASHNER DAVIDSON
## SECURITIES CORPORATION
### MEMBERS NASD, SIPC

941-951-2626

CARRIED BY
STERNE AGEE & LEACH INC
INVESTMENTS SINCE 1991
205-414-7333

INTRODUCED BY
STERNE AGEE CAPITAL MARKETS, INC.
205-414-7301

MARK MACIAZ &
LYNDA E MACIAZ JTWROS
20 HIGH STREET
TOPSFIELD MA 01983-1404

REDACTED

Account Number: 7459
Taxpayer ID Number: ON FILE
Branch Code: KXXL
Statement Period: 07/01/05 to 07/31/05

Your Investment Consultant is:
CANCELLATIONS
CUT PLAZA
813 SHADES CREEK PKWY STE 100B
BIRMINGHAM AL 35209-4542
205 252 5900

Page 1 of 2

| ASSET CATEGORY | PRIOR MONTH VALUE | CURRENT MONTH VALUE | PERCENT OF EQUITY | ESTIMATED ANNUAL INCOME | ESTIMATED CURRENT YIELD |
|---|---|---|---|---|---|
| CASH/CASH EQUIVALENT | 0.00 | 0.00 | | | |
| SECURITIES | | | | | |
| TOTAL PORTFOLIO SECURITY VALUE | 0.00 | 0.00 | — | 0.00 | 3.40% |
| LESS COMBINED DEBIT BALANCE | 180,850.75DR | 0.00 | | | |
| YOUR ACCOUNT NET | | | | | |
| PORTFOLIO EQUITY | 180,850.75DEF | 0.00 | | | |

| MONTHLY ACTIVITY SUMMARY | CASH |
|---|---|
| OPENING BALANCE | 180,850.75DR |
| ADDITIONS: | |
| OTHER | 180,850.75 |
| DEDUCTIONS: | |
| CLOSING BALANCE | 0.00 |

REDACTED

Any questions concerning your monthly statement,
please contact us at 941-851-2626
Thank you for your business.

Your Investment Consultant is:
CANCELLATIONS

Account Number: f    7459
Taxpayer ID Number: ON FILE
Branch Code: KXXL
Statement Period: 07/01/05 to 07/31/05

Page    2 of    2

MARK USCISZ &
LYNDA E USCISZ JTWROS

OTHER ACTIVITY

| DATE | TRANSACTION | LOC | QUANTITY | DESCRIPTION | DEBIT | CREDIT |
|------|-------------|-----|----------|-------------|-------|--------|
| 07/19/05 | JOURNAL | C | | CHARGE OFF TO CROSS | | 180,850.76 |
| | | | | GUARANTY # /1256 | | |
| | | | | TOTALS | | 180,850.76 |

REDACTED

END OF STATEMENT

# KASHNER DAVIDSON
## SECURITIES CORPORATION
MEMBERS NASD, SIPC

941-951-2626

CARRIED BY
STERNE, AGEE & LEACH, INC
INVESTMENTS SINCE 1901
205-414-7000

INTRODUCED BY
STERNE AGEE CAPITAL MARKETS, INC
205-414-7201

`PDF 212 00  00  80,302  21,165`

`||...||...||....||..||...||.||..||...||..||.||...||...|.||`
(1108338188.PDF  >>

STEVEN M SCIBIZ
22 HIGH STREET
TOPSFIELD MA 01983-1404

## REDACTED

Account Number: ∈ /2265
Taxpayer ID Number: ON FILE
Branch Code: KXXL
Statement Period: 07/01/05 to 07/31/05

Your Investment Consultant is:
CANCELLATIONS
CMT PLAZA
813 SHADES CREEK PKWY STE 100B
BIRMINGHAM AL 35209-4542
205 252 5900

Page 1 of 2

| ASSET CATEGORY | PRIOR MONTH VALUE | CURRENT MONTH VALUE | PERCENT OF EQUITY | ESTIMATED ANNUAL INCOME | ESTIMATED CURRENT YIELD |
|---|---|---|---|---|---|
| CASH/CASH EQUIVALENT | 0.00 | 0.00 | | | |
| SECURITIES | 0.00 | 0.00 | | | |
| TOTAL PORTFOLIO SECURITY VALUE | 0.00 | 0.00 | | 0.00 | 0.00 |
| LESS COMBINED DEBIT BALANCE | 180,172.19DR | 0.00 | | | |
| YOUR ACCOUNT NET | | 0.00 | | | |
| PORTFOLIO EQUITY | 180,172.19DEF | 0.00 | | | |

| MONTHLY ACTIVITY SUMMARY | | CASH |
|---|---|---|
| OPENING BALANCE | | 180,172.19DR |
| ADDITIONS: | | |
| OTHER | | 180,172.19 |
| DEDUCTIONS: | | |
| CLOSING BALANCE | | 0.00 |

REDACTED

Any questions concerning your monthly statement,
please contact us at 041-051-2626
Thank you for your business.

Your Investment Consultant is:
CANCELLATIONS

Account Number: /2265
Taxpayer ID Number: ON FILE
Branch Code: KXXL
Statement Period: 07/01/05 to 07/31/05

Page    2  of  2

STEVEN HSCISZ
22 HIGH STREET

OTHER ACTIVITY

| DATE | TRANSACTION | LOC | QUANTITY | DESCRIPTION | DEBIT | CREDIT |
|---|---|---|---|---|---|---|
| 07/19/05 | JOURNAL | G | | CHARGE OFF TO CROSS GUARANTY #: 1256  REDACTED | | 180,172.19 |
| | | | | TOTALS | | 180,172.19 |

END OF STATEMENT

# Exhibit 5

Page 214

1  "you" for purposes of the collection cost

2  provision in the agreement.

3  Third of all, Mr. Smith, his presence

4  was not necessary today because of the order of

5  the single justice last week.  Mr. Ross was not

6  enjoined from participating in this proceeding.

7  And it's not like Mr. Smith has played an active

8  role in the hearing as well.  So to the extent

9  that they seek to recover for his services

10  associated with this, that would not be

11  reasonable and would not be consistent with any

12  agreement or any power to award attorneys' fees

13  and collection costs.

14  MR. ROSS:  May I be heard in response?

15  CHAIRMAN GIACOMARRA:  I'm going to

16  just rule on it.  We're going to note your

17  objections but allow both of these exhibits in.

18  The panel will take your objections into

19  consideration, but we're going to allow these in

20  for our own use.

21  (Documents marked as Exhibits C29

22  and C30.)

23  CHAIRMAN GIACOMARRA:  Before we rest,

24  I'm going to ask if anybody else on the panel has

# Exhibit 6

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.
                                        SUPREME JUDICIAL COURT
                                        FOR SUFFOLK COUNTY
                                        No.  SJ-2005-0088


STEVEN MSCISZ, MARK MSCISZ and LYNDA MSCISZ

<u>vs</u>.

KASHNER DAVIDSON SECURITIES CORP., VICTOR KASHNER,
MATTHEW MEISTER, TIMOTHY VARCHETTO, MARC J. ROSS,
RICHARD J. BABNICK, JR., and SICHENZIA ROSS FRIEDMAN FERENCE LLP


<u>MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS'
EMERGENCY APPLICATION FOR INJUNCTION PENDING APPEAL</u>


The plaintiffs filed a complaint seeking declaratory and injunctive relief on February 25, 2005.  Counsel for the plaintiffs withdrew the request for injunctive relief prior to a hearing on the complaint.

On May 6, 2005, I denied the complaint which sought among other things, a declaration that an out-of-state attorney could not properly represent his longstanding client in an arbitration proceeding scheduled by the National Association of Securities Dealers to convene in Massachusetts.  The plaintiffs have filed an appeal of my ruling denying declaratory relief, and, simultaneously have filed a motion for an injunction pursuant to Mass.R.Civ.P. 62 (c) and Mass.R.App.P. 6(a) seeking to enjoin the out-of-state counsel from representing their clients in the arbitration proceeding currently scheduled for May 17, 2005,

pending the outcome of the appeal.  The motion for an injunction is DENIED for the following reasons:

To succeed in their action for an injunction, the plaintiffs must show:  (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the preliminary injunction; and (3) that, on balance, the risk of irreparable harm viewed in light of the likelihood of success on the merits outweighs the potential harm to the defendant in granting the injunction.  Package Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).  Tri-Nel Mgmt. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2000).  See also Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1980).

Whether the plaintiffs are likely to succeed on appeal is not for me to decide.  I conclude, however, that the plaintiffs have failed to show that any harm, let alone irreparable harm, will result if injunctive relief is denied.  On the other side of the equation lies the important public interest in the efficient and unimpeded arbitration of disputes, an interest that will be harmed if this arbitration is further delayed.

Accordingly, the motion for an injunction is DENIED.

_____
Robert J. Cordy
Associate Justice

Entered:  May 12 , 2005

# Exhibit 7

 Term

NOTICE: The slip opinions and orders posted on this Web site are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. This preliminary material will be removed from the Web site once the advance sheets of the Official Reports are published. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SUPERADIO LIMITED PARTNERSHIP *vs.* WINSTAR RADIO PRODUCTIONS, LLC. [FN1]

SJC-09542

January 3, 2006. - March 28, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Arbitration,* Judicial review, Award, Authority of arbitrator. *Unauthorized Practice of Law.*

CIVIL ACTION commenced in the Superior Court Department on August 24, 2001.

The case was heard by *Francis R. Fecteau,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John O. Mirick* (*Jessica H. Munyon* with him) for the plaintiff.

*John D. Geelan,* of New York (*Michelle M. Hansen* with him) for the defendant.

The following submitted briefs for amici curiae:

*Timothy P. Burke, Matthew C. Applebaum, Katherine W. Grearson, Richard A. Johnston, Mark C. Fleming, & James S. Goldman* for Boston Bar Association.

*Timothy P. Burke & Matthew C. Applebaum* for Securities Industry Association.

*Andrew R. Grainger, Martin J. Newhouse, & Ben Robbins* for New England Legal Foundation.

GREANEY, J.

We granted further appellate review to decide whether the arbitration award in this case should be vacated. The losing party in the arbitration, Superadio Limited Partnership (Superadio), seeks that relief on two grounds: (1) that the attorney representing Walt "Baby" Love Productions, Inc. (Baby Love), who was licensed to practice law in New York, but not in Massachusetts, engaged in the unauthorized practice of law by representing Baby Love at the arbitration proceeding here; and (2) that the arbitration panel lacked authority to impose monetary sanctions for Superadio's violation of a discovery order. We affirm the judgment confirming the award.

The background of the case is as follows. In May, 1995, Superadio and Baby Love entered a radio network agreement (agreement) wherein Superadio became the exclusive advertising sales agent for an existing radio program and a proposed new radio program produced by Baby Love. Under the agreement, the net revenues collected from the sale of advertising airing on the radio programs were to be divided equally between Superadio and Baby Love. The agreement provided that it "shall be interpreted" under Massachusetts law and that "[a]ny dispute arising under the [a]greement, including but not limited to any dispute concerning payments due, shall be arbitrated under the rules of the American Arbitration Association [AAA] before a panel of the [AAA] sitting in Boston, Massachusetts." After an extension, the agreement terminated on December 31, 1998.

A few months later, Superadio filed a demand for arbitration, alleging that Baby Love had withheld approximately

$150,000 in advertising revenues that should have been shared with Superadio. The disputed revenue allegedly derived from advertisements that had been booked by Superadio during the term of the agreement, but had not aired until after the agreement had terminated. Baby Love filed an answer and a counterclaim asserting that Superadio had violated the agreement by refusing to turn over advertising revenues that Superadio had collected on Baby Love's behalf for advertisements that had aired before the agreement terminated. Baby Love sought $841,239 in damages. Superadio agreed that Baby Love was entitled to approximately $75,000 of those revenues, but held the money to offset the amount which Superadio claimed it was owed.

The parties selected a panel of three arbitrators (panel). By agreement of the parties, the Commercial Arbitration Rules of the AAA (AAA rules), would govern the proceeding. The panel entered a partial summary judgment award, finding that Superadio had no right to offset, and ordering Superadio to pay the withheld amount to Baby Love.

The parties proceeded with discovery on the remaining claims to be arbitrated. Baby Love claimed that Superadio was not complying with its discovery requests and sought intervention from the panel. On August 21, 2000, the panel entered an order directing Superadio either to satisfy certain discovery requests "by September 22, 2000," or to pay Baby Love "$1,000 per day until Superadio is either in compliance or until the date of the [h]earing, whichever shall occur first." The parties were notified that the failure to produce discovery would result in the exclusion of such discovery as evidence at the arbitration hearing. Superadio did not comply with the discovery order and, on September 28, 2000, withdrew its demand for arbitration. Baby Love proceeded to arbitrate its counterclaim.

At some point in the proceedings, Superadio objected to the appearance of Baby Love's attorney, an attorney licensed to practice law in New York, but not in Massachusetts, contending that the attorney was engaged in the unauthorized practice of law. The attorney had not sought admission pro hac vice in Massachusetts, and Baby Love had not retained local counsel.

The panel conducted a hearing on the case in June, 2001, and did not permit either party to introduce documents or witnesses that it had not produced in response to a reasonable discovery request. On July 23, 2001, the panel entered its award. The panel concluded that Baby Love had supported its claim that Superadio had underreported the amount of advertising revenues owed. The panel, however, could not enter an award for contract damages because of Baby Love's inability to prove its damages, an inability attributable to Superadio's failure in discovery to produce documents relevant to the damages issue. The panel concluded that, under Rule 23(c) of the AAA rules (which we shall set forth later in this opinion), it had the authority to impose a sanction on Superadio for violating the panel's August 21, 2000, discovery order, and imposed a sanction in the amount of $271,000. The amount represented an assessment of $1,000 a day from September 23, 2000 (the day following the deadline for discovery compliance), to June 20, 2001 (the day that the arbitration hearing commenced). The panel noted that Superadio could have tolled the accrual of sanctions by producing the ordered discovery, which Superadio admitted was in its possession. The panel added to its award certain costs and prejudgment interest, amounts not in dispute, for a total award of $287,566.83. In addition, the panel noted that Superadio, by filing its demand for arbitration, had agreed to abide by the AAA rules, which permit nonlawyers to represent parties at an arbitration proceeding. In view of the applicable AAA rules, the panel rejected Superadio's argument that the representation of Baby Love by a licensed out-of-State attorney constituted the unauthorized practice of law.

Superadio filed a complaint in the Superior Court seeking to vacate the arbitration award. Baby Love filed an answer and a counterclaim requesting confirmation of the award. A Superior Court judge allowed Baby Love's motion and entered a judgment confirming the award. Superadio appealed, and the Appeals Court reversed, vacating that portion of the arbitration award that imposed sanctions ($271,000) on Superadio for its discovery violations. *Superadio Ltd. Partnership v. Walt "Baby" Love Prods., Inc.*, 62 Mass.App.Ct. 546, 552 (2004). We granted Baby Love's application for further appellate review.

1. Consistent with policy strongly favoring arbitration, see *Massachusetts Highway Dep't v. Perini Corp.*, 444 Mass. 366, 374 (2005), an arbitration award is subject to a narrow scope of review. *School Comm. of Hanover v. Hanover Teachers Ass'n*, 435 Mass. 736, 740 (2002). The bases for review are set forth in G.L. c. 251, § 12. Judicial intervention is permitted where an award "was procured by corruption, fraud or other undue means," § 12 (*a*) (1), or where the "arbitrators exceeded their powers," § 12 (*a*) (3). "An arbitrator exceeds his authority by granting relief beyond the scope of the arbitration agreement ... by awarding relief beyond that to which the parties bound themselves ... or by awarding relief prohibited by law" (citations omitted). *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). "Arbitration, it is clear, may not 'award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provision' ... or otherwise transcends the limits of the contract of which the agreement to arbitrate is but a part." *Id.*, quoting *Lawrence v.*

*Falzarano,* 380 Mass. 18, 28 (1980).

2. We first take up Superadio's argument that the arbitration award was procured by undue means, see G.L. c. 251, § 12 (*a* ) (1), because Baby Love's attorney, a New York attorney not licensed to practice law in Massachusetts, engaged in the unauthorized practice of law by representing Baby Love in the arbitration. As a general proposition, an attorney practicing law in Massachusetts must be licensed, or authorized, to practice law here. Whether representation of a party by an out-of-State licensed attorney at a Massachusetts arbitration proceeding constitutes the practice of law, is an issue of first impression.

Under the Massachusetts Rules of Professional Conduct, which became effective on January 1, 1998, well before the arbitration proceedings in this case had commenced, a lawyer "shall not ... practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction." Mass. R. Prof. C. 5.5, 426 Mass. 1410 (1998). This rule is supplemented by G.L. c. 221, § 46A, which provides:

"No individual, other than a member, in good standing, of the bar of this commonwealth shall practice law, or, by word, sign, letter, advertisement or otherwise, hold himself out as authorized, entitled, competent, qualified or able to practice law; provided, that a member of the bar, in good standing, of any other [S]tate may appear, by permission of the court, as attorney or counselor, in any case pending therein, if such other [S]tate grants like privileges to members of the bar, in good standing, of this commonwealth."

See *DiLuzio v. United Elec., Radio & Mach. Workers, Local 274,* 391 Mass. 211, 214-215 (1984) (as constitutional matter, Legislature cannot give permission to practice law, but may enact laws in "aid of the judicial prerogative"); *Lowell Bar Ass'n v. Loeb,* 315 Mass. 176, 179 (1943) (explaining that statutes "may aid by providing machinery and criminal penalties, but may not extend the privilege of practising law to persons not admitted to practice by the judicial department"). Neither the rule nor the statute, however, defines what constitutes the practice of law. While "[t]he judicial department is necessarily the sole arbiter of what constitutes the practice of law," *id.* at 180, the task of doing so is not easy and, in most cases, will depend on the facts of each case. See *Matter of Chimko,* 444 Mass. 743, 749 (2005).

The parallel rule of the American Bar Association (ABA) Model Rules of Professional Conduct (2003) now expressly permits multijurisdictional practice in arbitration. Specifically, ABA Model Rule 5.5(c)(3) provides:

"(c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:

"...

"(3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission...." [FN2]

Adoption of this rule is currently under consideration in Massachusetts by the standing advisory committee on the Massachusetts Rules of Professional Conduct. Many States have adopted a rule of professional conduct similar or identical to ABA Model Rule 5.5(c)(3). [FN3] We note also that, while the Restatement (Third) of the Law Governing Lawyers § 3 (2000), does not expressly address arbitration, it generally permits an out-of-State attorney to "provide legal services" in another jurisdiction to a client so long as the matter is reasonably related to the attorney's home-State practice. [FN4]

We need not decide in this case whether an out-of-State attorney's representation of a party at a Massachusetts arbitration proceeding constitutes the unauthorized practice of law. In view of the current study of ABA Model Rule 5.5(c)(3), by our standing advisory committee, prudence dictates that this question await the committee's report and our action thereon. We conclude that, even assuming that the representation might constitute the unauthorized practice of law, the conduct would not provide a basis to vacate the award. "Absent fraud, [corruption, or other undue means under G.L. c. 251, § 12(a)(1),] errors of law or fact are not sufficient grounds to set aside an award." *Lynn v. Thompson,* 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002), quoting *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co., supra.* Nothing Superadio has argued persuades us that either Baby Love or its New York attorney procured the award through "undue means," that is, in an underhanded, conniving, or unlawful manner similar to corruption or fraud as those terms are used in arbitration law and practice. See *National Cas. Co.* v. *First State Ins. Group,* 430 F.3d 492, 499 (1st Cir.2005), and cases cited. [FN5]

3. Superadio also contends that the arbitration panel exceeded its authority in awarding monetary damages for Superadio's discovery violations. Superadio maintains, and the Appeals Court agreed, that because neither the parties' agreement nor the AAA rules expressly authorize a monetary sanction for discovery violations, the panel was not authorized to impose that sanction. *Superadio Ltd. Partnership v. Walt "Baby" Love Prods., Inc.*, 62 Mass.App.Ct. 546, 551 (2004). We reject the argument.

The panel's authority derives from the parties' agreement, which contains a broad arbitration provision, and from the AAA rules, which the agreement incorporates and which have a broad remedial provision. The arbitration agreement provides that "[a]ny dispute arising under the [a]greement, including but not limited to any dispute concerning payments due, shall be arbitrated under the rules of the [AAA]." This provision is encompassing (any dispute) and contains no limitation on the panel's authority to fashion relief. In concluding that the dispute resulting in the challenged sanction did not arise from the agreement, but from the conduct of the arbitration, see *Superadio Ltd. Partnership v. Walt "Baby" Love Prods., Inc., supra* at 550, the Appeals Court failed to follow strictly the strong presumption of arbitrability, see *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 666 (2002). In so doing, the Appeals Court overlooked the essence of the dispute--Superadio's conduct of withholding materials that established Baby Love's damages, namely, the amount of money owed because of Superadio's alleged violation of the agreement. Such a matter, damages owed for breach of the agreement, related to the core of the agreement. As such, the dispute was one encompassed by the terms of the agreement.

Further, the AAA rules provide arbitrators with broad authority to fashion remedies during arbitration proceedings and to oversee discovery. Rule 45(a) provides:

"The arbitrator may grant *any remedy or relief that the arbitrator deems just and equitable* and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract" (emphasis added).

Rule 23 provides:

"(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.

"(b) At least five (5) business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

"(c) *The arbitrator is authorized to resolve any disputes concerning the exchange of information* " (emphasis added).

Noteworthy in these rules is the absence of any language limiting the means by which an arbitrator or arbitration panel may resolve discovery disputes, or language restricting the application of the broad remedial relief of rule 45 (a) to final awards (and precluding the grant of broad remedial relief to interim awards). The rules, construed together, and supported by the broad arbitration provision in the agreement and the absence of any limiting language prohibiting a monetary sanction for discovery violations, authorized the panel to resolve a discovery dispute by imposing monetary sanctions. [FN6] See *Drywall Sys., Inc.* v. *ZVI Constr. Co., supra* at 667; *Softkey, Inc.* v. *Useful Software, Inc.*, 52 Mass.App.Ct. 837, 840 (2001); *Kraft Foods, Inc.* v. *Office & Professional Employees Int'l Union, Local 1295*, 203 F.3d 98, 102 (1st Cir.2000). [FN7] See generally *Advanced Micro Devices, Inc.* v. *Intel Corp.*, 9 Cal.4th 362, 367, 376 (1994) (upholding arbitrator's award and stating: "The principle of arbitral finality [and] the practical demands of deciding on an appropriate remedy for breach ... dictate that arbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies, and that judicial review of their awards must be correspondingly narrow and deferential"). To give arbitrators control over discovery and discovery disputes without the authority to impose monetary sanctions for discovery violations and noncompliance with appropriate discovery orders, would impede the arbitrators' ability to adjudicate claims effectively in the manner contemplated by the arbitration process.

Because the panel entered its award based on its interpretation of the AAA rules, particularly, rule 23(c), in the absence of fraud (which is not alleged), Superadio is bound by the panel's interpretation of the arbitration rules. See *Bernard v. Hemisphere Hotel Mgt., Inc.*, 16 Mass.App.Ct. 261, 263-264 (1983), and cases cited. Finally, we reject Superadio's argument that the absence of an express provision in G.L. c. 251, the Uniform Arbitration Act for Commercial Disputes, providing an award of sanctions for discovery violations, evidences an intent by the

Legislature to prohibit such a sanction.

[FN8] The proper inquiry is whether the sanction is prohibited by statute. See *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.,* 407 Mass. 1006, 1007 (1990). The Legislature has chosen not to curtail an arbitrator's comprehensive and flexible remedial powers so long as those powers derive from the agreement. Cf. *Softkey, Inc.* v. *Useful Software, Inc., supra* at 837 (award of attorney's fees in arbitration proceedings prohibited by statute unless provided in arbitration agreement). The award here, based as it is on the monetary assessment imposed for Superadio's violation of discovery, gives Baby Love a measure of relief in damages that would otherwise have been impermissibly denied because of Superadio's intransigence, hardly an "injustice" as touted by the dissent. *Post* at ----.


*Judgment affirmed.*

SPINA, J. (concurring in part and dissenting in part, with whom Cowin, J., joins).

I agree with that portion of the court's opinion concerning the practice of law, but I respectfully dissent from that part of the opinion that affirms the award of a monetary sanction for discovery violations.

The court bases its holding on "the broad arbitration provision in the agreement and the absence of any limiting language prohibiting a monetary sanction for discovery violations." *Ante* at ----. Arbitrators probably have authority under the arbitration agreement to impose a wide range of sanctions against a party who disobeys an order for discovery, including but not limited to refusing to allow the disobedient party to support or oppose corresponding claims or defenses, prohibiting the disobedient party from introducing certain matters in evidence, and taking certain facts as established in accordance with the claim of the party obtaining the discovery order. However, the power to enforce a discovery order is limited under G.L. c. 251, § 7 (*e* ), to application to a judge for enforcement of a subpoena.

General Laws c. 251, § 7 (*e* ), gives to arbitrators the authority to "issue such orders as they deem necessary ... on requests for enforcement of production both prior to and after the commencement of the hearing." We have said that when discovery requests are not complied with, the proper enforcement procedure is for the arbitrator to issue a subpoena pursuant to G.L. c. 251, § 7 (*a* ), and if the party or witness persists in its refusal to comply, the arbitrator or the party seeking enforcement of the discovery order may make application to a judge for enforcement of the subpoena. Thereafter "the decision to enforce or to quash the subpoena[ ] is a matter within the ... discretion" of a trial court judge. *Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co.,* 414 Mass. 609, 617 (1993). That is the only enforcement mechanism available under the statute. If the Legislature had intended to grant additional powers, it would have done so. An arbitral power to impose a monetary fine for disobeying a discovery order is inconsistent with G.L. c. 251, § 7.

This conclusion is consistent with the nature of the power to impose monetary sanctions for disobedience of a discovery order. The power is extraordinary, and it arises from the power of contempt. See, e.g., *Imprescia v. Imprescia,* 392 Mass. 101, 106 (1984); *Ayash v. Dana Farber Cancer Inst.,* 46 Mass.App.Ct. 384 (1999). See also Mass. R. Civ. P. 37(b)(2)(D), as appearing in 390 Mass. 1208 (1984). The power of contempt is a "power inherent in all courts to enforce obedience, something they must possess in order properly to perform their functions." *Root v. MacDonald,* 260 Mass. 344, 355 (1927), quoting *Myers v. United States,* 264 U.S. 95, 103 (1924). This court has noted that the power of contempt is one of the distinguishing features between courts and arbitrators. "[W]hile it is sparingly to be used ... the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration whose judgments and decrees would be only advisory." *Root v. MacDonald, supra* at 360, quoting *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 450 (1911).

The Legislature may, by express statutory grant, confer the power of contempt on others. See *Lawson v. Rowley,* 185 Mass. 171, 172-173 (1904) (statute expressly gave to justices of peace power to punish contempt by fine, but absent further express grant to punish in any other way, power limited to punishment by fine). See also *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.,* 264 F.Supp.2d 926, 943-945 (N.D.Cal.2003). The Legislature did not expressly grant to arbitrators the power to punish contempt, and absent such a grant,

it should not be inferred. See *Lawson v. Rowley, supra.*

We need not decide whether the rules of the American Arbitration Association (AAA) could grant such authority where the parties and the Legislature have not done so, and where such authority is inconsistent with the statute. In any event, AAA rules do not expressly grant such authority, and the power to impose monetary fines should not be inferred from broad, nonspecific language.

Finally, there is no way to know whether the $1,000 daily fine imposed here is punitive or compensatory, particularly where the arbitrators have stated that they cannot ascertain the plaintiff's damages. See *School Comm. of New Bedford v. Dlouhy,* 360 Mass. 109, 115 (1971) (compensatory nature of civil fine for actual losses sustained by contumacious conduct requires evidentiary support). "Contempts have been classified as either criminal or civil.... If the penalty is not imposed wholly for the benefit of the aggrieved party, but in part at least is punishment for the affront to the law, the contempt is deemed criminal. If ... the power of the court is used only to secure to the aggrieved party the benefit of the decree, either by means of a fine payable to the aggrieved party as a recompense for his loss through disobedience to the decree, or by means of imprisonment terminable upon compliance with the decree, then the contempt is deemed civil." *Godard v. Babson-Dow Mfg. Co.,* 319 Mass. 345, 347 (1946). Because "[t]he punishment of [criminal contempt] is solely for the vindication of public authority and the majesty of the law," *Hurley v. Commonwealth,* 188 Mass. 443, 445 (1905), fines imposed for criminal contempt are not payable to the private party opponent in the dispute, but to the treasury of the Commonwealth. See *Alves v. Braintree,* 341 Mass. 6, 9 (1960); *Opinion of the Justices,* 334 Mass. 716, 718 (1956). Criminal contempt proceedings follow the practice in criminal cases, see *School Comm. of New Bedford v. Dlouhy, supra* at 117, and defendants in such cases have appellate rights. See Mass. R.Crim. P. 43, 378 Mass. 919 (1979) (summary proceedings for criminal contempt); Mass. R.Crim. P. 44, 378 Mass. 920 (1979).

The injustice in this case is aggravated by the fact that Superadio likely has been ordered to pay a punitive fine for the benefit of a private party, which itself is illegal, and the effect of the court's decision is to render the order unappealable.

I agree with the Appeals Court's analysis and would hold that the arbitrators exceeded their authority by imposing a fine as a discovery sanction. I would vacate that portion of the award that grants a fine of $271,000, pursuant to G.L. c. 251, § 12 (*a* ) (3).

FN1. Winstar Radio Productions, LLC, is the successor in interest to the corporation involved in the underlying dispute, Walt "Baby" Love Productions, Inc. We collectively refer to these entities as Baby Love.

FN2. Comment [12] to Rule 5.5 of the American Bar Association (ABA) Model Rules of Professional Conduct (2003) provides: "The lawyer, however, must
obtain admission pro hac vice in the case of a court-annexed arbitration or mediation or otherwise if court rules or law so require."

FN3. While the matter is generally governed by rule, a few courts have decided the issue. See *Williamson v. John D. Quinn Constr. Corp.,* 537 F.Supp. 613, 616 (S.D.N.Y.1982) (rejecting claim that out-of-State attorney and firm were foreclosed from recovery obtained in connection with services rendered in arbitration proceeding because not authorized to practice law in that State); *Colmar, Ltd. v. Fremantlemedia N. Am., Inc.,* 344 Ill.App.3d 977, 989 (2003) (concluding that out-of-State attorney's representation of client during arbitration proceeding did not constitute unauthorized practice of law). But cf. *Matter of Creasy,* 198 Ariz. 539, 541-544 (2000) (concluding that disbarred attorney violated order of disbarment because engaged in practice of law by representing party at private arbitration proceeding). Since the *Creasy* opinion, ABA Model Rule 5.5(c)(3) has been adopted in Arizona. See Ariz. R. Prof. C. 5.5 (c)(3) (2005). Out-of-State attorneys engaging in arbitration proceedings in Arizona, however, must inform their clients that they are not admitted to practice in Arizona, and "must obtain the client's informed consent to such representation." Ariz. R. Prof. C. 5.5(e). We note that Superadio's reliance on *Birbrower, Montalbano, Condon & Frank, P.C.* v. *Superior Court,* 17 Cal.4th 119, cert. denied sub

nom. *Birbrower, Montalbano, Condon & Frank, P.C.* v. *ESQ Business Servs., Inc.,* 525 U.S. 920 (1998), is misplaced. In that case, it was determined that the out-of-State attorneys had engaged in the unauthorized practice of law, but "none of the time that the New York attorneys spent in California was spent in arbitration." *Id.* at 133.

FN4. Section 3 of the Restatement (Third) of the Law Governing Lawyers (2000), provides: "A lawyer currently admitted to practice in a jurisdiction may provide legal services to a client ... at a place within a jurisdiction in which the lawyer is not admitted to the extent that the lawyer's activities arise out of or are otherwise reasonably related to the lawyers's practice...."

FN5. Superadio does not argue that the term "undue means" under G.L. c. 251, § 12(a)(1), encompasses conduct different from what that term has been construed to contemplate under the Federal Arbitration Act.

FN6. Superadio inappropriately relies on *MCR of Am., Inc.* v. *Greene,* 148 Md.App. 91 (2002). That case concerned an issue, whether an arbitrator had the authority to sanction a party's attorney for misconduct, that is not involved here. *Id.* at 112. Superadio's reliance on *Baxter Health Care, Corp.* v. *Harvard Apparatus, Inc.,* 35 Mass.App.Ct. 204 (1993), is also misplaced.

That case concerned an award of attorney's fees that was expressly prohibited by statute. *Id.* at 208.

FN7. We acknowledge the existence of contrary authority, noting that the issue "has seldom been explored by the courts," O'Neill, The Power of Arbitrators to Award Monetary Sanctions for Discovery Abuse, 60 Disp. Resol. J. 60, 63 (Jan.2006), and that each decision likely will depend on the particular language in the parties' respective arbitration agreements. See, e.g., *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.,* 264 F.Supp.2d 926, 943-945 (N.D.Cal.2003) (noting "no categorical ban to an arbitrator's imposition of sanctions for non-compliance with his or orders," but concluding that panel exceeded authority imposing sanction because neither Federal Arbitration Act nor parties' arbitration contract contained basis for sanction imposed).

FN8. Justice Spina essentially makes the same argument, with the twist that the authority to impose monetary sanctions lies solely with a court and arises from the power of contempt. *Post* at ----. While a court certainly does possess such authority, such authority does not arise solely from the power of contempt, but rather may also arise from an agreement, as pointed out in the above text.

◀| Term |▶

◀|Doc 6 of 12|▶

# Exhibit 8

**Supreme Judicial Court for the Commonwealth of Massachusetts**

**John Adams Courthouse**

One Pemberton Square, Suite 1400, Boston, Massachusetts 02108-1724
Telephone 617-557-1020, Fax 617-557-1145

Richard Babnick, Jr.,
Sichenzia Ross Friedman Ference
1065 Avenue of the Americas
New York, NY 10018


RE:   No. SJC-09529

     **STEVEN MSCISZ & others**
         **v.**
     **KASHNER DAVIDSON SECURITIES CORPORATION & others**


NOTICE OF DECISION

A decision by the Supreme Judicial Court was issued in the above-captioned case on this date.  The text of the decision will be available for approximately two weeks at www.massreports.com.


            Susan Mellen, Clerk


Dated: March 28, 2006

# COMMONWEALTH OF MASSACHUSETTS

## SUPREME JUDICIAL COURT FOR THE COMMONWEALTH

AT BOSTON,  March 28, 2006

IN THE CASE NO. SJC-09529

STEVEN MSCISZ & others

vs.

KASHNER DAVIDSON SECURITIES COPORATION & others

pending in the___Supreme Judicial_____

Court for the County of___Suffolk_____ No.  SJ-2005-0088

ORDERED, that the following entry be made in the docket; viz., --

"Because in a properly brought action for declaratory relief there must be a declaration of the rights of the parties even though relief is denied to the plaintiffs," Cherkes v. Westport, 393 Mass. 9, 12 (1984), we vacate the judgment "den[ying] the [plaintiffs'] petition." A new judgment shall enter in the county court declaring that, even if an out-of-State attorney's representation of a party at an arbitration proceeding in Massachusetts might constitute the practice of law, this conduct does not provide a basis to vacate the arbitration award, and, as such, the plaintiffs are not entitled to relief.

*Susan Mellea* , CLERK.

*March 28 2006*

NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-09529


STEVEN MSCISZ & others[1]  vs.  KASHNER DAVIDSON SECURITIES
CORPORATION & others.[2]


March 28, 2006.


Supreme Judicial Court, Appeal from order of single justice. Arbitration, Judicial review, Vacating award. Unauthorized Practice of Law.


The plaintiffs appeal from an order and judgment of a single justice denying their request for declaratory relief. The appeal pertains to an issue that was raised in Superadio Ltd. Partnership v. Winstar Radio Prods., LLC, ante    ,    (2006), namely, whether representation of a party by an out-of-State licensed attorney in a Massachusetts arbitration proceeding constitutes the unauthorized practice of law. Although the single justice did not need to resolve that issue, his denial of relief to the plaintiffs was warranted.

The background of the case is as follows. The plaintiffs, Steven Mscisz, Mark Mscisz, and Lynda Mscisz, are Massachusetts residents and were customers of the defendant Kashner Davidson Securities Corporation (KDSC). KDSC, a Florida corporation that maintains its only place of business in Florida, is a broker-dealer registered with the United States Securities and Exchange Commission (SEC), and is a member of the National Association of Securities Dealers, Inc. (NASD). The defendants Victor Kashner, Matthew Meister, and Timothy Varchetto are Florida residents and are registered representatives of KDSC. We refer to these defendants collectively as the broker defendants.

---

[1] Mark Mscisz and Lynda Mscisz.

[2] Victor Kashner; Matthew Meister; Timothy Varchetto; Marc J. Ross; Richard J. Babnick, Jr.; and Sichenzia Ross Friedman Ference LLP.

The defendants Marc J. Ross and Richard J. Babnick, Jr., are attorneys admitted to practice law in New York State, but are not licensed to practice law in Massachusetts.  They are affiliated with the defendant New York City law firm, Sichenzia Ross Friedman Ference LLP (SRFF).  We refer to these defendants collectively as the lawyer defendants.  The lawyer defendants have represented KDSC in securities-related matters for many years.

In May, 2004, the lawyer defendants, on behalf of KDSC, filed with the New York NASD office a statement of claim demanding arbitration against the plaintiffs, alleging that the plaintiffs had failed to satisfy the margin debit balances in their respective margin accounts with KDSC.[3]  The plaintiffs filed an answer and counterclaim, and third-party claims against the broker defendants.  Pursuant to its policy to "select the hearing location closest to the [public] customer's residence at the time the dispute arose," NASD selected Boston as the location for the arbitration proceedings.  There is no provision in the NASD Code of Arbitration Procedure, which the parties agreed would govern the dispute, concerning pro hac vice admission, and no provision limiting who may appear as counsel on behalf of parties to the arbitration proceeding.[4]

The plaintiffs filed a motion with the arbitration panel to disqualify the lawyer defendants from representing the broker defendants on the ground that the lawyer defendants were not licensed to practice law in Massachusetts.  The lawyer defendants opposed the motion and requested that the panel admit them pro hac vice.  The panel denied the plaintiffs' motion to disqualify, and later ruled "that it is not necessary for counsel to be admitted pro hac vice in this matter."  An arbitration hearing on the case was scheduled for May 17, 2005.

Before the scheduled date for commencement of the arbitration hearing, the single justice entered a memorandum of decision and judgment, denying the plaintiffs' request for

---

[3] KDSC alleged that Steven Mscisz and Mark Mscisz each deposited into their respective accounts a large number of shares, much obtained on margin, of Vaso Active Pharmaceuticals, Inc. (Vaso), a publicly traded company of which their brother was president.  Subsequently, the SEC suspended trading in Vaso's stock, rendering the stock valueless and triggering margin call notifications, or requests to satisfy account deficiencies, by KDSC to the plaintiffs.

[4] Section 10316 of the NASD Code of Arbitration Procedure (2004) provides:  "All parties shall have the right to representation by counsel at any stage of the proceedings."

declaratory relief.  He concluded that the lawyer defendants would not be engaging in the unauthorized practice of law in violation of Mass. R. Prof. C. 5.5 (a), 426 Mass. 1410 (1998), and G. L. c. 221, § 46A, by representing the broker defendants at the arbitration hearing.  The single justice declined to address the remaining issues raised by the plaintiffs.[5]  The plaintiffs appealed.

1.  Although we conclude, for a different reason from that articulated by the single justice, that the plaintiffs are not entitled to declaratory relief, the single justice did not abuse his discretion in denying that relief.  See Smith v. Building Comm'r of Brookline, 367 Mass. 765, 769 (1975).  For the reasons articulated in Superadio Ltd. Partnership v. Winstar Radio Prods., LLC, supra at     , even assuming that an out-of-State attorney's representation of a party at an arbitration proceeding in Massachusetts might constitute the practice of law, "the conduct would not provide a basis to vacate the award."  This conclusion resolves the controversy.

2.  "Because in a properly brought action for declaratory relief there must be a declaration of the rights of the parties even though relief is denied to the plaintiffs," Cherkes v. Westport, 393 Mass. 9, 12 (1984), we vacate the judgment "den[ying] the [plaintiffs'] petition."  A new judgment shall enter in the county court declaring that, even if an out-of-State attorney's representation of a party at an arbitration proceeding in Massachusetts might constitute the practice of law, this conduct does not provide a basis to vacate the arbitration award, and, as such, the plaintiffs are not entitled to relief.

So ordered.

William P. Corbett, Jr., for the plaintiffs.
Richard J. Babnick, Jr., of New York (Marc. J. Ross, of New York, & Howard M. Smith with him) for the defendants.
The following submitted briefs for amici curiae:
Timothy P. Burke, Matthew C. Applebaum, Katherine W. Grearson, Richard A. Johnston, Mark C. Fleming, & James S. Goldman for Boston Bar Association.
Timothy P. Burke & Matthew C. Applebaum for Securities Industry Association.
Andrew R. Grainger, Martin J. Newhouse, & Ben Robbins for New England Legal Foundation.

---

[5] The arbitration thereafter proceeded.

# Exhibit 9

Ms. Melissa Rothenbach                                                                          Page      3

Invoice #  22847
In Reference To:      MSCISZ
For Period Ending  June 30, 2005

       Professional Services Rendered

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 6/20/2005 | MJR | Received and reviewed award; telephone call with client and local counsel regarding same | 0.50 250.00/hr | 125.00 |
| 6/21/2005 | RJB | Received and reviewed award; conference with DC regarding confirming award | 0.20 225.00/hr | 45.00 |
| | RJB | Conferenced with DC regarding confirming award regarding procedures; telephone call with clerk's office regarding same; conferenced with DC regarding confirming award; telephone call with MA counsel regarding same; revised complaint/application to confirm award; revised application | 1.30 225.00/hr | 292.50 |
| | DJC | Researched at library and online Massachusetts rules to confirm arbitration award; spoke with court clerk; drafted motion to confirm award and complaint and application to confirm award | 5.90 175.00/hr | 1,032.50 |
| 6/22/2005 | MJR | Attention to motion to confirm award | 0.40 250.00/hr | 100.00 |
| | RJB | Revised application to confirm award; emailed to local counsel regarding same | 0.40 225.00/hr | 90.00 |
| 6/28/2005 | MJR | Received and reviewed Mscisz' motion to vacate | 0.40 250.00/hr | 100.00 |
| | RJB | Preliminary review of complaint to vacate award | 0.30 225.00/hr | 67.50 |
| 6/30/2005 | RJB | Telephone call with client regarding service; conferenced with DC regarding research service; first to file and juris of Federal Court to vacate award | 0.80 225.00/hr | 180.00 |

      For professional services rendered                      10.20    $2,032.50

      Previous balance                                  $14,288.54

      Balance due                                        $16,321.04

Ms. Melissa Rothenbach                                                                                    Page      3

Invoice #  23267
In Reference To:      MSCISZ
For Period Ending  July 31, 2005

Professional Services Rendered

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/5/2005 | RJB | Conferenced with CM regarding research for Appellate timing for Notice of Appeal. | 0.20 225.00/hr | 45.00 |
| 7/6/2005 | RJB | Additional conference with CM regarding Appellate rule research. | 0.20 225.00/hr | 45.00 |
| 7/7/2005 | RJB | Conferenced with CM regarding research results for Appellate procedures; received and reviewed removal papers; additional research for basis to move to dismiss appeal. | 1.50 225.00/hr | 337.50 |
| 7/8/2005 | RJB | Researched regarding basis to dismiss appeal; reviewed status regarding service issue. | 0.70 225.00/hr | 157.50 |
| 7/11/2005 | CAM | Researched re first filed, discovery, Federal Court abstention, remand | 4.90 125.00/hr | 612.50 |
|  | MJR | Attention to court actions and correspondence | 1.00 250.00/hr | 250.00 |
|  | RJB | Researched regarding basis for remand and strategy for opposition federal action to vacate award; letter to Corbett regarding will remand - no consolidation. | 3.40 225.00/hr | 765.00 |
| 7/12/2005 | CAM | Researched for Appeal | 3.30 125.00/hr | 412.50 |
|  | MJR | Attention to matter. | 1.00 250.00/hr | 250.00 |
|  | RJB | Researched regarding Opposition to Motion to vacate award; letter to Corbett regarding conferring regarding remand Motion.. | 2.70 225.00/hr | 607.50 |
| 7/13/2005 | CAM | Researched Massachusetts Court Rules | 0.20 125.00/hr | 25.00 |
|  | MJR | Conference with RJB; received and reviewed documents. | 1.00 250.00/hr | 250.00 |
|  | RJB | Drafted Motion to Dismiss Apeal. | 3.90 225.00/hr | 877.50 |
|  | RJB | Telephone call to Supreme Judicial Court regarding Motion to Dismiss; researched MA Appellate Rules regarding forms and filing of Motion; additional research regarding absention doctrine, consolidation and Motion to confirm Award. | 2.40 225.00/hr | 540.00 |

Ms. Melissa Rothenbach                                                                Page    4

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/14/2005 | MJR | Attention to matter; received and reviewed correspondence; telephone calls with Bill Corbett. | 1.00 250.00/hr | 250.00 |
|  | RJB | Reviewed Federal Rules regarding date to file Answer to Federal Court; revised Motion to Dismiss Appeal; outlined chronology of events for Answer; telephone call with Corbett regarding claims. | 2.20 225.00/hr | 495.00 |
| 7/15/2005 | RJB | Reviewed stipulation; emailed regarding same. | 0.20 225.00/hr | 45.00 |
| 7/18/2005 | MJR | Attention to MA Supreme Court appeal. | 1.00 250.00/hr | 250.00 |
|  | RJB | Conferenced with MR regarding strategy and stipulation; conferenced with DC regarding contact court regarding filing requirements; telephone call and emailed Howard Smith regarding Federal Court Filing and MA Appeal filings. | 0.40 225.00/hr | 90.00 |
|  | SMR | Prepared copies of all documents regarding Motion to Dismiss Appeal to submit to Howard Smith and client. | 1.00 95.00/hr | 95.00 |
| 7/20/2005 | CAM | Prepared pro hac vice motions for MJR and RJB; printed out cases | 1.80 125.00/hr | 225.00 |
|  | RJB | Letter to Corbett regarding Record Appendix contents; reviewed Respondent's prior filings regarding case law cited arguing to upset arbitration awards; received and reviewed e-mail from Respondent regarding Record Appendix costs; reviewed MA R.A.P. 18 regarding same. | 0.90 225.00/hr | 202.50 |
| 7/21/2005 | RJB | Conferenced with DC regarding research standing issue for Mscisz to raise appeal; letter to Respondent regarding costs of appendix. | 0.40 225.00/hr | 90.00 |
|  | RJB | Conferenced with DC regarding research standing issue for Mscisz to raise appeal. | 0.20 225.00/hr | 45.00 |
| 7/25/2005 | RJB | Began drafting Amended Complaint. | 0.80 225.00/hr | 180.00 |
| 7/26/2005 | MJR | Attention to Motion papers. | 1.00 250.00/hr | 250.00 |
|  | RJB | Letter to Corbett with copy of RJB Affidavit for Appendix; worked on Amended Complaint to Confirm and Modiy Award; revised pro hac vice motions; revised and finalized same; letter to Smith regarding service and filing. | 4.20 225.00/hr | 945.00 |
| 7/27/2005 | RJB | Telephone call from Smith regarding Opposition filed to Supreme Judicial Court Motion to Dismiss and questions regarding filing Amended Complaint to confirm award; received and reviewed e-mail regarding SSN in exhibits; reviewed local e-filing rule; telephone call to Corbett regarding same. | 0.40 225.00/hr | 90.00 |

Ms. Melissa Rothenbach                                                    Page    5

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/28/2005 | CAM | Retrieved cases cited by claimant | 1.00 125.00/hr | 125.00 |
|  | RJB | Telephone call with local counsel regarding need to file redacted exhibits per local rule and filing of Rule 7.1 corporate disclosure statement; prepared Rule 7.1 statement; received and reviewed Opposition to Motion to Dismiss, Cross-Motion to enlarge time. | 1.50 225.00/hr | 337.50 |
| 7/29/2005 | RJB | Reviewed cases cited by Appellant in Opposition to Motion to Dismiss and in Support of Cross-Motion; outlined opposition to cross-motion to enlarge time for appeal; reviewed additional caselaw regarding enlarging time to docket appeal. | 4.50 225.00/hr | 1,012.50 |

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| For professional services rendered |  | 48.90 | $9,902.50 |

Additional Charges :

| Date | Description | Amount |
|---|---|---|
| 5/31/2005 | Westlaw Online Research | 58.30 |
|  | Attorneys Duplicatin | 421.98 |
| 6/30/2005 | Federal Express | 41.89 |
|  | Federal Express | 21.62 |
|  | Westlaw Online Research | 286.19 |
| 7/13/2005 | Copies at Library for Mass. Law and Forms | 5.00 |
| 7/15/2005 | Filing Fee – Certificate of Good Standing for MJR and RJB | 10.00 |

| | |
|---|---|
| Total additional charges | $844.98 |
| Total amount of this bill | $10,747.48 |
| Previous balance | $16,321.04 |
| Balance due | $27,068.52 |

Kashner Davidson Securities Corp.

For Period Ending  September 30, 2005

Page 3

Invoice Number 25769-2

Re: MSCISZ
I.D. 410-0002- MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|-------------------------|-------|------|--------|
| 07-18-05 | DJC | Spoke with Supreme Court clerk; drafted memo to files | 0.30 | 175.00 | 52.50 |
| 08-01-05 | RJB | Drafted Opposition to Cross-Motion to dismiss appeal. | 5.10 | 225.00 | 1,147.50 |
| 08-02-05 | MJR | Attention to Opposition to Cross-Motion of Enlargment of Time for Appeal. | 1.00 | 250.00 | 250.00 |
| 08-02-05 | RJB | Conferenced with DC re research for Appellate brief; revised same; emailed to local counsel. | 0.40 | 225.00 | 90.00 |
| 08-02-05 | DJC | Researched declaratory judgment standing issue and Massachusetts Courts right to regulate attorneys | 1.30 | 175.00 | 227.50 |
| 08-03-05 | RJB | Conferenced with DC regarding Supreme Judicial Motion. | 0.20 | 225.00 | 45.00 |
| 08-03-05 | RJB | Attention to matter | 1.00 | 225.00 | 225.00 |
| 08-03-05 | DJC | Spoke with RJB re brief | 0.10 | 175.00 | 17.50 |
| 08-04-05 | DJC | Researched declaratory judgment standing issue and Massachussetts Courts right to regulate attorneys | 0.40 | 175.00 | 70.00 |
| 08-09-05 | CPM | Researched cases cited by claimant | 3.10 | 125.00 | 387.50 |
| 08-10-05 | CPM | Pulled cases cited in Appellant Brief | 2.60 | 125.00 | 325.00 |
| 08-15-05 | RJB | Received and reviewed notice from | | | |

Kashner Davidson Securities Corp.

For Period Ending  September 30, 2005

Page 4

Invoice Number 25769-2

Re: MSCISZ
I.D. 410-0002- MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|-------------------------|-------|------|--------|
| | | Mass Court regarding Referral of Motion to Dismiss to single justice; received and reviewed Counterclaim to vacate award. | 0.20 | 225.00 | 45.00 |
| 08-16-05 | RJB | Reviewed Mscisz appellant brief. | 1.00 | 225.00 | 225.00 |
| 08-17-05 | RJB | Reviewed cases cited by Appellants in their brief. | 3.20 | 225.00 | 720.00 |
| 08-17-05 | DJC | Researched Massachussetts Court's right to regulate attorneys | 1.60 | 175.00 | 280.00 |
| 08-18-05 | RJB | Reviewed cases relied upon by Appellee; researched regarding ripeness issue; outlined appellate brief; worked on appellate brief. | 8.50 | 225.00 | 1,912.50 |
| 08-19-05 | RJB | Worked on appellate brief. | 2.70 | 225.00 | 607.50 |
| 08-22-05 | RJB | Worked on appellate brief. | 4.20 | 225.00 | 945.00 |
| 08-23-05 | RJB | Worked on appellate brief; additional research on MA's Declaratory Judgment Act to respond to arguments raised by Appellants. | 7.80 | 225.00 | 1,755.00 |
| 08-23-05 | SR | Conference with RJB regarding reply | 0.20 | 200.00 | 40.00 |
| 08-24-05 | RJB | Worked on Reply to Counterclaim seeking to vacate award. | 2.40 | 225.00 | 540.00 |
| 08-24-05 | SR | Conference with RJB regarding appeal brief; began review of same | 0.80 | 200.00 | 160.00 |

Kashner Davidson Securities Corp.

For Period Ending  **September 30, 2005**

Page 5

Invoice Number 25769-2

Re: MSCISZ
I.D. 410-0002- MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|-------------------------|-------|------|--------|
| 08-25-05 | RJB | Revised appellate brief; worked on Reply to Counterclaim to vacate award. | 6.80 | 225.00 | 1,530.00 |
| 08-25-05 | SR | Reviewed & revised appeal brief; conference with RJB regarding comments | 1.50 | 200.00 | 300.00 |
| 08-26-05 | RJB | Emailed Howard regarding status of brief and reply for filing purposes; conferenced with SR regarding comments appellate brief; revised brief. | 1.30 | 225.00 | 292.50 |
| 08-29-05 | MJR | Attention to Reply to Counterclaim. | 2.00 | 250.00 | 500.00 |
| 08-29-05 | RJB | Conference with MR re Reply; finalzied Reply; received and reviewed discovery and scheduling Order; telephone call with local counsel regarding same and filing of reply; prepared exhibits for electronic filing. | 1.00 | 225.00 | 225.00 |
| 08-30-05 | MJR | Attention to Appeal. | 2.00 | 250.00 | 500.00 |
| 08-30-05 | RJB | Forwarded brief to client for review; telephone call from Howard re status; conference with DC regarding TOA/TOC | 0.30 | 225.00 | 67.50 |
| 08-30-05 | DJC | Drafted Tables of Contents and Authorities | 1.80 | 175.00 | 315.00 |
| 08-31-05 | RJB | Finalized brief and sent to local counsel | 0.40 | 225.00 | 90.00 |

Kashner Davidson Securities Corp.

For Period Ending  September 30, 2005

Page 6

Invoice Number 25769-2

Re: MSCISZ
I.D. 410-0002- MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|-------------------------|-------|------|--------|
| 09-06-05 | MJR | Received and reviewed Order from Supreme Court. | 0.50 | 250.00 | 125.00 |
| 09-12-05 | RJB | Conferenced with CM regarding research regarding reliance upon judgment and unauthorize practice law as means to vacate arbitrator awards under FAA. | 0.20 | 225.00 | 45.00 |
| 09-12-05 | CPM | Research regarding effect of order on appeal | 2.00 | 250.00 | 500.00 |
| 09-13-05 | RJB | Received and reviewed e-mail from Howard regarding status of state and federal matters; reviewed research regarding reliance upon judgment; conferenced with CM regarding additional research regarding same issue. | 1.50 | 225.00 | 337.50 |
| 09-13-05 | CPM | Continued research concerning effect of order on appeal | 2.10 | 250.00 | 525.00 |
| 09-14-05 | RJB | Received and reviewed e-mail from Corbett regarding Motion to Stay; letter to Corbett regarding same. | 0.50 | 225.00 | 112.50 |
| 09-15-05 | RJB | Telephone call with local counsel regarding Federal Court conference. | 0.20 | 225.00 | 45.00 |
| 09-16-05 | RJB | Received and reviewed e-mail from counsel regarding Legal research 7.1 conference; telephone call to Corbett regarding Legal research 7.1 conference; memo to file regarding same. | 0.50 | 225.00 | 112.50 |

Kashner Davidson Securities Corp.

For Period Ending  **September 30, 2005**

Invoice Number 25769-2

Page 7

Re: MSCISZ
I.D. 410-0002- MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|-------------------------|-------|------|--------|
| 09-21-05 | RJB | Received and reviewed Motion to Stay. | 0.70 | 225.00 | 157.50 |
| 09-21-05 | MTF | Drew up new motion for admission pro hac vice; composed basic joint statement of parties in advance of trial | 1.80 | 175.00 | 315.00 |
| 09-21-05 | MTF | At City Bar library; researched Florida law to determine of securities transactions fell under Florida unfair trade practice law as well as whether there was Respondeat Superior liability under Florida unfair trade liability | 2.50 | 175.00 | 437.50 |
| 09-22-05 | RJB | Received and reviewed Reply on Appeal; revised proposed joint statement required by Federal Court. | 0.80 | 225.00 | 180.00 |
| 09-22-05 | MTF | Researched law in Florida concerning Respondeat Superiror liability under unfair trade and practices laws | 0.50 | 175.00 | 87.50 |
| 09-23-05 | RJB | Forwarded proposed joint statement to Corbett. | 0.10 | 225.00 | 22.50 |
| 09-27-05 | RJB | Revised pro hac vice papers for full Appellate Court; reviewed Court rules and telephone call to Court regarding appearing telephonically at scheduling conference. | 0.40 | 225.00 | 90.00 |

Kashner Davidson Securities Corp.

For Period Ending  **September 30, 2005**

Invoice Number 25769-2                                    Page 8

Re: MSCISZ
I.D. 410-0002- MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|------|------|------|------|
| 09-28-05 | RJB | Outlined Opposition to Motion to Stay Federal action. | 0.30 | 225.00 | 67.50 |
| 09-29-05 | MJR | Attention to Opposition to Motion to Stay | 1.50 | 250.00 | 375.00 |
| 09-29-05 | RJB | Drafted Opposition to Motion to Stay confirmation proceeding; received and reviewed supplemental memo filed by Defendants. | 7.50 | 225.00 | 1,687.50 |
| 09-30-05 | MJR | Received and reviewed Motion | 1.00 | 250.00 | 250.00 |
| 09-30-05 | RJB | Revised Opposition to Motion to Stay; emailed client; finalized Opposition and sent to local counsel. | 0.50 | 225.00 | 112.50 |

                                               ------------
                              Total Fees     $   19,472.50

| Disbursement Description | Amount |
|------|------|
| Delivery | 263.28 |
| Transportation | 970.37 |

                                               ------------
                   Total Disbursements       $    1,233.65

Kashner Davidson Securities Corp.

For Period Ending  October 31, 2005

Invoice Number 25946-3

Re: MSCISZ
I.D. 410-0002- MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|-------------------------|-------|------|--------|
| 10-06-05 | MJR | Attention to Opposition to Motion to Stay | 1.50 | 250.00 | 375.00 |
| 10-14-05 | RJB | Finalized and executed pro hace vice papers | 0.10 | 225.00 | 22.50 |
| 10-21-05 | MTF | Reviewed files and underlying arbitration in Federal action for confirmation of Arbitration award | 2.20 | 175.00 | 385.00 |
| 10-24-05 | MTF | Reviewed files and underlying arbitration in Federal action for confirmation of Arbitration award. Researched standards for manifest disregard of the law standard | 3.50 | 175.00 | 612.50 |

Total Fees          $    1,395.00

| Disbursement Description | Amount |
|--------------------------|--------|
| Computer Research | 3.20 |

Total Disbursements     $      3.20

Kashner Davidson Securities Corp.

For Period Ending  **November 30, 2005**

Invoice Number 26313-3                                    Page 4

Re: MSCISZ
I.D. 410-0002- MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|-------------------------|-------|------|--------|
| 11-08-05 | MTF | Researched Mass. Rules of App. Proc. cited in Court ruling | 0.20 | 175.00 | 35.00 |
| 11-11-05 | RJB | Conference with MR regarding oral argument before SJC | 0.30 | 225.00 | 67.50 |
| 11-11-05 | MJR | Conference with RJB regarding oral argument | 0.30 | 250.00 | 75.00 |
| 11-30-05 | RJB | Reviewed counterclaims and began outlining motion to confirm | 1.80 | 225.00 | 405.00 |

Total Fees        $        582.50

| Disbursement Description | Amount |
|--------------------------|--------|
| Computer Research | 433.57 |

Total Disbursements    $    433.57

Kashner Davidson Securities Corp.

For *Period* Ending **December 31,2005**

Page 4

     Invoice Number 27007-2

   Re: **MSCISZ**
I..D. 410—0002— MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|--------------------------|-------|------|--------|
| 12-01—05 | RJB | Worked on Motion to confirm arbitration award | 4.80 | 225.00 | 1,080.00 |
| 12-02—05 | RJB | Received and reviewed amicus briefs from EBA and SLA | 1.80 | 225.00 | 405.00 |
| 12-05—05 | RJB | Received and reviewed notice of argument from date from Court; e-mail to local counsel regarding informing Court of receipt | 0.10 | 225.00 | 22.50 |
| 12-12—05 | RJB | Received and reviewed letter from Corbett to SJC regarding argument | 0.20 | 225.00 | 45.00 |
| 12-13—05 | MTF | Researched changes in Pro Hac Vice documents requirements under Florida Law. | 0.90 | 175.00 | 157.50 |
| 12-23—05 | RJB | Received and reviewed ainicus brief letter from Construction Lawyers Association in support of our position | 0.60 | 225.00 | 135.00 |
| 12-29-05 | DJC | Researched unauthorized practice of law issue | 1.20 | 175.00 | 210.00 |
| 12-29-05 | RJB | Telephone call from Howard Smith regarding call from Court Clerk on Appeal; reviewed briefs to prepare for argument | 5.50 | 225.00 | 1,237.50 |

                                                      ...............................

Total Fees          $3,292.50

Kashner Davidson Securities Corp.

For Period **Ending December 31, 2005**

Page 5

Invoice Number 27007—2

Re: MSCISZ
I.D. 410—0002— MJR

| Disbursement Description | | Amount |
|---|---|---|
| Photocopies | | 369.50 |
| Total Disbursements | $ | 369.50 |

Kashner Davidson Securities Corp.

For Period Ending **January 31, 2006**

Invoice Number 27446—3

Re: MSCISZ
I.D. 410—0002— MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|------------------------|-------|------|--------|
| 01-02-06 | RJB | Travel to Boston; prepared for argument before Massachusetts Supreme Court | 4.80 | 225.00 | 1,080.00 |
| 01-02-06 01-02-07 01-02-08 01-02-09 01-02-10 | MJR | Prepared for oral argument; reviewed briefs, including amicus briefs; travelled to and from Boston for argument before Massachusetts Supreme Court Court | 10.00 | 250.00 | 2,500.00 |
| 01—03—06 | MTF | Researched attachment standards and procedure under Massachusetts law. | 3.20 | 175.00 | 560.00 |
| 01-03-06 | MJR | Appeared at oral argument and travelled back to New York | 7.00 | 250.00 | 1,750.00 |
| 01-03-06 | RJB | Argument before SJC; travel to NYC; reviewed attachment statute; conference with MF regarding addtional research; reviewed case and practioner notes regarding attachment | 7.00 | 225.00 | 1,575.00 |
| 01-04—06 | MTF | Reviewed research from previous night with RJB and MJR to determine if attachment is a viable course with motion to confirm award. | 0.50 | 175.00 | 87.50 |
| 01-20—06 | RJB | Worked on motion to confirm award | 6.20 | 225.00 | 1,395.00 |

Kashner Davidson Securities Corp.

For Period Ending January **31,2006**

Page 7

Invoice Number 27446-3

Re: MSCISZ
I.D. 410—0002— MJR

| Date | Atty Description of Services | Hours | Rate | Amount |
|------|------------------------------|-------|------|--------|
| 01-24-06 | RJB Worked on motion to confirm award and affidavit thereto | 4.50 | 225.00 | 1,012.50 |

Total Fees    $  9,960.00

| Disbursement Description | Amount |
|-------------------------|--------|
| Miscellaneous ;Travel Exp. regarding Oral Argument in Boston; Richard J. Babnick, Jr. | 512.98 |
| Computer Research | 82.74 |
| Photocopies | 368.25 |
| Transportation | 990.07 |
| Total Disbursements | $  1,954.04 |

Kashner Davidson Securities Corp.

For Period Ending  **FEBRUARY 28, 2006**

Invoice Number 28119-3                                          Page 5

Re: MSCISZ
I.D. 410-0002- MJR

Disbursement Description
                                                                      Amount
Photocopies
Transportation                                                         40.00
                                                                      965.19
                                                                 ------------
                              Total Disbursements        $     1,005.19

Kashner Davidson Securities Corp.

For Period Ending:   MARCH 31, 2006

Page 3

Invoice Number 28457-2

Re: MSCISZ
I.D. 410-0002- MJR

| Date | Atty | Description of Services | Hours | Rate | Amount |
|------|------|-------------------------|-------|------|--------|
| 03-29-06 | RJB | Received and reviewed full Supreme Jurisdictional Court's decision | 0.40 | 225.00 | 90.00 |
| 03-29-06 | MJR | Reviewed Supreme Court decision | 0.30 | 250.00 | 75.00 |
| 03-31-06 | RJB | Revised Motion to Confirm Arbitration Award | 3.50 | 225.00 | 787.50 |
| 03-31-06 | MJR | Attention to Motion to Confirm Arbitration Award | 5.00 | 250.00 | 1,250.00 |

Total Fees     $   2,202.50

| Disbursement Description | Amount |
|--------------------------|--------|
| Computer Research | 390.93 |
| Transportation | 111.69 |

Total Disbursements    $    502.62

# Exhibit 10

 **HSH Associates, Financial Publishers**
*The nation's largest publisher of consumer loan information.*


Lenders and Rates | Loan Rates Index | Loan Statistics | Calculators | Library | ARM Indexes | Free

---

**Search our Website**

[All Word(s) ▼] [go]
[Entire Site ▼]

Find a Loan
"A" Credit Mortgage
Interest Only Lenders
B-C-D Credit Mortgage
Commercial Loans
Construction Loans
Home Equity Loans

Calculators
Payments
Credit Grade
Prepayment
MoneyToys Calculators
Lots More Here!
Download our
Homebuyers Calc!
Calcs for your Website...

Advice and Articles
Commentary / Forecast
Helpful Article Library
Book and Tutorials
Question of the Day

Mortgage Stats
Daily
Weekly
Metro
Rate Forecast
Graphs
Hybrid Arms
More...

ARM Indexes
Latest Values
LIBOR
Prime
Fed Funds
Graphs
Archives
Data Stream Delivery
Daily Index Update
Service
More...

Consumer Products
Home Buyers Mortgage

/ Home / ARM Indexes / Historic ARM Indexes

## ARM Indexes: Prime Rate, 2000-present (explanation)

**Source: Wall Street Journal (print edition)**

| Date of Change | Prime Rate |
|---|---|
| 03-Feb-00 | 8.75% |
| 22-Mar-00 | 9.00% |
| 17-May-00 | 9.50% |
|  |  |
| 04-Jan-01 | 9.00% |
| 01-Feb-01 | 8.50% |
| 21-Mar-01 | 8.00% |
| 19-Apr-01 | 7.50% |
| 16-May-01 | 7.00% |
| 28-Jun-01 | 6.75% |
| 22-Aug-01 | 6.50% |
| 18-Sep-01 | 6.00% |
| 03-Oct-01 | 5.50% |
| 07-Nov-01 | 5.00% |
| 12-Dec-01 | 4.75% |
|  |  |
| 07-Nov-02 | 4.25% |
|  |  |
| 27-Jun-03 | 4.00% |
|  |  |
| 01-Jul-04 | 4.25% |
| 11-Aug-04 | 4.50% |
| 22-Sep-04 | 4.75% |
| 10-Nov-04 | 5.00% |
| 14-Dec-04 | 5.25% |
|  |  |

**This file not up to date?**

HSH's Index Update Service delivers over 55 major indexes emailed to you, including Treasuries, RNYs, daily & monthly LIBOR, COFs, and many more. Click here!

**Click here for Prime Rate history for 1990-1999, 1980-1989, or 1975-1979.**
**Click here for more ARM indexes.**

Kit
Refinancing?
How-To Booklets
Rates From Our Survey
Rates for Websites

Insurance
Insurance Agencies

Professional Products
Stock Surveys
Custom Surveys
Index Update Service
Web Service Feeds

Helpful "Guide To"
Booklets
Learn About Home Equity
Loan Fees & Qualification
Prepaying Your Loan
Guide to Refinancing

About HSH®
Our Company
In The News
Media Releases
Professional Research
Our Clients
Internet Services
Feedback about HSH

| Date | Rate |
|------|------|
| 02-Feb-05 | 5.50% |
| 22-Mar-05 | 5.75% |
| 03-May-05 | 6.00% |
| 30-Jun-05 | 6.25% |
| 09-Aug-05 | 6.50% |
| 20-Sep-05 | 6.75% |
| 01-Nov-05 | 7.00% |
| 13-Dec-05 | 7.25% |
| | |
| 31-Jan-06 | 7.50% |
| 28-Mar-06 | 7.75% |

The prime rate is defined by The Wall Street Journal (WSJ) as *"The base rate on corporate loans posted by at least 75% of the nation's 30 largest banks."* It is not the 'best' rate offered by banks.

HSH uses the print edition of the WSJ as the official source of the prime rate. Many (if not most) lenders specify this as their source of this index.

The prime rate does not change at regular intervals. It changes only when the nation's "largest banks" decide on the need to raise, or lower, their "base rate." The prime rate may not change for years, but it has also changed several times in a single year.

**This file not up to date?**

HSH's Index Update Service delivers over 55 major indexes emailed to you, including Treasuries, RNYs, daily & monthly LIBOR, COFs, and many more. Click here!

Go to the full list of ARM Index Histories.

HSH Associates makes every reasonable effort to supply complete and accurate information, but assumes no liability for errors.

HSH  About Us | Site Map | Privacy Policy | Advertising Information | LiveEdit Login | Contact Us

© 2006 HSH Associates, Financial Publishers - http://www.hsh.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------
                                          )
KASHNER DAVIDSION SECURITIES CORP.,       )
VICTOR KASHNER, MATTHEW MEISTER,          )
and  TIMOTHY VARCHETTO,                    )
                                          )
Plaintiffs                                )
                                          )
vs.                                       )
                                          )
STEVEN MSCISZ, MARKS MSCISZ and           )
LYNDA MSCISZ,                             )
                                          )
Defendants                                )
                                          )
-------------------------------------------------------------

**Statement under Local Rule 7.1**


      Pursuant to Local Rule 7.1 the undersigned certifies that he has 1) conferred with

opposing counsel prior to the submittal of the attached Motion to Modify and Confirm

Award,  and; 2) attempted in good faith to resolve or narrow the relevant issues.



                  Plaintiff,
                  By its attorney,


                  Howard M. Smith
                  Newman & Smith
                  One Gateway Center #350
                  Newton, MA 02458
                  617 965 9900
                  BBO 468880

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------------
                                             )
KASHNER DAVIDSION SECURITIES CORP.,          )
VICTOR KASHNER, MATTHEW MEISTER,             )
and  TIMOTHY VARCHETTO,                       )
                                             )
Plaintiffs                                   )
                                             )
vs.                                          )
                                             )
STEVEN MSCISZ, MARKS MSCISZ and              )
LYNDA MSCISZ,                                )
                                             )
Defendants                                   )
                                             )
-------------------------------------------------------------
```

**Certificate of Service**

The undersigned hereby certifies that a true copy of Plaintiff's Motion to Modify
and Confirm Arbitration Award was served upon the attorney of record for each other
party by transmittal of same through applicable electronic case filing on May 15, 2006.

Certified as true and correct on  May 15, 2006.

Plaintiff,

By its attorney,

s/Howard M. Smith/

Howard M. Smith
Newman & Smith
One Gateway Center #350
Newton, MA 02458
617 965 9900
BBO 468880