# United States Court of Appeals
## For the First Circuit

No. 07-1231

KASHNER DAVIDSON SECURITIES CORP.; VICTOR L. KASHNER;
MATTHEW MEISTER; TIMOTHY VARCHETTO,

Plaintiffs, Appellees,

v.

STEVEN MSCISZ; MARK MSCISZ; LYNDA MSCISZ

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,
and Oberdorfer,* Senior District Judge.

John A. Sten, with whom Jason C. Moreau, Greenberg Traurig,
LLP, and William P. Corbett, Jr., were on brief, for appellees.
Richard J. Babnick Jr., with whom Marc J. Ross and Sichenzia
Ross Friedman Ference LLP, were on brief, for appellant.

June 27, 2008

*Of the District of Columbia, sitting by designation.

**LIPEZ, Circuit Judge.** Courts must accord substantial deference to the decisions of arbitrators. Nevertheless, there are limits to that deference. This case tests those limits in an appeal arising from a National Association of Securities Dealers, Inc. ("NASD") arbitration proceeding between defendants-appellants Steven Mscisz, Mark Mscisz, and Lynda Mscisz ("appellants" or "Mscisz") and plaintiffs-appellees Kashner Davidson Securities Corporation, Victor L. Kashner, Matthew Meister, and Timothy Varchetto (together "appellees"). In the course of resolving a contract and securities dispute between the parties, the arbitration panel ("Panel") dismissed several of appellants' counter-claims against Kashner Davidson Securities Corp. ("Kashner Davidson") and third-party claims against Kashner, Meister, and Varchetto ("Third-Party Appellees"). The Panel first stated in the presence of the parties that its decision to dismiss these claims involved consideration of the merits. Then, after recessing for a brief executive session, the Panel announced that the dismissal was a sanction pursuant to NASD Code Rule 10305. After the dismissal, the Panel took evidence on the remaining claims and entered an arbitration award in favor of appellees.

Appellees filed a motion with the District Court of Massachusetts to Confirm the Arbitration Award, which appellants opposed. Appellants also filed a cross-motion seeking vacatur of the Award. The district court granted appellees' motion and denied

-2-

the appellant's cross-motion. On appeal, Mscisz asserts, inter alia, that the Panel deprived them of a fundamentally fair hearing by sua sponte dismissing their counterclaims and third-party claims with prejudice on the merits or, alternatively, that the Panel acted in manifest disregard of the law by dismissing the claims with prejudice as a sanction.

After carefully reviewing the provisions of the NASD Code (the "Code"), which were incorporated into the parties' arbitration agreement, and the Panel's explanation of its decision, we hold that the Panel manifestly disregarded the law by dismissing appellants' counterclaims and third-party claims as a sanction in contravention of the explicit terms of the Code, which specify that such a sanction can be entered only after lesser sanctions have been imposed and have proven ineffective. We therefore reverse the decision of the district court and remand the case for entry of an order vacating the arbitration award.

I.

The relationship between Mscisz and Kashner Davidson, a broker-dealer registered with the U.S. Securities and Exchange Commission ("SEC") and a member of the NASD, began in 2003 when Mscisz opened several non-discretionary brokerage accounts with Kashner Davidson. The accounts, one established solely by Steven Mscisz and another jointly by Mark and Lynda Mscisz, each held a large number of shares in the initial public offering of Vaso

-3-

Active Pharmaceuticals, Inc. ("Vaso"). In early 2004, the appellants purchased additional shares of Vaso, using margin credit previously established with Kashner Davidson and its clearing firm, Sterne, Agee & Leach, Inc. ("Sterne"). For reasons unrelated to this dispute, the SEC suspended trading in Vaso's stock in April 2004, and subsequently lifted that suspension several weeks later, causing the price of Vaso's common stock to drop significantly. The decline created a margin debt in appellants' accounts and led Sterne to issue margin call notifications to Steven Mscisz and Mark and Lynda Mscisz.

On May 25, 2004, Kashner Davidson initiated the NASD[1] arbitration proceeding at issue in this appeal, asserting claims of breach of contract and fraud in connection with the approximately $350,000 in alleged margin debt owed by appellants in connection with their investment in Vaso. In August, appellants submitted their answer, denying Kashner Davidson's allegations and raising a number of defenses and claims against Kashner Davidson as well as against the Third-Party Appellees, all registered representatives of Kashner Davidson at the time these events were occurring.

---

[1] The NASD was the primary self-regulatory organization responsible for the regulation of the securities industry in the United States, with delegated authority from the U.S. Securities and Exchange Commission. In July 2007, the NASD was consolidated with the enforcement, arbitration, and member regulation arm of the New York Stock Exchange, known as NYSE Regulation, Inc., to create the Financial Industry Regulatory Authority (FINRA). See About FINRA, http://www.finra.org/AboutFINRA/CorporateInformation/index.htm (last visited May 27, 2008).

-4-

Specifically, Mscisz alleged in their answer that Kashner Davidson,
through its representatives, committed fraud in contravention of
several state and federal securities laws, as well as a number of
common law violations.[2] Both parties agreed to submit the dispute
to arbitration "in accordance with the Constitution, By-Laws,
Regulations and/or Code of Arbitration Procedures of the sponsoring
organization," the NASD, and each accepted the three arbitrators
appointed to the Panel, including Arthur Giacommara, who served as
the Panel's Chairperson.

In December 2004, the parties filed discovery requests
seeking documents and other information related to their respective
claims.[3] Both parties subsequently filed oppositions to each
other's motions. On February 1, 2005, Giacommara issued a

---

[2] Specifically, appellants asserted twelve counter-claims
against Kashner Davidson and third-party claims against Kashner,
Meister, and Varchetto, including: (1) violations of Section 7 of
the Securities Exchange Act of 1934 [15 U.S.C. § 78g], Section 9
[15 U.S.C. § 78i], and Section 10(b) [15 U.S.C. § 78j(b)]; (2)
violations of the Florida Securities Act [Fla. Stat. § 517.301];
(3) violations of the Massachusetts Uniform Securities Act [Mass.
Gen. Laws ch. 110A]; (4) violations of NASD Business Conduct
Standards; (5) common law fraud; (6) unjust enrichment; (7)
conversion; (8) breach of contract; (9) violations of the Racketeer
Influenced and Corrupt Organization Act [18 U.S.C. § 1962]; (10)
abuse of process; and (11) violations of the Massachusetts Consumer
Protection Act [Mass. Gen. Laws ch. 93A, § 2].

[3] The NASD Discovery Guide (the "Guide") supplements the
section in the Securities Industry Conference on Arbitration
publication entitled The Arbitrator's Manual and provides guidance
to the arbitrators on a wide-range of commonly encountered
discovery issues.         See   FINRA   Discovery   Guide,
http://www.finra.org/web/groups/med_arb/documents/mediation_arbit
ration/p009420.pdf (last visited June 2, 2008).

discovery order granting some of the parties' discovery requests and denying others. The order required the parties to comply by February 10, 2005.

Days before the February 10 deadline, appellants filed an emergency motion asking the Panel for an additional seven days to produce the requested documentation and declaring their "inten[t] to comply fully with the Chairman's order directing them to provide information to the Third Party Respondents and Claimant/Respondent-Counter-claim." Mscisz contemporaneously filed an Emergency Motion to Postpone the Hearing, which was scheduled to begin on March 2, 2005. The Panel granted both of appellants' motions, extending the production deadline a week and postponing the arbitration hearing to May.

On February 22, 2005, after the extended time period for compliance with the discovery order had lapsed, Kashner Davidson sent a letter to the Panel, informing it of appellants' failure to comply with the discovery order and seeking a sanction against appellants for such failure. That same day, however, Kashner Davidson received 320 pages of documents from Mscisz pursuant to the discovery request, along with several emails questioning the veracity and ethics of appellees' counsel. The accusations contained in these emails, as well as a number of others, were also included in a letter sent by appellant to the Panel the following day.

-6-

On February 24, appellants followed up the letter with a Motion for Reconsideration of the February 1 Discovery Order, a Motion to Compel Appellees' Compliance with the same Discovery Order, and a Motion to Withdraw their Counter-claims and Third-Party Claims Without Prejudice.  Appellants argued in their Motion to Withdraw that the Panel's denial of discovery requests essential to their defenses deprived them of a fundamentally fair hearing. Kashner Davidson responded on February 28 with a second motion for sanctions against Mscisz for their deliberate disobedience of the order compelling production.

Mscisz opposed the Motion for Sanctions on two grounds. First, they argued that their refusal to produce documents was a result of their intention to have the counter-claims withdrawn from the arbitration, which would remove "any basis for the [appellee]'s attempt to rummage through their personal financial records." Second, appellants asserted that their noncompliance was justified by their recent filing of a Motion for Reconsideration of the Discovery Order, and they maintained that they would comply fully with any Panel order once their motion was addressed.

On March 30, the Panel denied Appellants' Motions to Withdraw their Counter-claims and Third-Party Claims Without Prejudice, and instead dismissed the claims with prejudice.[4]  On

---

[4] The Panel's order dismissing appellants' claims with prejudice was inadvertently omitted from the district court record. However, the parties agree that the order included the following

May 11, appellants' counsel sent a letter to the NASD in which he

challenged the Panel's decision to dismiss his party's claims with

prejudice and inquired as to the basis of the decision.   The

explanation was provided on May 17 when the parties began the

arbitration hearing.  After the appellants again inquired as to the

basis of the Panel's decision to dismiss counterclaims and third-

party claims with prejudice at the outset of the hearing, the

following exchange ensued between appellants' attorney and

Giacommara:

Appellants:    Rule 10305 of the [NASD] Code allows
               dismissal under three circumstances: You
               can dismiss an entire proceeding with the
               agreement of the parties; you can dismiss
               the claims at issue without prejudice at
               the request of the parties, which is what
               we requested; or you can dismiss claims
               with prejudice, but only after, as a
               sanction, when other sanctions have
               proven   ineffective   for   eliminating
               willful    disobedience   with    panel
               authority.
               There's never been a finding of willful
               disobedience of a panel order by the
               Msciszes, there's never been a sanction
               assessed against them, and this [Order]
               was not phrased in terms of a sanction
               either.
Giacomarra:    I think you're missing the point.    I
               think we do have authority beyond what
               you've quoted, and that was what our
               ruling was based on.    It was after
               thoughtful consideration that the panel

---

elements: (1) the arbitration hearing was postponed until May 17-
20, 2005; (2) appellants' motion to withdraw its claims was denied;
and (3) appellants' counter-claims and third-party claims were
dismissed with prejudice.

```
                    reviewed that and made that ruling.  So
                    we feel we do have authority.
     Appellants:    Did the Panel consider the merits of the
                    counterclaim?
     Giacomarra:    We did.
     Appellants:    When? They weren't briefed, they weren't
                    argued.  I never had an opportunity --
     Giacomarra:    We had the claim in front of us, but we
                    had -- we'll go off the record, take an
                    executive session for a moment here, and
                    if you could leave the room again.
```

                    (Brief Recess)

```
     Giacomarra:    We're going back on the record.  After
                    review of the matter, the panel is
                    upholding their decision of dismissing
                    the counterclaims with prejudice.  We
                    feel it's within our rights under rule
                    1035 -- 10305.
```

After the colloquy, the hearing continued on the remaining claims,

with appellants having the opportunity to present testimonial and

documentary evidence in support of its defenses.

          After the hearing, the appellees were awarded $421,000.00

by the Panel, inclusive of attorneys' fees and costs.  Kashner

Davidson and the Third-Party Appellees then filed an Amended

Complaint in the District of Massachusetts in July 2005, seeking to

confirm the arbitration award and modify its allocation among the

various appellants.  Appellants responded by raising a number of

affirmative defenses and counterclaims attacking the arbitration

award, and requested that the award be vacated.  In November 2006,

the district court confirmed the arbitration award and declined to

modify the allocation of damages among appellants. This appeal ensued.[5]

## II.

Our review of an arbitration panel award is bifurcated. Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000). Although we review the district court's decision de novo, McCarthy v. Citigroup Global Mkts. Inc., 463 F.3d 87, 91 (1st Cir. 2006), we remain "exceedingly deferential" to the decisions of the arbitrator because the arbitrator's decision is the product of a contract between the parties to have their dispute settled by an arbitrator, Bull, 229 F.3d at 330; see also Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000).

An arbitration award, however, is not "utterly impregnable." Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27,

---

[5] Although not raised in this appeal, appellants also sought to have the arbitration award vacated by the Massachusetts Supreme Judicial Court (SJC), arguing that Kashner Davidson was improperly represented by out-of-state attorneys at the arbitration hearing. After the Panel rejected Appellants' Motions to Disqualify Counsel in late 2004 and early 2005, Mscisz filed a petition before a single Justice of the SJC, raising similar claims. The Justice rejected appellants' claims, declaring "I conclude that the lawyer defendants will not engage in the unauthorized practice of law by representing [Kashner Davidson] at this particular arbitration hearing in Massachusetts . . . ." Mscisz v. Kashner Davidson Sec. Corp., No. SJ-05-0088 (Mass. May 6, 2005). On appeal to the entire SJC after the arbitration award had been handed down by the Panel, the court held that "even if an out-of-State attorney's representation of a party at an arbitration proceeding in Massachusetts might constitute the practice of law, this conduct does not provide a basis to vacate the arbitration award, and, as such, the plaintiffs are not entitled to relief." Mscisz v. Kashner Davidson Sec. Corp., 844 N.E.2d 614, 616 (Mass. 2006).

32 (1st Cir. 2006); Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 944 (1st Cir. 1988) ("[C]oncluding that our role is limited is not the equivalent to granting limitless power to the arbitrator."). Although we "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts," United Paperworkers Int'l Union AFL-CIO, v. Misco, Inc., 484 U.S. 29, 38 (1987), there are limited "exceptions to the general rule that arbitrators have the last word," Cytyc, 439 F.3d at 33. Specifically, we must ensure that arbitration decisions comply with section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, and certain common law principles. See id.

"[S]ection 10 authorizes vacatur of an award in cases of specified misconduct or misbehavior on the arbitrators' part, actions in excess of arbitral powers, or failures to consummate the award." Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990). The common law requires vacatur if the party opposing confirmation of an award can show that the "award is '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.'" Id. at 8-9 (quoting Local 1445, United Food & Commercial Workers v. Stop & Shop Cos., 776 F.2d 19, 21 (1st Cir. 1985)). We have subsumed these common law grounds into a general

evaluation of whether a panel has acted in "manifest disregard of the law." See McCarthy, 463 F.3d at 91; Advest, 914 F.2d at 9. We have further explained that "[a]n award is in manifest disregard of the law if either 'the award is contrary to the plain language of the contract,' or 'it is clear from the record that the arbitrator recognized the applicable law, but ignored it.'" Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc., 274 F.3d 34, 36 (1st Cir. 2001) (quoting Gupta v. Cisco Sys., Inc., 274 F.3d 1, 3 (1st Cir. 2001)); see also 1 Martin Domke, Domke on Commercial Arbitration, § 38:9 (2007) ("Although subject to slight variations in wording, courts generally apply the following two part test in determining if the award should be vacated for manifest disregard of the law: (1) Did the arbitrator know of the governing legal principal yet refused to apply it or ignored it all together? and (2) Was the law ignored by the arbitrators well defined, explicit and clearly applicable to the case? Only if the court determines that both prongs of this test are satisfied will it overturn an award for manifest disregard of the law." (footnotes omitted)).

## III.

Acknowledging the significant deference that we must afford an arbitrator's decision, Mscisz nonetheless urges us to vacate the Panel's decisions denying appellants' discovery requests and dismissing their counterclaims and third-party claims with prejudice. Although appellants cite numerous grounds upon which

the arbitration award should be vacated, echoing the various standards set forth in FAA section 10 and our common law decisions, their claims, in essence, boil down to two. First, Mscisz claims that the Panel acted in manifest disregard of the law by inappropriately relying on NASD Rule 10305, which specifies that claims can be dismissed with prejudice as a sanction only if lesser sanctions have failed to achieve the compliance the panel seeks.[6] Alternatively, Mscisz contends that if the Panel did not rely on Rule 10305, but rather dismissed their claims on the merits, it deprived appellants of a fundamentally fair hearing by deciding these claims without the benefit of the parties' briefing or oral arguments. Accordingly, appellants contend vacatur of the arbitration award is required.

In response, Kashner Davidson asserts that the decision of the Panel was based on its interpretation of Rule 10305, not on

---

[6] In full, NASD Rule 10305 states:

(a) At any time during the course of an arbitration, the arbitrators may either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to their judicial remedies, or to any dispute resolution forum agreed to by the parties, without prejudice to any claims or defenses available to any party.
(b) The arbitrators may dismiss a claim, defense, or proceeding with prejudice as a sanction for willful and intentional material failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective.
(c) The arbitrators shall at the joint request of all parties dismiss the proceedings.

the merits of the claims, and that the Panel did not act in manifest disregard of the law by dismissing the claims. Appellees argue that the panel's decision to dismiss must be evaluated within the context of the entire arbitration proceedings, including their prior motions for sanctions and appellants' willful disregard of the Panel's discovery orders. According to the appellees, these elements, in addition to the Panel's statement after its "thoughtful consideration" of the issues, indicate that the dismissal was a sanction rather than a decision on the merits of appellants' various claims.

## A. The Basis for the Panel's Dismissal of the Appellants' Counterclaims and Third-Party Claims with Prejudice

We agree that the Panel dismissed appellant's counterclaims and third-party claims primarily as a sanction. When initially asked at the May hearing to justify its decision to dismiss, the Panel stated that the decision included consideration of the merits of those claims. After being challenged on this point by appellants' counsel, who asserted that the merits of these claims had not even been briefed or argued, the Panel, before explaining its decision further, recessed to review the matter. After its executive session was completed, the Panel reconvened and stated that its decision to dismiss the counterclaims and third-party claims with prejudice was based on the dismissal provisions of Rule 10305, which permit dismissal as a sanction "for willful

-14-

and intentional material failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective."

The sanction issue was certainly before the Panel at the time of its ruling. The appellees' numerous petitions in the months leading up to the hearing were framed as requests for sanctions rather than as arguments contesting the viability of appellants' claims. That the appellees would seek a sanction in response to the appellants' conduct during discovery is not surprising. The appellants readily admit that they had failed to comply fully with the discovery requests in February and March of 2005. The discovery material that the appellee did receive, on February 22, was "unintentionally convoluted." Further, Kashner Davidson had sought a sanction against appellants on several separate occasions.

Nevertheless, we cannot ignore the Panel's own statement, offered immediately before the executive session, that it considered the merits of appellants' claims in deciding to dismiss them. That consideration could not plausibly disappear during the brief executive session. Thus, in some fashion, the Panel's assessment of the merits of these claims informed its decision to dismiss them as a sanction.

## B. Manifest Disregard of the Law

We review the Panel's decision to invoke section 10305(b) of the Code as the basis for its dismissal decision. Both sections

-15-

(a) and (c) are silent on the issue of sanctions, and address only dismissals without prejudice. According to Rule 10305(b), the Panel may dismiss a claim with prejudice if two elements are satisfied. First, the dismissal must be a response to the "willful and intentional material failure to comply with an order of the arbitrator(s)." Second, it may be imposed only "if lesser sanctions have proven ineffective." The Guide confirms these elements. Noting that a Panel has "wide discretion to address noncompliance with discovery orders," the Guide states that in "extraordinary cases, the panel . . . may, pursuant to Rule 10305(b), dismiss a claim . . . with prejudice as a sanction for intentional failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective." NASD Discovery Guide 18 (emphasis added).

Although the first element was arguably satisfied here because the Panel could have concluded that the appellants willfully and materially failed to comply with an order, the second element was not met. The Panel had not previously imposed lesser sanctions on the appellant and therefore had not demonstrated that sanctions short of a dismissal were ineffective. Indeed, only weeks before the claims were dismissed in March, the Chairman of the Panel expressly denied the appellees' requests for sanctions. It is clear, therefore, that the unambiguous language of the Rule was disregarded. Cf. Bradley v. Davis, 777 So. 2d 1189, 1190 (Fla.

-16-

4th Dist. Ct. App. 2001) (suggesting that plaintiff would have "in all likelihood" won her appeal challenging the dismissal of her arbitration claims with prejudice under 10305(b) because no lesser sanctions had proven ineffective).

Acknowledging this fact in their brief, the appellees nevertheless raise several arguments in defense of the Panel's action. First, they contend that the Panel could not have acted in manifest disregard of the law because the NASD Code is a set of private dispute resolution rules, not a body of law. Accordingly, the Panel's disregard of the Code cannot constitute manifest disregard of the law.

The "manifest disregard" standard is most often applied to the arbitrator's decision on the merits of the dispute that requires resort to the arbitral forum. For example, there may be a claim that the arbitral award is in manifest disregard of the law because it is contrary to the plain meaning of the contract that the arbitrator has been asked to apply. See, e.g., Cytyc, 439 F.3d at 33. However, the manifest disregard standard can also be applied to the agreement to arbitrate itself. All arbitrations are conducted pursuant to a contract between the parties. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration."). That

-17-

agreement to arbitrate often determines the procedural rules that the arbitrator applies in resolving the underlying dispute. If the arbitrator ignores the plainly stated procedural rules incorporated in the agreement to arbitrate while arriving at the arbitral award, that award is subject to a manifest disregard of the law challenge. See Patten v. Signator Insurance Agency, Inc., 441 F.3d 230, 235 (4th Cir. 2006) (finding that an arbitrator "acted in manifest disregard of the law" where she "disregarded the plain and unambiguous language of the governing arbitration agreement"); cf. Cytyc, 439 F.3d at 32 ("[T]he award must 'draw its essence from the contract' that underlies the arbitration proceeding." (quoting Misco, 484 U.S. at 38)).

In this case, the parties agreed to "submit the present matter in controversy . . . to arbitration in accordance with the Constitution, By-Laws, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization," in this case, the NASD. See NASD Rule 10331 ("This Code shall be deemed a part of and incorporated by reference in every agreement to arbitrate under the Rules of the Association including a duly executed Submission Agreement."). Thus, the NASD rules became part and parcel of the arbitration contract, serving as the procedural rules governing the arbitration proceeding. See 11 Richard A. Lord, Williston on Contracts § 30:25 (4th ed. 2008) ("Where a writing refers to another document, that other document, or the portion to which

-18-

reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument. The incorporated matter is to be interpreted as part of the writing."). If the Panel disregarded those rules, it necessarily disregarded the arbitration contract as well. See George Watts & Son, Inc. v. Tiffany and Co., 248 F.3d 577 (7th Cir. 2001) (hypothesizing that if an arbitration agreement specifies that a dispute is to be resolved under Wisconsin law, and the arbitrator states that she prefers New York law, or no law at all, that the award could be deemed a "manifest disregard of the law" or, alternatively, as exceeding the arbitrator's powers).[7]     Thus, if "the [Panel] disregarded the plain and unambiguous language of the governing arbitration agreement . . . , [it] acted in manifest disregard of the law and failed to draw [its] award from the essence of the agreement." Patten, 441 F.3d at 235.

The appellees also argue that even if the NASD code was the governing law in the arbitration proceeding, the Panel did not

_____

[7] We acknowledge that there may be instances when the various statutory and common law grounds for reviewing an arbitration award overlap, leading courts to evaluate different standards, or different iterations of the same standard. For example, if an arbitration panel has acted in contravention of the clear, unambiguous language of the arbitration contract, it has arguably both manifestly disregarded the applicable law and exceeded its power as arbitrators. We think that the manifest disregard of the law approach works well here. We are not suggesting that the "exceeding its power" rationale could not work as well. As we have stated before, the "standard of judicial review has taken on various hues and colorations in its formulations in this, and other, circuits." Advest, Inc., 914 F.2d at 9.

-19-

"intentionally or willfully" disregard the law because its decision was made in good-faith after thoughtful consideration and based on its overall interpretation of the Code provisions and authority. Appellees cite Rule 10324[8] as providing authority for the Panel's interpretation of 10305(b) and their actions taken in accordance with that interpretation.    According to appellees, Rule 10324 provides the Panel with authority to interpret Rule 10305(b) broadly in order to "obtain compliance with any ruling by the arbitrators."    Because the Panel was merely interpreting, in a good-faith manner, the text of Rule 10305(b) in accordance with Rule 10324, appellees argue, it could not have "intentionally or willfully" disregarded the law in this case.

The appellees also offer the Guide as additional support for their claim.    The Guide specifically contains a section discussing sanctions in connection with discovery disputes. Confirming that a panel maintains "wide discretion to address noncompliance with discovery orders," it encourages the use of sanctions "if any party fails to produce documents or information required by a written order." NASD Discovery Guide 18; see Howsam

_____

[8] In full, NASD Rule 10324 states:

The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s).    Such interpretations and actions to obtain compliance shall be final and binding upon the parties.

-20-

v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002) ("[T]he NASD

arbitrators, comparatively more expert about the meaning of their

own rule, are comparatively better able to interpret and to apply

it."). Further, the Guide repeats the language of 10305(b) as an

option "in extraordinary cases." NASD Discovery Guide 18.

We agree that Rule 10324 establishes two distinct and

independent grants of authority -- first, the authority to

"interpret" the Code, and second, the authority to "take

appropriate action to obtain compliance with any ruling by the

arbitrators." Nevertheless, these grants of authority do not save

the Panel's dismissal decision. With respect to the authority to

interpret, the Panel's disregard of the unambiguous text of a Code

provision cannot be deemed a mere interpretation.     To find

otherwise and expand the concept of "interpretation" to include the

Panel's dismissal decision in this case would be tantamount to

giving NASD arbitration panels a blank check to dismiss claims with

prejudice in contravention of an explicit provision of the Code.

Our deference to the decisions of arbitrators does not extend that

far.

With respect to the authority to use sanctions to achieve

compliance with panel orders, Rule 10324 authorizes "appropriate

action to obtain compliance with any ruling by the arbitrator(s)."

The sanction of dismissal imposed by the Panel was not intended to

obtain compliance with any ruling by an arbitrator. Indeed, it was

a sanction that made compliance with outstanding orders by the
Panel irrelevant by removing the underlying claims of appellants
from the case. The dismissal ordered by the Panel has no grounding
in Rule 10324.

Therefore, the dismissal sanction imposed by the Panel
reflects its intentional and willful disregard of the clear and
unequivocal language of Rule 10305(b). That language permits
dismissal with prejudice as a sanction only after lesser sanctions
have failed to achieve compliance with the order(s) at issue.[9]
There was no history of lesser sanctions having been tried in this
case.[10] The Panel, having rejected numerous requests for sanctions
from appellees, certainly knew this to be so, yet it chose to
impose the ultimate sanction of dismissal without taking the
preliminary steps required by the rule. Although the Panel's

---

[9] The Guide also explicitly contemplates imposing less severe
sanctions prior to an outright dismissal with prejudice pursuant to
Rule 10305(b). Additionally, it offers examples of such sanctions,
including "mak[ing] an adverse inference against a party" or
assessing various fees resulting from noncompliance. NASD
Discovery Guide 18.

[10] Courts adopt a similar approach of using lesser sanctions
to encourage a party's compliance with a court order and reserving
the sanction of dismissal until others have proven unsuccessful.
See Crossman v. Raytheon Long Term Disability Plan, 316 F.3d 36,
39-40 (1st Cir. 2002); Velazquez-Rivera v. Sea-Land Serv., Inc.,
920 F.2d 1072, 1076 (1st Cir. 1990) ("[D]ismissal should be
employed only if the district court has determined that it could
not fashion an 'equally effective but less drastic remedy.'"
(quoting United States v. Pole No. 3172, Hopkinton, 852 F.2d 636,
642 (1st Cir. 1988))); Richman v. Gen. Motors Corp., 437 F.2d 196,
199 (1st Cir. 1971) ("Dismissal is a harsh sanction which should be
resorted to only in extreme cases.").

negative view of the merits of appellants' claims, alluded to by the Panel immediately before the executive session, may help explain the Panel's decision to invoke Rule 10305 as a basis for dismissing appellants' claims with prejudice, this negative view did not justify invoking a rule, "well defined, explicit, and clearly applicable to this case," 1 Domke, supra, 38:9, that did not support the sanction rationale offered by the Panel. This misapplication of the clear language of the rule can only be deemed an intentional and willful disregard of the law.

IV.

There may well have been grounds for the Panel's frustration with the discovery conduct of appellants. We are not questioning the authority of a panel established pursuant to the NASD Code to use sanctions to achieve compliance with its discovery order. Rule 10305 of the Code specifically provides for the use of sanctions to achieve such compliance. But that rule requires that lesser sanctions be used first in an attempt to achieve compliance before the ultimate sanction of dismissal is imposed. The Panel ignored this unmistakable directive. Our considerable deference to an arbitrator's decision does not permit us to endorse such a manifest disregard of a rule that the parties agreed should apply to the resolution of their dispute. Therefore, we reverse the decision of the district court and remand the case for entry of an order vacating the arbitration award.

-23-

So ordered.